**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| T.K., THROUGH HER MOTHER SHERRI LESHORE, and A.S., THROUGH HER MOTHER, LAURA LOPEZ, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | Case No. 1:19-cv-07915 |
| v. | Hon. John Robert Blakey |
| BYTEDANCE TECHNOLOGY CO., LTD., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and TIKTOK INC., | Mag. Hon. M. David Weisman |
| Defendants. | |

**PLAINTIFFS' UNPOSED MOTION AND MEMORANDUM IN SUPPORT FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................6

BACKGROUND...................................................................................................6

    Plaintiffs' Allegations...................................................................................6

    Procedural History and Settlement Negotiation.........................................8

SUMMARY OF THE SETTLEMENT.................................................................9

    The Settlement Class..................................................................................10

    Monetary Relief for Settlement Class Members........................................10

    Class Release..............................................................................................11

    Class Representative Service Awards.........................................................11

    Attorneys Fees and Costs...........................................................................11

    Settlement Administration..........................................................................12

    Class Notice................................................................................................12

ARGUMENT.......................................................................................................12

I.    THE SETTLEMENT SHOULD BE APPROVED AS FAIR,
    REASONABLE, AND ADEQUATE UNDER RULE 23...............................12

    A.    The Class Representatives and Class Counsel have Adequately
        Represented the Class......................................................................14

    B.    The settlement was negotiated at arm's-length by vigorous
        advocates, and there has been no fraud or collusion..........................17

    C.    The Settlement Provides Substantial Relief for the Class.................18

        1.    Diverse and substantial legal and factual risks weigh in
            favor of settlement...............................................................18

        2.    The monetary terms of this proposed settlement fall
            favorably within the range of related privacy class
            action settlements................................................................19

3.    The method of providing relief is effective and treats all members of the Class fairly................................................................21

4.    The proposed award of attorneys' fees is fair and reasonable............22

D.    The Settlement Class satisfies Rule 23................................................23

1.    The members of the class are so numerous that joinder of all of them is impracticable............................................................23

2.    Questions of law and fact are common to the members of the class........................................................................................23

3.    Plaintiffs' claims are typical of the claims of the members of the class they represent....................................................................24

4.    The Adequacy Requirement is Satisfied……………………………24

5.    Rule 23(b)(3) is Satisfied……….……………………………………25

1.    Common Questions of Fact and Law Predominate……………...25

2.    A Class Action is the Superior Method for Resolving These Claims…………………………………………………………....27

II.    THE PARTIES NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS REQUIREMENTS……………….................................................29

**CONCLUSION**................................................................................................................**29**

## TABLE OF AUTHORITIES

**Cases**      **Page**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................ 25

*Aranda v. Carribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) ................................................................ 18

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) .................. 13, 15, 17

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (C.D. Cal. 2013) .................................... 24

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) ..................................... 19

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ............................. 24

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................... 17

*Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884 (N.D. Cal. 2015) ........................ 26

*Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ..................... 24

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ........................................ 13

*Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) .................................... 21

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) ......................... 21

*G.G. v. Valve Corp.*, No. C16-1941-JCC, 2017 U.S. Dist. LEXIS 50640 (W.D. Wash. Apr. 3, 2017) ....................................................... 19

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ................................................ 16

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ........................ 20

*Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449 (10th Cir. 1969) ..................... 20

*Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013) .............. 27

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................... 20, 27, 28

*Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) ...................... 25

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ... 13, 19

*In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ............. 16, 17

*In re Hyundai & Kia Fuel Econ. Litig.*, No. 15-56014, 2019 WL 2376831 (9th Cir. June 6, 2019) .................................................... 27

*In re Mex. Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ......................... 27

*In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ....................................................... 13, 14

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ............................ 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 3:11-md-02258 (S.D. Cal. May 4, 2015) ................................................................ 20

*In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS (C.D. Cal. Aug. 14, 2019) ..... 21

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ................................................................ 13

*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ..................... 17

*Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ................................................................................................. 16, 23

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ................................................................ 25

*Kolinek v. Walgreen Co.*, 311 F.R.D 483 (N.D. Ill. Nov. 23, 2015). ................................... 22

*Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018) ................................................................................................. 22

*Manigault-Johnson v. Google LLC*, No. 2:18-cv-1032-BHH, 2019 U.S Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019) .......................................................... 19

*Martin v. JTH Tax, Inc.*, No. 13-cv-6923 (N.D. Ill. Sept. 23, 2015) ................................... 22

*McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002) ............................................. 23

*Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009).......... 17

*Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ................................................................................. 27

*Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722-JPGDGW, 2011 WL 1775726 (S.D. Ill. May 10, 2011) ................................................................ 26

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ................................................. 24

*Perkins v LinkedIn*, No. 5:13-cv-04303-LHK (N.D. Cal.) ................................................. 20

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ................................................................................. 17

*Savanna Grp. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) .......... 23

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 3:11-md-02258 (S.D. Cal. May 4, 2015) ................................................................ 20

*Spates v. Roadrunner Transp. Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134 (N.D. Ill. Dec. 23, 2016) ................................................................................. 24

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................... 25

*Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011) ................................................................................. 17, 18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) .................... 19

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ..................................... 27

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................... 24

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ........................................................................................ 17, 18, 19

**Statutes**                                                                                                **Page**

15 U.S.C. §§ 6501–6506 ............................................................................... 8

18 U.S.C. §§ 2710, *et seq* ........................................................................... 9

28 U.S.C. § 1715(b) ..................................................................................... 29

28 U.S.C. § 1715(d) ..................................................................................... 29

**Other Authorities**                                                                                       **Page**

2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 6:7 (8th ed. 2011) ........................... 17

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002) .......... 13

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) .......... 13

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.50 (4th ed. 2002) .......... 20

Bolch Judicial Inst., Duke Law Sch., *Guidelines & Best Practices Implementing 2018 Amends. to Rule 23 — Class Action Settlement Provision* (Aug. 2018) ........................ 28

Fed. Judicial Ctr., *Manual for Complex Litig.* § 21.632 (4th ed. 2004) ................................. 13, 14

John G. Roberts, Jr., Chief Justice of the U.S., *Proposed Amends. to the Fed. R. Civ. P.* (Apr. 26, 2018). ........................................................................................ 28

Rohit Choppa & Rebecca Kelly Slaughter, *Joint Statement in the Matter of Musical.ly Inc. (now known as Tiktok)*, Fed. Trade Comm'n (Feb. 27, 2019) ........................... 8

**Rules**

Fed. R. Civ. P. 23 Notes ............................................................................... 23

Fed. R. Civ. P. 23(a)(1) ................................................................................ 23

Fed. R. Civ. P. 23(a)(4) ................................................................................ 25

Fed. R. Civ. P. 23(b)(3) ................................................................................ 27

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 28, 29

Fed. R. Civ. P. 23(c)(2)(C)(iii) ...................................................................... 22

Fed. R. Civ. P. 23(e)(1)(A) (2018) ................................................................. 13

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................... 14

Fed. R. Civ. P. 23(e)(2) ................................................................................ 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...................................................................... 21

Fed. R. Civ. P. (e)(2) (2018) ........................................................................ 14

Fed. R. Civ. P. 23(e)(1)(B) (2018) ................................................................ 14

## INTRODUCTION

This case alleges that Defendants violated federal and state laws by tracking, collecting, and disclosing the personally identifiable information and/or viewing data of children under the age of 13— without parental consent—while they were using Defendants' video social networking platform, i.e., software application (the "App."). Defendants deny the material allegations in the operative complaint.

Recognizing the risks of protracted litigation, the parties mediated the case with respected mediator Gregory P. Lindstrom of Phillips ADR in Palo Alto, California. Through mediation, the parties reached an agreement—pursuant to the mediator's proposal— to request approval of an all-cash, non-reversionary settlement totaling $1.1 million for the settlement class. This is an excellent result, considering the risks, uncertainties, burden, and expense associated with litigation. Pursuant to the parties' agreement, Plaintiffs now respectfully request that this Court: (1) conditionally approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiffs as the class representatives, (3) appoint Plaintiffs' counsel as class counsel, (4) approve the parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (5) set a date for a final approval hearing, and (6) set deadlines for members of the settlement class to submit claims for compensation, and to object to or exclude themselves from the settlement.

## BACKGROUND

### Plaintiffs' Allegations

The gravamen of this action is Defendants' alleged collection and use of children's personally identifiable information and/or viewing data through the App. *See* Doc. 1, *generally*.

The following is a summary of the specific allegations made by Plaintiffs (many of which Defendants have denied):

Since at least 2014, Defendants operated the App. Doc. 1, ¶ 18. The App provided a platform for users to create videos and then synchronize them with music or audio clips from either the App's online music library or music stored on the user's device. The App is free to download from Apple's App Store, Google Play, and the Amazon Appstore. *Id*.

To register for the App, users provided their email address, phone number, username, first and last name, short bio, and a profile picture. Between December 2015 and October 2016, Plaintiffs allege that Defendants also collected geolocation information from users of the App, which, Plaintiffs contend, enabled Defendants and other users of the App to identify where a user was located. *Id*. at ¶ 19.

