# **Exhibit 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SHERRI LESHORE and LAURA LOPEZ, on behalf of their minor children, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | Case No. 19-cv-7915 |
| v. | |
| TIKTOK, INC., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and BYTEDANCE TECHNILOGY CO., LTD., | |
| Defendants. | |

## DECLARATION OF GARY E. MASON
## IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

I, **Gary E. Mason**, being competent to testify, make the following declaration based on my personal knowledge. I declare:

1.      I am one of the counsel for Plaintiffs ("Class Counsel") in this action. I make this Declaration in Support of Preliminary Approval of the Class Action Settlement Agreement ("Agreement") reached between the parties in this litigation. A true and accurate copy of the Settlement Agreement is attached to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement as Exhibit 2. I have actively participated in the conduct of this litigation, have personal knowledge of the matters set forth herein, and if called to testify, could and would testify competently thereto.

2.      My firm, Whitfield Bryson & Mason LLP ("WBM"), along with Kozonis & Klinger, Ltd. ("KK") (collectively "Counsel") are counsel for Plaintiffs in this matter, and seek to

DocuSign Envelope ID: C931E1B8C81A-4FBD-B5C8-D6C3F5278698

be appointed class counsel for the settlement class. Both firms have extensive experience in prosecuting complex class actions. The firm resumes of WBM and KK are attached hereto as **Exhibits A-B**.

3.      Counsel's years of experience representing individuals in complex class action cases contributed to an awareness of Plaintiffs' settlement leverage, as well as the needs of the Plaintiffs and the class. We believed, and continue to believe, that our clients have claims that would ultimately prevail in the litigation on a class-wide basis. However, we are also aware that a successful outcome is uncertain and could be achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals. In my opinion, as well as the opinion of KK counsel, based on our substantial experience, the settlement provides significant relief to the members of the Class and warrants the Court's preliminary approval.

4.      In the sections that follow, Counsel will detail the lengthy and hard-fought negotiations that resulted in the Agreement now before the Court for preliminary approval.  As described below, the settlement provides significant relief to residents of West Point.  It is, in the opinion of the undersigned and the other Class Counsel, fair, reasonable, adequate, and worthy of preliminary approval.

## CASE INVESTIGATION AND COMPLAINT

5.      In preparing to take on this case, Counsel conducted substantial investigation into TikTok, Inc., Musical.ly Inc., Musical.ly the Cayman Islands Corporation, and Bytedance Technology Co., Ltd.'s (collectively "Defendants") practices.

6.      In fact, Class Counsel interviewed more than 800 potential claimants to evaluate the claims that eventually formed the operative complaint in this case (Doc. 1).  Class Counsel's investigation is further detailed in the following paragraphs.

7.     Defendants provide a platform application ("App") that allows users to create videos and then synchronize them with music or video clips from either the platform's online music library or music stored on the user's device.  The App can be downloaded for free from Apple's App Store, Google Play, and the Amazon Appstore.

8.     To register for the App, users provide their email address, phone number, username, first and last name, short bio, and a profile picture. Our investigation also suggests that between December 2015 and October 2016, Defendants also collected geolocation information from users of the App, which, Plaintiffs contend, enabled Defendants and other users of the App to identify where a user was located.

9.     Counsel investigations have shown that a significant percentage of the App users were under the age of 13, and that the App content was directed at and strongly appealed to children under the age of 13. Counsel's investigations have showed that prior to July 2017, Defendants did not request age information from App users.

10.     In February of 2019, the Federal Trade Commission ("FTC") filed a complaint against Defendants for violations of the Children's Online Privacy Protection Act (COPPA)  in connection with the App.  The FTC noted the dangers perpetuated by the App, including children being stalked, due to the App's failure to obtain parental consent from users under the age of 13. Subsequent to the filing of the FTC complaint, Defendants agreed to pay $5.7 million to settle the allegations that the company illegally collected personal information from children in violation of COPPA.  At the time, the settlement was the largest civil penalty ever obtained by the FTC in a children's privacy case.   In addition to the monetary penalty, the settlement also required Defendants to comply with COPPA going forward and to take offline all videos made by children under the age of 13.

DocuSign Envelope ID: C931E1B8C81A-4FBD-B5C2-D6C3F5F3786C8

11.     Plaintiffs contend that Defendants were well aware that children under the age of 13 were using the App. Plaintiffs further contend that Defendants had actual knowledge they were collecting personal information from children without parental consent.  Plaintiffs also allege that Defendants failed to safeguard children's personal information and that this conduct exposed minor children to harmful conditions.  Defendants dispute these allegations.

12.     Although the FTC Case was a big win in the fight to protect children's privacy, it did not provide relief to the millions of consumers Plaintiffs allege were harmed by Defendants' conduct.

## HISTORY OF NEGOTIATIONS

13.     On June 3, 2019 Plaintiffs, through their counsel, sent a demand letter and draft complaint to Defendants alleging violations of the privacy rights of the Plaintiffs in connection with the operation of the App. Plaintiffs' draft complaint—which formed the basis for their operative complaint in this case—alleged that Defendants' conduct formed the basis for claims of (i) intrusion upon seclusion; and (ii) violation of state consumer protection statutes.

14.     During later communications with Defendants' counsel, Counsel informed Defendants that they would be adding an additional nationwide federal claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 et seq.

15.     Between June 3, 2019 and October 22, 2019, Plaintiffs' counsel and Defendants' counsel engaged in substantial informal discovery and information sharing concerning (i) the claims and potential defenses at issue in Plaintiffs' Complaint; (ii) the size of the potential class contemplated in the Complaint; and (iii) the suitability for class treatment of Plaintiffs' claims. This substantial informal discovery process allowed the Parties to thoroughly investigate their claims and defenses and evaluate the strengths and weaknesses of their respective cases.

16.     The parties attempted for several months to negotiate a settlement without the assistance of a third party.

17.     On August 22, 2019, the parties agreed to attend an all-day mediation with Gregory Lindstrom of Phillips ADR.

18.     On October 22, 2019, after providing the mediator with multiple detailed submissions setting forth their respective views as to the strengths and weaknesses of the case, the parties attended a full day mediation in Palo Alto, California.

19.     The parties' views of the case differed sharply. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. After much negotiation the parties found themselves unable to break the logjam created by their differing views. Accordingly, they asked Mr. Lindstrom to make a mediator's proposal, which both parties eventually accepted in principal.

## THE SETTLEMENT

20.     The Settlement's details are contained in the Settlement Agreement and Release ("Agreement") signed by the parties, a copy of which is attached hereto as Exhibit A.

21.     The Agreement calls for the certification of a class for purposes of settlement, consisting of: All persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians. Based on the limited information available to Defendants and provided to Class Counsel, the best estimate that can be made is that the Settlement Class is comprised of approximately 6 million individuals.

22.     The settlement calls for Defendants to create a non-reversionary cash settlement fund of $1,100,000.00.

23.     The Settlement Fund will be allocated as follows: to pay all expenses incurred by the Settlement Administrator for the Notice Plan and settlement administration; to allocate funds for any Fee Award and Incentive Awards; after allocation of funds for the foregoing, to pay the remaining unallocated portion of the Settlement Fund to Class Members on a *pro rata* basis; after payment of all valid claims to Class Members, to pay any Fee Award and Incentive Awards; and to distribute any residue of the Settlement Fund to a *cy pres* recipient or other appropriate recipient as may be determined by the Court.

24.     Counsel estimate awards in the range of $5.00 – $10.00 per claimant after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration.

25.     Prior to the Final Approval Hearing, Plaintiffs will seek a service award of $2,500 be awarded to each Plaintiff in light of the time and effort they have personally invested in this Action in order to pursue class claims. Defendants do not object to such incentive payments.  The Settlement is not contingent on the Court's granting of such an award.

26.     Prior to the Final Approval hearing, Counsel will apply to the Court for an award of attorneys' fees of no more than 33% of the common fund and costs for the work they have performed in litigating this action.  The Settlement is not contingent on Court approval of an award of attorneys' fees or costs.

## **CONCLUSION**

27.     Counsel collectively have years of experience prosecuting complex class action claims. This experience contributed, during settlement negotiations, to an awareness both of the extent of counsels' settlement leverage and the needs of our clients and the class. Counsel believed, and continue to believe, that our clients had claims that would have ultimately prevailed in much

DocuSign Envelope ID: C921E1B8-C81A-4FBD-B5C2-D6C3FF2786C8

of the litigation and, in some cases, on a class-wide basis. However, Class Counsel are aware that the outcome of the cases was uncertain and that such outcome would have been achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals.

28.     In my opinion, as well as the opinion of other Counsel, based on the substantial experience as outlined above, the settlement warrants the Court's preliminary approval. Its terms are not only fair, reasonable and adequate, but also are very favorable result for the Settlement Class. The proposed Agreement provides substantial and concrete benefits to Class Members. Based on all of the foregoing factors, we recommend that the Court grant preliminary approval of the Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3rd day of December, 2019, in Washington, D.C.

DocuSigned by:

F83A1CDD8D44FC...

Gary E. Mason

# **Exhibit A**



**WHITFIELD BRYSON & MASON LLP**
ATTORNEYS AT LAW

With 12 lawyers and offices in three states and the District of Columbia, Whitfield Bryson & Mason LLP is dedicated to representing plaintiffs in class actions, mass torts and individual cases in courts throughout the United States. Founded in January 2012, the firm was created by a merger of three firms each with decades of experience representing plaintiffs.

Our attorneys have a long history of obtaining major verdicts and settlements. We frequently lead, co-lead, or perform other leadership roles in class actions of national significance. Examples include, the Chinese Drywall Litigation (in which one of our attorneys co-chaired the Science and Expert Committee and was on the trial team for the bell-weather trials), the Entran II product liability litigation (in which one of our attorneys served as co-lead counsel and successfully resolved the case for $330 million), and the Office of Personal Management (OPM) data breach litigation (in which one of our attorneys was appointed Liaison Counsel).

## THE FIRM'S PRINCIPAL LAWYERS

**Gary E. Mason**
***Founding Partner and Chairman***



Gary graduated magna cum laude, Phi Beta Kappa, from Brown University and Duke University Law School, where he was an editor of *Law and Contemporary Problems*. He then served as a law clerk for the Honorable Andrew J. Kleinfeld of the U.S. District Court For the District of Alaska. Gary was previously an Associate at Skadden Arps and a Partner at Cohen Milstein Sellers & Toll where he was the first Co-Chair of its Consumer Protection Practice Group.

Gary is a nationally recognized leader of the class action bar. Focusing on consumer class actions and mass torts, Gary has recovered more than $1.5 billion in the 29 years he has represented plaintiffs. With his broad experience, Gary is nationally known for representing consumers in class actions involving a wide range of defective products, including Chinese drywall, fire retardant plywood, polybutylene pipe, high-temperature plastic venting, hardboard siding, pharmaceutical products, consumer electronics and automobiles. He also is recognized for his successful representation of persons injured by negligently discharged pollutants (e.g., *In re the Exxon Valdez*) and victims of wage theft. He currently represents more than 2,000 Customs and Border Patrol Agents in FLSA litigation against the federal government, more than 1,500 women injured by use of a defective tampon product, more than 900 owners of animals injured by contaminated dog food, and over 900 individuals whose personal data was compromised by the Marriott data breach.

Gary was an early advocate for victims of security breaches and privacy violations, starting with the first settlement arising from a Google data breach (*In re Google Buzz*), the Department of Veterans Affairs stolen laptop case, and continuing on more recently to his position as Liaison Counsel in *In re OPM Data Breach Litigation*.

Gary has served in leadership positions in many consumer class actions in State and Federal courts nationwide as well as in MDLs. Gary writes and speaks frequently on topics related to class action litigation. He was the 2012-2013 Co-Chair of the Class Action Litigation group for the American Association for Justice and presently serves as the Chairman of its Rule 23 Taskgroup. He has repeatedly been named a Washington, DC Super Lawyer for Class Actions.

Gary live in Bethesda, Maryland, and manages the Washington, D.C. office.

**John C. Whitfield**
*Founding Partner*



For nearly 30 years, John has been one of Kentucky's premier trial attorneys. He has represented numerous injured parties in the Paducah, Ohio Valley and Western Kentucky areas. He has concentrated primarily on complex civil litigation cases, and over his career has brought to settlement or judgment over 30 cases in excess of a million dollars each.

John is certified as a civil trial specialist by the National Board of Trial Advocacy  and has represented individuals in all walks of life against negligent workplace practices, reckless physicians, predatory businesses, and inattentive automobile and truck drivers.

Throughout his career, John has represented scores of patients who have been the victims of medical negligence, obtaining verdicts and settlements in both state and federal courts. He has handled cases for landowners victim to fraudulent mine royalty practices, for homeowners whose homes and business contained defective concrete, and for Kentucky residents who were overcharged for premium insurance taxes. In addition, John's trial experience extends to the defense of individuals in criminal cases.

John is a frequent lecturer of litigation subjects with the Kentucky Justice Association and American Association for Justice, and has been recognized as a Kentucky Super Lawyer. He is AV rated by the Martindale-Hubbell rating service.

John lives in Nashville, Tennessee, and manages the Firm's offices in Nashville and Madisonville, Kentucky.

**Daniel K. Bryson**
*Founding Partner*



For nearly 30 years, Dan has focused his practice on complex civil litigation, successfully representing thousands of owners in a wide variety of defective construction product suits, class actions, and various mass torts and recovering more than $1.25 billion for his clients in numerous states throughout the country. He frequently collaborates with other attorneys in order to assemble the most effective team possible. Dan has also been lead or co-lead or steering committee member in a number of successful MDL or class actions.

Dan is a frequent lecturer and writer on a variety of defective construction products, insurance, and consumer mass tort related disputes.  He has been named as a member of the Legal Elite and Super Lawyers in North Carolina on numerous occasions. Dan is the past chair of the NC Bar Association, Construction Law Section.

Dan's recent experience includes serving as co-lead counsel in Outer Banks Power Outage Litigation and co-lead counsel in MDL No. 2514 against Pella Windows & Doors in Federal Court in Charleston, SC before the Honorable Judge David Norton. Dan has also served as lead counsel in MDL No. 2333 against MI Windows and Doors in Federal Court in Charleston, SC before the Honorable Judge David Norton. He is co-lead counsel in a MDL 2495 against Atlas Roofing Corporation in Federal Court in Atlanta, GA before the Honorable Judge Thomas Thrash, Jr. He has also served  as a member of the Plaintiffs' Steering Committee (Co-chair Science and Expert Committee) for the MDL 2047 involving Chinese Drywall.

Dan is an 1983 graduate of the University of North Carolina at Chapel Hill, and received his law degree, with honors, from Wake Forest University in 1988.

Dan lives in Cary, North Carolina, and manages the Raleigh, North Carolina, office.

**Martha Geer**
**Senior Attorney**



Judge Martha Geer has a combination of experience that few attorneys possess and clients find invaluable. She has practiced for more than two decades as a respected litigator and appellate advocate and served for more than 13 years as a rarely-reversed appellate judge. As a trial lawyer and board-certified appellate specialist, Judge Geer is known for obtaining cutting-edge and precedent-setting victories in a diverse set of practice areas, including consumer protection, ERISA, environmental, securities, labor and employment law, antitrust and trade regulation, commercial litigation, and civil rights litigation.

## NOTABLE CLASS ACTION CASES

**Examples of data breach and privacy class actions:**

*In re U.S. Office of Personnel Mgmt. Data Security Breach Litig.*, MDL No. 2664, No. 1:15-mc-01394 (D.D.C. Sept. 20, 2017), *rev'd in part, aff'd in part,* No. 17-5217 (D.C. Cir. June 21, 2019) (court appointed Liaison Counsel).

*In re Google Buzz Privacy Litig.*, No. 10-cv-00672-JW (N.D. Cal. May 31, 2011) (court-appointed Lead Class Counsel; $8.5 million cy pres settlement).

*In re Dept. of Veterans Affairs (VA) Data Theft Litig.*, MDL No. 1796, No. 1:06-mc-00506 (D.D.C. filed Nov. 14, 2006), *appeal dismissed,* No. 09-05405 (D.C. Cir. Dec. 14, 2009) (Co-lead counsel representing veterans whose privacy rights had been compromised by the theft of an external hard drive containing personal information of approximately 18.5 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations).

**Class actions litigated in the Eastern District of Virginia:**

*In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practice Litig.,* MDL No. 2743, No. 1:16-md-02743 (E.D. Va. filed Oct. 4, 2016) ($35 million settlement) (Trenga, J.).

*Bell v. Westrock CP, LLC*, No. 3:17-cv-00829 (E.D. Va.) (Gibney, J.) (nuisance class action; certified class; $700,000 settlement).

**Examples of other class actions, mass actions, and MDL cases we have handled include**:

*In re Chinese Manufactured Drywall Prods. Liab. Litig.,* MDL No. 2047, No. 2:09-md-02047 (E.D. La. filed June 15, 2009) (litigation arising out of defective drywall; $1 billion settlement).

*Falk  v. Nissan N. Am., Inc.*, No. 4:17-cv-04871 (N.D. Cal. filed Aug. 22, 2017) (Co-Lead Counsel in litigation alleging damages from defective transmissions; national settlement extending warranty for 1.5 million vehicles).

*Galanti v. Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J. Nov. 23, 2004) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems).

*Stalcup v. Thomson, Inc.* (Ill. Cir. Ct.) ($100 million class settlement of clams that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified).

*In re Synthetic Stucco Litig.,* No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*Hurkes Harris Design Assocs., Inc. v. Fujitsu Comput. Prods. of Am., Inc.* (Cal. Super. Ct. 2003) (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives).

*Stillman v. Staples, Inc.,* No. 07-849 (D.N.J.) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million).

*Staton v. IMI South* (Ky. Cir. Ct.) (class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*Hobbie v. RCR Holdings II, LLC, et al.*, No. 10-1113 , MDL No. 2047 (E.D. La.) ($30 million settlement for remediation of 364 unit residential high-rise constructed with Chinese drywall).

*Craig v. Rite Aid Corp.*, No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million).

*Lubitz v. Daimler Chrysler Corp.,* No. L-4883-04 (Bergen Cty. Super. Ct. NJ 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey).

*Sutton v. The Fed. Materials Co.,* No. 07-CI-00007 (Ky. Cir. Ct) ($10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Nnadili v. Chevron U.S.A., Inc.*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station).

*Bland v. Calfrac Well Serv. Corp.*, No. 2:12-cv-01407 (W.D. Pa.) (Lead Counsel, FLSA collective action; $6 million settlement).

*Roberts v. Fleet Bank (R.I.), N.A.*, No. 00-6142 (E.D. Pa.) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.").

*Nichols v. Progressive Direct Ins. Co.*, No. 2:06cv146 (E.D. Ky.) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million ).

*In re Gen. Motors Corp. Speedometer Prods. Liab. Litig.,* MDL No. 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers).

*Bruce v. Cty. of Rensselaer.,* No. 02-cv-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses).

*In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods Liab. Litig.,* MDL No. 2514, No. 1:14-mn-00001 (D.S.C. Mar. 7, 2018*)* (class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.,* MDL No. 2333 (D.S.C) (class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.,* MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*In re Zurn Pex Plumbing Prods. Liab. Litig.,* MDL No. 1958, No. o:08-md-01958 (D. Minn.) (class action arising from allegedly plumbing systems; settlement).

*Posey v. Dryvit Sys., Inc.,* No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants).

*Young v. Nationwide Mut. Ins. Co.,* No. 11-5015 (E.D. Ky.) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir., 2012); settlements with all defendants for 100% refund of taxes collected).

# **<u>Exhibit B</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHERRI LESHORE and LAURA LOPEZ, on behalf of their minor children, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | |
| v. | Case No. 19-cv-7915 |
| TIKTOK, INC., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and BYTEDANCE TECHNILOGY CO., LTD., | |
| Defendants. | |

**DECLARATION OF GARY M. KLINGER IN
SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

I, Gary M. Klinger, declare as follows:

1.      I am a partner in the law firm Kozonis & Klinger, Ltd., and one of the lead attorneys for Plaintiffs and the proposed Class in this matter.  I submit this declaration in support of Plaintiffs' unopposed motion for preliminary approval of class action settlement.  Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.      Prior to forming my current firm, I worked as an attorney at several prestigious national law firms including, Schiff Hardin, LLP, Riley Safer Holmes & Cancila LLP, and Cozen O'Connor P.C., where I focused on complex and class action litigation involving consumer, privacy and product liability matters.

3.      At my current law firm, I concentrate on class action litigation on behalf of consumers.  In particular, I focus on consumer and privacy class actions involving wide-ranging

theories such as consumer fraud, breach of contract and breach of common and statutory privacy laws.

4. Throughout my legal career, I have resolved dozens of class action cases involving consumer and privacy statutes in state and federal courts across the country. Some representative cases include the following: *Jennifer Smith v. State Farm Mutual Automobile Insurance Company, et al.*, Case No. 1:13-cv-2018 (N.D. Ill.); *Katrina Jochan v. State Farm Mutual Automobile Insurance Company, et. al.* Case No. 1:15-cv-04326 (N.D. Ill.) (Leinenweber, J.); *Ray Burk v. State Farm Fire and Casualty Company,* Case No. 14-cv-02642-PHX-GMS (D. Az.); *Andy Aguilar v. State Farm Mutual Automobile Insurance Company*, Case No. 16-cv-01211 (C.D. Ill.); *Penny Kim v. State Farm Mutual Automobile Insurance Company*, Case No. 2015-CH-08655 (Circuit Court of Cook County, Illinois); *Joanne Sweis v. State Farm Mutual Automobile Insurance Company*, Case No. 2015-CH-18757 (Circuit Court of Cook County, Illinois); *Ghose Inc. v. 7 Eleven, Inc.*, Case No. 2012-CH-04114 (Circuit Court of Cook County, Illinois); *Andrea Schumacher v. State Automobile Insurance Company*, Case No. 13-cv-00232 (S.D. Ohio); *Andrew Block v. Lifeway Foods, Inc.*, Case No. 17-cv-01717 (N.D. Ill.); *David Chavez v. Church & Dwight Co., Inc.*, Case No. 17-cv-01948 (N.D. Ill.); *Craftwood Lumber Company v. CMT USA, Inc.*, Case No. 14-cv-06864 (N.D. Ill.); *Amanda LaBrier v. State Farm Fire and Casualty Company*, Case No. 15-cv-04093 (W.D. Mo.); *Jeff Dennington v. State Farm Fire and Casualty Company*, Case No. 14-cv-04001 (W.D. Ak.); *Frank Selby v. State Farm Mutual Automobile Insurance Company*, Case No. 2010-CH-43684 (Circuit Court of Cook County, Illinois); *Timothy O'Sullivan v. iSpring Water Systems, LLC*, Case No. 17-cv-2237 (N.D. Ga.) *In re Auto Body Shop Antitrust Litigation*, Case No. 14-md-02557 (M.D. Fla.); *Kevin Pine v. A Place for Mom, Inc.*, 2:17-cv-01826 (W.D. Wa.); *Karpilovsky v. All Web Leads, Inc.*,

1:17-cv-01307 (N.D. Ill. 2017); *Accardi v. Hartford Underwrites Insurance Company*, 18-cvs-2162 (N.C. Business Court); *Brittany Burk v. Direct Energy, LP,* Case No. 4:19-cv-663 (S.D. Tx.); *Bellenger v. Accounts Receivable Management, Inc.*, 19-cv-60205 (S.D. Fla.); *Drake v. Mirand Response Systems, Inc.*, Civil Action No.: 1:19-CV-1458-RLY-DML (S.D. In.); *Fry v. General Revenue Corporation,* Civil Action No.: 19-cv-172 (S.D. Oh.); *Poole v. Benjamin Moore,* 18-cv-05168 (W.D. Wa.); *Thomas v. Financial Corporation of America*, 3:19-cv-00152 (N.D. Tex.); *Bonoan v. Adobe Inc.*, 3:19-cv-01068 (N.D. Cal.); *Musto v. American Express Company*, 19-cv-01782 (S.D. N.Y.); *Palmer v. KCI USA, Inc.,* Case No. 19-cv-3084 (D. Neb.).

5.      I have been appointed by federal courts to act as Class Counsel for millions of consumers and recovered tens of millions of dollars for consumers throughout the country. Presently, I am lead or co-lead counsel in more than 30 active class action lawsuits pending in State and Federal courts across the Country.

6.      In addition to concentrating my practice on class action litigation involving consumer, privacy, and product liability matters, I also make substantial efforts to stay apprised of the current law on these issues. In recent years, I have attended various legal training seminars and conferences such as the dri™ conference for Class Actions, The Consumer Rights Litigation Conference and Class Action Symposium, as well as attended various seminars offered by Strafford on class action issues. I am also a member of the International Association of Privacy Professionals.

7.      I graduated from the University of Illinois at Urbana-Champaign in 2007 (B.A. Economics), and from the University of Illinois College of Law in 2010 (J.D., *cum laude*). While at the U of I College of Law, I was a member of, and ultimately appointed as the Executive Editor for, the Illinois Business Law Journal. My published work includes: *The U.S.*

*Financial Crisis: Is Legislative Action the Right Approach?* March 2, 2009. The Illinois Business Law Journal.

8.      I became licensed to practice law in the State of Illinois in 2010, and am a member of the Trial bar for the Northern District of Illinois as well as the U.S. Bankruptcy Court for the Northern District of Illinois. I am also admitted to practice in federal courts across the country, including, but not limited to, the U.S. District Courts for the Eastern District of Texas, the District of Colorado, the District of Nebraska, and the Central District of Illinois.

9.      Since the filing of this case, my firm has litigated vigorously on behalf of the class, expending substantial resources. If appointed as Class Counsel, my firm will continue its dedication to pursuing this case on behalf of the Class, and will expend the resources necessary to ensure that the interests of the class are served well.

*      *      *

I declare under penalty of perjury of the laws of Illinois and the United States that the foregoing is true and correct, and that this declaration was executed in Chicago, Illinois on this 4th day of December 2019.

/s/ Gary M. Klinger
Gary M. Klinger

# **Exhibit 2**

## SETTLEMENT AGREEMENT AND RELEASE

1. PREAMBLE

    1.1.    This class action Settlement Agreement and Release ("Agreement") is entered into by and among the individuals and entities defined below as "Plaintiffs" and the individuals and entities defined below as "TikTok" where Plaintiffs and TikTok are collectively referred to herein as the "Parties."

    1.2.    This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as the term is defined below), upon and subject to the terms and conditions of this Agreement, and subject to preliminary and final approval of the Court.

2. DEFINITIONS

    2.1.    "Agreement" means this Settlement Agreement and Release, including all exhibits.