Plaintiffs allege that a percentage of the App users were under the age of 13. According to Plaintiffs' Complaint (Doc. 1), Defendants did not request age information for users of the App. prior to July 2017. Plaintiffs further allege that certain of the App's content was directed at and strongly appealed to children under the age of 13. Doc. 1, ¶¶ 18-51.

Plaintiffs contend that Defendants were well aware that children under the age of 13 were using the App. Doc. 1, ¶¶ 18-51. Plaintiffs further contend that Defendants had actual knowledge they were collecting personally identifiable information and/or viewing data from children without parental consent. *Id*. Plaintiffs also allege that Defendants failed to safeguard children's personally identifiable information and/or viewing data and that this conduct exposed minor children to harmful conditions. *Id*. Defendants dispute these allegations.

Plaintiffs assert that, as a result of the foregoing acts and/or omissions, Defendants violated state and federal law. Indeed, in February of 2019, the Federal Trade Commission ("FTC") filed

a complaint against Defendants for violations of the Children's Online Privacy Protection Act (COPPA) in connection with the App.[1]  Under Plaintiffs' reading of the Complaint, the FTC noted the dangers perpetuated by the App, including children being stalked, due to the App's failure to obtain parental consent from users under the age of 13.  Subsequent to the filing of the FTC complaint, Defendants agreed to pay $5.7 million to settle the allegations that the company illegally collected personally identifiable information from children in violation of COPPA.  At the time, the settlement was the largest civil penalty ever obtained by the FTC in a children's privacy case.  In addition to the monetary penalty, the settlement also required Defendants to comply with COPPA going forward and to take offline all videos made by children under the age of 13.  Doc. 1, ¶¶ 18-51.

### Procedural History and Settlement Negotiations

From Plaintiffs' perspective, although the FTC complaint and settlement was considered a "major milestone"[2] for COPPA enforcement and a "big win in the fight to protect children's privacy," it still did not provide relief to the millions of consumers alleged to have been harmed by Defendants' conduct.  *See* Declaration of Gary E. Mason, attached hereto as Exhibit 1 ("Mason Declaration" or "Mason Decl.") ¶¶ 11-12.  Accordingly, Plaintiffs set out to seek relief on behalf of a nationwide class consumers affected by the alleged conduct.

On June 3, 2019, Plaintiffs, through their counsel, sent a demand letter and draft complaint to Defendants alleging violations of the privacy rights of the Plaintiffs in connection with the operation of the App.  Ex. 1 at ¶ 3; *see also* Exhibit 2 (Settlement Agreement) at Exhibit A..  In

---

[1] In 1999, Congress enacted the Children's Online Privacy Protection Act (COPPA), recognizing the vulnerability of children in the Internet age. *See* 15 U.S.C. §§ 6501–6506. COPPA's express goal is to protect children's privacy while they are connected to the internet. Under COPPA, developers of child-focused apps cannot lawfully obtain the personal information of children under 13 years of age without first obtaining verifiable consent from their parents.

[2] https://www.ftc.gov/system/files/documents/public_statements/1463167/chopra_and_slaughter_musically_tiktok_joint_statement_2-27-19_0.pdf.

particular, Plaintiffs' draft complaint—which formed the basis for their operative complaint in this case—alleged that Defendants' conduct formed the basis for claims of (i) intrusion upon seclusion; and (ii) violation of state consumer protection statutes. Thereafter, Plaintiffs' counsel also informed Defendants' counsel that should this case proceed, Plaintiffs would be adding an additional nationwide federal claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 et seq.[3] Ex. 1, ¶ 14.

Between June 3, 2019 and October 22, 2019, Plaintiffs' counsel and Defendants' counsel engaged in substantial informal discovery and information sharing concerning (i) the claims and potential defenses at issue in Plaintiffs' Complaint; (ii) the size of the potential class contemplated in the Complaint; and (iii) the suitability for class treatment of Plaintiffs' claims. This substantial informal discovery process allowed the Parties to thoroughly investigate their claims and defenses and evaluate the strengths and weaknesses of their respective cases. After months-long negotiations, the Parties agreed to participate in an all-day mediation with Gregory Lindstrom of Phillips ADR that resulted in this Agreement—pursuant to a mediator's proposal—to settle the Civil Actions on a class-wide basis. Ex. 1, ¶¶ 13-19.