    2.2.    "Civil Actions" mean all of the civil actions, arbitrations, or other legal proceedings that have been, will be, or could be initiated by Plaintiffs relating to the subject matter at issue in the Complaint.

    2.3.    "Class" means all persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians.

    2.4.    "Class Counsel" means the attorneys representing Plaintiffs who sign this Agreement as Class Counsel up until such time as the Court appoints counsel to represent the Class; and following such appointment, "Class Counsel" shall mean the counsel so appointed by the Court.

    2.5.    "Class Member" means any person who qualifies under the definition of the Class, excluding: (i) TikTok, its parent, subsidiaries, successors, affiliates, officers, and directors; (ii) the judge(s) to whom the Civil Actions are assigned and any member of the judges' or judges' immediate family; (iii) Persons who have settled with and released TikTok from individual claims substantially similar to those alleged in the Civil Actions; and (iv) Persons who submit a valid and timely Request for Exclusion.

    2.6.    "Class Representatives" mean Sherri LeShore and Laura Lopez, acting either individually or through Class Counsel.

    2.7.    "Complaint" means the draft complaint attached as an exhibit hereto.

    2.8.    "Court" means the federal District Court for the Northern District of Illinois and any appellate court which may review any orders entered by the District Court related to this Agreement.

    2.9.    "Day" or "days" refer to calendar days.

    2.10.    "Effective Date" means the first date after either (i) the time to appeal the Final Order and Judgment has expired with no appeal having been filed or (ii) the Final Order and Judgment is affirmed on appeal by a reviewing court and no longer reviewable by any court.

1

2.11. "<u>Execution</u>" means the signing of this Agreement by all signatories hereto.

2.12. "<u>Fee Award</u>" means any attorneys' fees, reimbursement of expenses, and other costs awarded by the Court to Class Counsel as allowed by this Agreement.

2.13. "<u>Final Approval Hearing</u>" means the hearing before the Court where (i) the Parties request that the Court approve this Agreement as fair, reasonable, and adequate; (ii) the Parties request that the Court enter its Final Order and Judgment in accordance with this Agreement; and (iii) Class Counsel request approval of their petition for reasonable attorneys' fees and expenses, as well as any requested incentive award to the Class Representatives.

2.14. "<u>Final Order and Judgment</u>" means the order entered by the Court, in a form that is mutually agreeable to the Parties, approving this Agreement as fair, reasonable, adequate, and in the best interest of the Class as a whole, and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Agreement, without modifying any terms of this Agreement that either Party deems material.

2.15. "<u>Incentive Award</u>" means any amount awarded by the Court to the Class Representatives as compensation for serving as Class Representatives.

2.16. "<u>Notice Plan</u>" means the planned method by which notice of this Agreement will be given to the Class.

2.17. "<u>Notice of Proposed Class Action Settlement</u>" means the notice described in the Notice Plan.

2.18. "<u>Opt-Out Deadline</u>" means the deadline for a Class Member to submit a Request for Exclusion as set forth in the Preliminary Approval Order and which will be no more than sixty (60) days from the completion date of the Notice of Proposed Class Action Settlement.

2.19. "<u>Parties</u>" means, collectively, the Plaintiffs and TikTok, and "<u>Party</u>" means any one of them.

2.20. "<u>Person</u>" means an individual or legal entity, including an association, or his, her, or its respective estate, successors, or assigns.

2.21. "<u>Plaintiffs</u>" mean the Class Representatives acting on behalf of themselves and all Class Members.

2.22. "<u>Plan of Allocation</u>" means the plan for allocating the Settlement Fund described in this Agreement, or other such plan for allocating the Settlement Fund as may be approved by the Court.

2.23. "<u>Preliminary Approval Order</u>" means the order issued by the Court provisionally (i) granting preliminary approval of this Agreement; (ii) certifying the Class for settlement purposes; (iii) appointing Class Representatives and Class Counsel; (iv) approving the form and manner of the Notice Plan and appointing a Settlement Administrator; (v) establishing deadlines for Requests for Exclusion and the filing of objections to the proposed settlement contemplated by this Agreement; (vi) finding that the Parties have complied with 28 U.S.C. § 1715; and (vii) scheduling the Final Approval Hearing.

2.24. "<u>Released Claims</u>" means any claims, complaints, actions, proceedings, or remedies of any kind (including, without limitation, claims for attorneys' fees and expenses and costs) whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising from the beginning of time through the Effective Date, that were, could have been, or could be asserted by the Releasing Parties arising out of or relating to any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Civil Actions or the subject matter of the Complaint.

2.25. "<u>Released Parties</u>" means TikTok Inc., Musical.ly Inc., Musical.ly the Cayman Islands corporation, ByteDance Technology Co. Ltd., as well as any and all of their current or former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, affiliates, divisions, branches, units, shareholders, investors, contractors, successors, predecessors, joint venturers, related entities, assigns, and all other individuals and entities acting on their behalf.

2.26. "<u>Releasing Parties</u>" means Plaintiffs and all Class Members, as well as their present, former, and future heirs, executors, administrators, estates, representatives, agents, attorneys, partners, successors, predecessors-in-interest, directors, officers, members, insurers, beneficiaries, trustees, employee benefit plans, servants, employees, parents, subsidiaries, affiliates, divisions, branches, units, shareholders, investors, contractors, joint venturers, related entities, and assigns, and all other individuals and entities acting on their behalf.

2.27. "<u>Request for Exclusion</u>" means the form that must be completed and returned in the manner and within the time period specified in this Agreement for a Class Member to request exclusion from the Class.

2.28. "<u>Settlement Administrator</u>" means a third-party class action settlement administrator to be selected by the Parties' mutual agreement to implement aspects of this Agreement.

2.29. "<u>Settlement Fund</u>" means the $1,100,000 total sum that TikTok will pay in connection with this Agreement, deposited into a common fund for payment of (i) distributions to Class Members, (ii) the Fee Award, (iii) the Incentive Awards, and (iv) all settlement administration and notice costs.

2.30. "<u>TikTok</u>" means TikTok Inc. and all of its parent and subsidiary corporations and those acting on their behalf.

3. RECITALS

3.1. On June 3, 2019, Class Counsel sent a demand letter and draft complaint to TikTok alleging violations of the privacy rights of the Plaintiffs in connection with the operation of the Musical.ly and TikTok software applications.

3.2. On October 22, 2019, after significant negotiations between the Parties' counsel, the Parties participated in an all-day mediation with Gregory Lindstrom of Phillips ADR that resulted in this Agreement to settle the Civil Actions on a class-wide basis.

3.3. Plaintiffs have conducted meaningful investigation and analyzed and evaluated the merits of the claims made to date against TikTok, and the impact of this Agreement

on Plaintiffs and the Class, and based upon that analysis and the evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Civil Actions, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery that is less favorable to the Class, and that any such recovery would not occur for several years, Plaintiffs are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interest of the Class.

3.4. TikTok has denied and continues to deny each allegation and all charges of wrongdoing or liability of any kind whatsoever asserted or that could have been asserted in the Civil Actions.

3.5. While Plaintiffs believe these claims possess substantial merit and while TikTok vigorously disputes such claims, without in any way agreeing as to any fault or liability, the Parties have agreed to enter into this Agreement as an appropriate compromise of the Class claims to put to rest all controversy and to avoid the uncertainty, risk, expense, and burdensome, protracted, and costly litigation that would be involved in prosecuting and defending the Civil Actions.

3.6. The Parties therefore agree that, in consideration for the undertakings, promises, and payments set forth in this Agreement and upon the entry by the Court of a Final Order and Judgment approving and directing the implementation of the terms and conditions of this Agreement, the Civil Actions will be settled and compromised upon the terms and conditions set forth below.

4. RESTRICTIONS ON USE OF THIS AGREEMENT

4.1. This Agreement is for settlement purposes only and is entered into as a compromise to avoid the inherent risks and expenses posed by continued litigation of the claims in the Civil Actions. Neither the fact nor content of this Agreement, nor any action based on it, will constitute, be construed as, or be admissible in evidence as an admission of the validity of any claim, of any fact alleged in the Civil Actions or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability or non-liability, wrongdoing, fault, or violation of law or fact alleged in the Civil Actions.

4.2. Subject to approval by the Court, TikTok conditionally agrees and consents to jurisdiction, venue, and certification of the Class for settlement purposes only and within the context of this Agreement only. If this Agreement, for any reason, is not approved or is otherwise terminated, TikTok reserves the right to assert any and all objections and defenses to jurisdiction, venue, certification of a litigation class, or other defenses; and neither this Agreement nor any order or other action relating to this Agreement may be offered as evidence in support of jurisdiction, venue, or class certification for a purpose other than settlement pursuant to this Agreement.

5. SETTLEMENT FUND

5.1. The Settlement Administrator will create an account into which TikTok will deposit the total sum of $1,100,000 for the Settlement Fund within 30 days after entry of the Preliminary Approval Order.

5.2. The Settlement Administrator will place the Settlement Fund in an interest-bearing account created by order of the Court intended to constitute a "qualified settlement fund" ("QSF") within the meaning of Section 1.468B-1 of the Treasury Regulations

("Treasury Regulations") promulgated under the U.S. Internal Revenue Code of 1986, as amended (the "Code"). TikTok shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund or any other amount Transferred to the QSF pursuant to this Settlement Agreement. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. TikTok and the Settlement Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Section 1.468B-1(j) of the Treasury Regulations.

5.3.    Other than the Settlement Fund, TikTok will have no financial obligations to Plaintiffs, the Class, or the Settlement Administrator under this Agreement.

5.4.    The Settlement Administrator will draw from the Settlement Fund to cover all obligations with respect to costs related to this Agreement, including the expenses of the Settlement Administrator, the Notice Plan, payments to Class Members, any Incentive Awards, any Fee Award, and any other administrative fees and expenses in connection with this Agreement; provided, however, that the Parties must approve any payments to the Settlement Administrator prior to the Settlement Administrator incurring such expenses.

5.5.    If this Agreement is terminated, the Settlement Administrator will return all funds to TikTok within ten (10) days of the termination date; provided, however, that the Settlement Administrator need not return any funds already spent on notice and on reasonable Settlement Administrator expenses before the termination date.

5.6.    TikTok, TikTok's Counsel, and the Released Parties shall have no liability, obligation or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund or QSF and shall have no liability, obligation or responsibility with respect to any liability, obligation or responsibility of the Settlement Administrator, including but not limited to, liabilities, obligations or responsibilities arising in connection with the investment, disbursement or other administration of the Settlement Fund and QSF.

5.7.    Once deposited by TikTok, the Settlement Fund shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Agreement and/or further order(s) of the Court.

5.8.    Notwithstanding any effort, or failure, of the Settlement Administrator or the Parties to treat the Settlement Fund as a QSF, any tax liability, together with any interest or penalties imposed thereon, incurred by TikTok or any Releasees resulting from income earned on the Settlement Fund or the payments made from the Settlement Fund (or the receipt of any payment under this paragraph) shall be reimbursed from the Settlement Fund in the amount of such tax liability, interest or penalties promptly upon and in no event later than five (5) days after TikTok's or any Released Party's written request to the Settlement Administrator.

5.9.　For avoidance of doubt, neither TikTok nor any Released Party shall have any liability, obligation, or responsibility whatsoever for tax obligations arising from payments to any Class Member, or based on the activities and income of the QSF. In addition, neither TikTok nor any Released Party shall have any liability, obligation, or responsibility whatsoever for tax obligations arising from payments to Class Counsel. The QSF will be solely responsible for its tax obligations. Each Class Member will be solely responsible for his or her tax obligations. Each Class Counsel attorney or firm will be solely responsible for his, her, or its tax obligations.

5.10.　TikTok shall have no liability whatsoever with respect to (i) any act, omission, or determination by Class Counsel or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, or calculation of claims to be paid to Class Members from the Settlement Fund; or (v) the payment or withholding of taxes or related expenses, or any expenses or losses incurred in connection therewith. The Releasing Parties, Class Representatives, and Class Counsel release TikTok from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement Fund.

5.11.　No person shall have any claim against Class Representatives, Class Counsel or the Settlement Administrator, or any other person designated by Class Counsel, based on determinations or distributions made substantially in accordance with this Agreement and the settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

6.　PLAN OF ALLOCATION

6.1.　The Settlement Fund shall be distributed and allocated according to the following preferential order:

6.1.1.　To pay all expenses incurred by the Settlement Administrator for the Notice Plan and settlement administration;

6.1.2.　To pay any taxes described herein;

6.1.3.　After the Effective Date, to allocate funds for any Fee Award and Incentive Awards;

6.1.4.　After the Effective Date and after allocation of funds for all of the above, to pay the remaining unallocated portion of the Settlement Fund to Class Members on a pro rata basis in accordance with the Final Approval Order or any subsequent order of the Court;

6.1.5.　After payment of all valid claims to Class Members, to pay any Fee Award and Incentive Awards; and

6.1.6.　To distribute any residue of the Settlement Fund to a cy pres recipient or other appropriate recipient as may be determined by the Court.

6.2.　Settlement Payments to Class Members

6.2.1.　Class Members may submit one claim per Class Member to receive by electronic payment a potential pro rata distribution of the Settlement Fund

remaining after payment of Notice Plan and administration expenses, taxes, any Fee Award, and any Incentive Awards.

6.2.2.  The method for submitting a claim and for receiving a distribution by electronic payment will be described and provided in the Notice Plan after consultation with the Settlement Administrator.

6.2.3.  To submit a claim, Class Members must provide to the Settlement Administrator (i) their name, residential address, and email address; (ii) an attestation confirming they meet the eligibility requirements to be a Class Member; (iii) information sufficient for the Settlement Administrator to make a distribution to the Class Member by the electronic means described in the Notice Plan; and (iv) a statement under penalty of perjury that they have not submitted more than one claim and that the information they submit is true and correct.

6.2.4.  Class Members with valid claims who fail to provide sufficient or correct information or fail to submit a valid claim within the time period identified in the Notice Plan relinquish their right to any payment from the Settlement Fund.

6.2.5.  The Settlement Administrator shall review all claims to determine their validity. The Settlement Administrator may reject any claim that does not comply in any material respect with the instructions in the Notice Plan; is not submitted by a Class Member; is a duplicate of another claim; is determined to be a fraudulent claim; or is submitted after the deadline for claims. The decision of the Settlement Administrator shall be final as to the determination of the Claimant's recovery.

6.2.6.  Late claims may be considered if deemed appropriate by the Settlement Administrator in consultation with Class Counsel, or if ordered by the Court.

6.2.7.  Claims of Class Members that are deemed valid shall be paid out to Class Members by the Settlement Administrator beginning 14 days after the Effective Date, or as soon thereafter as is reasonably practical.

6.3.  Residue

6.3.1.  If the Settlement Administrator determines that after payment of Notice Plan and administration expenses, taxes, any Fee Award, and any Incentive Awards that the Settlement Fund will be insufficient to cover the expense of processing and paying all of the claims received from Class Members; or if after payment of Class Member claims there remains a residue portion of the Settlement Fund that cannot feasibly be distributed on a pro rata basis to Class Members who submitted a claim, the Court may direct the Settlement Administrator to pay the residue to an appropriate cy pres recipient or other recipient as the Court may decide in its discretion.

6.3.2.  When any such residue exists, Class Counsel shall promptly submit a request for order to the Court informing the Court of the residue.

7. SUBMISSION FOR PRELIMINARY APPROVAL

7.1. Within 30 days after Execution, Class Counsel will submit this Agreement to the Court and request that the Court enter the Preliminary Approval Order in a form mutually agreed to by the Parties and in compliance with all applicable laws, rules, and orders and local guidelines of the Court.

7.2. Class Counsel will take any acts reasonably necessary to carry out this Agreement's expressed intent.

8. NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

8.1. The Parties shall agree to the Notice Plan before submission of this Agreement for preliminary approval. The specific text and content of the Notice Plan and Notice of Proposed Class Action Settlement will be mutually agreed upon by the Parties, subject to Court approval.

8.2. Because TikTok asserts it has no way to directly contact or identify Class Members, notification will be through a combination of online social media ads and website link.

8.3. TikTok has no obligation to facilitate delivery of the Notice of Proposed Class Action Settlement. For example, TikTok will have no obligation to search and provide information relating to the Class or to send bulk email messages to any Person or group of Persons.

8.4. Within 10 days after the filing of this Agreement with the Court, the Settlement Administrator shall notify the appropriate state and federal officials of this Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

9. CLASS MEMBERS' RIGHT OF EXCLUSION/INCLUSION

9.1. A Class Member may request exclusion from the Class up until the Opt-Out Deadline. To request exclusion, the Class Member must complete, sign, and mail to the Settlement Administrator a Request for Exclusion, using a form to be agreed on by the Parties. The Request for Exclusion must be signed by the Class Member seeking exclusion under penalty of perjury. The Request for Exclusion must be postmarked on or before the Opt-Out Deadline. Any Person who submits a valid and timely Request for Exclusion shall not be entitled to relief under, and shall not be affected by, this Agreement or any relief provided by this Agreement.

9.2. The Parties shall have the right to challenge the timeliness and validity of any Request for Exclusion. The Court shall determine whether any contested exclusion request is valid.

9.3. Within 10 days after the Opt-Out Deadline, the Settlement Administrator will provide the Parties a list of all Persons who opted out by validly requesting exclusion.

10. OBJECTIONS

10.1. Any Class Member who does not submit a valid and timely Request for Exclusion may object to the fairness, reasonableness, or adequacy of this Agreement. Class Members may not seek to exclude themselves from the Class and submit an objection to this Agreement.

10.2.  No later than 21 days before the Final Approval Hearing, any Class Member who wishes to object to any aspect of this Agreement must send to the Settlement Administrator, Class Counsel, and TikTok's counsel, and file with the Court, a written statement of the objection(s). The written statement of the objection(s) must include (i) a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his/her objection(s); (ii) the Class Member's full name, address and telephone number; and (iii) information demonstrating that the Class Member is entitled to be included as a member of the Class.

10.3.  Class Members may raise an objection either on their own or through an attorney hired at their own expense. If a Class Member hires an attorney other than Class Counsel to represent him or her, the attorney must (i) file a notice of appearance with the Court no later than 21 days before the Final Approval Hearing or as the Court otherwise may direct, and (ii) deliver a copy of the notice of appearance on Class Counsel and TikTok's counsel, no later than 21 days before the Final Approval Hearing. Class Members, or their attorneys, intending to make an appearance at any hearing relating to this Agreement, including the Final Approval Hearing, must deliver to Class Counsel and TikTok's counsel, and file with the Court, no later than 21 days before the date of the hearing at which they plan to appear, or as the Court otherwise may direct, a notice of their intention to appear at that hearing.

10.4.  Any Class Member who fails to comply with the provisions of the preceding subsections shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Agreement and by all proceedings, orders, and judgments in the Civil Actions.

11. RELEASES; EXCLUSIVE REMEDY; DISMISSAL OF ACTIONS

11.1.  Upon entry of the Final Order and Judgment, and regardless of whether any Class Member executes and delivers a written release, each Plaintiff and each Class Member (each of whom is a Releasing Party) shall be deemed to waive, release and forever discharge TikTok and the Released Parties from all Released Claims. No Released Party will be subject to any liability or expense of any kind to any Releasing Party with respect to any Released Claim.

11.2.  Upon entry of the Final Order and Judgment, the Releasing Parties, and each of them, will be deemed to have, and will have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

11.3.  Upon entry of the Final Order and Judgment, the Releasing Parties, and each of them, will be deemed to have, and will have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States,

9

which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any unknown claims they may have.

11.4. This Agreement shall be the sole and exclusive remedy for any and all Released Claims. Upon entry of the Final Order and Judgment, each Class Member shall be barred from initiating, asserting, or prosecuting any Released Claims against the Released Parties.

11.5. Upon entry of Final Order and Judgment, the Civil Actions shall be dismissed with prejudice.

## 12. CLASS COUNSEL FEES AND COSTS AND INCENTIVE AWARDS

12.1. Plaintiffs may apply to the Court seeking a reasonable portion of the Settlement Fund as payment of any reasonable attorneys' fees and costs (the Fee Award) and any Incentive Award in recognition of the Class Representatives' efforts on behalf of the Class as appropriate compensation for their time and effort expended in serving the Class.

12.2. Class Representatives may seek an aggregate Incentive Award totaling no more than $5,000 to be divided equally among them.

12.3. This Agreement contains no rights and restrictions regarding Class Counsel's application for a Fee Award beyond the right to seek a reasonable fee award.

12.4. It is not a condition of this Agreement that any particular amount of attorneys' fees, costs or expenses or incentive awards be approved by the Court, or that such fees, costs, expenses or awards be approved at all. Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or inventive awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment, except that any modification, order or judgment cannot result in TikTok's overall obligation exceeding the agreed-upon amount of the Settlement Fund.

12.5. The Settlement Administrator shall pay the Fee Award and Incentive Awards that have been allocated from the Settlement Fund as soon as is reasonably practical after payment of all valid claims by Class Members.

12.6. Except as otherwise provided in this section, each Party will bear its own costs, including attorneys' fees, incurred in connection with the Civil Actions.

## 13. TERMINATION OF THE AGREEMENT

13.1. The performance of this Agreement is expressly contingent upon achieving the Effective Date. This includes both (i) the entry of the Preliminary Approval Order approving this Agreement, including the Notice Plan, and the Final Order and Judgment approving this Agreement and the expiration of all appeal periods and appeal rights without modification to the Final Order and Judgment that any Party deems material. If the Court fails to issue either (1) the Preliminary Approval Order or (ii) the Final Order and Judgment approving this Agreement without modification

10

that any Party deems material following conclusion of the Final Approval Hearing, this Agreement will be deemed terminated.

13.2.   If the Final Order and Judgment is vacated or reversed by a reviewing court in whole or in part in any manner that prohibits subsequent approval of the Agreement without material modification, this Agreement will be deemed terminated (except with respect to rulings on any Fee Award), unless all Parties who are adversely affected thereby, in their sole discretion within thirty (30) days of receipt of such ruling, provide written notice to all other Parties of their intent to proceed with this Agreement as modified.

13.3.   If this Agreement is deemed terminated by refusal of the Court to approve or affirm approval of the Agreement, it will have no force or effect whatsoever, shall be null and void, and will not be admissible as evidence for any purpose in any pending or future litigation in any jurisdiction.

13.4.   Upon termination of the Agreement for any reason, unless otherwise agreed to in writing by the Parties, Plaintiffs and Class Counsel shall dismiss the Civil Actions filed by them without prejudice and will only refile such causes of action in a venue that is both proper and convenient for litigation purposes, taking into account the convenience of parties and witnesses who would be affected by the litigation.

## 14. CONFIDENTIALITY

14.1.   Other than responses to inquiries from governmental entities or as necessary to comply with federal and state tax and securities laws or comply with the terms of this Agreement, no Party shall initiate any publicity relating to or make any public comment regarding this Agreement until a motion seeking the Preliminary Approval Order is filed with the Court.

14.2.   Unless and until all Parties execute this Agreement and present it to the Court in a motion seeking the Preliminary Approval Order, the Parties agree that all terms of this Agreement will remain confidential and subject to Federal Rule of Evidence 408.

## 15. ENFORCEMENT OF THE AGREEMENT

15.1.   The Court will retain jurisdiction to enforce the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for and only for purposes of implementing and enforcing the settlement embodied in this Agreement. As part of its continuing jurisdiction, the Court may amend, modify or clarify orders issued in connection with this settlement upon good cause shown by a party.  No other court or tribunal will have any jurisdiction over claims or causes of action arising under this Agreement.

15.2.   This Agreement will be governed by and construed in accordance with the internal laws of the State of California without regard to conflicts of law principles that would direct the application of the laws of another jurisdiction.

15.3.   The prevailing party in any action or proceeding in which is asserted a claim or cause of action arising under this Agreement will be entitled to recover all reasonable costs and attorneys' fees incurred in connection with the action or proceeding.

16. MISCELLANEOUS

16.1.  This Agreement, including all attached exhibits, shall constitute the entire agreement among the Parties (and covering the Parties and the Class) with regard to the subject matter of this Agreement and shall supersede any previous agreements and understandings between the Parties.

16.2.  This Agreement may not be changed, modified or amended except in writing signed by Class Counsel and TikTok's counsel, subject to Court approval if required.

16.3.  Each Party represents and warrants that it enters into this Agreement of his, her, or its own free will. Each Party is relying solely on its own judgment and knowledge and is not relying on any statement or representation made by any other Party or any other Party's agents or attorneys concerning the subject matter, basis, or effect of this Agreement.

16.4.  This Agreement has been negotiated at arm's length by Class Counsel and TikTok's counsel. In the event of any dispute arising out of this Agreement, or in any proceeding to enforce any of the terms of this Agreement, no Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of that Party's identity as the drafter of any part of this Agreement.

16.5.  The Parties agree to cooperate fully and to take all additional action that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

16.6.  This Agreement shall be binding upon and inure to the benefit of all the Parties and Class Members, and their respective representatives, heirs, successors, and assigns.

16.7.  The headings of the sections of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

16.8.  Prior to pursuing relief or submitting any dispute relating to this Agreement or the Civil Actions to the Court, the Parties and Class Counsel agree to mediate the dispute before Gregory P. Lindstrom in San Francisco, California.

16.9.  Any notice, instruction, court filing, or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, or overnight delivery service to the respective representatives identified below or to other recipients as the Court may specify. As of the date of this Agreement, these respective representatives are as follows:

For the Class:

Gary E. Mason
WHITFIELD BRYSON & MASON
LLP
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@wbmllp.com

For TikTok:

Anthony J Weibell
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
aweibell@wsgr.com

16.10.   The Parties each represent and warrant that they have not sold, assigned, transferred, conveyed, subrogated, or otherwise disposed of any claim or demand covered by this Agreement. If a Class Member has sold, assigned, transferred, conveyed, subrogated or otherwise disposed of any claim or demand, the Person that acquired such claim or demand is bound by the terms of this Agreement to the same extent as the Class Member would have been but for the sale, assignment, transfer, conveyance, or other disposition.

16.11.   The respective signatories to this Agreement each represent that they are fully authorized to enter into this Agreement on behalf of the respective Parties.

16.12.   The waiver by one Party of any breach of this Agreement by any other Party will not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

16.13.   All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

16.14.   This Agreement may be executed in one or more counterparts, and may be executed by facsimile or electronic signature. All executed counterparts and each of them will be deemed to be one and the same instrument.