## **SUMMARY OF THE SETTLEMENT**[4]

The details of the Settlement are contained in the Settlement Agreement and Release ("Agreement" or "Agr.") signed by the parties, a copy of which is attached as Exhibit 2. For purposes of preliminary approval, the following summarizes the Agreement's terms:

---

[3] The VPPA imposes civil liability on "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider" without informed written consent. The VPPA broadly defines the term "video tape service provider," in part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." (emphasis added).

[4] Any undefined capitalized terms shall have the meaning attributed to them in the parties' Settlement Agreement, which is being submitted contemporaneously herewith.

**The Settlement Class**

The Settlement Class is defined as follows:

All persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians.

Agr. ¶ 2.3. Defendants do not possess sufficient information to accurately estimate the size of the Settlement Class. Based on the limited data available, the best estimate that can be made is that the Settlement Class might include approximately 6 million class members. Because Defendants have no way to directly contact or identify class members, Settlement Class Members will be given Notice by the settlement administrator[5] via a designated settlement website and through a combination of online social media advertising. *Id.* at ¶ 8.

**Monetary Relief for Settlement Class Members**

The settlement calls for Defendants to create a non-reversionary cash settlement fund of $1,100,000.00. Agr. ¶ 5.1. Defendants will pay the Settlement Fund to the Claims Administrator within thirty (30) days after the entry of the preliminary approval order. The Settlement Fund will be allocated as follows: to pay all expenses incurred by the Settlement Administrator for the Notice Plan and settlement administration; to allocate funds for any Fee Award and Incentive Awards; after allocation of funds for the foregoing, to pay the remaining unallocated portion of the Settlement Fund to Class Members on a *pro rata* basis; after payment of all valid claims to Class Members, to pay any Fee Award and Incentive Awards; and to distribute any residue of the Settlement Fund to a *cy pres* recipient or other appropriate recipient as may be determined by the Court. Agr. ¶ 6.1.

---

[5] The parties recommend the appointment of Angeion Group as the settlement administrator.

While it is not possible to predict the precise amount of the Cash Awards until Requests for Exclusion are received, Class Counsel estimate awards in the range of $10.00-$15.00 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration.

Settlement Class Members will receive notice of the Settlement 30 days after an order granting preliminary approval issues. *See* proposed Preliminary Approval Order attached hereto as Exhibit 3. If Class Members wish to object to or opt out of the Settlement, they will have 60 calendar days from the Settlement Notice Date—i.e., 90 days from the Preliminary Approval Order—to do so.

## Class Release

In exchange for the benefits allowed under the Settlement, Class Members will provide a release tailored to the practices at issue in this case. Specifically, they will release any and all federal, state, or common law claims "arising out of or relating to any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Civil Actions or the subject matter of the Complaint." Agr. ¶ 2.24.

## Class Representative Service Awards

Prior to the Final Approval Hearing, Class Representatives will ask the Court to award them service awards in the amount of $2,500 each in light of the time and effort they have personally invested in this Action in order to pursue class claims. Defendants do not object to such incentive payments. The Settlement is not contingent on the Court's granting of such an award. Agr. ¶12.2.

## Attorneys' Fees and Costs

Also prior to the Final Approval hearing, Class Counsel will apply to the Court for an award of attorneys' fees of no more than 33% of the common fund and costs. As will be addressed

in Class Counsel's motion for attorneys' fees, Seventh Circuit courts commonly award even higher percentages of settlement common funds as attorneys' fees, and it is appropriate to compensate Class Counsel in this amount here for the work they have performed in litigating this action. The Settlement is not contingent on Court approval of an award of attorneys' fees or costs. Agr. ¶ 12.

### Settlement Administration

All costs of notice and claims administration will be paid from the Settlement Fund. The parties agree that Angeion Group will administer the Settlement, subject to Court approval.

### Class Notice

Within thirty (30) days of entry of the Preliminary Approval Order, the Settlement Administrator will issue the Class Notice to all Settlement Class Members. Agr. ¶ 8; Ex. 3. Because Defendants assert they have no way to directly contact or identify Class Members, notification will be through a combination of online social media advertisements. Further, the Settlement Administrator will establish and maintain a Settlement Website. *Id.* The Notice Plan is described more fully *infra* at 24-26.

### ARGUMENT

**I.      THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23**

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both

> parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) . "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT & T Mobility*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process is a preliminary fairness determination. Specifically, counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Fed. Judicial Ctr., Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002).

The new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed.R.Civ.P. 23(e)(1)(B) (2018).

The second step in the process is a final fairness hearing. Fed.R.Civ.P. (e)(2) (2018); *see also* Fed. Judicial Ctr Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs*, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of these factors supports preliminary approving the Settlement and issuing notice.