16.15.   This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

[SIGNATURES ON FOLLOWING PAGE]

13

THIS SETTLEMENT AGREEMENT AND RELEASE IS AGREED TO AND APPROVED BY:

## Plaintiffs and Class Representatives

_Sherri LeShore_

Sherri LeShore

11/18/2019
_____
Date

Laura Lopez

11/18/2019
_____
Date

## Class Counsel

Gary E. Mason
**WHITFIELD BRYSON & MASON LLP**

11/19/2019
_____
Date

Gary M. Klinger
**KOZONIS & KLINGER, LTD.**

11/19/2019
_____
Date

## TikTok Inc.

_____
Vanessa Pappas
General Manager, North America & Australia

_____
Date

14

THIS SETTLEMENT AGREEMENT AND RELEASE IS AGREED TO AND APPROVED BY:

**Plaintiffs and Class Representatives**

_____          _____
Sherri LeShore                                                            Date


_____          _____
Laura Lopez                                                                Date


**Class Counsel**

_____          _____
Gary E. Mason                                                          Date
**WHITFIELD BRYSON & MASON LLP**


_____          _____
Gary M. Klinger                                                        Date
**KOZONIS & KLINGER, LTD.**


**TikTok Inc.**

_____          _____11/18/2019_____
Vanessa Pappas                                                       Date
General Manager, North America & Australia

14

DocuSign Envelope ID: 8873E226-2772-457D-8E49-AF70CE49106A

# __Exhibit A__

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Danielle L. Perry (SBN 292120)
Whitfield Bryson & Mason LLP
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016
Phone: 202.640.1168
Fax: 202429-2294
Email: dperry@wbmllp.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Christina Church, Heather Hall, Jill Holyfield,       )
Orlena Abshire, Gilbert Ackerson, Claryse             )
Ahmed, Niki Akers, Sage Alexander, Kristina           )
Alferez, Michelle Altman, Veronique Alvarez,          )
Adrienne Anderson, Alexia Anderson,                   )
Lynnzee Aragon, Darlene Barnhart, Lindsey             )       **CASE NO.**
Barr, Valerie Barron, John Baxter, Susan              )
Bazzi, Mia Beard, Brian Beckner, Shawn                )       **CLASS ACTION COMPLAINT**
Beegle, Hasina Belton, Rachell Benton, Kelli          )
Bice, Kirsty Bidwell, Misty Blackhorse,               )       **DEMAND FOR JURY TRIAL.**
Christina Blanchfield, Erika Bois, Summer             )
Borboa, Kelly Boudreaux, Mindy Branham,               )
Patti Brekke, Gina Brittain, Joy Britton,             )
Rosemary Brockman, Jill Brown, April Bruce,           )
Regina Bui, Virginia Bushlow, Alexis Byrd,            )
Brandon Cardone, Amanda Carr, Lori Carr,              )
Candice Carter, Chantedria Carter, Crystal            )
Carter, Sherry Carter, Gabriela Cason, Ryan           )
Casson, Danielle Charles, Natacha Charles,            )
Jeff Chiaramonte, Kathleen Clark, Lisa Clark,         )
Rimika Clark, Anna Clarke, Angelle Clement,           )
Dave Copeland, Nikia Corbett, Jamie Cox,              )
Malvin Crain, Michilean Cunningham, Angell            )
Cyars, Dana Dandridge, Kim Davis, Quabisha            )
Davis, Rhonda Davis, Stacy Dawson, Theresa            )
Dees, Jamie Delly, Nicole Dixon, Christina            )

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Doyle, Josephina Duran, Michael Eddy, )
Adalisa Espinal, Kimberly Evans, James )
Evens, Patricia Evering, Heather Forbes, )
Jessica Ford, Malaika Fowler-Jennings, Kim )
Frankian, Chuntavious Freeman, Heather )
Friedmann, Sarah Galvan, Todd Gatewood, )
Stephanie George, Lisa Gillette, Dominick )
Gittens, Leslie Gomez, Michael Graf, Helen )
Graham, Rhonda Gravalin, Kelli Gray, Kish )
Green, Talia Green, Toni Green, Stephen )
Grow, James Hagey, Christina Harris, James )
Harris, Kesha Harris, Kevin Harris, Sally )
Hart, Courtney Heard, Joanna Henderson, )
Melanie Henderson, Olivia Henry, Karen )
Higgins, Linda Ho, Catrina Hoffman, Jodi )
Holden, Randi Holland, Melissa Hudson, )
Crystal Hudspeth, Brandy Hurley-Singh, )
Alicia Hutchins, Tayonia Hyman, Kawana )
Inmon, Chasity Jackson, Royccie Jackson, )
Kendra Jardine, Trenisha Jeff, Charstasia )
Jimmerson, Amy Johnson, Ancheta Johnson, )
Shana Johnson, Tawana Johnson, Anya Jones, )
Gail Jones, Kayla Jones, Sabrina Jones, )
Vincent Jones, Megan Jordan, Maryann Judd, )
Ronald Jurzak, Mark Kaplan, Tabitha Kay, )
Trishana Keys, Nadina Kubo, Diana )
Kulikyan, Kelly Lafrenier, David Lawrence, )
Olivia Lawrence, Quishanna Lee, Sherri )
Leshore, Stephanie Lett, Naimah Lewis, )
Angel Lilley, Michele Long, Jamie Longson, )
Dawn Lopez, Laura Lopez, Kia Mack, Krystal )
Markley, Angela Martinez, Debbie Martinez, )
Shauna Mathis, Wanda Mayer, Tonisha Mayo, )
Tianna M McBroom, Latoya McCord, Cecilia )
McFee, Joann McGee, Donna McKeague, )
Naomi McKean, Amber McKelvy, David )
McKenney, Priscilla McNeill, Susan )
McWhite, Maria Medina, Alexis Mee, Tim )
Meister, Joann Mendez, Sara Menke, Phillip )
Miller, Tamara Moffett, Melissa Molina, )

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Dennoris Moore, Meredith Moore, Rosie )
Morales Mendez, Andrew Myers, Felecia )
Navarro, Rathana Neang, DJ Neill, Stacey )
Nichols, Latisha Nixon, Chrisanne Oliver, )
Bailey Osborne, Jennifer Oshea, Tamika )
Pack, Jennifer Pandorf, Bridget Patrick, )
Jessica Peterson, Stephanie Phelps, David )
Pitz, Chantel Polarolo, Tikeya Pope, Patty )
Porta, Shannon Potts, Tamara Prince, Roman )
Proctor, Jose Ramirez, Renee Randall, Latoya )
Ravizee, Tara Rectenwald, Candy Reh, )
Amanda Rickard, Ashley Riegel, Bridgette )
Rivers, Nakeisha Roan, Rebecca Robbins, )
Denesha Roberson, Gene Robinson, Nichole )
Robinson, Tammy Robinson, Lauren )
Rodriguez, Jodie Roskydoll, Brian Ross, )
Taakena Ross-Gober, Brandon Rowell, )
Niesha Rush, Latina Salaam, Serena )
Sandberg, Daniel Santos, Jason Scaggs, )
Pamela Schiappa, Johnnie Shelton, Amanda )
Shuherk, Christina Simeneta, Kendrah )
Simmons, Ricole Simms, Quinetta Slaughter, )
Michael Smith, Brianne Spalding, Kelli )
Spann, Heather Speck, Kristen Spengler, )
Cynthia Steelman, Stephanie Stordahl, )
Amanda St Pierre, Rebecca Straubel, )
Kenuway Strong, Traci Takacs, Tamara )
Taylor, Jasper Thomas, Sheveta Thomas, )
Meghan Tierney, Stephanie Tomlin, Monica )
Torres, Angel Towns, Carolyn Trueland, )
Jennifer Tullis, Shandelle Ubrig, Zumeya )
Valencia, Lisa Vierthaler, Thomas Wagner, )
Petysee Wallace, Megan Walters, Dianne )
Walton, Danny Webber, Jacqueline Wells, )
Erica White-Mack, Becky Wilbert, Kimberly )
Wilder, Brianne Wiley, Tashante Wilkins, )
Keith Williams, Kia Williams, Wanda )
Williams, Christina Wise, Mary Yaldoo, April )
Zimmerman, Tiffany Zincone, and Jeannee )
Zwickl, individually and on behalf of all )

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

| others similarly situated, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BYTEDANCE LTD., and MUSICAL.LY, INC., | ) |
| | ) |
| | ) |
|    Defendants. | ) |
| | ) |

## CLASS ACTION COMPLAINT

Plaintiffs,[1] bring this action against Defendants ByteDance Ltd. ("ByteDance") and Musical.ly, Inc. ("Musical.ly") (collectively, "Defendants"), on behalf of themselves and all others similarly situated to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendants. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record:

## INTRODUCTION

1.     This action is about the protection of our most vulnerable members of society: children. This action is brought by the parents of children who, while using Defendants' video social networking platform via smart phone apps have had their personally identifying information collected, disclosed and used by Defendants without their consent. This unfair and deceptive business practice has caused and has continued to cause unfortunate effects, including, children being stalked on-line by adults. Plaintiffs bring claims under state laws to obtain an injunction to cease these practices, sequester illegally obtained information, and damages.

---

[1] Plaintiffs refer to the individuals referenced in the caption above and described more fully in paragraphs 6 to 282 below.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendants.

3.    This Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, have substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

4.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transact business in this District, and because one of the Defendants resides in this District.

5.    Pursuant to Civil L.R. 3-2(c), assignment to this Division is proper because a substantial part of the conduct which gives Plaintiffs' claims occurred in this District. Defendants market their products throughout the United States, including in San Francisco and Alameda Counties. In addition, at least two Plaintiffs reside in the Northern District, one in Berkeley and one in San Mateo.

## PARTIES

6.    Plaintiffs are parents and/or legal guardians of persons, who were younger than the age of 13 when they registered for and used the Musical.ly application, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

7.    Plaintiff Christina Church resides in Lapulaski, Tennessee. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Church was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Church provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

8.      Plaintiff Heather Hall resides in Fulton, Missouri. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hall was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Hall provided direct notice with regard to collecting, using, and disclosing child's personal information.

9.      Plaintiff Jill Holyfield resides in Little Rock, Arkansas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Holyfield was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Holyfield provided direct notice with regard to collecting, using, and disclosing child's personal information.

10.     Plaintiff Orlena Abshire resides in Whitesburg, Kentucky. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Abshire was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Abshire provided direct notice with regard to collecting, using, and disclosing children's personal information.

11.     Plaintiff Gilbert Ackerson resides in Laplace, Louisiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ackerson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ackerson provided direct notice with regard to collecting, using, and disclosing child's personal information.

12.     Plaintiff Claryse Ahmed resides in Arlington, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ahmed was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ahmed provided direct notice with regard to collecting, using, and disclosing child's personal information.

13.     Plaintiff Niki Akers resides in Tazewell, Virginia. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Akers was not asked for verifiable parental consent to collect, disclose, or use children's personal information,

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

including persistent identifiers, nor was Plaintiff Akers provided direct notice with regard to collecting, using, and disclosing children's personal information.

14.     Plaintiff Sage Alexander resides in San Antonio, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Alexander was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Alexander provided direct notice with regard to collecting, using, and disclosing child's personal information.

15.     Plaintiff Kristina Alferez resides in San Mateo, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Alferez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Alferez provided direct notice with regard to collecting, using, and disclosing child's personal information.

16.     Plaintiff Michelle Altman resides in San Bernardino, California. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Altman was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Altman provided direct notice with regard to collecting, using, and disclosing children's personal information.

17.     Plaintiff Veronique Alvarez resides in Westfield, Indiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Alvarez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Alvarez provided direct notice with regard to collecting, using, and disclosing child's personal information.

18.     Plaintiff Adrienne Anderson resides in Sacramento, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Anderson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Anderson provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

19.     Plaintiff Alexia Anderson resides in Glassboro, New Jersey. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Anderson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Anderson provided direct notice with regard to collecting, using, and disclosing child's personal information.

20.     Plaintiff Lynnzee Aragon resides in Tacoma, Washington. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Aragon was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Aragon provided direct notice with regard to collecting, using, and disclosing child's personal information.

21.     Plaintiff Darlene Barnhart resides in Gloucester, Virginia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Barnhart was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Barnhart provided direct notice with regard to collecting, using, and disclosing child's personal information.

22.     Plaintiff Lindsey Barr resides in Fresno, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Barr was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Barr provided direct notice with regard to collecting, using, and disclosing child's personal information.

23.     Plaintiff Valerie Barron resides in Bermuda Dunes, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Barron was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Barron provided direct notice with regard to collecting, using, and disclosing child's personal information.

24.     Plaintiff John Baxter resides in Lapeer, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Baxter was not asked for verifiable parental consent to collect, disclose, or use child's personal information,

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

including persistent identifiers, nor was Plaintiff Baxter provided direct notice with regard to collecting, using, and disclosing child's personal information.

25.     Plaintiff Susan Bazzi resides in Dearborn Heights, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Bazzi was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Bazzi provided direct notice with regard to collecting, using, and disclosing child's personal information.

26.     Plaintiff Mia Beard resides in Brooklyn Center, Minnesota. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Beard was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Beard provided direct notice with regard to collecting, using, and disclosing child's personal information.

27.     Plaintiff Brian Beckner resides in Aliso Viejo, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Beckner was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Beckner provided direct notice with regard to collecting, using, and disclosing child's personal information.

28.     Plaintiff Shawn Beegle resides in New Martinsville, West Virginia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Beegle was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Beegle provided direct notice with regard to collecting, using, and disclosing child's personal information.

29.     Plaintiff Hasina Belton resides in Silver Spring, Maryland. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Belton was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Belton provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

30.     Plaintiff Rachell Benton resides in Covington, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Benton was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Benton provided direct notice with regard to collecting, using, and disclosing child's personal information.

31.     Plaintiff Kelli Bice resides in Goshen, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Bice was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Bice provided direct notice with regard to collecting, using, and disclosing child's personal information.

32.     Plaintiff Kirsty Bidwell resides in Escondido, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Bidwell was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Bidwell provided direct notice with regard to collecting, using, and disclosing child's personal information.

33.     Plaintiff Misty Blackhorse resides in Oroville, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Blackhorse was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Blackhorse provided direct notice with regard to collecting, using, and disclosing child's personal information.

34.     Plaintiff Christina Blanchfield resides in Elkridge, Maryland. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Blanchfield was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Blanchfield provided direct notice with regard to collecting, using, and disclosing children's personal information.

35.     Plaintiff Erika Bois resides in Steep Falls, Maine. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Bois was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

persistent identifiers, nor was Plaintiff Bois provided direct notice with regard to collecting, using, and disclosing child's personal information.

36.     Plaintiff Summer Borboa resides in Fresno, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Borboa was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Borboa provided direct notice with regard to collecting, using, and disclosing child's personal information.

37.     Plaintiff Kelly Boudreaux resides in Denham Springs, Louisiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Boudreaux was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Boudreaux provided direct notice with regard to collecting, using, and disclosing child's personal information.

38.     Plaintiff Mindy Branham resides in Moncks Corner, South Carolina. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Branham was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Branham provided direct notice with regard to collecting, using, and disclosing children's personal information.

39.     Plaintiff Patti Brekke resides in Hesperia, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Brekke was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Brekke provided direct notice with regard to collecting, using, and disclosing child's personal information.

40.     Plaintiff Gina Brittain resides in Riverside, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Brittain was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Brittain provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

41.     Plaintiff Joy Britton resides in Moraine, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Britton was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Britton provided direct notice with regard to collecting, using, and disclosing child's personal information.

42.     Plaintiff Rosemary Brockman resides in Albuquerque, New Mexico. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Brockman was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Brockman provided direct notice with regard to collecting, using, and disclosing child's personal information.

43.     Plaintiff Jill Brown resides in Manhattan Beach, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Brown was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Brown provided direct notice with regard to collecting, using, and disclosing child's personal information.

44.     Plaintiff April Bruce resides in Chicago, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Bruce was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Bruce provided direct notice with regard to collecting, using, and disclosing child's personal information.

45.     Plaintiff Regina Bui resides in Las Vegas, Nevada. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Bui was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Bui provided direct notice with regard to collecting, using, and disclosing child's personal information.

46.     Plaintiff Virginia Bushlow resides in Charles Town, West Virginia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Bushlow was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Bushlow provided direct notice with regard to collecting, using, and disclosing child's personal information.

47.     Plaintiff Alexis Byrd resides in Cumming, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Byrd was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Byrd provided direct notice with regard to collecting, using, and disclosing child's personal information.

48.     Plaintiff Brandon Cardone resides in Vestal, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Cardone was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Cardone provided direct notice with regard to collecting, using, and disclosing child's personal information.

49.     Plaintiff Amanda Carr resides in Clarkston, Washington. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Carr was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Carr provided direct notice with regard to collecting, using, and disclosing child's personal information.

50.     Plaintiff Lori Carr resides in Southfield, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Carr was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Carr provided direct notice with regard to collecting, using, and disclosing child's personal information.

51.     Plaintiff Candice Carter resides in Washington, District of Columbia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Carter was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Carter provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

52.     Plaintiff Chantedria Carter resides in Miami Gardens, Florida. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Carter was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Carter provided direct notice with regard to collecting, using, and disclosing children's personal information.

53.     Plaintiff Crystal Carter resides in New York, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Carter was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Carter provided direct notice with regard to collecting, using, and disclosing child's personal information.

54.     Plaintiff Sherry Carter resides in Mandeville, Louisiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Carter was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Carter provided direct notice with regard to collecting, using, and disclosing child's personal information.

55.     Plaintiff Gabriela Cason resides in Morrison, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Cason was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Cason provided direct notice with regard to collecting, using, and disclosing child's personal information.

56.     Plaintiff Ryan Casson resides in Chatham, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Casson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Casson provided direct notice with regard to collecting, using, and disclosing child's personal information.

57.     Plaintiff Danielle Charles resides in Jamestowwn, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Charles was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Charles provided direct notice with regard to collecting, using, and disclosing child's personal information.

58. Plaintiff Natacha Charles resides in Jonesboro, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Charles was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Charles provided direct notice with regard to collecting, using, and disclosing child's personal information.

59. Plaintiff Jeff Chiaramonte resides in Miller Place, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Chiaramonte was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Chiaramonte provided direct notice with regard to collecting, using, and disclosing child's personal information.

60. Plaintiff Kathleen Clark resides in Cumming, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Clark was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Clark provided direct notice with regard to collecting, using, and disclosing child's personal information.

61. Plaintiff Lisa Clark resides in Dubuque, Iowa. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Clark was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Clark provided direct notice with regard to collecting, using, and disclosing child's personal information.

62. Plaintiff Rimika Clark resides in Chicago, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Clark was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Clark provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

63. Plaintiff Anna Clarke resides in Encinitas, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Clarke was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Clarke provided direct notice with regard to collecting, using, and disclosing child's personal information.

64. Plaintiff Angelle Clement resides in Lafayette, Louisiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Clement was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Clement provided direct notice with regard to collecting, using, and disclosing child's personal information.

65. Plaintiff Dave Copeland resides in Des Moines, Iowa. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Copeland was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Copeland provided direct notice with regard to collecting, using, and disclosing child's personal information.

66. Plaintiff Nikia Corbett resides in Gwynn Oak, Maryland. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Corbett was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Corbett provided direct notice with regard to collecting, using, and disclosing child's personal information.

67. Plaintiff Jamie Cox resides in Hamilton, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Cox was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Cox provided direct notice with regard to collecting, using, and disclosing child's personal information.

68. Plaintiff Malvin Crain resides in Granite City, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Crain was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Crain provided direct notice with regard to collecting, using, and disclosing child's personal information.

69.     Plaintiff Michilean Cunningham resides in Blue Island, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Cunningham was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Cunningham provided direct notice with regard to collecting, using, and disclosing child's personal information.

70.     Plaintiff Angell Cyars resides in Southfield, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Cyars was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Cyars provided direct notice with regard to collecting, using, and disclosing child's personal information.

71.     Plaintiff Dana Dandridge resides in Danville, Illinois. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Dandridge was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Dandridge provided direct notice with regard to collecting, using, and disclosing children's personal information.

72.     Plaintiff Kim Davis resides in Oakwood Village, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Davis was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Davis provided direct notice with regard to collecting, using, and disclosing child's personal information.

73.     Plaintiff Quabisha Davis resides in Hope Mills, North Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Davis was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Davis provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

74.     Plaintiff Rhonda Davis resides in Quartz Hill, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Davis was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Davis provided direct notice with regard to collecting, using, and disclosing child's personal information.

75.     Plaintiff Stacy Dawson resides in Redwood City, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Dawson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Dawson provided direct notice with regard to collecting, using, and disclosing child's personal information.

76.     Plaintiff Theresa Dees resides in Dunedin, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Dees was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Dees provided direct notice with regard to collecting, using, and disclosing child's personal information.

77.     Plaintiff Jamie Delly resides in Newburgh, Indiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Delly was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Delly provided direct notice with regard to collecting, using, and disclosing child's personal information.

78.     Plaintiff Nicole Dixon resides in Princeton, Indiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Dixon was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Dixon provided direct notice with regard to collecting, using, and disclosing child's personal information.

79.     Plaintiff Christina Doyle resides in Shelton, Connecticut. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Doyle was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Doyle provided direct notice with regard to collecting, using, and disclosing child's personal information.

80. Plaintiff Josephina Duran resides in Citrus Heights, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Duran was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Duran provided direct notice with regard to collecting, using, and disclosing child's personal information.

81. Plaintiff Michael Eddy resides in Green Bay, Wisconsin. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Eddy was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Eddy provided direct notice with regard to collecting, using, and disclosing child's personal information.

82. Plaintiff Adalisa Espinal resides in Lawrence, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Espinal was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Espinal provided direct notice with regard to collecting, using, and disclosing child's personal information.

83. Plaintiff Kimberly Evans resides in Flowood, Mississippi. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Evans was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Evans provided direct notice with regard to collecting, using, and disclosing child's personal information.

84. Plaintiff James Evens resides in Anaheim, California. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Evens was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Evens provided direct notice with regard to collecting, using, and disclosing children's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

85.     Plaintiff Patricia Evering resides in Laurelton, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Evering was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Evering provided direct notice with regard to collecting, using, and disclosing child's personal information.

86.     Plaintiff Heather Forbes resides in Lorain, Ohio. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Forbes was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Forbes provided direct notice with regard to collecting, using, and disclosing children's personal information.

87.     Plaintiff Jessica Ford resides in Summerville, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ford was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ford provided direct notice with regard to collecting, using, and disclosing child's personal information.

88.     Plaintiff Malaika Fowler-Jennings resides in Una, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Fowler-Jennings was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Fowler-Jennings provided direct notice with regard to collecting, using, and disclosing child's personal information.

89.     Plaintiff Kim Frankian resides in Merced, California. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Frankian was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Frankian provided direct notice with regard to collecting, using, and disclosing children's personal information.

90.     Plaintiff Chuntavious Freeman resides in McDonough, Georgia. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Freeman was not asked for verifiable parental consent to collect, disclose, or use children's

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

personal information, including persistent identifiers, nor was Plaintiff Freeman provided direct notice with regard to collecting, using, and disclosing children's personal information.

91.     Plaintiff Heather Friedmann resides in Quincy, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Friedmann was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Friedmann provided direct notice with regard to collecting, using, and disclosing child's personal information.

92.     Plaintiff Sarah Galvan resides in Dearborn Heights, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Galvan was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Galvan provided direct notice with regard to collecting, using, and disclosing child's personal information.

93.     Plaintiff Todd Gatewood resides in Broken Arrow, Oklahoma. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Gatewood was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Gatewood provided direct notice with regard to collecting, using, and disclosing child's personal information.

94.     Plaintiff Stephanie George resides in Rancho Cucamonga, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff George was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff George provided direct notice with regard to collecting, using, and disclosing child's personal information.

95.     Plaintiff Lisa Gillette resides in Des Moines, Iowa. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Gillette was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Gillette provided direct notice with regard to collecting, using, and disclosing children's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

96.     Plaintiff Dominick Gittens resides in Stockton, California. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Gittens was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Gittens provided direct notice with regard to collecting, using, and disclosing children's personal information.

97.     Plaintiff Leslie Gomez resides in North Las Vegas, Nevada. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Gomez was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Gomez provided direct notice with regard to collecting, using, and disclosing children's personal information.

98.     Plaintiff Michael Graf resides in Toledo, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Graf was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Graf provided direct notice with regard to collecting, using, and disclosing child's personal information.

99.     Plaintiff Helen Graham resides in Holt, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Graham was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Graham provided direct notice with regard to collecting, using, and disclosing child's personal information.

100.    Plaintiff Rhonda Gravalin resides in Fargo, North Dakota. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Gravalin was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Gravalin provided direct notice with regard to collecting, using, and disclosing child's personal information.

101.    Plaintiff Kelli Gray resides in Ward, Arkansas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Gray was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

persistent identifiers, nor was Plaintiff Gray provided direct notice with regard to collecting, using, and disclosing child's personal information.

102.    Plaintiff Kish Green resides in Philadelphia, Pennsylvania. Plaintiff's grandchild downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Green was not asked for verifiable parental consent to collect, disclose, or use grandchild's personal information, including persistent identifiers, nor was Plaintiff Green provided direct notice with regard to collecting, using, and disclosing grandchild's personal information.

103.    Plaintiff Talia Green resides in Austin, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Green was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Green provided direct notice with regard to collecting, using, and disclosing child's personal information.

104.    Plaintiff Toni Green resides in Manor, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Green was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Green provided direct notice with regard to collecting, using, and disclosing child's personal information.

105.    Plaintiff Stephen Grow resides in Overland Park, Kansas. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Grow was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Grow provided direct notice with regard to collecting, using, and disclosing children's personal information.

106.    Plaintiff James Hagey resides in Nashville, Tennessee. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hagey was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Hagey provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

107.     Plaintiff Christina Harris resides in Tampa, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Harris was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Harris provided direct notice with regard to collecting, using, and disclosing child's personal information.

108.     Plaintiff James Harris resides in Wichita Falls, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Harris was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Harris provided direct notice with regard to collecting, using, and disclosing child's personal information.

109.     Plaintiff Kesha Harris resides in Springfield, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Harris was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Harris provided direct notice with regard to collecting, using, and disclosing child's personal information.

110.     Plaintiff Kevin Harris resides in Jacksonville, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Harris was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Harris provided direct notice with regard to collecting, using, and disclosing child's personal information.

111.     Plaintiff Sally Hart resides in Lake Worth, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hart was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Hart provided direct notice with regard to collecting, using, and disclosing child's personal information.

112.     Plaintiff Courtney Heard resides in Indianapolis, Indiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Heard was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Heard provided direct notice with regard to collecting, using, and disclosing child's personal information.

113.  Plaintiff Joanna Henderson resides in Birmingham, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Henderson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Henderson provided direct notice with regard to collecting, using, and disclosing child's personal information.

114.  Plaintiff Melanie Henderson resides in Sparks, Nevada. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Henderson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Henderson provided direct notice with regard to collecting, using, and disclosing child's personal information.