- 14 -

A. **The Class Representatives and Class Counsel have Adequately Represented the Class.**

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, Class Counsel interviewed more than 800 potential claimants to evaluate the claims that eventually formed the operative complaint in this case. *See* Doc. 1. Then, over the course of approximately five (5) months, the Parties, through their counsel, engaged in significant informal discovery and information sharing concerning (i) the claims and potential defenses at issue in Plaintiffs' Complaint; (ii) the size of the potential class contemplated in the Complaint; and (iii) the suitability for class treatment of Plaintiffs' claims. Ex. 1, ¶¶ 5-19. The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Gregory P. Lindstrom of Phillips ADR. Prior to the mediation, the Parties held multiple telephone conferences with the mediator discussing the case, and the Parties submitted multiple detailed mediation briefs setting forth their respective views on the strengths of their case both on the merits and in respect to the suitability for class treatment of Plaintiffs' claims. *Id*. As such, the parties have completed a

sufficient amount of discovery to be able to place value on their respective positions in this case. *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to privacy class settlement where the parties exchanged discovery over a six-month period and then mediated the case to reach a settlement).

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Here, the Plaintiffs' claims are aligned with the claims of the other class members. In particular, each of the Plaintiffs are parents and/or legal guardians of persons who were younger than the age of 13 when they registered for and used Defendants' App, from whom they contend Defendants collected, used, and/or disclosed personally identifiable information and/or viewing data without verifiable parental consent. Doc. 1, ¶¶ 2-3. They thus have every incentive to vigorously pursue the claims of the class, as they have done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process. Further, Plaintiffs are represented by qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, Plaintiffs' counsel believe that the parties' settlement is fair, reasonable, and adequate, and

in the best interests of the members of the class. Plaintiffs' counsel also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to trial.

### B. The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank,* No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), report and recommendation adopted, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class, preventing potential collusion"); *Wright v. Nationstar Mortage LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[6]

Here, the Agreement resulted from good faith, arms'-length settlement negotiations over many months, including an in-person mediation session with respected mediator Gregory P. Lindstrom of Phillips ADR. Plaintiffs and Defendants submitted multiple detailed mediation submissions to Mr. Lindstrom setting forth their respective views as to the strengths of their case. Ex. 1, ¶¶ 13-19. Similarly, at mediation, the parties discussed their relative views of the law and the facts and potential relief for the Class, at times sharply differing over both the dollar amount of relief to be provided to the Class and the structure of the settlement fund itself. *Id..* At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. *Id.* After

---

[6] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872409, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

much negotiation but still being unable to break the logjam, the parties ultimately requested and accepted Mr. Lindstrom's settlement proposal for the resolution of the case and reached a settlement in principle. *Id.* Accordingly, it is clear that the parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See, e.g.*, *Aranda v. Carribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *1 (N.D. Ill. Mar. 2, 2017) (granting preliminary approval to privacy settlement resolved with the assistance of a mediator); *Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an experienced mediator); *Wright,* 2016 WL 4505169, at * 11 (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery).

### C.     The Settlement Provides Substantial Relief for the Class.

Plaintiffs' and their counsel's zealous advocacy, the arm's-length nature of the Settlement, the relief afforded under the Agreement, and the equitable treatment to the Class all support a finding that the Settlement is fair, reasonable, and adequate. As such, and as further detailed below, the proposal should be preliminarily approved with an order directing that notice be provided to the Class.

#### 1.     Diverse and substantial legal and factual risks weigh in favor of settlement.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility,* 270 F.R.D. at 347.

With this in mind, while Plaintiffs strongly believe in their claims, Plaintiffs understand that Defendant asserts a number of potentially case-dispositive defenses. For example, Defendants contend that all of Plaintiffs are bound by an arbitration agreement and class action waiver purportedly contained in the App. Some other Courts have agreed based on the specific facts in those cases. *See e.g. G.G. v. Valve Corp.,* No. C16-1941-JCC, 2017 U.S. Dist. LEXIS 50640, at *8-9 (W.D. Wash. Apr. 3, 2017). Defendants further contend that Plaintiffs' claims are preempted by COPPA. *See Manigault-Johnson v. Google LLC*, No. 2:18-cv-1032-BHH, 2019 U.SDist. LEXIS 59892, at *18-20 (D.S.C. Mar. 31, 2019).