115.  Plaintiff Olivia Henry resides in Knoxville, Tennessee. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Henry was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Henry provided direct notice with regard to collecting, using, and disclosing child's personal information.

116.  Plaintiff Karen Higgins resides in Cochranton, Pennsylvania. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Higgins was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Higgins provided direct notice with regard to collecting, using, and disclosing children's personal information.

117.  Plaintiff Linda Ho resides in Rosemead, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ho was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ho provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

118.     Plaintiff Catrina Hoffman resides in Tuskegee, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hoffman was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Hoffman provided direct notice with regard to collecting, using, and disclosing child's personal information.

119.     Plaintiff Jodi Holden resides in Lake Mary, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Holden was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Holden provided direct notice with regard to collecting, using, and disclosing child's personal information.

120.     Plaintiff Randi Holland resides in Talladega, Alabama. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Holland was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Holland provided direct notice with regard to collecting, using, and disclosing children's personal information.

121.     Plaintiff Melissa Hudson resides in Lynn, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hudson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Hudson provided direct notice with regard to collecting, using, and disclosing child's personal information.

122.     Plaintiff Crystal Hudspeth resides in San Antonio, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hudspeth was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Hudspeth provided direct notice with regard to collecting, using, and disclosing child's personal information.

123.     Plaintiff Brandy Hurley-Singh resides in Hartford, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hurley-Singh was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Hurley-Singh provided direct notice with regard to collecting, using, and disclosing child's personal information.

124.  Plaintiff Alicia Hutchins resides in Birmingham, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hutchins was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Hutchins provided direct notice with regard to collecting, using, and disclosing child's personal information.

125.  Plaintiff Tayonia Hyman resides in Huntsville, Alabama. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Hyman was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Hyman provided direct notice with regard to collecting, using, and disclosing children's personal information.

126.  Plaintiff Kawana Inmon resides in Nashville, Tennessee. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Inmon was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Inmon provided direct notice with regard to collecting, using, and disclosing child's personal information.

127.  Plaintiff Chasity Jackson resides in Wichita, Kansas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jackson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jackson provided direct notice with regard to collecting, using, and disclosing child's personal information.

128.  Plaintiff Royccie Jackson resides in Kansas City, Missouri. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jackson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jackson provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

129.    Plaintiff Kendra Jardine resides in Palm Coast, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jardine was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jardine provided direct notice with regard to collecting, using, and disclosing child's personal information.

130.    Plaintiff Trenisha Jeff resides in Milwaukee, Wisconsin. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jeff was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jeff provided direct notice with regard to collecting, using, and disclosing child's personal information.

131.    Plaintiff Charstasia Jimmerson resides in Newport News, Virginia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jimmerson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jimmerson provided direct notice with regard to collecting, using, and disclosing child's personal information.

132.    Plaintiff Amy Johnson resides in Etna, Ohio. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Johnson was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Johnson provided direct notice with regard to collecting, using, and disclosing children's personal information.

133.    Plaintiff Ancheta Johnson resides in Warner Robins, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Johnson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Johnson provided direct notice with regard to collecting, using, and disclosing child's personal information.

134.    Plaintiff Shana Johnson resides in Coldwater, Mississippi. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Johnson was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Johnson provided direct notice with regard to collecting, using, and disclosing child's personal information.

135.    Plaintiff Tawana Johnson resides in Fayetteville, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Johnson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Johnson provided direct notice with regard to collecting, using, and disclosing child's personal information.

136.    Plaintiff Anya Jones resides in Columbia, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jones was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jones provided direct notice with regard to collecting, using, and disclosing child's personal information.

137.    Plaintiff Gail Jones resides in West Columbia, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jones was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jones provided direct notice with regard to collecting, using, and disclosing child's personal information.

138.    Plaintiff Kayla Jones resides in Stockton, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jones was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jones provided direct notice with regard to collecting, using, and disclosing child's personal information.

139.    Plaintiff Sabrina Jones resides in Waco, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jones was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jones provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

140.     Plaintiff Vincent Jones resides in Hopkins, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jones was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jones provided direct notice with regard to collecting, using, and disclosing child's personal information.

141.     Plaintiff Megan Jordan resides in Auburn, Maine. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jordan was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Jordan provided direct notice with regard to collecting, using, and disclosing child's personal information.

142.     Plaintiff Maryann Judd resides in Hagerstown, Maryland. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Judd was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Judd provided direct notice with regard to collecting, using, and disclosing child's personal information.

143.     Plaintiff Ronald Jurzak resides in Algonquin, Illinois. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Jurzak was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Jurzak provided direct notice with regard to collecting, using, and disclosing children's personal information.

144.     Plaintiff Mark Kaplan resides in Sachse, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Kaplan was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Kaplan provided direct notice with regard to collecting, using, and disclosing child's personal information.

145.     Plaintiff Tabitha Kay resides in Belton, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Kay was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Kay provided direct notice with regard to collecting, using, and disclosing child's personal information.

146.     Plaintiff Trishana Keys resides in Covington, Louisiana. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Keys was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Keys provided direct notice with regard to collecting, using, and disclosing child's personal information.

147.     Plaintiff Nadina Kubo resides in Chadron, Nebraska. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Kubo was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Kubo provided direct notice with regard to collecting, using, and disclosing children's personal information.

148.     Plaintiff Diana Kulikyan resides in Northridge, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Kulikyan was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Kulikyan provided direct notice with regard to collecting, using, and disclosing child's personal information.

149.     Plaintiff Kelly Lafrenier resides in Phillips, Wisconsin. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lafrenier was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Lafrenier provided direct notice with regard to collecting, using, and disclosing child's personal information.

150.     Plaintiff David Lawrence resides in Fort Mill, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lawrence was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Lawrence provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

151.    Plaintiff Olivia Lawrence resides in Killeen, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lawrence was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Lawrence provided direct notice with regard to collecting, using, and disclosing child's personal information.

152.    Plaintiff Quishanna Lee resides in Philadelphia, Pennsylvania. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lee was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Lee provided direct notice with regard to collecting, using, and disclosing child's personal information.

153.    Plaintiff Sherri Leshore resides in Chicago, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Leshore was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Leshore provided direct notice with regard to collecting, using, and disclosing child's personal information.

154.    Plaintiff Stephanie Lett resides in Arlington, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lett was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Lett provided direct notice with regard to collecting, using, and disclosing child's personal information.

155.    Plaintiff Naimah Lewis resides in Albrightsville, Pennsylvania. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lewis was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Lewis provided direct notice with regard to collecting, using, and disclosing child's personal information.

156.    Plaintiff Angel Lilley resides in Detroit, Michigan. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lilley was not asked for verifiable parental consent to collect, disclose, or use children's personal

information, including persistent identifiers, nor was Plaintiff Lilley provided direct notice with regard to collecting, using, and disclosing children's personal information.

157. Plaintiff Michele Long resides in Fountain, Colorado. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Long was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Long provided direct notice with regard to collecting, using, and disclosing child's personal information.

158. Plaintiff Jamie Longson resides in Pickford, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Longson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Longson provided direct notice with regard to collecting, using, and disclosing child's personal information.

159. Plaintiff Dawn Lopez resides in Brush, Colorado. Plaintiff's grandchild downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lopez was not asked for verifiable parental consent to collect, disclose, or use grandchild's personal information, including persistent identifiers, nor was Plaintiff Lopez provided direct notice with regard to collecting, using, and disclosing grandchild's personal information.

160. Plaintiff Laura Lopez resides in Gustine, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Lopez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Lopez provided direct notice with regard to collecting, using, and disclosing child's personal information.

161. Plaintiff Kia Mack resides in Bronxville, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Mack was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Mack provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

162.    Plaintiff Krystal Markley resides in Wauseon, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Markley was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Markley provided direct notice with regard to collecting, using, and disclosing child's personal information.

163.    Plaintiff Angela Martinez resides in Tacoma, Washington. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Martinez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Martinez provided direct notice with regard to collecting, using, and disclosing child's personal information.

164.    Plaintiff Debbie Martinez resides in San Jose, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Martinez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Martinez provided direct notice with regard to collecting, using, and disclosing child's personal information.

165.    Plaintiff Shauna Mathis resides in Los Banos, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Mathis was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Mathis provided direct notice with regard to collecting, using, and disclosing child's personal information.

166.    Plaintiff Wanda Mayer resides in Ocean Springs, Mississippi. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Mayer was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Mayer provided direct notice with regard to collecting, using, and disclosing child's personal information.

167.    Plaintiff Tonisha Mayo resides in Silver Spring, Maryland. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Mayo was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Mayo provided direct notice with regard to collecting, using, and disclosing child's personal information.

168. Plaintiff Tianna M McBroom resides in Burnsville, Minnesota. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McBroom was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff McBroom provided direct notice with regard to collecting, using, and disclosing child's personal information.

169. Plaintiff Latoya McCord resides in Brooklyn, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McCord was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff McCord provided direct notice with regard to collecting, using, and disclosing child's personal information.

170. Plaintiff Cecilia McFee resides in Hot Springs National Park, Arkansas. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McFee was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff McFee provided direct notice with regard to collecting, using, and disclosing children's personal information.

171. Plaintiff Joann McGee resides in Lancaster, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McGee was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff McGee provided direct notice with regard to collecting, using, and disclosing child's personal information.

172. Plaintiff Donna McKeague resides in Westfield, Massachusetts. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McKeague was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff McKeague provided direct notice with regard to collecting, using, and disclosing children's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

173. Plaintiff Naomi McKean resides in Fayetteville, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McKean was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff McKean provided direct notice with regard to collecting, using, and disclosing child's personal information.

174. Plaintiff Amber McKelvy resides in Katy, Texas. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McKelvy was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff McKelvy provided direct notice with regard to collecting, using, and disclosing children's personal information.

175. Plaintiff David McKenney resides in Layton, Utah. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McKenney was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff McKenney provided direct notice with regard to collecting, using, and disclosing child's personal information.

176. Plaintiff Priscilla McNeill resides in Pawtucket, Rhode Island. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McNeill was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff McNeill provided direct notice with regard to collecting, using, and disclosing child's personal information.

177. Plaintiff Susan McWhite resides in Greensboro, North Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff McWhite was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff McWhite provided direct notice with regard to collecting, using, and disclosing child's personal information.

178. Plaintiff Maria Medina resides in Birmingham, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Medina was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Medina provided direct notice with regard to collecting, using, and disclosing child's personal information.

179.    Plaintiff Alexis Mee resides in Vancouver, Washington. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Mee was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Mee provided direct notice with regard to collecting, using, and disclosing child's personal information.

180.    Plaintiff Tim Meister resides in Camarillo, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Meister was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Meister provided direct notice with regard to collecting, using, and disclosing child's personal information.

181.    Plaintiff Joann Mendez resides in Citrus Heights, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Mendez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Mendez provided direct notice with regard to collecting, using, and disclosing child's personal information.

182.    Plaintiff Sara Menke resides in Ofallon, Missouri. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Menke was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Menke provided direct notice with regard to collecting, using, and disclosing child's personal information.

183.    Plaintiff Phillip Miller resides in Chicago L, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Miller was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Miller provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

184.    Plaintiff Tamara Moffett resides in Richardson, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Moffett was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Moffett provided direct notice with regard to collecting, using, and disclosing child's personal information.

185.    Plaintiff Melissa Molina resides in Mission, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Molina was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Molina provided direct notice with regard to collecting, using, and disclosing child's personal information.

186.    Plaintiff Dennoris Moore resides in Saint Louis, Missouri. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Moore was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Moore provided direct notice with regard to collecting, using, and disclosing child's personal information.

187.    Plaintiff Meredith Moore resides in Monument, Colorado. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Moore was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Moore provided direct notice with regard to collecting, using, and disclosing child's personal information.

188.    Plaintiff Rosie Morales Mendez resides in North Bergen, New Jersey. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Morales Mendez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Morales Mendez provided direct notice with regard to collecting, using, and disclosing child's personal information.

189.    Plaintiff Andrew Myers resides in Greenville, North Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Myers was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Myers provided direct notice with regard to collecting, using, and disclosing child's personal information.

190.    Plaintiff Felecia Navarro resides in Sacramento, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Navarro was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Navarro provided direct notice with regard to collecting, using, and disclosing child's personal information.

191.    Plaintiff Rathana Neang resides in Lowell, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Neang was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Neang provided direct notice with regard to collecting, using, and disclosing child's personal information.

192.    Plaintiff DJ Neill resides in Temple, Texas. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Neill was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Neill provided direct notice with regard to collecting, using, and disclosing children's personal information.

193.    Plaintiff Stacey Nichols resides in Chicago, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Nichols was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Nichols provided direct notice with regard to collecting, using, and disclosing child's personal information.

194.    Plaintiff Latisha Nixon resides in Spring, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Nixon was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Nixon provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

195.     Plaintiff Chrisanne Oliver resides in Moscow, Idaho. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Oliver was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Oliver provided direct notice with regard to collecting, using, and disclosing child's personal information.

196.     Plaintiff Bailey Osborne resides in Burlington, Vermont. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Osborne was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Osborne provided direct notice with regard to collecting, using, and disclosing child's personal information.

197.     Plaintiff Jennifer Oshea resides in Garner, North Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Oshea was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Oshea provided direct notice with regard to collecting, using, and disclosing child's personal information.

198.     Plaintiff Tamika Pack resides in Detroit, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Pack was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Pack provided direct notice with regard to collecting, using, and disclosing child's personal information.

199.     Plaintiff Jennifer Pandorf resides in Sewell, New Jersey. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Pandorf was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Pandorf provided direct notice with regard to collecting, using, and disclosing child's personal information.

200.     Plaintiff Bridget Patrick resides in Edwardsville, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Patrick was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Patrick provided direct notice with regard to collecting, using, and disclosing child's personal information.

201.    Plaintiff Jessica Peterson resides in Chesapeake, Virginia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Peterson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Peterson provided direct notice with regard to collecting, using, and disclosing child's personal information.

202.    Plaintiff Stephanie Phelps resides in Sparks, Nevada. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Phelps was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Phelps provided direct notice with regard to collecting, using, and disclosing child's personal information.

203.    Plaintiff David Pitz resides in Cuyahoga Falls, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Pitz was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Pitz provided direct notice with regard to collecting, using, and disclosing child's personal information.

204.    Plaintiff Chantel Polarolo resides in Castleton, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Polarolo was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Polarolo provided direct notice with regard to collecting, using, and disclosing child's personal information.

205.    Plaintiff Tikeya Pope resides in Smyrna, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Pope was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Pope provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

206.    Plaintiff Patty Porta resides in Orland Hills, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Porta was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Porta provided direct notice with regard to collecting, using, and disclosing child's personal information.

207.    Plaintiff Shannon Potts resides in Chicago, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Potts was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Potts provided direct notice with regard to collecting, using, and disclosing child's personal information.

208.    Plaintiff Tamara Prince resides in Auburn, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Prince was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Prince provided direct notice with regard to collecting, using, and disclosing child's personal information.

209.    Plaintiff Roman Proctor resides in Waco, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Proctor was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Proctor provided direct notice with regard to collecting, using, and disclosing child's personal information.

210.    Plaintiff Jose Ramirez resides in Bakersfield, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ramirez was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ramirez provided direct notice with regard to collecting, using, and disclosing child's personal information.

211.    Plaintiff Renee Randall resides in New Bedford, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Randall was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Randall provided direct notice with regard to collecting, using, and disclosing child's personal information.

212.    Plaintiff Latoya Ravizee resides in Jacksonville, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ravizee was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ravizee provided direct notice with regard to collecting, using, and disclosing child's personal information.

213.    Plaintiff Tara Rectenwald resides in Youngsville, Pennsylvania. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Rectenwald was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Rectenwald provided direct notice with regard to collecting, using, and disclosing child's personal information.

214.    Plaintiff Candy Reh resides in Florence, Arizona. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Reh was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Reh provided direct notice with regard to collecting, using, and disclosing child's personal information.

215.    Plaintiff Amanda Rickard resides in Silver Creek, Nebraska. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Rickard was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Rickard provided direct notice with regard to collecting, using, and disclosing child's personal information.

216.    Plaintiff Ashley Riegel resides in New Haven, Missouri. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Riegel was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Riegel provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

217.    Plaintiff Bridgette Rivers resides in Montgomery, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Rivers was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Rivers provided direct notice with regard to collecting, using, and disclosing child's personal information.

218.    Plaintiff Nakeisha Roan resides in Danville, Illinois. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Roan was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Roan provided direct notice with regard to collecting, using, and disclosing child's personal information.

219.    Plaintiff Rebecca Robbins resides in Buchanan, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Robbins was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Robbins provided direct notice with regard to collecting, using, and disclosing child's personal information.

220.    Plaintiff Denesha Roberson resides in Apple Valley, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Roberson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Roberson provided direct notice with regard to collecting, using, and disclosing child's personal information.

221.    Plaintiff Gene Robinson resides in Jacksonville, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Robinson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Robinson provided direct notice with regard to collecting, using, and disclosing child's personal information.

222.    Plaintiff Nichole Robinson resides in Las Vegas, Nevada. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Robinson was not asked for verifiable parental consent to collect, disclose, or use child's

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

personal information, including persistent identifiers, nor was Plaintiff Robinson provided direct notice with regard to collecting, using, and disclosing child's personal information.

223.    Plaintiff Tammy Robinson resides in Westerville, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Robinson was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Robinson provided direct notice with regard to collecting, using, and disclosing child's personal information.

224.    Plaintiff Lauren Rodriguez resides in Berkeley, California. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Rodriguez was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Rodriguez provided direct notice with regard to collecting, using, and disclosing children's personal information.

225.    Plaintiff Jodie Roskydoll resides in Humnoke, Arkansas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Roskydoll was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Roskydoll provided direct notice with regard to collecting, using, and disclosing child's personal information.

226.    Plaintiff Brian Ross resides in Macedonia, Ohio. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ross was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Ross provided direct notice with regard to collecting, using, and disclosing children's personal information.

227.    Plaintiff Taakena Ross-Gober resides in Hiram, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ross-Gober was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ross-Gober provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

228.    Plaintiff Brandon Rowell resides in Cedartown, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Rowell was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Rowell provided direct notice with regard to collecting, using, and disclosing child's personal information.

229.    Plaintiff Niesha Rush resides in Columbus, Mississippi. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Rush was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Rush provided direct notice with regard to collecting, using, and disclosing child's personal information.

230.    Plaintiff Latina Salaam resides in Memphis, Tennessee. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Salaam was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Salaam provided direct notice with regard to collecting, using, and disclosing child's personal information.

231.    Plaintiff Serena Sandberg resides in Elma, Washington. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Sandberg was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Sandberg provided direct notice with regard to collecting, using, and disclosing child's personal information.

232.    Plaintiff Daniel Santos resides in Fontana, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Santos was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Santos provided direct notice with regard to collecting, using, and disclosing child's personal information.

233.    Plaintiff Jason Scaggs resides in Salinas, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Scaggs was not asked for verifiable parental consent to collect, disclose, or use child's personal information,

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

including persistent identifiers, nor was Plaintiff Scaggs provided direct notice with regard to collecting, using, and disclosing child's personal information.

234. Plaintiff Pamela Schiappa resides in Charlton, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Schiappa was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Schiappa provided direct notice with regard to collecting, using, and disclosing child's personal information.

235. Plaintiff Johnnie Shelton resides in Pontiac, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Shelton was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Shelton provided direct notice with regard to collecting, using, and disclosing child's personal information.

236. Plaintiff Amanda Shuherk resides in Bryan, Ohio. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Shuherk was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Shuherk provided direct notice with regard to collecting, using, and disclosing child's personal information.

237. Plaintiff Christina Simeneta resides in Lake Orion, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Simeneta was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Simeneta provided direct notice with regard to collecting, using, and disclosing child's personal information.

238. Plaintiff Kendrah Simmons resides in Kansas City, Kansas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Simmons was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Simmons provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

239.     Plaintiff Ricole Simms resides in Detroit, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Simms was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Simms provided direct notice with regard to collecting, using, and disclosing child's personal information.

240.     Plaintiff Quinetta Slaughter resides in Decatur, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Slaughter was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Slaughter provided direct notice with regard to collecting, using, and disclosing child's personal information.

241.     Plaintiff Michael Smith resides in Cincinnati, Ohio. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Smith was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Smith provided direct notice with regard to collecting, using, and disclosing children's personal information.

242.     Plaintiff Brianne Spalding resides in Montclair, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Spalding was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Spalding provided direct notice with regard to collecting, using, and disclosing child's personal information.

243.     Plaintiff Kelli Spann resides in Prattville, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Spann was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Spann provided direct notice with regard to collecting, using, and disclosing child's personal information.

244.     Plaintiff Heather Speck resides in Centralia, Washington. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Speck was not asked for verifiable parental consent to collect, disclose, or use children's personal

information, including persistent identifiers, nor was Plaintiff Speck provided direct notice with regard to collecting, using, and disclosing children's personal information.

245. Plaintiff Kristen Spengler resides in Delray Beach, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Spengler was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Spengler provided direct notice with regard to collecting, using, and disclosing child's personal information.

246. Plaintiff Cynthia Steelman resides in Brentwood, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Steelman was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Steelman provided direct notice with regard to collecting, using, and disclosing child's personal information.

247. Plaintiff Stephanie Stordahl resides in Muskegon, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Stordahl was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Stordahl provided direct notice with regard to collecting, using, and disclosing child's personal information.

248. Plaintiff Amanda St Pierre resides in Woonsocket, Rhode Island. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff St Pierre was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff St Pierre provided direct notice with regard to collecting, using, and disclosing child's personal information.

249. Plaintiff Rebecca Straubel resides in Duanesburg, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Straubel was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Straubel provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

250.    Plaintiff Kenuway Strong resides in Florence, Arizona. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Strong was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Strong provided direct notice with regard to collecting, using, and disclosing child's personal information.

251.    Plaintiff Traci Takacs resides in Buffalo, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Takacs was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Takacs provided direct notice with regard to collecting, using, and disclosing child's personal information.

252.    Plaintiff Tamara Taylor resides in Fontana, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Taylor was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Taylor provided direct notice with regard to collecting, using, and disclosing child's personal information.

253.    Plaintiff Jasper Thomas resides in Minot, North Dakota. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Thomas was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Thomas provided direct notice with regard to collecting, using, and disclosing child's personal information.

254.    Plaintiff Sheveta Thomas resides in Clinton, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Thomas was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Thomas provided direct notice with regard to collecting, using, and disclosing child's personal information.

255.    Plaintiff Meghan Tierney resides in Boston, Massachusetts. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Tierney was not asked for verifiable parental consent to collect, disclose, or use child's personal

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

information, including persistent identifiers, nor was Plaintiff Tierney provided direct notice with regard to collecting, using, and disclosing child's personal information.

256.    Plaintiff Stephanie Tomlin resides in Johnston, Rhode Island. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Tomlin was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Tomlin provided direct notice with regard to collecting, using, and disclosing child's personal information.

257.    Plaintiff Monica Torres resides in Norman, Oklahoma. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Torres was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Torres provided direct notice with regard to collecting, using, and disclosing child's personal information.

258.    Plaintiff Angel Towns resides in Orlando, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Towns was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Towns provided direct notice with regard to collecting, using, and disclosing child's personal information.

259.    Plaintiff Carolyn Trueland resides in Charleston, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Trueland was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Trueland provided direct notice with regard to collecting, using, and disclosing child's personal information.

260.    Plaintiff Jennifer Tullis resides in Stafford, Virginia. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Tullis was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Tullis provided direct notice with regard to collecting, using, and disclosing children's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

261.    Plaintiff Shandelle Ubrig resides in Hawi, Hawaii. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Ubrig was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Ubrig provided direct notice with regard to collecting, using, and disclosing child's personal information.

262.    Plaintiff Zumeya Valencia resides in Cypress, Texas. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Valencia was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Valencia provided direct notice with regard to collecting, using, and disclosing child's personal information.

263.    Plaintiff Lisa Vierthaler resides in Louisville, Kentucky. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Vierthaler was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Vierthaler provided direct notice with regard to collecting, using, and disclosing child's personal information.

264.    Plaintiff Thomas Wagner resides in Oshkosh, Wisconsin. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wagner was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Wagner provided direct notice with regard to collecting, using, and disclosing child's personal information.

265.    Plaintiff Petysee Wallace resides in Colquitt, Georgia. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wallace was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Wallace provided direct notice with regard to collecting, using, and disclosing child's personal information.

266.    Plaintiff Megan Walters resides in Clay, New York. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Walters was not asked for verifiable parental consent to collect, disclose, or use child's personal information,

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

including persistent identifiers, nor was Plaintiff Walters provided direct notice with regard to collecting, using, and disclosing child's personal information.

267. Plaintiff Dianne Walton resides in Water Valley, Mississippi. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Walton was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Walton provided direct notice with regard to collecting, using, and disclosing child's personal information.

268. Plaintiff Danny Webber resides in Preston, Minnesota. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Webber was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Webber provided direct notice with regard to collecting, using, and disclosing child's personal information.

269. Plaintiff Jacqueline Wells resides in Poplar Bluff, Missouri. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wells was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Wells provided direct notice with regard to collecting, using, and disclosing child's personal information.

270. Plaintiff Erica White-Mack resides in Winnsboro, South Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff White-Mack was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff White-Mack provided direct notice with regard to collecting, using, and disclosing child's personal information.

271. Plaintiff Becky Wilbert resides in Wyoming, Michigan. Plaintiff's children downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wilbert was not asked for verifiable parental consent to collect, disclose, or use children's personal information, including persistent identifiers, nor was Plaintiff Wilbert provided direct notice with regard to collecting, using, and disclosing children's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

272.    Plaintiff Kimberly Wilder resides in Milwaukee, Wisconsin. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wilder was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Wilder provided direct notice with regard to collecting, using, and disclosing child's personal information.

273.    Plaintiff Brianne Wiley resides in Las Vegas, Nevada. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wiley was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Wiley provided direct notice with regard to collecting, using, and disclosing child's personal information.

274.    Plaintiff Tashante Wilkins resides in Bailey, North Carolina. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wilkins was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Wilkins provided direct notice with regard to collecting, using, and disclosing child's personal information.

275.    Plaintiff Keith Williams resides in Mobile, Alabama. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Williams was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Williams provided direct notice with regard to collecting, using, and disclosing child's personal information.

276.    Plaintiff Kia Williams resides in Jackson, Mississippi. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Williams was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Williams provided direct notice with regard to collecting, using, and disclosing child's personal information.

277.    Plaintiff Wanda Williams resides in Miami, Florida. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Williams was not asked for verifiable parental consent to collect, disclose, or use child's personal information,

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

including persistent identifiers, nor was Plaintiff Williams provided direct notice with regard to collecting, using, and disclosing child's personal information.