Defendants also argue that the Plaintiffs would not be able to certify a litigation class. In particular, Defendants argued that the Classes are unascertainable, and that individual issues predominate over common questions of law and fact. Defendants rely on decisions issued by various district courts to justify their reasoning. *See, e.g., Carrera v. Bayer Corp.,* 727 F.3d 300, 306 (3d Cir. 2013).

Plaintiffs dispute every one of these defenses. But it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

### 2. The monetary terms of this proposed settlement fall favorably within the range of related privacy class action settlements.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:50 (4th ed. 2002). This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a

person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise").

Here, the Parties agreed to resolve this matter for a settlement fund of $1,100,000, which, based on prior experience, the proposed Settlement Administrator estimates amounts to a recovery of $10-$15 per Class Member who submits a claim . This figure compares well with other privacy class action settlements that courts have approved. For example, *Perkins v LinkedIn*, No. 5:13-cv-04303-LHK (N.D. Cal.), which concerned the collection and dissemination of approximately 20.8 million class members' user e-mails and address book contents, settled for $13 million resulting in a settlement of approximately $16 per class member who submitted a claim. *Sony Gaming Networks*, No. 3:11-md-02258 (S.D. Cal.) Doc. 204-1 at 6-10, which concerned the disclosure of Sony PlayStation account holder information for 77 million class members, settled for $15 million, or approximately $4.00 per class member who submitted a claim. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 942–44 (N.D. Cal. 2013), aff'd sub nom. *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016), which involved the alleged misappropriation of 146 million class members' personal data, settled for $20 million, or approximately $15 per class member who submitted a claim. Recently, *In re Vizio, Inc., Consumer Privacy Litigation*, Case No. 8:16-ml-02693-JLS (C.D. Cal. Dec. 7, 2018), which alleged VIZIO violated privacy laws and consumer-protection laws by

collecting sensitive information from approximately 16 million class members regarding what was displayed on their VIZIO Smart TVs, settled for $17 million, or an estimated $13-31 per class member who submitted a claim.

In addition, Plaintiffs believe that this settlement—which partly arises out of COPPA violations and involves the unlawful collection of children's personally identifiable information and/or viewing data without parental consent—represents the first settlement of its kind. Plaintiffs therefore believe it is a groundbreaking class action settlement in that respect. Accordingly, under the circumstances, the Parties believe the monetary terms of this proposed settlement fall favorably within the range of related privacy class action settlements.

### 3. The method of providing relief is effective and treats all members of the Class fairly.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: cash payments. Cash Awards will be distributed *equally* on a pro rata basis to all Settlement Class Members who submit a valid claim. Agr., ¶¶ 2.5, 6.2. To make a claim, Class Members need only provide to the Settlement Administrator (i) their name, residential address, and email address; (ii) an attestation confirming they meet the eligibility requirements to be a Class Member; (iii) information sufficient for the Settlement Administrator to make a distribution to the Class Member by electronic means;

and (iv) a statement under penalty of perjury that they have not submitted more than one claim and that the information they submit is true and correct.. Claims of class members will be paid starting no later than fourteen (14) calendar days after the Effective Date. *Id.* at ¶ 6.2. Accordingly, all Class Members will receive the same cash award at the same time. For these reasons, the settlement relief is both effective and treats all members of the Class fairly.

### 4. The proposed award of attorneys' fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an award of 33% of the settlement fund. This amount falls squarely in line with other approved class settlements, including privacy class settlements. *E.g., Kolinek v. Walgreen Co.,* 311 F.R.D 483, 501 (N.D. Ill. Nov. 23, 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.* No. 13-cv-6923, Dkt. 85 (N.D. Ill. Sept. 16, 2015) (awarding 38 % of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund"). Plaintiffs' counsel achieved an excellent result for the Class after undertaking substantial risk in bringing novel privacy claims to prosecute this action—which has resulted in the first settlement of its kind—on a pure contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiffs' counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Class Notice. Further, not only is this an entirely non-reversionary settlement, but the Settlement ensures that all claims will be validated prior to the Court's fee determination. Thus, because attorneys' fees will only be paid after the

- 22 -

Court is fully advised of the amount of benefits distributable to valid claimants, the timing concerns raised in the Federal Rules' Committee Notes are not applicable here. *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

**D. The Settlement Class satisfies Rule 23.**

> **1. The members of the class are so numerous that joinder of all of them is impracticable.**

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Grp. v. Trynex, Inc.,* No. 10-cv-7995, 2013 WL 66181, at *4 (N.D. Ill. Jan. 4, 2013). Here, there are approximately 6 million class members. Joinder, therefore, is impracticable, and the class thus easily satisfies Rule 23's numerosity requirement. *See, e.g., Karpilovsky*, 2018 WL 3108884, at *6 (class of 40 or more is sufficient); *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002).