278.    Plaintiff Christina Wise resides in Felton, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Wise was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Wise provided direct notice with regard to collecting, using, and disclosing child's personal information.

279.    Plaintiff Mary Yaldoo resides in White Lake, Michigan. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Yaldoo was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Yaldoo provided direct notice with regard to collecting, using, and disclosing child's personal information.

280.    Plaintiff April Zimmerman resides in King Of Prussia, Pennsylvania. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Zimmerman was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Zimmerman provided direct notice with regard to collecting, using, and disclosing child's personal information.

281.    Plaintiff Tiffany Zincone resides in Providence, Rhode Island. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Zincone was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Zincone provided direct notice with regard to collecting, using, and disclosing child's personal information.

282.    Plaintiff Jeannee Zwickl resides in Sanger, California. Plaintiff's child downloaded the Musical.ly app onto a mobile device while under the age of 13. Plaintiff Zwickl was not asked for verifiable parental consent to collect, disclose, or use child's personal information, including persistent identifiers, nor was Plaintiff Zwickl provided direct notice with regard to collecting, using, and disclosing child's personal information.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

283.    Defendant ByteDance Ltd. is a corporation headquartered in Beijing, China. In December of 2017, Defendant ByteDance acquired Musical.ly, a Cayman Islands corporation (hereinafter, "Musical.ly of Cayman Islands"). By virtue of its acquisition of Musical.ly of Cayman Islands, ByteDance is responsible for the conduct alleged herein with respect to Musical.ly of Cayman Islands. At all times material to this Complaint, Musical.ly of Cayman Islands together with Musical.ly Inc. (described below) operated the video social networking app that is the subject of this Complaint (hereinafter, the "Musical.ly App" or the "App"). At all times material to this Complaint, acting alone or in concert with others, ByteDance, by way of Musical.ly of Cayman Islands, purposefully directed its activities to the United States by advertising, marketing, and distributing mobile applications intended for use by consumers throughout the United States. At all times material to this Complaint, acting alone or in concert with Defendant Musical.ly Inc., ByteDance, by way of Musical.ly of Cayman Islands, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

284.    Defendant Musical.ly, Inc. is a California corporation with its principal place of business in Santa Monica, California, and is a wholly owned subsidiary of Defendant ByteDance. Defendant Musicl.ly transacts or has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Defendant Musicl.ly has advertised, marketed, and distributed mobile applications intended for use by consumers throughout the United States. At all times material to this Complaint, acting alone or in concert with Defendant ByteDance, by way of Musical.ly of Cayman Islands, Defendant Musical.ly formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

## FACTUAL ALLEGATIONS

### COPPA Outlaws the Collection of Children's
### Personal Information Without Verifiable Parental Consent

285.    Recognizing the vulnerability of children in the Internet age, in 1999 Congress enacted the Children's Online Privacy Protection Act (COPPA). See 15 U.S.C. §§ 6501–6506.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

COPPA's express goal is to protect children's privacy while they are connected to the internet.[3] Under COPPA, developers of child-focused apps cannot lawfully obtain the personal information of children under 13 years of age without first obtaining verifiable consent from their parents.

286.    COPPA applies to any operator of a commercial website or online service (including an app) that is directed to children and that: (a) collects, uses, and/or discloses personal information from children, or (b) on whose behalf such information is collected or maintained. Under COPPA, personal information is "collected or maintained on behalf of an operator when…[t]he operator benefits by allowing another person to collect personal information directly from users of" an online service. 16 C.F.R. § 312.2. In addition, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children.

287.    Under COPPA, "personal information" includes information like names, email addresses, and social security numbers. COPPA's broad definition of "personal information" is as follows:

"individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and name of a city or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services" (including but not limited to "a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device

---

[3] *See* Federal Trade Commission, "New Rule Will Protect Privacy of Children Online," Oct. 20, 1999, available at https://www.ftc.gov/news-events/press-releases/1999/10/new-rule-will-protectprivacy-children-online (last visited March 27, 2019).

serial number, or unique device identifier"); and (10) any information concerning the child or the child's parents that the operator collects then combines with an identifier.

288.    The FTC regards "persistent identifiers" as "personally identifiable" information that can be reasonably linked to a particular child. The FTC amended COPPA's definition of "personal information" to clarify the inclusion of persistent identifiers.[4]

289.    In order to lawfully collect, use, or disclose personal information, COPPA requires that an operator meet specific requirements, including *each* of the following:

a)    Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures as set forth in the Rule;

b)    Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

c)    Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

290.    Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child. . . [r]eceives notice of the operator's personal information collection, use, and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personal information." 16 C.F.R. § 312.2.

291.    The FTC recently clarified acceptable methods for obtaining verifiable parental consent, which include:

---

[4]    See https://www.ftc.gov/news-events/blogs/business-blog/2016/04/keeping-online advertising-industry (2016 FTC Blog post from Director of the FTC Bureau of Consumer Protection) (last visited March 27, 2019).

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

a) providing a consent form for parents to sign and return;

b) requiring the use of a credit card/online payment that provides notification of each transaction;

c) connecting to trained personnel via video conference;

d) calling a staffed toll-free number;

e) emailing the parent soliciting a response email plus requesting follow-up information from the parent;

f) asking knowledge-based questions; or

g) verifying a photo ID from the parent compared to a second photo using facial recognition technology.[5]

### Defendants Collected and Used Children's Personal Information Through Its App

292. Since at least 2014, Defendants have operated the Musical.ly App. The App is free to download from Apple's App Store, Google Play, and the Amazon Appstore, but generates revenue for Musical.ly through various means, including in-app purchases. Since 2014, over 200 million users have downloaded the App worldwide; and, at least, 65 million Musical.ly accounts were registered in the United States.

293. To register for the Musical.ly App, users provided their email address, phone number, username, first and last name, short bio, and a profile picture. Between December 2015 and October 2016, Musical.ly also collected geolocation information from users of the App, which enabled Defendants and other users of the App to identify where a user was located.

294. Many users, including children, chose to include an age in their short biography, which is part of their Musical.ly App profiles. Since July 2017, Musical.ly requested age information from new users during the registration process for a Musical.ly App account, and prevents users who indicate that they are under 13 from creating accounts. Musical.ly did not

---

[5] *See* https://www.ftc.gov/tipsadvice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-compliance (last visited July 20, 2017).

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

request age information for existing users who had already created Musical.ly accounts prior to July 2017.

295.    The App provided a platform for users to create videos and then synchronize them with music or audio clips from either the App's online music library or music stored on the user's device. The App's online library had millions of song tracks, including songs from popular children's movies and songs popular among 'tweens' and younger children. The Musical.ly App offered simple tools to create and edit videos. Once the video is completed, the user had the option to name the video with a title before posting and sharing the video publicly.

296.    In addition to creating and sharing videos, the App provided a platform for users to connect and interact with other users. Users could comment on the videos of other users, and have the option to "follow" other users' accounts so that they can view more of their videos in the future. Popular users could have millions of "fans" following their accounts. A user's account was set to public by default, which means that a user's profile bio, username, profile picture, and videos were public and searchable by other users. Users had the option to set their accounts to "private" so that only approved followers can view their videos; however, users' profiles, including usernames, profile pictures and bios, remained public and searchable by other users.

297.    The App also allowed users to send direct messages to communicate with other users. These direct messages could include colorful and bright emoji characters ranging from animals, smiley faces, cars, trucks, and hearts, among many others. By default, an App user could direct message any other user. Indeed, there have been many reports of adults trying to contact kids via the Musical.ly App.

298.    These reports highlight the dangerous potential of the App, which allowed adults posing as children to send inappropriate messages to underage children using the App. The dark underbelly of the App has become so prevalent that one news source even called it a "hunting

ground" for pedophiles[6] and pointed out that schools were forced to warn parents directly about the hidden dangers of using the App.

299.    Another article, entitled "Do Your Kids Like Musical.ly? So Do Traffickers and Pedophiles[7]" details how one vigilant parent discovered that the App she downloaded onto her own phone for her daughter's use had a video chat feature enabled, allowing an adult man to attempt to video chat with her minor daughter. She then realized that this same man had been messaging her daughter and commenting on and liking her daughter's videos for weeks.

300.    Yet another article[8] recounts the story of disturbing messages sent to a seven-year old girl through the App. Brad Summer, a vigilant father from Batavia, Illinois, shares the inappropriate messages directed to his young daughter. These messages were from a Musical.ly user posing as a nine-year old girl, asking his daughter Madison to send naked pictures of herself but not to tell anyone.

301.    Even worse, until October 2016, the App had a feature where a user could tap on the "my city" tab which provided the user with a list of other users within a 50-mile radius, and with whom the user could connect and interact with by following the user or sending direct messages.

302.    A significant percentage of Musical.ly App. users were children under 13, and numerous press articles between 2016 and 2018 highlight the popularity of the App among 'tweens' and younger children.

303.    Defendants were aware that children were using the App. As of at least October 2016, on Defendants' websites, available at www.musicallyapp.tumblr.com and www.musical.ly/en-US, Defendants provided parents guidance about their child's use of the

---

[6] https://www.irishmirror.ie/news/paedophiles-hunting-children-through-tiktok-14042405
[7] https://www.king5.com/article/news/local/do-your-kids-like-musically-so-do-traffickers-and-pedophiles/281-537925828
[8] https://www.usmagazine.com/celebrity-news/news/dad-shares-gross-messages-sent-to-young-daughter-on-musically-w498946/

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

App. Until April 2017, the webpage stated, for example, "If you have a young child on Musical.ly, please be sure to monitor their activity on the App."

304.     The App did not provide a function for users to close their accounts, and instead required users to send an email to Defendants to close their accounts. Defendants received thousands of complaints from parents that their child under 13 years old had created a Musical.ly App account without their knowledge. For example, in the two-week period between September 15, 2016 and September 30, 2016, Defendants received more than 300 complaints from parents asking to have their child's account closed. While Defendants closed the accounts, they did not delete the users' videos or profile information from Defendants' servers, according to the Federal Trade Commission ("FTC").

305.     In December 2016, a third party alleged in an interview with the co-founder of Musical.ly, Inc. that seven users whose accounts were among the most popular in terms of followers appeared to be children under 13. Shortly thereafter, Defendants then reviewed their most popular users and determined an additional 39 appeared to be under the age of 13. In February 2017, Defendants sent messages to these 46 users' email addresses telling users under 13 to edit their profile description to indicate that their accounts were being run by a parent or adult talent manager. Defendants did not take any steps to ensure that the person who was responding to the request was a parent and not the child user.

306.     On information and belief, Defendants operated their App for commercial gain.

307.     In fact, the App was so lucrative that in December of 2017, Defendant ByteDance paid $1 billion to acquire it.[10] In August of 2018, the Musical.ly App was merged with the TikTok app under the TikTok name. The Defendants operate the merged TikTok app.

308.     In their quest for profits, Defendants failed to safeguard children's personal information and ensure that third-parties' collection of data from children is lawful.

### *Defendants' App Was Directed to Children*

---

[10] https://www.cnbc.com/2017/11/10/musical-ly-app-sells-for-1-billion.html.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

309.    COPPA defines "children" as individuals under the age of 13. *See* 16 C.F.R. § 312.2. An app is directed to children if the "subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children." See 16 C.F.R. § 312.2.

310.    As alleged herein, the Musical.ly App was directed to children under age 13. For example, seven users whose accounts were among the most popular in terms of followers appeared to be children under 13. Shortly thereafter, Musical.ly then reviewed its most popular users and determined an additional 39 appeared to be under 13. What's more, the App includes song folders to users select songs for their videos. At various times material to this Complaint, the App included song folders appealing to children, such as "Disney" and "school." The Disney folder included songs related to Disney children movies such as the Lion King and Toy Story. The Apps simply tools made it easy for children to create and upload videos. The App allows users to send other users colorful emojis such as cute animals and smiley faces. Moreover, a large percentage of Musical.ly App users are under the age of 13. Indeed, many users self-identify as under 13 in their profile bios or provide grade or school information indicating an age under 13. Many musicians and entertainers popular with tweens, such as Katy Perry, Selena Gomez, Ariana Grande, Meghan Trainor, among many others, have Musical.ly App accounts. The artists often encourage their fans to post and share videos of themselves dancing or lip-syncing to their new releases

311.    Defendants also had actual knowledge they were collecting personal information from children, as described herein. The youth of the user base is easily apparent in perusing users' profile pictures and in reviewing users' profiles, many of which explicitly noted the child's age, birthdate, or school. Since at least 2014, Defendants have received thousands of complaints from parents of children under the age of 13 who were registered users of Defendants' online service. In just a two-week period in September 2016, Defendants received over 300 complaints from parents asking that their child's account be deleted.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

312.     Even if the App was not directed at children, on information and belief, Defendants had actual knowledge that it collected personal information from children. The App contains child-oriented "subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children." 16 C.F.R. § 312.2.

### *Defendants Are Operators under COPPA*

313.     Each Defendant is an "operator" pursuant to COPPA. Specifically, COPPA defines an "operator," in pertinent part, as:

> any person who operates a Web site located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation.

16 C.F.R. § 312.2.

314.     Both Defendants operated the Musical.ly App entirely online. Indeed, without a connection to the internet, Plaintiffs could not have downloaded and used the App.

### *Defendants Engaged in the Foregoing Acts*
### *Without Obtaining Verifiable Parental Consent*

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

315.    Defendants collected, used, or disclosed the personal information of Plaintiffs' children without notifying the parents. Defendants never obtained Plaintiffs' verifiable parental consent to collect, use, or disclose their children's personal information.

316.    Plaintiffs never knew that Defendants collected, disclosed, or used their children's personal information because Defendants at all times failed to provide Plaintiffs any of the required disclosures, never sought verifiable parental consent, and never provided a mechanism by which the Plaintiffs could provide verifiable consent.

317.    Defendants unlawful collection of Plaintiffs' children's personal information for commercial gain exposed them to pedophiles and other predators online.

### The FTC Files a Complaint Against Defendants and Slaps Them with the Largest Fine Ever Under COPPA

318.    In February of 2019, the Federal Trade Commission filed a complaint against Defendants for violations of COPPA in connection with its conduct alleged herein.

319.    Subsequent to the filing of the FTC complaint, Defendants agreed to pay $5.7 million to settle the allegations that the company illegally collected personal information from children in violation of COPPA.

320.    The 'Musical.ly settlement' is the largest civil penalty ever obtained by the FTC in a children's privacy case.

321.    In addition to the monetary penalty, the settlement also requires Defendants to comply with COPPA going forward and to take offline all videos made by children under the age of 13.

322.    The February 27, 2019 Joint Statement of Commissioner Rohit Chopra and Commissioner Rebecca Kelly Slaughter calls the FTC complaint and settlement a "major milestone" for COPPA enforcement and a "big win in the fight to protect children's privacy."

323.    Still, Defendants have not made whole the millions of consumers harmed by Defendants' unlawful conduct. Accordingly, Plaintiffs bring this class action for relief.

### Fraudulent Concealment and Tolling

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

324. The applicable statutes of limitations are tolled by virtue of Defendants' knowing and active concealment of the facts alleged above. Plaintiffs and class members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their own part.

325. At the time, time the action was filed, Defendants were under a duty to disclose the true character, quality, and nature of its activities to Plaintiffs and the classes. Defendants are therefore estopped from relying on any statute of limitations.

326. Defendants' fraudulent concealment is common to the Classes.

## CLASS ACTION ALLEGATIONS

327. Plaintiffs seek class certification of the Classes and subclass set forth herein pursuant to Federal Rule of Civil Procedure 23.

328. Plaintiffs seek class certification of claims for the common law privacy cause of action "Intrusion Upon Seclusion," on behalf of a multi-state class, with a class defined as follows:

> **The Multi-state Class**: all persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Defendants collected, used, or disclosed personal information without verifiable parental consent.

329. Plaintiffs Bice, James Harris, Joanna Henderson, Hoffman, Holland, Hutchins, Hyman, Medina, Rivers, Spann, and Keith Williams also seek certification of the following state subclass ("Alabama Subclass"):

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

All persons residing in the State of Alabama who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

330. Plaintiffs Reh and Strong also seek certification of the following state subclass ("Arizona Subclass"):

All persons residing in the State of Arizona who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

331. Plaintiffs Gray, Holyfield, McFee, and Roskydoll also seek certification of the following state subclass ("Arkansas Subclass"):

All persons residing in the State of Arkansas who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

332. Plaintiffs Alferez, Altman, Adrienne Anderson, Barr, Barron, Beckner, Bidwell, Blackhorse, Borboa, Brekke, Brown, Danielle Charles, Clarke, Rhonda Davis, Dawson, Duran, Evens, Frankian, George, Gittens, Ho, Kayla Jones, Kulikyan, Laura Lopez, Debbie Martinez, Mathis, McGee, Meister, Mendez, Navarro, Prince, Ramirez, Roberson, Rodriguez, Santos, Scaggs, Spalding, Steelman, Taylor, Wise, and Zwickl also seek certification of the following state subclass ("California Subclass"):

All persons residing in the State of California who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App,

and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

333.    Plaintiffs Long, Dawn Lopez, and Meredith Moore also seek certification of the following state subclass ("Colorado Subclass"):

All persons residing in the State of Colorado who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

334.    Plaintiff Doyle also seeks certification of the following state subclass ("Connecticut Subclass"):

All persons residing in the State of Connecticut who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

335.    Plaintiff Candice Carter also seeks certification of the following subclass ("District of Columbia Subclass"):

All persons residing in the District of Columbia who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

336.    Plaintiffs Chantedria Carter, Dees, Christina Harris, Kevin Harris, Hart, Holden, Jardine, Ravizee, Gene Robinson, Spengler, Towns, and Wanda Williams also seek certification of the following state subclass ("Florida Subclass"):

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

All persons residing in the State of Florida who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

337.    Plaintiffs Benton, Byrd, Natacha Charles, Kathleen Clark, Freeman, Ancheta Johnson, Tawana Johnson, McKean, Pope, Ross-Gober, Rowell, Slaughter, and Wallace also seek certification of the following state subclass ("Georgia Subclass"):

All persons residing in the State of Georgia who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

338.    Plaintiff Ubrig also seeks certification of the following state subclass ("Hawaii Subclass"):

All persons residing in the State of Hawaii who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

339.    Plaintiff Oliver also seeks certification of the following state subclass ("Idaho Subclass"):

All persons residing in the State of Idaho who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

340.    Plaintiffs Bruce, Cason, Casson, Rimika Clark, Crain, Cunningham, Dandridge, Jurzak, Leshore, Miller, Nichols, Patrick, Porta, Potts, and Roan also seek certification of the following state subclass ("Illinois Subclass"):

> All persons residing in the State of Illinois who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

341.    Plaintiffs Alvarez, Delly, Dixon, and Heard also seek certification of the following state subclass ("Indiana Subclass"):

> All persons residing in the State of Indiana who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

342.    Plaintiffs Lisa Clark, Copeland, and Gillette also seek certification of the following state subclass ("Iowa Subclass"):

> All persons residing in the State of Iowa who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

343.    Plaintiffs Grow, Chasity Jackson, and Simmons also seek certification of the following state subclass ("Kansas Subclass"):

> All persons residing in the State of Kansas who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

344.     Plaintiffs Abshire and Vierthaler also seek certification of the following state subclass ("Kentucky Subclass"):

> All persons residing in the State of Kentucky who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

345.     Plaintiffs Ackerson, Boudreaux, Sherry Carter, Clement, and Keys also seek certification of the following state subclass ("Louisiana Subclass"):

> All persons residing in the State of Louisiana who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

346.     Plaintiffs Bois and Jordan also seek certification of the following state subclass ("Maine Subclass"):

> All persons residing in the State of Maine who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

347.     Plaintiffs Belton, Blanchfield, Corbett, Judd, and Mayo also seek certification of the following state subclass ("Maryland Subclass"):

> All persons residing in the State of Maryland who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

348.     Plaintiffs Espinal, Friedmann, Kesha Harris, Hudson, McKeague, Neang, Randall, Schiappa, and Tierney also seek certification of the following state subclass ("Massachusetts Subclass"):

> All persons residing in the State of Massachusetts who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

349.     Plaintiffs Baxter, Bazzi, Lori Carr, Cyars, Galvan, Graham, Hurley-Singh, Lilley, Longson, Pack, Robbins, Shelton, Simeneta, Simms, Stordahl, Wilbert, and Yaldoo also seek certification of the following state subclass ("Michigan Subclass"):

> All persons residing in the State of Michigan who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

350.     Plaintiffs Beard, McBroom, and Webber also seek certification of the following state subclass ("Minnesota Subclass"):

> All persons residing in the State of Minnesota who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

351.     Plaintiffs Evans, Shana Johnson, Mayer, Rush, Walton, and Kia Williams also seek certification of the following state subclass ("Mississippi Subclass"):

> All persons residing in the State of Mississippi who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App,

***DRAFT FOR SETTLEMENT PURPOSES ONLY***
***INADMISSIBLE PURSUANT TO FRE 408***

and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

352.    Plaintiffs Hall, Royccie Jackson, Menke, Dennoris Moore, Riegel, and Wells also seek certification of the following state subclass ("Missouri Subclass"):

All persons residing in the State of Missouri who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

353.    Plaintiffs Kubo and Rickard also seek certification of the following state subclass ("Nebraska Subclass"):

All persons residing in the State of Nebraska who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

354.    Plaintiffs Bui, Gomez, Melanie Henderson, Phelps, Nichole Robinson, and Wiley also seek certification of the following state subclass ("Nevada Subclass"):

All persons residing in the State of Nevada who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

355.    Plaintiffs Alexia Anderson, Morales Mendez, and Pandorf also seek certification of the following state subclass ("New Jersey Subclass"):

All persons residing in the State of New Jersey who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App,

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

356.    Plaintiff Brockman also seeks certification of the following state subclass ("New Mexico Subclass"):

All persons residing in the State of New Mexico who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

357.    Plaintiffs Cardone, Crystal Carter, Chiaramonte, Evering, Mack, McCord, Polarolo, Straubel, Takacs, and Walters also seek certification of the following state subclass ("New York Subclass"):

All persons residing in the State of New York who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

358.    Plaintiffs Quabisha Davis, McWhite, Myers, Oshea, and Wilkins also seek certification of the following state subclass ("North Carolina Subclass"):

All persons residing in the State of North Carolina who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

359.    Plaintiffs Gravalin and Jasper Thomas also seek certification of the following state subclass ("North Dakota Subclass"):

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

All persons residing in the State of North Dakota who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

360.    Plaintiffs Brittain, Britton, Cox, Kim Davis, Forbes, Graf, Amy Johnson, Markley, Pitz, Tammy Robinson, Ross, Shuherk, and Smith also seek certification of the following state subclass ("Ohio Subclass"):

All persons residing in the State of Ohio who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

361.    Plaintiffs Gatewood and Torres also seek certification of the following state subclass ("Oklahoma Subclass"):

All persons residing in the State of Oklahoma who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

362.    Plaintiffs Kish Green, Higgins, Lee, Lewis, Rectenwald, and Zimmerman also seek certification of the following state subclass ("Pennsylvania Subclass"):

All persons residing in the State of Pennsylvania who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

363.    Plaintiffs McNeill, St Pierre, Tomlin, and Zincone also seek certification of the following state subclass ("Rhode Island Subclass"):

> All persons residing in the State of Rhode Island who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

364.    Plaintiffs Branham, Ford, Fowler-Jennings, Anya Jones, Gail Jones, Vincent Jones, Kay, David Lawrence, Sheveta Thomas, Trueland, and White-Mack also seek certification of the following state subclass ("South Carolina Subclass"):

> All persons residing in the State of South Carolina who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

365.    Plaintiffs Church, Hagey, Henry, Inmon, and Salaam also seek certification of the following state subclass ("Tennessee Subclass"):

> All persons residing in the State of Tennessee who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

366.    Plaintiffs Ahmed, Alexander, Talia Green, Toni Green, Hudspeth, Sabrina Jones, Kaplan, Olivia Lawrence, Lett, McKelvy, Moffett, Molina, Neill, Nixon, Proctor, and Valencia also seek certification of the following state subclass ("Texas Subclass"):

> All persons residing in the State of Texas who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

367.    Plaintiff McKenney also seeks certification of the following state subclass ("Utah Subclass"):

All persons residing in the State of Utah who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

368.    Plaintiff Osborne also seeks certification of the following state subclass ("Vermont Subclass"):

All persons residing in the State of Vermont who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

369.    Plaintiffs Akers, Barnhart, Jimmerson, Peterson, and Tullis also seek certification of the following state subclass ("Virginia Subclass"):

All persons residing in the State of Virginia who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

370.    Plaintiffs Aragon, Amanda Carr, Angela Martinez, Mee, Sandberg, and Speck also seek certification of the following state subclass ("Washington Subclass"):

All persons residing in the State of Washington who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App,

and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

371.    Plaintiffs Beegle and Bushlow also seek certification of the following state subclass ("West Virginia Subclass"):

All persons residing in the State of West Virginia who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

372.    Plaintiffs Eddy, Jeff, Lafrenier, Wagner, and Wilder also seek certification of the following state subclass ("Wisconsin Subclass"):

All persons residing in the State of Wisconsin who are younger than the age of 13, or were younger than the age of 13 when they registered for and used the App, and their parents and/or legal guardians, from whom Musical.ly collected, used, or disclosed personal information without verifiable parental consent.

373.    Plaintiffs reserve the right to modify or refine the Class or Subclass definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

374.    Excluded from the Classes and Subclass are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants, Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

### The Classes Satisfies the Rule 23 Requirements

375.    Ascertainability. The proposed Classes and Subclass are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclass can be readily identified through records maintained by Defendants.

376.    Numerosity (Rule 23(a)(1)). The Classes and Subclass are so numerous that joinder of individual members herein is impracticable. The exact number of Class or Subclass members, as herein identified and described, is not known, but download figures indicate that the App had been downloaded more than 65 million times in the U.S.

377.    Commonality. (Rule 23(a)(2)). Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

a)    Whether Defendants engaged in the activities referenced in the above paragraphs;

b)    Whether Defendants provided disclosure of all the activities referenced in the above paragraphs on a website as required by COPPA;

c)    Whether Defendants directly notified parents of any of the activities referenced in the above paragraphs;

d)    Whether Defendants sought verifiable parental consent prior to engaging in any of the activities referenced in the above paragraphs;

e)    Whether Defendants provided a process or mechanism for parents to provide verifiable parental consent prior to engaging in any of the activities references in the above paragraphs;

f)    Whether Defendants received verifiable parental consent prior to engaging in any of the activities reference in the above paragraphs;

g)    Whether Defendants' acts and practices complained of herein violate COPPA;

h) Whether Defendants' acts and practices complained of herein amount to acts of intrusion upon seclusion under the law of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia;

i) Whether Defendants' conduct violated Subclass members' California constitutional Right to Privacy;

j) Whether Defendants' acts and practices complained of herein violate New York General Business Law § 349;

k) Whether members of the Classes and Subclass have sustained damages, and, if so, in what amount; and

l) What is the appropriate injunctive relief to ensure Defendants no longer illegally collects children's personal information without verifiable parental consent.