> **2. Questions of law and fact are common to the members of the class.**

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556; *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (same).

Here, commonality is satisfied because the "circumstances of each particular class member . . . retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citations and quotations omitted). Plaintiffs' claims center on whether Defendants collected and shared what Plaintiffs' consider to

be personally identifiable information and/or viewing data of minor children without parental knowledge or consent. Because the core issues of Defendants' collection and sharing of personally identifiable information and/or viewing data without parental consent is common to the claims, Plaintiffs have met their "minimal" burden of demonstrating commonality. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (C.D. Cal. 2013). The proposed class therefore satisfies commonality.

### 3. Plaintiffs' claims are typical of the claims of the members of the class they represent.

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transp. Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134, at *2 (N.D. Ill. Dec. 23, 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and...[the] claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the claims of Plaintiffs and all class members arise out of the same course of conduct—that Defendants collected and shared what Plaintiffs' consider to be personally identifiable information and/or viewing data without parental knowledge or consent—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

### 4. The Adequacy Requirement is Satisfied.

The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf

of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957. (9th Cir. 2003). As discussed earlier, the class representatives and Class Counsel have more than adequately represented the Class. *See* Ex. 1, *generally*.

To recap, there is no conflict between Plaintiffs and the settlement class members. Plaintiffs were allegedly harmed in the same way as all class members when Defendants collected and shared what Plaintiffs consider to be personally identifiable information and/or viewing data without parental knowledge or consent. In light of this common injury, the named Plaintiffs have every incentive to vigorously pursue the class claims. Each Plaintiff agreed to undertake the responsibilities of serving as a class representative, and each has sworn that she will continue to act in the class members' best interests. Class counsel likewise are qualified to represent the class. They have deep experience in data privacy and consumer class actions. The results obtained by this ground breaking settlement based on novel claims confirm counsel's adequacy.

### 5. Rule 23(b)(3) is Satisfied.

#### i. Common Questions of Fact and Law Predominate.

Predominance analysis under Rule 23(b)(3) "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive . . . ." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013)). "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722-JPGDGW, 2011 WL 1775726, at *7 (S.D. Ill. May 10, 2011) (citation omitted). Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

This case involves an alleged uniform policy of Defendants collecting and sharing what Plaintiffs consider to be personally identifiable information and/or viewing data of minor children without parental knowledge or consent, in order to create a revenue stream for Defendants. The common thread running through Plaintiffs' federal privacy claims—the Video Privacy Protection Act—is that Defendants allegedly collected (or intercepted) personally identifiable information and/or viewing data, without consumers' consent or knowledge, as this viewing data was communicated through the App. Similarly, Plaintiffs allege Defendants collected and shared what Plaintiffs consider to be personally identifiable information, which is a core allegation for Plaintiffs' state-law privacy claims. Because the technology at issue operated uniformly, legal and factual issues in respect to collection and disclosure may be resolved for all in a single adjudication. Issues of parental consent may also be answered for all on a class-wide basis because, according to Plaintiffs' reading of the FTC action, there is no evidence of consent. Consequently, central issues common to the class predominate over any individual considerations that might arise. Finally, because conditional certification of a single nationwide class is based on violations of federal law, there can be no argument that differences in state law defeat predominance.[7] *See In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) (class representatives can meet the predominance requirement by limiting their legal theories to aspects of law that are uniform); *see also Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 544 (C.D. Cal. 2013).

---

[7] Such an argument would fail on its own terms. "Variations in state law do not necessarily preclude a 23(b)(3) action," and would not do so here if conditional certification of consumer claims were sought, because of "the commonality of substantive law applicable to all class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). *See also In re Hyundai & Kia Fuel Econ. Litig.* No. 15-56014, 2019 WL 2376831 (9th Cir., June 6, 2019) (national settlement of a multistate class action based on state law claims approved by the Ninth Circuit sitting en banc.)

ii.      **A Class Action is the Superior Method for Resolving These Claims.**

A class action is superior under Rule 23(b)(3) because it represents the only realistic means through which Class members may obtain relief in this case for the unlawful collection of their personally identifiable information and/or viewing data. *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (explaining that a class action may be superior where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). Even assuming class members could recover statutory damages, they nonetheless would lack an incentive to bring their own cases given the high expert costs involved in litigating a case such as this concerning complex technology. *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) ("Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution.") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).