378. <u>Typicality.</u> (Rule 23(a)(3)). Plaintiffs' claims are typical of the claims of members of the proposed Classes and Subclass because, among other things, Plaintiffs and members of the Classes and Subclass sustained similar injuries as a result of Defendants' uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Defendants.

379. <u>Adequacy.</u> (Rule 23(a)(4)). Plaintiffs will fairly and adequately protect the interests of the proposed Classes and Subclass. Plaintiffs' interests do not conflict with the interests of the Classes and Subclass members and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Classes and Subclass.

380. <u>Predominance & Superiority</u> (Rule 23(b)(3)). In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class and Subclass members, and a class action is superior to individual

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to individual Plaintiffs is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action devise presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

381. <u>Final Declaratory or Injunctive Relief</u> (Rule 23(b)(2)). Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed Classes and Subclass, making final declaratory or injunctive relief appropriate with respect to the proposed Classes and Subclass as a whole.

382. <u>Particular Issues</u> (Rule 23(c)(4)). Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claim consists of particular issues that are common to all Class and Subclass members and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

## <u>COUNT 1</u>

### *Intrusion Upon Seclusion*

### *(Brought on Behalf of the Multi-state Class)*

383. Plaintiffs repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

384. Plaintiffs and Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Plaintiffs' and Class members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious collection and tracking of Plaintiffs' children's personal information employed or otherwise enabled by the Musical.ly App.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

385.     The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and Class Members' behavior through their access to Plaintiffs' and Class members' private mobile devices. It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

386.     Defendants intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally designing the App to surreptitiously obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the technologies and activities described herein.

387.     These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, the complaint filed against Defendants by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Class members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity. Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiffs and Class members-in one of the most private spaces available to an individual in modern life-and to allow third-parties to do the same.

388.     Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

389.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

390.     As a result of Defendants' actions, Plaintiffs and Class members seek injunctive relief in the form of Defendants' cessation of tracking practices in violation of COPPA and destruction of all personal data obtained in violation of COPPA.

391.     As a result of Defendants' actions, Plaintiffs and Class members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendants' actions—which were malicious, oppressive, willful—

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT 2

### *VIOLATIONS OF ALABAMA CONSUMER PROTECTION ACT,*

### *Ala. Code §§ 8-19-1, et seq.*

392.    Plaintiffs individually and on behalf of the Alabama Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

393.    Defendants are "persons" as defined by Ala. Code § 8-19-3(5).

394.    Plaintiffs and the other Alabama Subclass members are "consumers" as defined by Ala. Code § 8-19-3(2).

395.    Defendants received notice pursuant to Ala. Code § 8-19-10(e) concerning its wrongful conduct as alleged herein by Plaintiffs and Alabama Subclass members.

396.    Defendants advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

397.    Defendants engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

398.    Plaintiffs and Alabama Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

399.    Defendants' deceptive acts and practices caused substantial injury to Plaintiffs and Alabama Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

400.    Plaintiffs and Alabama Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

$100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

## COUNT 3

### VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT,

### Ariz. Rev. Stat. §§ 44-1521, et seq.

401.    Plaintiffs individually and on behalf of the Arizona Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

402.    Defendants are "persons" as defined by Ariz. Rev. Stat. § 44-1521(6).

403.    Defendants advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

404.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521(5)) in violation of Ariz. Rev. Stat. § 44-1522(A), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

405.    Plaintiffs and Arizona Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

406.    Plaintiffs Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 4

### ARKANSAS DECEPTIVE TRADE PRACTICES ACT,

### Ark. Code Ann. §§ 4-88-101, et seq.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

407.    Plaintiffs individually and on behalf of the Arkansas Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

408.    Defendants are "persons" as defined by Ark. Code Ann. § 4-88-102(5).

409.    Defendants' products and services are "goods" and "services" as defined by Ark. Code Ann. §§ 4-88-102(4) and (7).

410.    Defendants advertised, offered, or sold goods or services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

411.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

412.    Defendants engaged in acts of deception and false pretense in connection with the sale and advertisement of services in violation of Ark. Code Ann. § 4-88-1-8(1) and concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression or omission in violation of Ark. Code Ann. § 4-88-1-8(2), and engaged in deceptive and unconscionable trade practices defined in Ark. Code Ann. § 4-88-107, by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

413.    Plaintiffs and Arkansas Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

414.    Plaintiffs and Arkansas Subclass members seek all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 5

### *CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY*

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

415.     Plaintiffs individually and on behalf of the California Subclass repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

416.     Plaintiffs and California Subclass members have reasonable expectations of privacy in their mobile devices and their online behavior, generally.

417.     The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and Class Members' behavior through their access to Plaintiffs' and Class members' private mobile devices. It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

418.     Defendants intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally designing the App to surreptitiously obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the technologies and activities described herein.

419.     These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, the complaint filed against Defendants by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and California Subclass members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity. Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiffs and California Subclass members-in one of the most private spaces available to an individual in modern life-and to allow third-parties to do the same.

420.     Plaintiffs and California Subclass members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

421.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and California Subclass members.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

422.    As a result of Defendants' actions, Plaintiffs and California Subclass members seek injunctive relief in the form of destruction of all personal data obtained.

423.    As a result of Defendants' actions, Plaintiffs and California Subclass members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and California Subclass members seek punitive damages because Defendants' actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT 6

### *CALIFORNIA CONSUMERS LEGAL REMEDIES ACT*

### *Cal. Civ. Code §§ 1750 -1784, et seq.*

424.    Plaintiffs repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

425.    Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

426.    Defendants' products and services are "goods" and "services" as defined by Cal. Civ. Code § 1761(a) and (b).

427.    Defendants advertised, offered, or sold goods or services in California and engaged in trade or commerce directly or indirectly affecting the people of California.

428.    Defendants' engaged in acts of deception and other policies, acts, and practices were designed to, and did, induce the use of the Products for personal, family, or household purposes by Plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

   a.    § 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification of goods or services.

   b.    § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

   c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

d.      § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

429.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

430.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs provided a letter to Defendants with notice of its alleged violations of the CLRA, demanding that Defendants correct such violations, and providing it with the opportunity to correct its business practices. If Defendants do not thereafter correct its business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

431.    Pursuant to California Civil Code § 1780, Plaintiffs seek injunctive relief, their reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT 7

### *VIOLATIONS OF COLORADO CONSUMER PROTECTION ACT,*
### *Colo. Rev. Stat. §§ 6-1-101, et seq.*

432.    Plaintiffs individually and on behalf of the Colorado Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

433.    Defendants are "persons" as defined by Colo. Rev. Stat. § 6-1-102(6).

434.    Defendants engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

435.    Plaintiffs and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Defendants or successors in interest to actual consumers.

436.    Defendants engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1)(g), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

437.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

438.     As a direct and proximate result of Defendants' deceptive trade practices, Colorado Subclass members suffered injuries to their legally protected interests.

439.     Defendants' deceptive trade practices significantly impact the public.

440.     Plaintiffs and Colorado Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendants' bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 8

### VIOLATIONS OF CONNECTICUT TRADE PRACTICES ACT,

### Conn. Gen. Stat. §§ 42-110g, et seq.

441.     Plaintiffs individually and on behalf of the Connecticut Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

442.     Defendants are "persons" as defined by Conn. Gen. Stat. § 42-110a(3).

443.     Defendants are engaged in "trade" or "commerce" as those terms are defined by Conn. Gen. Stat. § 42-110a(4).

444.     At the time of filing this Complaint, Plaintiffs have sent notice to the Attorney General and Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c). Plaintiffs will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of Consumer Protection.

445.     Defendants advertised, offered, or sold goods or services in Connecticut, and engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

446.     Defendants engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of the Conn. Gen. Stat. § 42-110b, by , among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

447.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Connecticut Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

448.     Defendants' deceptive acts and practices caused substantial, ascertainable injury to Plaintiffs and Connecticut Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

449.     Defendants' violations of Connecticut law were done with reckless indifference to Plaintiffs and Connecticut Subclass members or was with an intentional or wanton violation of those rights.

450.     Plaintiffs and Connecticut Subclass members request damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

## COUNT 9

### DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT
### D.C. Code §§ 28-3904, et seq.

451.     Plaintiffs individually and on behalf of the District of Columbia Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

452.     Defendants are "persons" as defined by D.C. Code § 28-3901(a)(1).

453.     Defendants are "merchants" as defined by D.C. Code § 28-3901(a)(3).

454.     Plaintiffs and District of Columbia Subclass members are "consumers" who purchased or received goods or services for personal, household, or family purposes, as defined by D.C. Code § 28-3901.

455.     Defendants advertised, offered, or sold goods or services in District of Columbia and engaged in trade or commerce directly or indirectly affecting the people of District of Columbia.

456.     Defendants engaged in unfair, unlawful, and deceptive trade practices, misrepresentations, and the concealment, suppression, and omission of material facts with

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

respect to the sale and advertisement of goods and services with the App in violation of D.C. Code § 28-3904, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

457. As a result of Defendants' deceptive acts and practices, Plaintiffs and District of Columbia Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

458. Defendants intended to mislead Plaintiffs and District of Columbia Subclass members and induce them to rely on its misrepresentations and omissions.

459. The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and District of Columbia Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

460. Defendants acted intentionally, knowingly, and maliciously to violate the District of Columbia's Consumer Protection Procedures Act, and recklessly disregarded Plaintiffs and District of Columbia Subclass members' rights.

461. Plaintiffs and District of Columbia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, attorneys' fees and costs, the greater of treble damages or $1500 per violation, and any other relief that the Court deems proper.

## COUNT 10

### *VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,*
### *Fla. Stat. §§ 501.201, et seq.*

462. Plaintiffs individually and on behalf of the Florida Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

463. Plaintiffs and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

464.     Defendants advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

465.     Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

466.     Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

467.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Florida Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

468.     Plaintiffs and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## **COUNT 11**

### *VIOLATIONS OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT,*
### *Ga. Code Ann. §§ 10-1-390, et seq.*

469.     Plaintiffs individually and on behalf of the Georgia Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

470.     Plaintiffs and Georgia Subclass members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

471.     Defendants received notice pursuant to Ga. Code Ann. § 10-1-399 concerning its wrongful conduct as alleged herein by Plaintiffs Benton, Byrd, Natacha Charles, Kathleen Clark, Freeman, Ancheta Johnson, Tawana Johnson, McKean, Pope, Ross-Gober, Rowell, Slaughter, and Wallace and Georgia Subclass members.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

472.     Defendants engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code Ann. § 10-1-372(a)(5), by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

473.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Georgia Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

474.     Plaintiffs and Georgia Subclass members seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under Ga. Code Ann. § 10-1-373.

## COUNT 12

### *UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW*
### *(Haw. Rev. Stat. § 480, et seq.)*

475.     Plaintiffs individually and on behalf of the Hawaii Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

476.     Defendants, Plaintiffs and the Hawaii State Class members are "persons" within the meaning of Haw. Rev. Stat. § 480-1.

477.     The Hawaii State Class members are "consumers" within the meaning of Haw. Rev. Stat. § 480-1.

478.     Defendants are engaged in trade or commerce.

479.     The Hawaii Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." Haw. Rev. Stat. § 480-2(a). In the course of their business. Defendants violated Haw. Rev. Stat. § 480-2(a), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

480.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Hawaii Subclass members and Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

481.     Pursuant to Haw. Rev. Stat. § 480-13, the Hawaii State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Hawaii Act.

482.     Plaintiffs and Hawaii Subclass members seek all monetary and non-monetary relief allowed by law.

## COUNT 13

### *VIOLATIONS OF IDAHO CONSUMER PROTECTION ACT,*
### *Idaho Code §§ 48-601, et seq.*

483.     Plaintiffs individually and on behalf of the Idaho Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

484.     Defendants are "persons" as defined by Idaho Code § 48-602(1).

485.     Defendants' conduct as alleged herein pertained to "goods" and "services" as defined by Idaho Code §§ 48-602(6) and (7).

486.     Defendants advertised, offered, or sold goods or services in Idaho and engaged in trade or commerce directly or indirectly affecting the people of Idaho.

487.     Defendants engaged in unfair and deceptive acts or practices, and unconscionable acts and practices, in the conduct of trade and commerce with respect to the sale and advertisement of goods and services, in violation of Idaho Code § 48-603(5), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

488.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Idaho Subclass members and Class members were injured and damaged in that they suffered a loss of

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

489.    Plaintiffs and Idaho Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## COUNT 14

### VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT,

### 815 Ill. Comp. Stat. §§ 505, et seq.

490.    Plaintiffs individually and on behalf of the Illinois Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

491.    Defendants are "persons" as defined by 815 Ill. Comp. Stat. § 510/1(5).

492.    Defendants engaged in deceptive trade practices in the conduct of its business, in violation of 815 I Ill. Comp. Stat. § 510/2(a), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

493.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

494.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

495.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Illinois Subclass members and Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

496.    Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## COUNT 15

### VIOLATIONS OF INDIANA DECEPTIVE CONSUMER SALES ACT,

### Ind. Code §§ 24-5-0.5-1, et seq.

497.    Plaintiffs individually and on behalf of the Indiana Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

498.    Defendants are "persons" as defined by Ind. Code § 24-5-0.5-2(a)(2).

499.    Defendants are "suppliers" as defined by Ind. Code § 24-5-0.5-2(a)(3) because it regularly engages in or solicits "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(3)(A).

500.    Defendants engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a) by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

501.    Defendants' acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

502.    The injury to consumers from Defendants' conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

503.    Defendants' acts and practices were "abusive" for numerous reasons (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction; consumers lacked an understanding of the material risks

and costs of a variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Defendants; (d) because Defendants took unreasonable advantage of consumers' reasonable reliance that it was providing truthful and accurate information.

504.     Defendants also engaged in "deceptive" acts and practices in violation of Ind. Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b) by (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have and (b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

505.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Indiana Subclass members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Plaintiffs and Indiana Subclass members' knowledge or verifiable parental consent.

506.     Defendants received notice pursuant to Ind. Code § 24-5-0.5-5(a) concerning its wrongful conduct as alleged herein by Plaintiffs and Indiana Subclass members. Defendants' conduct includes incurable deceptive acts that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

507.     Defendants' violations present a continuing risk to Plaintiffs and Indiana Subclass members as well as to the general public.

508.     Plaintiffs and Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

**<u>COUNT 16</u>**

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

### *VIOLATIONS OF IOWA'S PRIVATE RIGHT OF ACTION*
### *FOR CONSUMER FRAUDS ACT,*
### *Iowa Code §§ 714H, et seq.*

509.    Plaintiffs individually and on behalf of the Iowa Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

510.    Defendants are "persons" as defined by Iowa Code § 714H.2(7).

511.    Plaintiffs Lisa Clark, Copeland, and Gillette and Iowa Subclass members are "consumers" as defined by Iowa Code § 714H.2(3).

512.    Defendants' conduct described herein violates Iowa Code § 714H.3(2)(f) because it engaged in "[a]n act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces." *See* Iowa Code § 714.16(1)(n). Defendants did this by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

513.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Illinois Subclass members and Class members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

514.    Plaintiffs have provided the requisite notice to the Iowa Attorney General, the office of which approved the filing of this class action lawsuit pursuant to Iowa Code § 714H.7.

515.    Plaintiffs and Iowa Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, damages, punitive damages, and reasonable attorneys' fees and costs.

### **COUNT 17**
### *VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT,*
### *Kan. Stat. Ann §§ 50-623, et seq.*

516.    Plaintiffs individually and on behalf of the Kansas Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

517.    Kan. Stat. Ann. §§ 50-623, *et seq.*, is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

518.    The Plaintiffs and Kansas Subclass members are "consumers" as defined by Kan. Stat. Ann. § 50-624(b).

519.    The acts and practices described herein are "consumer transactions," as defined by Kan. Stat. Ann. § 50-624(c).

520.    Defendants are "suppliers" as defined by Kan. Stat. Ann. § 50-624(l).

521.    Defendants advertised, offered, or sold goods or services in Kansas and engaged in trade or commerce directly or indirectly affecting the people of Kansas.

522.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

523.    Defendants also engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Kan. Stat. Ann. § 50-627 by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian. Further, Defendants made misrepresentations and false statements concerning the App, knowingly taking advantage of the children of Plaintiffs and Kansas Subclass members without reasonably protecting their interests, due to their lack of knowledge (*see* Kan. Stat. Ann. § 50-627(b)(1)); and requiring Plaintiffs and Kansas Subclass members to enter into a consumer transaction on terms that Defendants knew were substantially one-sided in favor of Defendants (*see* Kan. Stat. Ann. § 50-627(b)(5)).

524.    Plaintiffs and Kansas Subclass members had unequal bargaining power with respect to their purchase and/or use of Defendants' Products because of Defendants' omissions and misrepresentations.

525.    The above unfair, deceptive, and unconscionable practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Plaintiffs and Kansas Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

526.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Kansas Subclass members and Class members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

527.    The Plaintiffs and Kansas Subclass members seek all monetary and non-monetary relief allowed by law, including civil penalties or actual damages (whichever is greater), under Kan. Stat. Ann. §§ 50-634 and 50-636; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 18

### *VIOLATIONS OF KENTUCKY CONSUMER PROTECTION ACT,*

### *Ky. Rev. Stat. §§ 367.110, et seq.*

528.    Plaintiffs individually and on behalf of the Kentucky Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

529.    Defendants are "persons" as defined by Ky. Rev. Stat. § 367.110(1).

530.    Defendants advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. § 367.110(2).

531.    Defendants engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170 by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

532.    The Kentucky Plaintiffs and Kentucky Subclass members' purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Defendants' unlawful acts and practices.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

533. The above unlawful acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

534. As a result of Defendants' deceptive acts and practices Plaintiffs and Kentucky Subclass members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

535. Plaintiffs and Kentucky Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 19

### *VIOLATIONS OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW,*

### *La. Rev. Stat. Ann. §§ 51:1401, et seq.*

536. Plaintiffs individually and on behalf of the Louisiana Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

537. The Louisiana Plaintiffs and the Louisiana Subclass members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

538. Plaintiffs and Louisiana Subclass members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

539. Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

540. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation. Defendants engaged in unfair or deceptive acts under La. Rev. Stat. Ann. §

51:1405(A), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

541. Defendants' unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Louisiana Plaintiffs and Louisiana Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

542. As a result of Defendants' deceptive acts and practices Plaintiffs and Louisiana Subclass members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

543. Plaintiffs and Louisiana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; treble damages for Defendants knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

## COUNT 20

### *VIOLATIONS OF MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT,*
### *Me. Rev. Stat. tit. 10 §§ 1212, et seq.*

544. Plaintiffs Bois and Jordan, individually and on behalf of the Maine Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

545. Defendants are "persons" as defined by Me. Rev. Stat. tit. 10 § 1211(5).

546. Defendants advertised, offered, or sold goods or services in Maine and engaged in trade or commerce directly or indirectly affecting the people of Maine.

547. Defendants engaged in deceptive trade practices in the conduct of its business, in violation of Me. Rev. Stat. tit. 10 § 1212, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

548.    As a result of Defendants' deceptive acts and practices Plaintiffs and Maine Subclass members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

549.    Plaintiffs and Maine Subclass members are likely to be damaged by Defendants' ongoing deceptive trade practices.

550.    Plaintiffs and the Maine Subclass members seek all monetary and non-monetary relief allowed by law, including damages or restitution, injunctive or other equitable relief, and attorneys' fees and costs.

## <u>COUNT 21</u>

### *VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT,*

### *Md. Code Ann., Com. Law §§ 13-301, et seq.*

551.    Plaintiffs individually and on behalf of the Maryland Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

552.    Defendants are "persons" as defined by Md. Code Ann., Com. Law § 13-101(h).

553.    Defendants' conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined Md. Code Ann., Com. Law §§ 13-101(i) and 13-303.

554.    Maryland Subclass members are "consumers" as defined by Md. Code Ann., Com. Law § 13-101(c)(1).

555.    Defendants advertise, offer, or sell "consumer goods"" as defined by Md. Code Ann., Com. Law § 13-101(d).

556.    Defendants advertised, offered, or sold goods in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

557.    Defendants engaged in unfair and deceptive trade practices, in violation of Md. Code Ann., Com. Law § 13-301 by (a) making false or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers; (b) representing that consumer goods or services have a characteristic that they do not have; (c)

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

representing that consumer goods are of a particular standard, quality, or grade that they are not; and (d) failing to state a material fact where the failure deceives or tends to deceive.

558.    Defendants engaged in these unfair and deceptive trade practices by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian in connection with offering for sale or selling consumer goods in violation of Md. Code Ann., Com. Law § 13-303.

559.    As a result of Defendants' deceptive acts and practices Plaintiffs and Maryland Subclass members were injured and damaged in that they suffered a loss privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

560.    Plaintiffs and Maryland Subclass members seek all monetary and non-monetary relief allowed by law, including damages, injunctive relief, and attorneys' fees and costs.

## COUNT 22

### VIOLATIONS OF DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW,

### Mass. Gen. Laws ch. 93a, § 1, et seq.

561.    Plaintiffs individually and on behalf of the Massachusetts Subclass repeat and re-allege each preceding paragraph as though fully set forth herein.

562.    Defendants, Plaintiffs, and Massachusetts Subclass members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

563.    Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

564.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

565.    Defendants' false, misleading and deceptive statements and representations of fact were and are directed to consumers and Defendants surreptitiously collected children's private information without obtaining parental consent, in violation of applicable laws and Defendants

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

566. Defendants' false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

567. Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

568. As a result of Defendants' deceptive acts and practices, Plaintiffs and Massachusetts Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

569. Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs and Massachusetts Subclass members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiffs and each Massachusetts Class member.

570. On X, Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Because Defendants failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which the Massachusetts Plaintiffs and the Massachusetts Class are entitled.

## COUNT 23

### *VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT,*

### *Mich. Comp. Laws Ann. §§ 445.903, et seq.*

571. Plaintiffs individually and on behalf of the Michigan Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

572. Plaintiffs and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws Ann. § 445.902(d).

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

573. Defendants offered and sold goods in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.902(g).

574. Defendants engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1) by (a) representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc). Defendants violated § 445.903(1) , by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

575. As a result of Defendants' deceptive acts and practices, Plaintiffs and Michigan Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

576. Plaintiffs and Michigan Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and any other relief that the Court deems just and proper.

## **COUNT 24**

### *VIOLATIONS OF MINNESOTA CONSUMER FRAUD ACT,*
### *Minn. Stat. §§ 325F.68, et seq. and Minn. Stat. §§ 8.31, et seq.*

577. Plaintiffs individually and on behalf of the Minnesota Subclass, repeat and re-alleges all previously alleged paragraphs, as if fully alleged herein.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

578.    Plaintiffs and Minnesota Subclass members are each a "person" as defined by Minn. Stat. § 325F.68(3).

579.    Defendants' goods, services, commodities, and intangibles (specifically, its App) is "merchandise" as defined by Minn. Stat. § 325F.68(2).

580.    Defendants engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

581.    Defendants engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein, and Defendants violated § 445.903(1), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

582.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

583.    Defendants intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

584.    Defendants' fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used the App.

585.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing and using the App.

586.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including damages, injunctive or other equitable relief, and attorneys' fees, disbursements, and costs.

## COUNT 25

*VIOLATIONS OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT,*

*Minn. Stat. §§ 325D.43, et seq.*

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

587.    Plaintiffs individually and on behalf of the Minnesota Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

588.    By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions: representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1) and (5); representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1) and (7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1) and (13). Defendants violated Minn. Stat. § 325D.44, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

589.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Minnesota Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

590.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

## COUNT 26

### *VIOLATIONS OF MISSISSIPPI CONSUMER PROTECTION ACT,*
### *Miss. Code Ann. §§ 75-24-1, et seq.*

591.    Plaintiffs individually and on behalf of the Mississippi Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

592.    Defendants are "persons" as defined by Miss. Code Ann. § 75-24-3.

593.    Defendants advertised, offered, or sold goods or services in Mississippi and engaged in trade or commerce directly or indirectly affecting the people of Mississippi, as defined by Miss. Code Ann. § 75-24-3, by, among other things, Defendants failing to obtain

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

594.  Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

595.  As a result of Defendants' deceptive acts and practices, Plaintiffs and Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

596.  Defendants' violations present a continuing risk to the Plaintiffs and Mississippi Subclass members as well as to the general public as, *inter alia*, its omissions and misrepresentations have not been corrected.

597.  Plaintiffs and Mississippi Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution and other relief under Miss. Code Ann. § 75-24-11, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT 27

### *VIOLATIONS OF MISSOURI MERCHANDISE PRACTICES ACT,*
### *Mo. Rev. Stat. §§ 407.010, et seq.*

598.  Plaintiffs individually and on behalf of the Missouri Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

599.  Defendants are a "person" as defined by Mo. Rev. Stat. § 407.010(5).

600.  Defendants advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

601.  Plaintiffs and Missouri Subclass members purchased or leased goods or services primarily for personal, family, or household purposes.

602.  Defendants engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Mo. Rev. Stat. § 407.020(1), as described herein by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

603.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Missouri Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

604.     Plaintiffs and Missouri Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

## COUNT 28

### *VIOLATIONS OF NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT,*
### *Neb. Rev. Stat. §§ 87-301, et seq.*

605.     Plaintiffs individually and on behalf of the Nebraska Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

606.     Plaintiffs and Nebraska Subclass members are "persons" as defined by Neb. Rev. Stat. § 87-301(19).

607.     Defendants advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

608.     Defendants engaged in deceptive trade practices in the course of its business, in violation of Neb. Rev. Stat. §§ 87-302(a)(5),(8) and (10) by representing that goods and services have characteristics, uses, benefits, or qualities that they do not have; representing that goods and services are of a particular standard, quality, or grade if they are of another; and advertising its goods and services with intent not to sell them as advertised and in a manner calculated or tending to mislead or deceive. Defendants violated Neb. Rev. Stat. §§ 87-302(a)(5),(8) and (10), by, among other things, Defendants failing to obtain consent from parent or guardian before

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

609.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Nebraska Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

610.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Nebraska Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in using the app.

611.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

612.    Defendants intended to mislead the Plaintiffs and Nebraska Subclass members and induce them to rely on its misrepresentations and omissions.

613.    Plaintiffs and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, civil penalties, and attorneys' fees and costs.