## II.      THE PARTIES' NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS REQUIREMENTS.

Even as amended in 2018, Fed. R. Civ. P. 23(c)(2)(B) requires the "best notice that is practicable under the circumstances" for certified (b)(3) litigation classes. *See* John G. Roberts, Jr., Chief Justice of the U.S., *Proposed Amends. to the Fed. R. Civ. P.* at 6 (Apr. 26, 2018). The 2018 amendments apply the requirements of subdivision (c)(2)(B) to the notice of class-action settlements for (b)(3) classes. The settlement agreement contemplates a single, combined notice advising the class of the proposed certification and settlement of (b)(3) classes under both Rule 23(e)(1) and (c)(2)(B).

Rule 23(c)(2)(B) was amended because means of communication have evolved and permitting notice by electronic means, including e-mails, digital media, and social media, may

provide the best practicable notice under the circumstances. Duke Law School, Implementing 2018 Amendments to Rule 23, supra, Rules Appendix C, at *17-18.23. Specifically, the amended language expressly provides that notice can be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means." See S. Ct., Proposed Amendments, *supra*, at *6.

The Committee Note to amended Rule 23 advises: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods are best may disregard contemporary communication realities." Duke Law School, Implementing 2018 Amendments to Rule 23, supra, Rules Appendix C, at *19. Consistent with that directive, counsel for the parties and the settlement administrator have carefully considered cost, customer preference, and effectiveness, in determining the best practicable means of communicating the settlement benefits and rights of exclusion (among other matters) to the class.

Here, notice will be accomplished through a robust multi-faceted campaign. *See* the Declaration of Steven Weisbrot, Esq., attached hereto as Exhibit 4, which sets forth the Notice Plan in full detail. First, notice of the settlement will be provided through the same ad network used by the App to ensure all users who could potentially be class members are aware of the settlement. Next, Digital banners ads through the Google Display Network, Facebook (which includes a settlement-specific Facebook page) and Google AdWords/Search platforms will yield a minimum of 12 million impressions. Utilizing the known demographics of the settlement class, the digital banner ads will be specifically targeted to settlement class members and likely settlement class members. The digital media notices will all contain the address for the settlement website. On the website, Settlement Class members will find important documents and court filings, including the long-form notice, which will contain more detail than the digital media

notice. The long form notice will further be sent to all Settlement Class members who contact the Administrator by telephone or email and request a copy.  The administrator will also establish and maintain a toll-free number that maintains an IVR (or similar) system to answer questions about the Settlement. The administrator shall maintain the IVR (or similar) system until at least sixty (60) days following the claim deadline.

Notice of the proposed settlement will be sent to relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date for the final fairness hearing.  28 U.S.C. § 1715(d).  A declaration attesting to this fact will be submitted to the Court.

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  This information is included in the notice in language that is easy to understand.  *See* Exhibit 5 attached hereto.

Because the class notice and notice plan set forth in the settlement agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23, and provide the best notice practicable under the circumstances, the Court should direct the parties and the Settlement Administrator to proceed with providing notice to settlement class members pursuant to the terms of the settlement agreement and its order granting preliminary approval.

## **CONCLUSION**

Plaintiffs respectfully request that this Court (1) conditionally approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval,

(2) appoint Plaintiffs as the class representatives, (3) appoint Plaintiffs' counsel as class counsel,

(4) approve the parties' proposed notice program, and confirm that it is appropriate notice and that

it satisfies due process and Rule 23, (5) set deadlines for members of the settlement class to submit

claims for compensation, and (6) set a date for a final approval hearing.  A proposed Preliminary

Approval Order is attached hereto as Exhibit 3.


Dated: December 5, 2019                              Respectfully submitted,

                                                     /s/ *Gary M. Klinger*

                                                     **KOZONIS & KLINGER, LTD.**
                                                     Gary M. Klinger (IL Bar No. 6303726)
                                                     227 W. Monroe Street, Suite 2100
                                                     Chicago, Illinois 60630
                                                     Phone: 312.283.3814
                                                     Fax: 773.496.8617
                                                     gklinger@kozonislaw.com

                                                     **WHITFIELD BRYSON & MASON LLP**
                                                     Gary E. Mason (*pro hac vice forthcoming*)
                                                     5101 Wisconsin Ave., NW, Ste. 305
                                                     Washington, DC 20016
                                                     Phone: 202.640.1160
                                                     Fax: 202.429.2294
                                                     gmason@wbmllp.com

                                                     *Attorneys for Plaintiffs*
                                                     *the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ *Gary M. Klinger*

Gary M. Klinger, Esq.