**COUNT 29**

***VIOLATIONS OF NEVADA DECEPTIVE TRADE PRACTICES ACT,***

***Nev. Rev. Stat. Ann. §§ 598.0903, et seq.***

614.    Plaintiffs individually and on behalf of the Nevada Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

615.    Defendants advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

616.    Defendants engaged in deceptive trade practices in the course of its business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923 by knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. § 598.0915(5); representing that goods or services for sale are of a

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

particular standard, quality, or grade when Defendants knew or should have known that they are of another standard, quality, or grade in violation of Nev. Rev. Stat. § 598.0915(7); advertising goods or services with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9); failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(2); and violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(3). Defendants violated Nev. Rev. Stat. §§ 598.0915 and 598.0923, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

617. As a result of Defendants' deceptive acts and practices, Plaintiffs and Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

618. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

619. Defendants acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and Nevada Subclass members' rights.

620. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Nevada Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in using the App.

621. Plaintiffs and Nevada Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and attorneys' fees and costs.

### COUNT 30

### *NEW JERSEY CONSUMER FRAUD ACT,*

### *N.J. Stat. Ann. §§ 56:8-1, et seq.*

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

622. Plaintiffs individually and on behalf of the New Jersey Subclass, repeat and allege all previous Paragraphs, as if fully alleged herein.

623. Defendants are a "persons," as defined by N.J. Stat. Ann. § 56:8-1(d).

624. Defendants sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

625. The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, et seq., prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

626. Defendants violated the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

627. As a result of Defendants' deceptive acts and practices, Plaintiffs and New Jersey Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

628. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Personal Information.

629. Defendants intended to misleads Plaintiffs and New Jersey Subclass members and induce them to rely on its misrepresentations and omissions.

630. Plaintiffs and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## COUNT 31

### *VIOLATIONS OF NEW MEXICO UNFAIR PRACTICES ACT,*

### *N.M. Stat. Ann. §§ 57-12-2, et seq.*

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

631.    Plaintiffs individually and on behalf of the New Mexico Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

632.    Defendants are "persons" as meant by N.M. Stat. Ann. § 57-12-2.

633.    Defendants were engaged in "trade" and "commerce" as meant by N.M. Stat. Ann. § 57-12-2(C) when engaging in the conduct alleged.

634.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2, *et seq.*, prohibits both unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce.

635.    Defendants engaged in unconscionable, unfair, and deceptive acts and practices in connection with the sale of goods or services in the regular course of its trade or commerce, including the following: knowingly representing that its goods and services have characteristics, benefits, or qualities that they do not have, in violation of N.M. Stat. Ann. § 57-12-2(D)(5); knowingly representing that its goods and services are of a particular standard or quality when they are of another in violation of N.M. Stat. Ann. § 57-12-2(D)(7); knowingly using exaggeration, innuendo, or ambiguity as to a material fact or failing to state a material fact where doing so deceives or tends to deceive in violation of N.M. Stat. Ann. § 57-12-2(D)(14); taking advantage of the lack of knowledge, experience, or capacity of its consumers to a grossly unfair degree to Plaintiffs' and the New Mexico Subclass' detriment in violation of N.M. Stat. Ann. § 57-2-12(E)(1); and performing these acts and practices in a way that results in a gross disparity between the value received by Plaintiffs and the New Mexico Subclass and the price paid, to their detriment, in violation of N.M. Stat. Ann. § 57-2-12(E)(2). Defendants violated §§ 57-12-2, *et seq.,* by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

636.    As a result of Defendants' deceptive acts and practices, Plaintiffs and New Mexico Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

637.    As a direct and proximate result of Defendants' deceptive acts and practices, the Plaintiffs and New Mexico Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in using the app.

638.    Plaintiffs and New Mexico Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages or statutory damages of $100 (whichever is greater), treble damages or statutory damages of $300 (whichever is greater), and reasonable attorneys' fees and costs.

## COUNT 32

### *Violation of N.Y. Gen. Bus. Law § 349*

639.    Plaintiffs individually and on behalf of the New York Subclass repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

640.    Plaintiffs and Class members are "persons" within the meaning of New York General Business Law § 349(h).

641.    Defendants are a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

642.    Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

643.    Defendants' conduct constitutes "deceptive acts or practices" within the meaning of N.Y. Gen. Bus. Law § 349. Defendants violated N.Y. Gen. Bus. Law § 349, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

644.    Defendants' conduct occurred in the conduct of trade or commerce, and was directed at consumers.

645.    As a result of Defendants' deceptive acts and practices, Plaintiffs and New York Subclass injured and damaged in that they suffered a loss of privacy and autonomy through

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

646.     Because Defendants' willful and knowing conduct caused injury to Plaintiffs and Class members, the Class seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349. Plaintiffs and New York Subclass members seek punitive damages because Defendants' actions - which were malicious, oppressive, willful - were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT 33

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

### (N.C. Gen. Stat. §§ 75-1.1, et seq.)

647.     Plaintiffs individually and on behalf of the North Carolina Subclass repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

648.     At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

649.     The conduct of Defendants as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

650.     Defendants' false, misleading and deceptive statements and representations of fact were and are directed to consumers and Defendants surreptitiously collected children's private information without obtaining parental consent, in violation of applicable laws.

651.     Defendants' false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

652. Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

653. Defendants violated N.C. Gen. Stat. §§ 75-1.1, *et seq.,* by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

654. As a result of Defendants' deceptive acts and practices, Plaintiffs and Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

655. Plaintiffs and North Carolina Subclass members suffered actual injury as a result of Defendants' unfair actions. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

656. Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

657. Plaintiffs and each member of the North Carolina Subclass have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action

## COUNT 34

### *Violations of North Dakota Century Code*
### *N.D. Cent. Code §§ 51-15:01-11, et seq.*

658. Plaintiffs individually and on behalf of the North Dakota Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

659. Defendants are a "persons," as defined by N.D. Cent. Code § 51-15:01(4).

660. Defendants engaged in deceptive, misrepresentative, and unconscionable acts and practices in connection with consumer transactions, in violation of N.D. Cent. Code § 51-15:02, as described herein by, among other things, Defendants failing to obtain consent from parent or

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

661.     As a result of Defendants' deceptive acts and practices Plaintiffs and North Dakota Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

662.     Plaintiffs and North Dakota Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

**COUNT 35**

***VIOLATIONS OF OHIO CONSUMER SALES PRACTICES ACT,***

***Ohio Rev. Code Ann. §§ 1345.01, et seq.***

663.     Plaintiffs individually and on behalf of the Ohio Subclass Members, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

664.     The Plaintiffs and Ohio Subclass members are "persons," as defined by Ohio Rev. Code Ann. § 1345.01(B).

665.     Defendants were "suppliers" engaged in "consumer transactions," as defined by Ohio Rev. Code Ann. § 1345.01(A) and (C).

666.     Defendants advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

667.     As a result of Defendants' deceptive acts and practices, Plaintiffs and Ohio Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

668.     The Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

**COUNT 36**

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

### VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT,

### Okla. Stat. tit. 15, §§ 751, et seq.

669.    Plaintiffs individually and on behalf of the Oklahoma Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

670.    Defendants are "persons" as meant by Okla. Stat. tit. 15, § 752(1).

671.    Defendants' advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

672.    Defendants, in the course of their business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following: making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5); representing, knowingly or with reason to know, that the subjects of its consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(7); advertising, knowingly or with reason to know, the subjects of its consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753(8); committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20). Defendants violated Okla. Stat. tit. 15, § 753, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

673.    As a result of Defendants' deceptive acts and practices, Plaintiffs and the Oklahoma Subclass were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

---

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

674.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

675.    The above unlawful practices and acts by Defendants were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to the Oklahoma Plaintiffs and Oklahoma Subclass members.

676.    As a direct and proximate result of Defendants' deceptive acts and practices, the Plaintiffs and Oklahoma Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendants Products.

677.    Plaintiffs and Oklahoma Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

## COUNT 37

### *VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW,*

*(73 Pa. Cons. Stat. §§ 201-2 and 201-3, et seq.)*

678.    Plaintiffs individually and on behalf of the Pennsylvania Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

679.    Defendants are "persons" as meant by 73 Pa. Cons. Stat. § 201-2(2).

680.    Plaintiffs and Pennsylvania Subclass members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

681.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following: representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii)); and advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)). Defendants violated 73 Pa. Cons. Stat. Ann. § 201-

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

3, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

682.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Pennsylvania Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

683.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

684.    Plaintiffs and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

## COUNT 38

### *VIOLATIONS OF RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT,*

### *(R.I. Gen. Laws §§ 6-13.1, et seq.)*

685.    Plaintiffs individually and on behalf of the Rhode Island Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

686.    Plaintiffs and Rhode Island Subclass members are each a "person," as defined by R.I. Gen. Laws § 6-13.1-1(3).

687.    Plaintiffs and Rhode Island Subclass members purchased goods and services for personal, family, or household purposes.

688.    Defendants advertised, offered, or sold goods or services in Rhode Island and engaged in trade or commerce directly or indirectly affecting the people of Rhode Island, as defined by R.I. Gen. Laws § 6-13.1-1(5).

689.    Defendants engaged in unfair and deceptive acts and practices, in violation of R.I. Gen. Laws § 6-13.1-2 by representing that its goods and services have characteristics, uses, and benefits that they do not have (R.I. Gen. Laws § 6-13.1-52(6)(v)); representing that its goods and

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

services are of a particular standard or quality when they are of another (R.I. Gen. Laws § 6-13.1-52(6)(vii)); advertising goods or services with intent not to sell them as advertised (R.I. Gen. Laws § 6-13.1-52(6)(ix)); engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding (R.I. Gen. Laws § 6-13.1-52(6)(xii)); engaging in any act or practice that is unfair or deceptive to the consumer (R.I. Gen. Laws § 6-13.1-52(6)(xiii)); and using other methods, acts, and practices that mislead or deceive members of the public in a material respect (R.I. Gen. Laws § 6-13.1-52(6)(xiv)). Defendants violated R.I. Gen. Laws §§ 6-13.1, *et seq.*, by, among other things, failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

690.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Rhode Island Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

691.    Plaintiffs and Rhode Island Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $200 per Subclass Member (whichever is greater), punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs.

## <u>COUNT 39</u>

### *VIOLATIONS OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT,*
### *S.C. Code Ann. §§ 39-5-10, et seq.*

692.    Plaintiffs individually and on behalf of the South Carolina Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

693.    Defendants are "persons" as defined by S.C. Code Ann. § 39-5-10(a).

694.    South Carolina's Unfair Trade Practices Act (SC UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20. Defendants violated S.C. Code Ann. § 39-5-20, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

children and by failing to delete personal information collected from children upon the request of the parent or guardian.

695.    Defendants advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

696.    Defendants' acts and practices had, and continue to have, the tendency or capacity to deceive.

697.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

698.    Defendants' business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

699.    Defendants' unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

700.    As a result of Defendants' deceptive acts and practices, Plaintiffs and South Carolina Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

701.    Plaintiffs and South Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including damages for their economic losses, treble damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 40

### VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977
### (Tenn. Code Ann. § 47-18-101, et seq.)

702.    Plaintiffs individually and on behalf of Tennessee Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

703.    At all times relevant herein, Defendants were engaged in commerce in the State of Tennessee.

704. The conduct of Defendants as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers Tennessee; and has the capacity and tendency to deceive the average consumer.

705. Plaintiffs and the Tennessee Subclass members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

706. Defendants engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

707. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104. Defendants violated Tenn. Code § 47-18-104, by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

708. Defendants' false, misleading and deceptive statements and representations of fact that were and are directed to consumers.

709. Defendants' false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

710. Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

711. As a result of Defendants' deceptive acts and practices, Plaintiffs and Tennessee Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

712. Plaintiffs and Tennessee Subclass members suffered actual injury as a result of Defendants' unfair actions.

713. Pursuant to Tenn. Code §§ 47-18-109, 47-18-109, and 47-18-109(a)(3), Plaintiffs and Tennessee Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

attorneys' fees and costs, and any other just and proper relief proscribed by the Tennessee Consumer Protection Act.

714.     Plaintiffs and Tennessee Subclass members have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

## COUNT 41

### VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT,

### *Tex. Bus. & Com. Code Ann. §§ 17.41, et seq.*

715.     Plaintiffs individually and on behalf of the Texas Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

716.     Defendants are "persons" as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

717.     Plaintiffs and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

718.     Defendants advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

719.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

720.     Defendants engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Defendants engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

721.     Consumers, including Plaintiffs Ahmed, Alexander, Talia Green, Toni Green, Hudspeth, Sabrina Jones, Kaplan, Olivia Lawrence, Lett, McKelvy, Moffett, Molina, Neill, Nixon, Proctor, and Valencia and Texas Subclass members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendants.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

722. As a result of Defendants' deceptive acts and practices, Plaintiffs Ahmed, Alexander, Talia Green, Toni Green, Hudspeth, Sabrina Jones, Kaplan, Olivia Lawrence, Lett, McKelvy, Moffett, Molina, Neill, Nixon, Proctor, and Valencia and Texas Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent..

723. Defendants received notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning its wrongful conduct as alleged herein by Plaintiffs and Texas Subclass members. Plaintiffs and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT 42

### *VIOLATIONS OF UTAH CONSUMER SALES PRACTICES ACT,*

### *Utah Code Ann. §§ 13-11-1, et seq.*

724. Plaintiffs individually and on behalf of the Utah Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

725. Defendants are a "persons," as defined by Utah Code Ann. § 13-11-1(5).

726. Defendants are a "suppliers," as defined by Utah Code Ann. § 13-11-1(6), because it regularly solicits, engages in, or enforces "consumer transactions," as defined by Utah Code Ann. § 13-11-1(2).

727. Defendants engaged in deceptive and unconscionable acts and practices in connection with consumer transactions, in violation of Utah Code Ann. § 13-11-4 and § 13-11-5, as described herein and by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

728. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

729.    Defendants intentionally or knowingly engaged in deceptive acts or practices, violating Utah Code Ann. § 13-11-4(2) by: indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; indicating that the subject of a consumer transaction will be supplied in greater quantity (e.g., more data security) than the supplier intends.

730.    Defendants engaged in unconscionable acts and practices that were oppressive and led to unfair surprise, as shown in the setting, purpose, and effect of those acts and practices.

731.    In addition, there was an overall imbalance in the obligations and rights imposed by the consumer transactions in question, based on the mores and industry standards of the time and place where they occurred. There is a substantial imbalance between the obligations and rights of consumers, such as Plaintiffs and the Utah Subclass, who used Defendants' Products based upon the publicly-available information in the marketplace.

732.    Defendants' acts and practices were also procedurally unconscionable because consumers, including Plaintiffs and the Utah Subclass, had no practicable option but to purchase Defendants' Products based upon publicly-available information, despite Defendants' omissions and misrepresentations.

733.    As a result of Defendants' deceptive acts and practices Plaintiffs and Utah Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without Subclass members' knowledge or verifiable parental consent.

734.    Plaintiffs and Utah Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages of $2,000 per violation, amounts necessary to avoid unjust enrichment, under Utah Code Ann. §§ 13-11-19, et seq., injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 43

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

## VERMONT CONSUMER FRAUD ACT

### Vt. Stat. Ann. Tit. 9, §§ 2451, et seq.

735.    Plaintiffs individually and on behalf of the Vermont Subclass, repeats and alleges all previous Paragraphs, as if fully alleged herein.

736.    Plaintiffs and Vermont Subclass members are "consumers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(a).

737.    Defendants' conduct as alleged herein related to "goods" or "services" for personal, family, or household purposes, as defined by Vt. Stat. Ann. tit. 9, § 2451a(b).

738.    Defendants are "sellers," as defined by Vt. Stat. Ann. tit. 9, § 2451a(c).

739.    Defendants advertised, offered, or sold goods or services in Vermont and engaged in trade or commerce directly or indirectly affecting the people of Vermont.

740.    Defendants engaged in unfair and deceptive acts or practices, in violation of Vt. Stat. Tit. 9, § 2453(a), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

741.    Defendants intended to mislead Plaintiffs and Vermont Subclass members and induce them to rely on its misrepresentations and omissions.

742.    As a result of Defendants' deceptive acts and practices Plaintiffs and Vermont Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

743.    Defendants' acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

744.    Defendants are presumed, as a matter of law under Vt. Stat. Ann. tit. 9, § 2457, to have intentionally violated the Vermont Consumer Protection Act because it failed to sell goods or services in the manner and of the nature advertised or offered.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

745.    Defendants' violations present a continuing risk to Plaintiffs and Vermont Subclass members as well as to the general public.

746.    Plaintiffs and Vermont Subclass members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, restitution, actual damages, disgorgement of profits, treble damages, punitive/exemplary damages, and reasonable attorneys' fees and costs.

## COUNT 44

*VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT,*

*Va. Code Ann. §§ 59.1-196, et seq.*

747.    Plaintiffs individually and on behalf of the Virginia Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

748.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

749.    Defendants are "persons" as defined by Va. Code Ann. § 59.1-198.

750.    Defendants are "suppliers," as defined by Va. Code Ann. § 59.1-198.

751.    Defendants engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendants advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

752.    Defendants engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

753.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

754.    The above-described deceptive acts and practices also violated the following provisions of Va. Code Ann. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and advertising goods or services

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised. Defendants violated Va. Code Ann. § 59.1-200(A), by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

755. As a result of Defendants' deceptive acts and practices Plaintiffs and Virginia Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

756. Plaintiffs and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT 45

### VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT,
### Wash. Rev. Code Ann. §§ 19.86.020, et seq.

757. Plaintiffs individually and on behalf of the Washington Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

758. Defendants are "persons," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

759. Defendants advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010 (2).

760. Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, as described herein and by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

761.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

762.     Defendants' conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, and/or injured persons and had and has the capacity to injure persons. Further, its conduct affected the public interest, including the at least hundreds of thousands of Washingtonians affected by Defendants deceptive business practices.

763.     As a result of Defendants' deceptive acts and practices Plaintiffs and Washington Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

764.     Plaintiffs and Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## COUNT 46

### VIOLATIONS OF WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT, W. Va. Code §§ 46A-6-101, et seq.

765.     Plaintiffs individually and on behalf of the West Virginia Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

766.     Plaintiffs and West Virginia Subclass members are "consumers," as defined by W. Va. Code § 46A-6-102(2).

767.     Defendants engaged in "consumer transactions," as defined by W. Va. Code § 46A-6-102(2).

768.     Defendants advertised, offered, or sold goods or services in West Virginia and engaged in trade or commerce directly or indirectly affecting the people of West Virginia, as defined by W. Va. Code § 46A-6-102(6).

769.     Defendants received notice pursuant to W. Va. Code § 46A-6-106(c) concerning its wrongful conduct as alleged herein by Plaintiffs and West Virginia Subclass members.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Defendants engaged in unfair and deceptive business acts and practices in the conduct of trade or commerce, in violation of W. Va. Code § 46A-6-104, as described herein and by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

770. Defendants' unfair and deceptive acts and practices also violated W. Va. Code § 46A-6-102(7) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another; advertising goods or services with intent not to sell them as advertised; engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; using deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and advertising, displaying, publishing, distributing, or causing to be advertised, displayed, published, or distributed in any manner, statements and representations with regard to the sale of goods, which are false, misleading or deceptive or which omit to state material information which is necessary to make the statements therein not false, misleading or deceptive.

771. Defendants' unfair and deceptive acts and practices were unreasonable when weighed against the need to develop or preserve business, and were injurious to the public interest, under W. Va. Code § 46A-6-101.

772. Defendants' acts and practices were additionally "unfair" under W. Va. Code § 46A-6-104 because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

773. Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

exercise of consumer decision-making. By withholding important information from consumers, Defendants created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

774. Defendants' business practices had no countervailing benefit to consumers or to competition.

775. Defendants' acts and practices were additionally "deceptive" under W. Va. Code § 46A-6-104 because Defendants made representations or omissions of material facts that misled or were likely to mislead reasonable consumers, including Plaintiffs and West Virginia Subclass members.

776. As a result of Defendants' deceptive acts and practices Plaintiffs and West Virginia Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

777. Plaintiffs and West Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $200 per violation under W. Va. Code § 46A-6-106(a), restitution, injunctive and other equitable relief, punitive damages, and reasonable attorneys' fees and costs.

## **COUNT 47**

### *VIOLATIONS OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT,*
### *Wis. Stat. §§ 100.18, et seq.*

778. Plaintiffs individually and on behalf of the Wisconsin Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

779. Defendants are a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

780. Plaintiffs and Wisconsin Subclass members are members of "the public," as defined by Wis. Stat. § 100.18(1).

781. With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendants to members of the public for sale, use, or distribution,

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Defendants made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1) as described herein and by, among other things, Defendants failing to obtain consent from parent or guardian before collecting and/or using personal information from children and by failing to delete personal information collected from children upon the request of the parent or guardian.

782.    Defendants also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

783.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Wisconsin Subclass members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

784.    Defendants had an ongoing duty to all Defendants' customers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

785.    Plaintiffs and Wisconsin Subclass members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), injunctive relief, and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

      a)  Certify this case as a class action, appoint Plaintiffs as Class and Subclass representatives, and appoint Plaintiffs' counsel to represent the Classes and Subclass;

      b)  Find that Defendants' actions, as described herein, constitute: (i) violations of New York General Business Law § 349, (ii) breaches of the common law claim of

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

intrusion upon seclusion in the states of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia; and (iii) a violation of the right to privacy under California Constitution, Article I, Section 1;

c) Enter a declaratory judgment that Defendants' actions of collecting, using, or disclosing personal information of child users without first obtaining verifiable parental consent violates COPPA;

d) Enter an order permanently enjoining Defendants from collecting, using, or disclosing personal information of child users without first obtaining verifiable parental consent;

e) Award Plaintiffs and Class and Subclass members appropriate relief, including actual and statutory damages and punitive damages, in an amount to be determined at trial;

f) Award equitable, injunctive, and declaratory relief as may be appropriate;

g) Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

h) Grant such other legal and equitable relief as the Court may deem appropriate.

*DRAFT FOR SETTLEMENT PURPOSES ONLY*
*INADMISSIBLE PURSUANT TO FRE 408*

Dated: June 3, 2019                    Respectfully submitted,

                                       /s/

                                       **WHITFIELD BRYSON & MASON LLP**
                                       Gary E. Mason (*pro hac vice forthcoming*)
                                       Danielle L. Perry (SBN 292120)
                                       5101 Wisconsin Ave., NW, Ste. 305
                                       Washington, DC 20016
                                       Phone: 202.640.1160
                                       Fax: 202.429.2294
                                       gmason@wbmllp.com
                                       dperry@wbmllp.com

                                       **KOZONIS & KLINGER, LTD.**
                                       Gary M. Klinger (*pro hac vice forthcoming*)
                                       4849 N. Milwaukee Ave., Ste. 300
                                       Chicago, Illinois 60630
                                       Phone: 312.283.3814
                                       Fax: 773.496.8617
                                       gklinger@kozonislaw.com

                                       *Attorneys for Plaintiffs*
                                       *the Proposed Classes*

# **Exhibit 3**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| T.K., THROUGH HER MOTHER SHERRI LESHORE, and A.S., THROUGH HER MOTHER, LAURA LOPEZ, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | Case No. 1:19-cv-07915 |
| v. | Hon. John Robert Blakey |
| BYTEDANCE TECHNOLOGY CO., LTD., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and TIKTOK INC., | Mag. Hon. M. David Weisman |
| Defendants. | |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Settlement and Direction of Notice under Rule 23(e) ("Motion").

WHEREAS, on December 3, 2019, Plaintiffs T.K. and A.S., minor children, by and through their respective mothers and legal guardians, SHERRI LESHORE and LAURA LOPEZ, filed a class action complaint in the Northern District of Illinois against Defendants BYTEDANCE TECHNOLOGY CO., LTD., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and TIKTOK INC. (collectively, "Defendants") captioned *T.K., et al. v. Bytedance Technology Co., Ltd. et al.*, No. 1:19-cv-07915 (N.D. Ill.) (the "Action"). The complaint alleged that Defendants tracked, collected, and disclosed the personally identifiable information and/or viewing data of children under the age of 13—without parental consent—while they were using Defendants' video social networking platform, i.e., software application (the "App.").

WHEREAS, prior to the filing of the Complaint (Doc. 1), Class Counsel extensively investigated the claims that formed the operative Complaint over several months and then sent a demand letter and complaint to Defendants' counsel, which resulted in months' long negotiations ultimately culminating in a mediation session with Gregory P. Lindstrom of Phillips ADR where the Parties reached a Settlement Agreement[1] that has been filed on the Court's docket.

WHEREAS, this Settlement Agreement is intended by the parties to fully, finally, and forever resolve, discharge and settle the Released Claims, as defined in the Settlement Agreement, upon and subject to the terms and conditions therein.

WHEREAS, the parties agree that the Settlement is a negotiated compromise, does not amount to an admission of liability, and that nothing in the Settlement is admissible in this Action or any future lawsuit to suggest a litigated class would be appropriately certified or that the method of providing Notice to the Settlement Class is proper, or to prove any claim on the merits.

**IT IS HEREBY ORDERED AS FOLLOWS:**

## I.     PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT:

1.      The Court hereby finds that the Court that will likely be able to approve the proposed Settlement, as embodied in the Settlement Agreement, as being fair, reasonable and adequate to the Settlement Class under Rule 23(e)(2) of the Federal Rules of Civil Procedure, subject to further consideration at the Final Approval Hearing to be conducted as described below. The proposed Settlement appears to be the product of intensive, thorough, serious, informed, and non-collusive negotiations overseen by the Hon. Gregory P. Lindstrom of Phillips ADR; has no obvious deficiencies; does not improperly grant preferential treatment to the Class Representatives or segments of the Settlement Class; and appears to be fair, reasonable, and adequate, such that notice of the Settlement should be directed to the Settlement Class Members, and a Final Approval Hearing should be set.

---

[1]      Unless stated otherwise, capitalized terms shall have the definitions set forth in the Settlement Agreement filed herewith.

2.      Accordingly, the Motion is GRANTED.

## II.      <u>THE CLASS, CLASS REPRESENTATIVES, AND CLASS COUNSEL</u>

3.       "Settlement Class" means, for purposes of this Class Action Settlement only, the Plaintiffs and all persons described in Paragraph 2.3 of the Settlement Agreement.

4.      "Class Counsel" means the attorneys representing the Plaintiffs who signed the Settlement Agreement and filed the Complaint (Doc. 1).

5.      "Class Representatives" means the Plaintiffs who signed the Settlement Agreement and filed the Complaint (Doc. 1).

## III.      <u>PRELIMINARY FINDINGS</u>

6.      The Court finds that it will likely be able to approve, under Rule 23(e)(2), the proposed Settlement Class as defined above, consisting of approximately 6,000,000 individuals who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians.

7.      The Court furthermore finds that it will likely be able to certify the Settlement Class for purposes of judgment on the proposal, because the Settlement Class and Class Representatives likely meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)-(4).

## IV.      <u>NOTICE TO CLASS MEMBERS</u>

8.      Under Rule 23(c)(2), the Court finds that the content, format, and method of disseminating Notice, as set forth in the Motion and the supporting Declaration of Steven Weisbrot, Esq., and the Settlement Agreement, is appropriate notice, satisfies all requirements provided in Rule 23(c)(2)(A) and due process, and is reasonable within the meaning of Rule 23(e)(1)(B).  The Court hereby approves such notice, appoints Angeion Group, LLC as the Settlement Administrator, and directs that such notice be disseminated in the manner set forth in the proposed Settlement Agreement to Settlement Class Members under Rule 23(e)(1).

9.      Any member of the Settlement Class who wishes to exclude himself or herself from the Settlement Class must provide a written Request for Exclusion postmarked by the Opt-

Out Deadline that states his or her full name, address, and intention to be excluded from the Settlement Class.

10.     Any Settlement Class Member who does not request exclusion from the Settlement Class may file a written objection with the Court by the Objection Deadline that must include:  include (i) a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his/her objection(s); (ii) the Class Member's full name, address and telephone number; and (iii) information demonstrating that the Class Member is entitled to be included as a member of the Class.    Any documents supporting the Objection must be attached to the Objection.  The parties shall have the right to depose any objector to assess whether  the objector has standing or motives that are inconsistent with the interests of the Settlement Class. The right to object to this Settlement must be exercised individually by an individual Settlement Class Member, not by the act of another person acting or purporting to act in a representative capacity.

**V.      SCHEDULE AND PROCEDURES FOR DISSEMINATNIG NOTICE, FILING CLAIMS, REQUESTING EXCLUSION FROM THE CLASS, FILING OBJECTIONS TO THE CLASS ACTION SETTLEMENT, AND FILING THE MOTION FOR FINAL APPROVAL**

11.     Based on the foregoing, the Court sets the following schedule for the Final Approval Hearing and the actions which must take place before and after it:

| **Event** | **Date** |
|---|---|
| Deadline to Initiate Notice Program (the "Class Notice Date") | 30 days after Entry of this Order |
| Deadline for opting-out of Settlement and submission of objections | 60 days after Class Notice Date |

| | |
|---|---|
| The last day that Settlement Class members may submit a Claim Form to the Settlement Administrator. | 90 days after the Class Notice Date |
| Deadline for filing papers in support of Final Approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses | 45 days prior to the Final Approval Hearing |
| Final Approval Hearing | |

## FINAL APPROVAL HEARING

12.     The Final Approval Hearing shall take place on _____, 2020 at ___:00 a.m. at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 before the Honorable John Robert Blakey, for the following purposes: (a) to determine whether the proposed Settlement is fair, reasonable, and adequate, and should be finally approved by the Court, (b) to determine whether an order and final judgment should be entered dismissing the Released Claims with prejudice; (c) to determine whether Class Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses (including any incentive payments to the Class Representatives) should be approved; and (d) to consider any other matters that properly may be brought before the Court in connection with the Settlement and the notice program.

## VII.     OTHER PROVISIONS

13.     Class Counsel are hereby appointed as Settlement Class Counsel under rule 23(g)(3).  Settlement Class Counsel and Defendants are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement, including the approved notice program.

14.     The deadlines set forth in this Preliminary Approval Order, including, but not limited to, adjourning the Final Approval Hearing, may be extended by Order of the Court, for good cause shown, without further notice to the Class Members, except that notice of any such extensions shall be included on the Settlement Website. The Court may approve the proposed Settlement with such modifications as Plaintiffs and Defendant may agree to, if appropriate, without further notice to the Settlement Class provided that notice of any such modifications shall be included on the Settlement Website.  Class Members should check the Settlement Website regularly for updates and further details regarding extensions of these deadlines. Requests for Exclusion and Objections must meet the deadlines and follow the requirements set forth in the approved notice in order to be valid.

15.     Settlement Class Counsel and Defendants' counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with the Preliminary Approval Order or the Settlement, including making, without further approval of the Court, minor changes to the form or content of the Class Notice that the parties jointly agree are reasonable or necessary.

16.     Settlement Class Members are preliminarily enjoined from bringing any new alleged class actions asserting any Released Claim or attempting to amend an existing action to assert any Released Claim.

17.     The Court shall maintain continuing jurisdiction over these proceedings for the benefit of the Settlement Class as defined in this Order.

**IT IS SO ORDERED.**

DATED: _____          _____
                                                    HON. JOHN ROBERT BLAKEY
                                                    UNITED STATES DISTRICT JUDGE

# **Exhibit 4**

DocuSign Envelope ID: 515E0412-D307-4B8B-AF5F-8DF0F0319687

## DECLARATION OF STEVEN WEISBROT, ESQ. OF ANGEION GROUP, LLC

I, Steven Weisbrot, Esq., declare under penalty of perjury as follows:

1.      I am a partner at the class action notice and Settlement Administration firm, Angeion Group, LLC ("Angeion").  I am fully familiar with the facts contained herein based upon my personal knowledge.

2.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs including some of the largest and most complex notice plans in recent history.  I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally.  I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

3.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23.

4.      I have given public comment and written testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and suggest an educational curriculum for the judiciary concerning notice procedures.

5.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator.

DocuSign Envelope ID: E15E0412-D307-4B3B-AF5F-8D5A5D210687

Prior to my notice and claims administration experience, I was employed in private law practice.

6.      My notice work comprises a wide range of settlements that include product defect, mass disasters, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.  I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs.  For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328:

> To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice.  The Court welcomes the inclusion of web-based forms of communication in the plan….  The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.

> The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a)      On February 24, 2017, The Honorable Ronald B. Rubin in *James Roy et al. v. Titeflex Corporation et al.*, No. 384003V (Md. Cir. Ct.), noted when granting preliminary approval to the settlement:

> What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make a decision. To me that is a key piece of this deal. ***I think the notice provisions are exquisite.*** (Emphasis added).

DocuSign Envelope ID: 515E04F2-D307-4B9B-AF5F-8DF0F0319687

(b)      Likewise, on July 21, 2017, The Honorable John A. Ross in *In Re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. Mo.), stated in the Court's Order granting preliminary approval of the settlement:

> The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —*is the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process*. (Emphasis added).
>
> The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

(c)      In the *In Re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, Case No. 17-md-02777-EMC (N.D. Cal.), in the Court's February 11, 2019 Order, the Honorable Edward M. Chen ruled:

> [In addition] the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

(d)     On June 26, 2018, in his Order granting preliminary approval of the settlement in

*Mayhew v. KAS Direct, LLC, et al.*, Case No. 16-cv-6981 (VB) (S.D.N.Y.), The Honorable

Vincent J. Briccetti ruled:

> In connection with their motion, plaintiffs provide the declaration
> of Steven Weisbrot, Esq., a principal at the firm Angeion Group,
> LLC, which will serve as the notice and settlement administrator in
> this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr.
> Weisbrot, he has been responsible for the design and
> implementation of hundreds of class action administration plans,
> has taught courses on class action claims administration, and has
> given testimony to the Judicial Conference Committee on Rules of
> Practice and Procedure on the role of direct mail, email, and digital
> media in due process notice. Mr. Weisbrot states that the internet
> banner advertisement campaign will be responsive to search terms
> relevant to "baby wipes, baby products, baby care products,
> detergents, sanitizers, baby lotion, [and] diapers," and will target
> users who are currently browsing or recently browsed categories
> "such as parenting, toddlers, baby care, [and] organic products."
> (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet
> banner advertising campaign will reach seventy percent of the
> proposed class members at least three times each. (Id. ¶ 9).
> Accordingly, the Court approves of the manner of notice proposed
> by the parties as it is reasonable and the best practicable option for
> confirming the class members receive notice.

7.      A comprehensive summary of judicial recognition I have received is attached hereto as

**Exhibit A**.

8.      By way of background, Angeion is an experienced class action notice and claims

administration company formed by a team of executives that have had extensive tenures at five

other nationally recognized claims administration companies.  Collectively, the management team

at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion

to class members.  The executive profiles as well as the company overview are available at

http://www.angeiongroup.com/our_team.htm.

9.      This declaration will describe the Notice Program that will be implemented in this matter,

subject to this Court's approval, including the considerations that informed the development of

the plan and why it will provide Due Process of Law to the members of the proposed class.  In

DocuSign Envelope ID: 515E04E2-D307-4B9B-AF5E-8DF0F0319687

my professional opinion, the Notice Program described herein is the best practicable notice under the circumstances and fulfills all due process requirements.

## SUMMARY OF NOTICE PROGRAM

10.    The Notice Program is the best notice that is practicable under the circumstances, fully comports with due process and Fed. R. Civ. P. 23. Specifically, the Notice Program provides for a media notice plan consisting of state-of-the-art internet advertising. The Notice Program also includes an informational website and toll-free telephone line where individuals can learn more about their rights and responsibilities in the litigation. In short, the Notice Program described herein is the best notice that is practicable under the circumstances.

11.    The comprehensive media Notice Program is designed to deliver an approximate 70.00% reach with an average frequency of 3.00 times. What this means in practice, is that 70.00% of our Target Audience (discussed in greater detail below) will see an advertisement concerning the Settlement, on average 3.0 times each.

12.    The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).

## CLASS DEFINITION

13.    "Settlement Class" means: All persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians.

## MEDIA NOTICE

14.    This matter contemplates a robust publication campaign to reach Settlement Class Members. The Settlement Class (defined above) was used as the starting point to create the media notice campaign. To develop the media notice campaign and to verify its effectiveness, our media team analyzed data from 2019 comSCORE//Gfk MRI Media + Fusion to profile the class and

arrive at the Target Audience.  Specifically, the following target definition was used to profile the Settlement Class Members and create an appropriate Target Audience:

- Cell/Mobile Phone "Apps" Personally Used Last 30 Days [Music (to listen)] and
- Who is the Parent of the Children Under 18 Living in Household [Respondent] and
- Cell/Mobile Phone "Apps" Personally Used Last 30 Days [Social Media and Video (e.g. short video clips)] or
- Monthly Net-Social Media [TIKTOK.COM[1] [M] (MMx)]

15.    Based on the target definition, the potential audience size is estimated at 6,070,000.  The Target Audience was chosen based on objective syndicated data which, will allow the parties to report the reach and frequency to the court, with the confidence that the reach within the Target Audience and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs.

16.    Understanding the socio-economic characteristics, interests and practices of a target group aids in the proper selection of media to reach that target.  Here, the Target Audience has the following characteristics:

- Adults between the ages of 25-44, with an average age of 38
- 72.36% are married
- 54.77% have earned a degree
- 75.52% are employed with 64.18% employed full time
- 62.97% have a household income over $75,000
- 63.08% are female

17.    To identify the best vehicles to deliver messaging to the Target Audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population.  Here, the objective syndicated data shows that members of the Target Audience are "heavy" internet users, utilizing the internet approximately 25 hours per week.

18.    Given the strength of digital as well as our Target Audience's known heavy internet use,

---

[1] Musical.ly, technically, no longer exists. It was acquired by Chinese firm ByteDance in 2017. The app was then shut down mid-2018 while its user base was merged into TikTok, which is measured by the syndicated data and is  being used as part of the basis for the Target Audience here.

DocuSign Envelope ID: 515E04E2-D307-4B3B-AF5F-8DF0F0319687

we recommend utilizing a robust internet advertising campaign to reach Settlement Class Members. This media schedule will allow us to deliver an effective reach level and a vigorous frequency, which will provide due and proper notice to the class.

## ONLINE NOTICE

19. We utilize a programmatic approach when purchasing digital media. This approach allows us to focus squarely on the reaching the prototypical individual Settlement Class Member, rather than allocating resources to determine which particular websites would be most appropriate based on a demographic profile. Programmatic media purchasing relies on advanced targeting, machine learning, and a known and verifiable Target Audience profile to ensure we are reaching members of our Target Audience online. In fact, purchasing display and mobile inventory programmatically provides the highest reach, allows for multiple advanced targeting layers, and offers the most cost-efficient rates to reach potential Settlement Class Members. Here, multiple targeting layers will be implemented to help ensure delivery of our advertisements to the most appropriate users. This includes the use of search targeting, category contextual targeting, keyword contextual targeting, and site retargeting. Advertisements will run on desktop and mobile devices to reach the most qualified audience where they surf, shop and play. Search terms will be relevant to *video apps, Musical.ly,* and *TikTok*. Moreover, targeting users who are currently browsing or have recently browsed content in categories such as *video apps*, *Musical.ly* and *TikTok* will also help qualify impressions to ensure messaging is served to the most relevant audience.

20. The internet banner notice portion will be implemented using a 4-week desktop and mobile campaign, utilizing standard IAB sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50). The banner notice portion is designed to result in serving approximately 12,747,000 impressions and will further be designed to notify and drive Class Members to the dedicated settlement website, where they can find more information about the Settlement and are able to

DocuSign Envelope ID: 515E0412-D307-4B9B-AF5F-8DF0F0319687

submit a claim form.

21.     To track campaign success, we will implement conversion pixels throughout the settlement website to better understand audience behavior and identify those members who are most likely to convert. The programmatic algorithm will change based on success and failure to generate conversions throughout the process. Successful conversion on the Claim Submission button will be the primary goal, driving optimizations.

## RESPONSE MECHANISMS

22.     The Notice Program will implement the creation of a case-specific website, where Class Members can easily view general information about this class action, review relevant Court documents and view important dates and deadlines pertinent to the Settlement. The website will be designed to be user-friendly and make it easy for Class Members to find information about the Settlement or to file a claim directly on the website. The website will also have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address.

23.     A toll-free hotline devoted to this case will be implemented to further apprise Class Members of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

24.     This declaration describes the reach and frequency evidence which courts systemically rely upon in reviewing class action publication notice programs for adequacy. The reach percentage and the number of exposure opportunities meet or exceed the guidelines as set forth in the Federal

Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.

25.     Specifically, the media portion of the Notice Program is designed to deliver an approximate 70.00% reach with an average frequency of 3.00 times each.  The 70.00% reach does <u>not</u> include the informational website and toll-free hotline is not calculable in reach percentage but will nonetheless aid in informing Settlement Class Members of their rights and options under the Settlement.

<u>**CONCLUSION**</u>

26.     The Notice Program outlined above includes a media notice program consisting of state-of-the-art digital banner ads that will be hyper-targeted to an overinclusive Target Audience to effectuate the twin goals of providing due process to the class and stimulating class member activity.

27.     In my opinion, the Notice Program will provide full and proper notice to Settlement Class Members before the claims, opt-out, and objection deadlines.  Moreover, it is my opinion that Notice Program is the best notice that is practicable under the circumstances, fully comports with due process, utilizes contemporary communication methods and comports with the mandates Fed. R. Civ. P. 23.  After the Notice Plan is complete, Angeion will provide a final report verifying its effective implementation.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: December 4, 2019

STEVEN WEISBROT

# **Exhibit 5**

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

# If you or your child used the Musical.ly and/or TikTok software application when under the age of 13, You May Be Entitled to a Payment from a Class Action Settlement.

*A federal court authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

- Plaintiffs filed a class action complaint alleging that Bytedance Technology Co., Ltd., Musical.ly, Inc., Musicaal.ly the Cayman Islands Corporation, and TikTok Inc., (collectively, the "Defendants"), violated federal and state laws by tracking, collecting, and disclosing the personally identifiable information and/or viewing data of children under the age of 13— without parental consent—while they were using Defendants' video social networking platform, i.e., software application (the "App."). Defendants deny the material allegations in the operative complaint.

- A Settlement[1] has been reached in this case and affects the following persons:

  All persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians (the "Settlement Class").

- The Settlement, if approved, would provide $1,100,000 to pay the Settlement Class who file valid claims, as well as to pay Plaintiffs' attorneys' fees, costs, a service award for the named plaintiffs, and the administrative costs of the settlement; it avoids the further cost and risk associated with continuing the lawsuits; it pays money to those persons who rights Plaintiffs contend were violated; and it releases Defendants from further liability.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | If you are a member of the Settlement Class, you must submit a completed Claim Form to receive a payment. If the Court approves the Settlement and it becomes final and effective, and you remain in the Settlement Class, you will receive your payment by electronic means. |
| **EXCLUDE YOURSELF** | You may request to be excluded from the Settlement and, if you do, you will receive no benefits from the Settlement. |
| **OBJECT** | Write to the Court if you do not like the Settlement. |
| **GO TO A HEARING** | Ask to speak in court about the fairness of the Settlement. |

---

[1] Capitalized terms herein have the same meanings as those defined in the Settlement Agreement, a copy of which may be found online at the Settlement Website below.

Questions? Call **PHONE** or visit **WEBSITE**

| DO NOTHING | You will not receive a payment if you fail to timely submit a completed Claim Form, and you will give up your right to bring your own lawsuit against Defendants about the Claims in this case. |
|---|---|

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, benefits will be distributed to those who submit qualifying Claim Forms. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**..........................................................................................**PAGE 3**
1. Why is there a Notice?
2. What is this litigation about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT**......................................................................**PAGE 4**
5. Who is included in the Settlement?
6. What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS**.................................................................................**PAGE 4**
7. What does the Settlement provide?
8. How do I file a Claim?
9. When will I receive my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**....................................................**PAGE 5**
10. How do I get out of the Settlement?
11. If I do not exclude myself, can I sue Defendants for the same thing later?
12. What am I giving up to stay in the Settlement Class?
13. If I exclude myself, can I still get a payment?

**THE LAWYERS REPRESENTING YOU**.......................................................................**PAGE 6**
14. Do I have a lawyer in the case?
15. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**..........................................................................**PAGE 6**
16. How do I tell the Court I do not like the Settlement?
17. What is the difference between objecting and asking to be excluded?

**THE FINAL APPROVAL HEARING**............................................................................**PAGE 7**
18. When and where will the Court decide whether to approve the Settlement?
19. Do I have to attend the hearing?
20. May I speak at the hearing?

**IF YOU DO NOTHING**...........................................................................................**PAGE 8**
22. What happens if I do nothing at all?

**GETTING MORE INFORMATION**.............................................................................**PAGE 8**
23. How do I get more information?

# BASIC INFORMATION

## 1. Why is there a Notice?

A court authorized this Notice because you have a right to know about a proposed Settlement of the class action lawsuit known as *T.K., et al. v. Bytedance Technology Co., Ltd. et al.,* No. 1:19-cv-07915 (N.D. Ill.) (the "Action") and about all of your options before the Court decides whether to give Final Approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge John Robert Blakey of the United States District Court for the Northern District of Illinois is overseeing this case. The persons who sued, Plaintiffs T.K. and A.S., minor children, by and through their respective mothers and legal guardians, Sherri LeShore and Laura Lopez, are called the "Plaintiffs." Bytedance Technology Co., Ltd., Musical.ly, Inc., Musicaal.ly the Cayman Islands Corporation, and TikTok Inc., are called the "Defendants."

## 2. What is this litigation about?

The lawsuit alleges that Defendants violated federal and state laws by tracking, collecting, and disclosing the personally identifiable information and/or viewing data of children under the age of 13—without parental consent—while they were using Defendants' App.

Defendants deny each and every allegation of wrongdoing, liability, and damages that were or could have been asserted in the litigation and that the claims in the litigation would be appropriate for class treatment if the litigation were to proceed through trial.

The Plaintiffs' Complaint, Settlement Agreement, and other case-related documents are posted on the Settlement Website, **www.[WEBSITE].com** The Settlement resolves the lawsuit. The Court has not decided who is right.

## 3. Why is this a class action?

In a class action, the person called the "Class Representative" (in this case, Plaintiffs) sues on behalf of herself and other people with similar claims.

All of the people who have claims similar to the Plaintiffs' are Settlement Class Members, except for those who exclude themselves from the class.

## 4. Why is there a settlement?

The Court has not found in favor of either Plaintiffs or Defendants. Instead, both sides have agreed to a settlement. By agreeing to the Settlement, the parties avoid the costs and uncertainty of a trial, and if the Settlement is approved by the Court, Settlement Class Claimants will receive the benefits described in this Notice. Defendants deny all legal claims in this case. Plaintiffs and their lawyers think the proposed Settlement is best for everyone who is affected.

# WHO IS PART OF THE SETTLEMENT

| 5.   Who is included in the Settlement? |
| --- |

The Settlement Class includes the following persons:

All persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians.

Excluded from the Settlement Class are: i) TikTok, its parent, subsidiaries, successors, affiliates, officers, and directors; (ii) the judge(s) to whom the Civil Actions are assigned and any member of the judges' or judges' immediate family; (iii) Persons who have settled with and released TikTok from individual claims substantially similar to those alleged in the Civil Actions; and (iv) Persons who submit a valid and timely Request for Exclusion.

| 6.   What if I am not sure whether I am included in the Settlement? |
| --- |

If you are not sure whether you are in the Settlement Class or have any other questions about the Settlement, visit the Settlement Website at **www.[WEBSITE].com** or call the toll-free number, 1-XXX-XXX-XXXX. You also may send questions to the Settlement Administrator at [ADDRESS].

# THE SETTLEMENT BENEFITS

| 7.   What does the Settlement provide? |
| --- |

To fully settle and release claims of the Settlement Class Members, Defendants have agreed to make payments to the Settlement Class Members and pay for notice and administration costs of the Settlement, attorneys' fees and expenses incurred by counsel for the Settlement Class, and service awards for Plaintiffs (the "Settlement Fund"). Each Settlement Class member who timely files with the Settlement Administrator a valid Claim Form will receive a settlement payment for a pro rata distribution of the Settlement Fund.

| 8.   How do I file a Claim? |
| --- |

If you qualify for a payment, you must complete and submit a valid Claim Form. You may download a Claim Form at the Settlement Website, **www.[WEBSITE].com** or request a Claim Form by calling the Settlement Administrator at the toll-free number below. To be valid, a Claim Form must be completed fully and accurately, signed under penalty of perjury, and submitted timely.

You may submit a Claim Form by U.S. mail or file a Claim Form online. If you send in a Claim Form by U.S. mail, it must be postmarked by xxxxxxxxxx. If you file a Claim Form online, then you must so file by **11:59 p.m. EST on xxxxxxxxxx**.

No matter which method you choose to file your Claim Form, please read the Claim Form carefully and provide all the information required. Only one Claim Form may be submitted per Settlement Class Member.

## 9.   When will I receive my payment?

Payments to Settlement Class Members will be made only after the Court grants Final Approval to the Settlement and after any appeals are resolved (*see* "Final Approval Hearing" below).  If there are appeals, resolving them can take time. Please be patient.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from the Settlement, and you want to keep the right to sue or continue to sue Defendants on your own about the legal issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself—or it is sometimes referred to as "opting out" of the Settlement Class.

## 10. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a timely letter by mail to:

[ADDRESS]

Your request to be excluded from the Settlement must be personally signed by you under penalty of perjury and contain a statement that indicates your desire to be "excluded from the Settlement Class" and that, absent of excluding yourself or "opting out," you are "otherwise a member of the Settlement Class."

Your exclusion request must be postmarked no later than **xxxxxxxxx**. You cannot ask to be excluded on the phone, by email, or at the Settlement Website.

You may opt out of the Settlement Class only for yourself.

## 11. If I do not exclude myself, can I sue Defendants for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Defendants for the claims that the Settlement resolves. You must exclude yourself from this Settlement Class in order to pursue your own lawsuit.

## 12. What am I giving up to stay in the Settlement Class?

Unless you opt out of the Settlement, you cannot sue or be part of any other lawsuit against Defendants about the issues in this case, including any existing litigation, arbitration, or proceeding. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at **www.[WEBSITE].com** The Settlement Agreement provides more detail regarding the Releases and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Settlement Class listed in Question 14 for free, or you can, at your own expense, talk to your own lawyer if you have any questions about the Released Claims or what they mean.

## 13. If I exclude myself, can I still get a payment?

No.  You will not get a payment from the Settlement Fund if you exclude yourself from the Settlement.

## THE LAWYERS REPRESENTING YOU

**14. Do I have a lawyer in the case?**

The Court has appointed the following lawyers as "Class Counsel" to represent all members of the Settlement Class.

Gary E. Mason, Esq.
Whitfield Bryson & Mason LLP
5101 Wisconsin Ave., NW, Ste. 305
Washington, DC 20016

Gary M. Klinger Esq.
Kozonis & Klinger, Ltd.
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

**15. How will the lawyers be paid?**

Class Counsel intend to request up to 33% of the Settlement Fund for attorneys' fees and reimbursement of reasonable, actual out-of-pocket expenses incurred in the litigation. The Court will decide the amount of fees and expenses to award.

Class Counsel will also request that a Service Award of $2,500.00 each ($5,000 total) be paid to the Class Representatives for their services as representatives on behalf of the whole Settlement Class.

## OBJECTING TO THE SETTLEMENT

**16. How do I tell the Court if I do not like the Settlement?**

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement. To object, you must no later than 21 days before the Final Approval Hearing, send to the Settlement Administrator, Class Counsel, and TikTok's counsel, and file with the Court, a written statement of the objection(s). The written statement of the objection(s) must include (i) a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his/her objection(s); (ii) the Class Member's full name, address and telephone number; and (iii) information demonstrating that the Class Member is entitled to be included as a member of the Class.

**17. What is the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. Excluding yourself is telling the Court that you do

not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

# THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses ("Final Approval Hearing").

**18. When and where will the Court decide whether to approve the Settlement?**

The Court has scheduled a Final Approval Hearing on **xxxxxxx at xxx a.m.** at the xxxxxxxxxxxxx. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check **www.[WEBSITE].com** for updates. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider the requests by Class Counsel for attorneys' fees and expenses and for a Service Award to the Class Representatives. If there are objections, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the Settlement. It is unknown how long these decisions will take.

**19. Do I have to attend the hearing?**

No. Class Counsel will answer any questions the Court may have. But, you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time and it complies with all the other requirements set forth above, the Court will consider it. You may also pay your own lawyer to attend the hearing, but it is not necessary.

**20. May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. You cannot speak at the hearing if you exclude yourself from the Settlement.

# IF YOU DO NOTHING

**21. What happens if I do nothing at all?**

If you are a Settlement Class member and do nothing, meaning you do not file a timely Claim, you will not get benefits from the Settlement. Further, unless you exclude yourself, you will be bound by the judgment entered by the Court.

# GETTING MORE INFORMATION

**22. How do I get more information?**

This Notice summarizes the proposed Settlement. You are urged to review more details in the Settlement Agreement. For a complete, definitive statement of the Settlement terms, refer to the Settlement Agreement at **www.[WEBSITE].com** You also may write with questions to the Settlement Administrator at [ADDRESS] or call the toll-free number, 1-XXX-XXX-XXXX.