**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| T.K., THROUGH HER MOTHER SHERRI LESHORE, and A.S., THROUGH HER MOTHER, LAURA LOPEZ, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | Case No. 1:19-cv-07915 |
| v. | Hon. John Robert Blakey |
| BYTEDANCE TECHNOLOGY CO., LTD., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and TIKTOK INC., | Mag. Hon. M. David Weisman |
| Defendants. | |

**PLAINTIFFS' *UNOPPOSED* MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................. 6

II.    STATEMENT OF THE FACTS ............................................................. 7

    A.     Procedural History ................................................................. 7

    B.     The Terms of the Settlement.................................................. 9

        1.     The Settlement Class................................................. 9

        2.     Monetary Relief for Settlement Class Members........................ 9

        3.     Class Release ........................................................... 10

        4.     Class Representative Service Awards................................. 10

        5.     Attorneys' Fees and Costs ........................................... 10

        6.     Settlement Administration ........................................... 11

        7.     Class Notice for Settlement Purposes Only ............................ 11

III.   CLASS NOTICE WAS DISSEMINATED TO THE CLASS, FEW
      OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WHO
      SUBMITTED A CLAIM WILL RECEIVE PAYMENTS. ........................... 11

    A.     Notice Was Disseminated via a Robust Multi-Faceted Ad Campaign. ............... 11

    B.     CAFA Notice ...................................................................... 13

    C.     Few Objections, Limited Exclusions and a Reasonable Claims Rate ................ 13

IV.    FINAL APPROVAL IS WARRANTED................................................ 15

    A.     The Settlement Approval Process ........................................ 15

    B.     The Settlement Is Fair, Reasonable, and Adequate, and Should Be
        Approved............................................................................ 18

        1.     The Settlement Provides Substantial Relief When Measured
            Against the Strength of the Plaintiffs' Case........................... 19

            a.     Diverse and substantial legal and factual risks weigh in
                favor of settlement. ...................................................... 19

            b.     The monetary terms of this Settlement fall within the range
                of related privacy class action settlements.................................. 20

        2.     The Objections Received are Insufficient, and Do Not Provide
            Justification for Denying Final Approval. ................................. 21

        3.     Continued Litigation is Likely to be Complex, Lengthy, and
            Expensive ................................................................ 24

        4.     Class Counsel Strongly Endorse the Settlement..................... 24

        5.     The Stage of the Proceedings and the Amount of Discovery
            Completed Supports Approval............................................. 25

# TABLE OF CONTENTS

(continued)

**Page**

6. The Settlement is Reasonable in Light of the Requested Attorneys' Fees…. ................................................................................................. 26

C. The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved.......................................................................................... 28

D. The Settlement Class Should be Finally Certified. ............................................. 29

V. CONCLUSION ............................................................................................. 29

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## Cases

*Aranda v. Caribbean Cruise Line, Inc.*,
No. 12 C 4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) .................................................. 25

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) .............................................................................. 14, 15, 16, 18

*Arthur v. SLM Corp.*,
No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012) ................................................................... 13

*Bayat v. Bank of the W.*,
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ..................................... 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................................ 25

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ............................................................................................... 27

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-cv04462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015)........................................ 25, 27

*Davenport v. Discover Fin. Servs.*,
No. 1:15-CV-06052, ECF No. 110 (N.D. Ill. 2017) ................................................................ 13

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016).............................................................................................. 20

*Grady v. de Ville Motor Hotel, Inc.*,
415 F.2d 449 (10th Cir. 1969) ............................................................................................... 19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 19

*Heekin v. Anthem, Inc.*,
No. 05-cv01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .......................... 27

*Holmes v. Roadview, Inc.*,
No. 15-CV-4-JDP, 2016 WL 1466582 (W.D. Wis. Apr. 14, 2016) ........................................ 18

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ..................................................................................... 15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010)......................................................................................... 15, 18

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ................................................................................................. 26

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................................... 24

*In re Northfield Labs., Inc. Sec. Litig.*,
  No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ............................................. 15, 17

*In re Sw. Airlines Voucher Litig.*,
  No. 110CV-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)......................................... 27

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ............................................................................... 25, 27

*In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*,
  No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)............................................. 18

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ......................................................................... 14, 17, 18

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)..................................................................................... 15

*Martin v. JTH Tax, Inc.*,
  No. 13-cv-6923, ECF 85 (N.D. Ill. Sept. 16, 2015)...................................................... 26

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009)......................................................................... 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..................................................................................................... 12

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ....................................................................................... 26

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ....................................................................... 13

*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. 2015)................................................................................ 13

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ................................................................................. 25, 26

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................................... 23

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................................ 13

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) ....................................................................................... 25

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ....................................................................................... 18

*Wilkins v. HBSC Bank Nev., N.A.*,
  No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ……………………………………12

*Wright v. Nationstar Mortg. LLC*,
  No. 14 C 1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016)................................... 25

**Statutes**

**47 U.S.C. § 227**............................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................ 16

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................... 16, 17

Fed. R. Civ. P. 23(e)(2)................................................................................... 17

**Rules**

Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions* (4th ed. 2002).................................... 14, 16, 19

I.    **INTRODUCTION**

After significant discovery and with the assistance of Gregory P. Lindstrom of Phillips ADR, Plaintiffs T.K., through her mother Sherri Leshore, and A.S., through her mother Laura Lopez ("Plaintiffs"), reached a proposed class settlement with Defendants Bytedance Technology Co., Ltd., Musical.ly Inc., Musical.ly the Cayman Islands Corporation, and TikTok Inc. ("Defendants"), to resolve all claims in this class action lawsuit alleging Defendants violated federal and state laws by tracking, collecting, and disclosing the personally identifiable information and/or viewing data of children under the age of thirteen without parental consent. The alleged violations occurred when children used Defendants' video social networking platform, *i.e.*, software application (the "App."). The Settlement, which achieves compensation for the alleged unlawful collection of minor children's personal information, represents ***the first settlement of its kind*** and is therefore a landmark settlement for privacy cases.

The Settlement, which was preliminarily approved by this Court on December 19, 2019, required Defendants to pay a total of $1,100,000 in cash into a non-reversionary Settlement Fund, which will be dispersed pro rata to each of the Settlement Class Members with a Valid Claim. Not a single penny of the Settlement Fund will revert to Defendants. This is an excellent Settlement, considering the risks, uncertainties, burden, and expense associated with this novel litigation.

After the Court granted preliminary approval, Notice was issued via a combination of online and social media advertisements. The Notice Program has been overwhelmingly successful by any measure. As of the week of April 20, 2020, ***104,612 individuals had made claims***. Each Settlement Class Member who submitted a Valid Claim will receive an estimated payment of approximately $4.00 to $6.00—a result that compares favorably with other court-approved privacy class action settlements. The estimated payment increases to approximately $7.00 when calculated on a "per household" basis. This is a great result when compared to similar privacy class action

settlements. Perhaps unsurprisingly, therefore, after receiving over 100,000 claims, only eleven individuals have attempted to object to the Settlement. For reasons discussed below, those objections are wholly insufficient.[12]

Plaintiffs respectfully submit that these facts demonstrate that the Court's preliminary determination that the Settlement should be approved was correct. Plaintiffs now seek final approval of the Settlement and final certification of a nationwide Settlement Class. Plaintiffs submit that this Settlement is an excellent result for the Class, and satisfies all criteria for final settlement approval under Seventh Circuit law. Plaintiffs therefore respectfully request that the Court grant their motion.

## II.    STATEMENT OF THE FACTS[3]

### A.    Procedural History

Though only more recently filed, this case and the associated factual investigations and settlement negotiations have been extensive. Counsel for Plaintiffs began investigating potential claims against Defendants in June 2018, interviewing over 800 affected individuals while refining claims and putting together both a complaint and an initial demand. *See* Pls.' Unopposed Mot. for Prelim. Approval ("Prelim. Mot.") at Ex. 1, Decl. of Gary E. Mason ("Mason MPA Decl.") ¶ 6, ECF No. 5-1. On June 3, 2019, Plaintiffs, through their counsel, sent a demand letter and draft

---

[1] As discussed *infra*, all of the objections are deficient and invalid for a number of reasons. First, it is obvious the objections were "coordinated" in that they were all served at the same time by a group of unrepresented individuals requesting the same thing: 'more money'. Of course, the law is clear that this is not a valid basis to object to the proposed settlement when the objectors can simply exclude themselves. What's more, the objections are procedurally deficient in that they were untimely served and not filed with the Court in accordance with the Court's Preliminary Approval Order and the Settlement Agreement.

[2] On May 11, 2020, on the eve Plaintiffs were preparing to file this Motion, an eleventh objection was untimely filed with the Court. *See* ECF Nos. 23-34. Plaintiffs will address that untimely and deficient objection in a separate brief to be filed with the Court.

[3] Sections of this brief discussing issues that have not changed since Plaintiffs filed their motion for preliminary approval have been adapted from Plaintiffs' memorandum of law in support of preliminary approval.

complaint to Defendants alleging violations of the privacy rights of the Plaintiffs in connection with the operation of Defendants' App. Mason MPA Decl. ¶ 13; *see also* Prelim. Mot. at Ex. 2, Settlement Agreement ("Agr.") at Ex. A, Draft Compl., ECF No. 5-1. In particular, Plaintiffs' draft complaint—which formed the basis for the operative complaint in this case—alleged that Defendants' conduct formed the basis for claims of (i) intrusion upon seclusion; and (ii) violation of state consumer protection statutes. Thereafter, Plaintiffs' counsel also informed Defendants' counsel that should this case proceed, Plaintiffs would be adding an additional nationwide federal claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.*[4] Mason MPA Decl. ¶ 14.

Between June 3, 2019 and October 22, 2019, Plaintiffs' counsel and Defendants' counsel engaged in substantial informal discovery and information sharing concerning (i) the claims and potential defenses at issue in Plaintiffs' Complaint; (ii) the size of the potential class contemplated in the Complaint; and (iii) the suitability for class treatment of Plaintiffs' claims. Mason MPA Decl. ¶ 15. This substantial informal discovery process allowed the Parties to thoroughly investigate the claims and defenses and evaluate the strengths and weaknesses of their respective cases. *Id.* After months-long negotiations, the Parties agreed to participate in an all-day mediation with Gregory Lindstrom of Phillips ADR that resulted in this Agreement—pursuant to a mediator's proposal—to settle the Civil Action on a class-wide basis. Mason MPA Decl. ¶¶ 13-19.

Thereafter, on December 19, 2019, the Court entered an Order granting preliminary approval to the proposed Settlement. Prelim. Order, ECF No. 13.

---

[4] The VPPA imposes civil liability on "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider" without informed written consent. The VPPA broadly defines the term "video tape service provider," in part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." (emphasis added).

### B. The Terms of the Settlement

The Settlement's details are contained in the Settlement Agreement ("Agr.") signed by the parties. *See* Agr., ECF No. 5-1. The Agreement's key terms are summarized below:

#### 1. The Settlement Class

The Settlement Class is defined as follows:

> All persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians.

Agr. ¶ 2.3.

Defendants do not possess sufficient information to accurately estimate the size of the Settlement Class. Based on the limited data available, the best estimate that can be made is that the Settlement Class might include approximately six million class members. Because Defendants have no way to directly contact or identify Class Members, Settlement Class Members were given Notice by the Settlement Administrator via a designated settlement website and through a combination of online social media advertising. *Id.* at ¶ 8.

#### 2. Monetary Relief for Settlement Class Members

The Settlement called for Defendants to create a non-reversionary cash settlement fund of $1,100,000—the funds for which were provided to the Claims Administrator within thirty (30) days after the entry of the preliminary approval order. *See* Decl. of Gary E. Mason in Supp. of Mot. for Final Approval & Mot. for Fees, Costs, & Service Awards ¶ 3, filed herewith ("Mason MFA Decl."). The Settlement Fund is allocated: to pay all expenses incurred by the Settlement Administrator for the Notice Plan and settlement administration; to allocate funds for any Fee Award and Incentive Awards; after allocation of funds for the foregoing, to pay the remaining unallocated portion of the Settlement Fund to Class Members on a *pro rata* basis; after payment of all valid claims to Class Members, to pay any Fee Award and Incentive Awards; and to distribute

any residue of the Settlement Fund to a *cy pres* recipient or other appropriate recipient as may be determined by the Court. Agr. ¶ 6.1.

While it is not possible to predict the precise amount of the Cash Awards until the Settlement Administrator has completed vetting the claims, Class Counsel estimate individual awards in the range of $4.00-$6.00 and household awards in the range of $7.00 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration.[5] Mason MFA Decl. ¶ 5.

### 3.    Class Release

In exchange for the benefits allowed under the Settlement, Class Members will provide a release tailored to the practices at issue in this case. Specifically, they will release any and all federal, state, or common law claims "arising out of or relating to any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Civil Actions or the subject matter of the Complaint." Agr. ¶ 2.24.

### 4.    Class Representative Service Awards

Class Representatives seek service awards of $2,500.00 each in light of the time and effort they have personally invested in this Action in order to pursue class claims. Defendants do not object to such incentive payments. The Settlement is not contingent on the Court's granting of such an award. Agr. ¶ 12.2.

### 5.    Attorneys' Fees and Costs

Class Counsel seek an award of attorneys' fees of no more than 33% of the common fund and costs. As will be addressed in more detail below, Seventh Circuit courts commonly award

---

[5] Per the Settlement Agreement, Settlement Class Members were allowed sixty days from the date Notice was first disseminated to either object or opt-out of the Settlement Agreement, and ninety days to submit a Claim Form to the Claims Administrator. Agr. ¶ 2.18.

even higher percentages of settlement common funds as attorneys' fees, and it is appropriate to compensate Class Counsel in this amount here for the work they have performed in litigating this novel class action. The Settlement is not contingent on Court approval of an award of attorneys' fees or costs. Agr. ¶ 12.

### 6. Settlement Administration

All costs of notice and claims administration will be paid from the Settlement Fund. Agr. ¶ 2.29. The Court has appointed Angeion Group to administer the Settlement. Prelim. Order ¶ 8.

### 7. Class Notice for Settlement Purposes Only

Per the Agreement, within thirty days of entry of the Preliminary Approval Order, the Claims Administrator issued Class Notice. *See* Decl. of Steven Weisbrot, Esq. ¶ 5, filed herewith ("Weisbrot MFA Decl."). The Claims Administrator set up a settlement website, and engaged in online and social media advertising to notify potential Class Members of the Settlement. *Id.* at ¶¶ 5-10.

## III. CLASS NOTICE WAS DISSEMINATED TO THE CLASS, FEW OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WHO SUBMITTED A CLAIM WILL RECEIVE PAYMENTS.

### A. Notice Was Disseminated via a Robust Multi-Faceted Ad Campaign.

On January 17, 2020 the Claims Administrator launched the Notice Program, as described in Plaintiffs' Motion for Preliminary Approval at ECF No. 5. *See also* Weisbrot MFA Decl. ¶ 5. The Notice Program included a comprehensive media notice program that targeted the known demographics of the Settlement Class and was designed to deliver an approximate 70% reach with an average frequency of 3.00 times by serving approximately 12,747,000 digital banner ad impressions. *Id.* at ¶ 5, Ex. B. The Notice Program was successful; it resulted in 13,118,198 impressions and an approximate 72% reach. *Id.* at ¶¶ 5-6.

The Claims Administrator also set up a settlement website linked to the ads, where potential

Settlement Class Members could find important documents and court filings including the long form notice. The website has been maintained at www.MusicallyClassActionSettlement.com since January 17, 2020. *Id*. at ¶ 7. Settlement Class Members could submit their claims directly through the website. *Id.* As of May 6, 2020, the settlement website had 145,777 unique visitors and 275,561 page views. *Id.* at ¶ 8.

And finally, beginning January 17, 2020, the Claims Administrator established and maintained a 24/7 toll-free number to field questions about the settlement and to allow potential Class Members to request mail copies of the long form notice. *Id.* at ¶ 9. As of May 6, 2020, the Claims Administrator received a total of seventy-one calls to the toll-free number, totaling 222 minutes of call time. *Id.* at ¶ 10.

Due process does not require that every class member receive notice. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 968 (N.D. Ill. June 2, 2011) (collecting cases). Rather, parties are required, "within the limits of practicality, to send such notice as [is] reasonably calculated to reach most interested parties." *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985).

By utilizing digital ads placed through the same ad network used by Defendants' App., additional digital ads targeting the proposed Settlement Class demographic, and supplementing that Notice with a settlement website and toll-free telephone number, the Parties ensured that Notice comported with due process and protected all Class Members' rights. *See e.g., Kaufman v. Am. Express Travel Related Servs., Co.*, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) (granting final approval where notice, including digital ads, was estimated to have reached 70% of the settlement class); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) (granting final approval where a combination of direct notice and banner ads were estimated to

have reached 79.2% of the class); *In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) (approving the use of banner ads a notice where many settlement class members could not be identified in Defendants' records); *In re Briscoe*, 448 F.3d 201, 207 (3d. Cir. 2006) (affirming the trial court's decision to use a notice plan that included banner advertisements on the internet directing class members to the official settlement website).

**B.** **CAFA Notice**

On December 16, 2019, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, the Claims Administrator caused Notice of the Settlement and related materials ("CAFA Notice") to be sent to the Attorneys General of all U.S. states and territories, as well as the Attorney General of the United States. Weisbrot MFA Decl. ¶ 4, Ex. A. No objections were received to the Settlement from the Attorneys General of the United States.

**C.** **Few Objections, Limited Exclusions and a Reasonable Claims Rate**

After Class Notice was initiated, the Claims Administrator received six requests for exclusion (an estimated 0.0001% of the Settlement Class) by the March 17, 2020 deadline. *Id.* ¶ 12, Ex. E. Class Counsel received via mail—approximately one month *after* the deadline for submission—only eleven objections to the Settlement out of 6,000,000 potential Class Members. Mason MFA Decl. ¶ 5, Ex. B. Class Counsel has not been notified of any objections filed with the Court. *Id.* at ¶ 6. None of the objections were received by the Settlement Administrator. Weisbrot MFA Decl. ¶ 13.

Class Members submitted 104,612 claims by the Claim Deadline—an approximate 2% of what is estimated to be a 6,000,000-member Settlement Class.[6] Weisbrot MFA Decl. ¶ 11. Such a

---

[6] As explained above, because Defendants do not possess sufficient information to accurately estimate the size of the Settlement Class, the 6,000,000-member estimate may represent a significant overestimate, and

claims rate falls well in line with, and even exceeds, other consumer class action settlements, in the Seventh Circuit and elsewhere. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving 7.26-million-member settlement class when just 55,346—less than 1%— filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3-million-member settlement class when less than 119,000—approximately 1.1%—filed claims); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA settlement with 2% claims rate); *Davenport v. Discover Fin. Servs.*, No. 1:15-CV-06052 (N.D. Ill. Dec. 19, 2017) (approving settlement with 3% claims rate); *Bayat v. Bank of the W.*, No. C-13- 2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement with approximately 1% claims rate); *Arthur v. SLM Corp.*, No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

It is expected individual Class Members will receive an award of approximately $4.00 to $6.00, and households approximately $7.00, after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration. *See* Weisbrot MFA Decl. ¶ 15. This is within the range of acceptable settlement amounts. *See e.g.,* Pls.' Mem. in Supp. of Final Approval, ECF No. 204-1 at 6-10, *Sony Gaming Networks*, No. 3:11-md-02258 (S.D. Cal. May 4, 2015) (settled for approximately $4.00 per class member who submitted a claim). In light of the significant hurdles should litigation continue— including, in overcoming an arbitration clause, defeating arguments that Class Member claims are preempted by COPPA, and obtaining class certification—the Settlement Agreement represents a

---

the actual claims rate may be much higher than believed.

reasonable compromise.[7]

Within fourteen days of the judgment becoming final, should the Court grant final approval to the Settlement, payments will be automatically issued to all Class Members who submitted Valid Claims in accordance with the Agreement. Agr. ¶ 6.2.7.

## IV. FINAL APPROVAL IS WARRANTED

### A. The Settlement Approval Process

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

The traditional means for handling claims like those at issue here—individual litigation— would unduly tax the court system, require a massive expenditure of public and private resources

---

[7] The settlement value of $0.18 per class member is also consistent with other recent class action settlements involving similar privacy claims, which have settled in a general range of $0.05 to $0.13 per class members. *See, e.g.*, *Google Cookie*, No. 1:12-md-02358 (D. Del. June 12, 2012) (~$.055 per class member); *Google Referrer Header*, No. 5:10-cv-04809 (N.D. Cal., Oct. 25, 2010) (~$.085 per class member); *Fraley v. Facebook*, No. 11-cv-01726 (N.D. Cal. Apr. 4, 2017) (~$0.13 per class member).

and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Indeed, as one Court in District previously observed:

> [T]he law recognizes class actions as a legitimate part of the U.S. litigation system. The Supreme Court has made this clear on several occasions. *See, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (explaining that, in appropriate cases, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). In addition, Federal Rule of Civil Procedure 23 provides for the use of such a procedure.

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 497 (N.D. Ill. 2015) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 982 (N.D. Ill. 2011) (St. Eve, J.)). For these reasons, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314)). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

Rule 23—and particularly the portions thereof dealing with settlement—was amended in December 2018. The first step in the amended process is a preliminary fairness determination.

Specifically, counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002).

The new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed. R. Civ. P. 23(e)(1)(B) (2018).

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); *also Manual for Complex Litigation*, § 21.633-34; *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members.").

The first step in this process—which requires front-loaded scrutiny of the settlement—has occurred. With this Motion, Plaintiffs respectfully request that the Court take the second and final step in the process by granting final approval of the Settlement.

**B.** <u>**The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved**</u>

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination at the final approval stage, courts in this Circuit consider the following factors:

       (1)    the strength of plaintiffs' case compared to the terms of the proposed settlement;

       (2)    the likely complexity, length, and expense of continued litigation;

       (3)    the amount of opposition to settlement among affected parties;

       (4)    the opinion of competent counsel; and

       (5)    the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199; *accord Holmes v. Roadview, Inc.*, No. 15-CV-4-JDP, 2016 WL 1466582, at *4 (W.D. Wis. Apr. 14, 2016). In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Isby*, 75 F.3d at 1199. In addition, courts "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *In re Sears, Roebuck & Co. Front-loading Washer Prods*, 2016 WL 772785, at *7 (citing *Armstrong*, 616 F.2d at 315).

Application of these factors here confirms that the Settlement is fair, reasonable, and adequate, and should be finally approved.

### 1. The Settlement Provides Substantial Relief When Measured Against the Strength of the Plaintiffs' Case

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs. Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

### a. Diverse and substantial legal and factual risks weigh in favor of settlement.

While Plaintiffs strongly believe in their claims, Plaintiffs understand that Defendants assert a number of potentially case-dispositive defenses. Here, Defendants maintained several defenses that, if successful, would have eliminated Plaintiffs' claims entirely.

*First*, Defendants contend that all of the Plaintiffs are bound by an arbitration agreement and class action waiver clause purportedly contained in the App. Some Courts have agreed with this defense, based on the facts in those particular cases. *See e.g. G.G. v. Valve Corp.,* No. C16-1941-JCC, 2017 U.S. Dist. LEXIS 50640, at *8-9 (W.D. Wash. Apr. 3, 2017).

*Second*, Defendants further contend that Plaintiffs' claims are preempted by COPPA. *See Manigault-Johnson v. Google LLC*, No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892, at *18-20 (D.S.C. Mar. 31, 2019).

*Third*, Defendants have argued that Plaintiffs would not be able to certify a litigation class. In particular, Defendants argued that the Classes are unascertainable, and that individual issues

predominate over common questions of law and fact. Defendants rely on decisions issued by various district courts to justify their reasoning. *See, e.g., Carrera v. Bayer Corp.,* 727 F.3d 300, 306 (3d Cir. 2013).

Plaintiffs dispute every one of these defenses. But Plaintiffs must unfortunately concede that their likelihood of success at trial was far from certain. "In light of the potential difficulties at class certification and on the merits . . . , the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

### b. The monetary terms of this Settlement fall within the range of related privacy class action settlements.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise").

The estimated recovery of $4.00 to $6.00 for individuals and $7.00 for households, or settlement value of $0.18 per Class Member, is comparable with other privacy class action

settlements that courts have approved. For example, *Sony Gaming Networks*, which concerned the disclosure of Sony PlayStation account holder information for 77 million class members, settled for $15 million, or approximately $4.00 per class member who submitted a claim, with a settlement value of $0.19 per class member. No. 3:11-md-02258 (S.D. Cal. May 4, 2015). *Fraley v. Facebook, Inc.*, which involved the alleged misappropriation of 146 million class members' personal data, settled for $20 million, or approximately $15.00 per class member who submitted a claim, with a settlement value of $0.13 per class member. 966 F. Supp. 2d 939, 942–44 (N.D. Cal. 2013), *aff'd sub nom*, *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016). *See also Google Cookie*, No. 1:12-md-02358 (D. Del. June 12, 2012) (~$.055 per class member); *Google Referrer Header*, No. 5:10-cv-04809 (N.D. Cal., Oct. 25, 2010) (~$.085 per class member).

In addition, Plaintiffs believe that this settlement—which partly arises out of COPPA violations and involves the unlawful collection of children's personally identifiable information and/or viewing data without parental consent—represents the first settlement of its kind. Plaintiffs therefore believe it is a landmark class action settlement in that respect. Accordingly, under the circumstances, including the uncertainties involved in proceeding with the litigation, the Parties believe the monetary terms of this proposed settlement fall favorably within the range of related privacy class action settlements.

### 2. The Objections Received are Insufficient, and Do Not Provide Justification for Denying Final Approval.

Clearly coordinated, the objections to the Settlement here were all postmarked within the same two-day period and contained the same generalized statements. *See* Mason MFA Decl. ¶ 6, Ex. C. For the reasons described below, the objections are both procedurally and substantively deficient, and do not provide justification for denying final approval and relief to more than 100,000 claimants who clearly support the settlement.

First, the objections were provided *after* the deadline to object. Under the terms of the Settlement Agreement and the Preliminary Approval Order, the deadline to object was March 17, 2020. The objections were not even post-marked until nearly a month later. Moreover, even ignoring that fact, the objections were still procedurally deficient in that the objectors here failed to file the objections with the Court or provide them to the Settlement Administrator. Weisbrot MFA Decl. ¶ 13; Mason MFA Decl. ¶ 7. The Settlement Agreement, as described in the Class Notice, requires objectors to send a written statement of their objection to the Settlement Administrator, Class Counsel, Counsel for Defendant, as well as to file the written objection with the Court. Agr. ¶ 10.2; *see* also Class Notice; *see also* Prelim. Approval Order ¶ 10 (allowing a Settlement Class Member to object by filing a written objection with the Court by the objection deadline). Class Counsel were the only individuals to receive the coordinated statements of objection from the objectors. Mason MFA Decl. ¶ 7.

Second, the written statements do not meet the substantive requirements set forth by the Settlement Agreement, Class Notice, and Preliminary Approval Order. Under the Preliminary Approval Order, any objection "must include: (i) a detailed statement of the Class Member's objection(s), as well as the s as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his/her objection(s); (ii) the Class Member's full name, address and telephone number; and (iii) information demonstrating that the Class Member is entitled to be included as a member of the Class." Prelim. Approval Order ¶ 10. The objections here fail to set forth a detailed explanation for the objection. *See* Mason MFA Decl. ¶ 7, Ex. B. At most, the objections state simply that $10.00 to $15.00 is insufficient, and request "mediation." Some do not even state that the estimated pay-out is insufficient at all. *Id.* This is not

a valid basis for objecting. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019) (overruling various objectors because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suit"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (overruling 28 objections that claimed "the Settlement is too low or otherwise insufficient"—"the positive response from the Class favors approval of the Settlement."); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 497 (N.D. Ill. 2015) (overruling 20 objections that claimed the settlement was inadequate because "[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *Browne v. Am. Honda Motor Co*., No. 09-CV-06750-MMM, 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) (overruling 117 objectors in a class of only 740,000 because "[t]he fact that there is opposition does not necessitate disapproval of the settlement. Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair."). Any Settlement Class Member can exclude themselves from the Settlement and independently seek additional compensation.

Moreover, the objections fail to provide any evidence or even a bare assertion that the objector is entitled to be included as a member of the Settlement Class. *Id.* The Settlement Class is defined as: [a]ll persons residing in the United States who registered for or used the Musical.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents and/or legal guardians. None of the objectors have confirmed that they registered or used Musical.ly and/or TikTok software. Similarly, no objector indicated that they were minors when they registered or used the software, or that they were guardians of minors who registered or used the software. By all accounts, these purported objectors do not appear to be members of the Class

and clearly only want 'more money' as indicated in their near-identical written statements.

The coordinated objections thus fail procedurally and substantively. They should be overruled. The Settlement at issue here was a huge success, receiving over 100,000 claims and only six requests for exclusion. "Such a remarkably low level of opposition supports the Settlement." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 965 (St. Eve, J.) (concluding that "tiny fraction" of opt-outs and objections supports approval). Ten clearly coordinated and deficient objections should not be allowed to outweigh the benefit brought to over 100,000 claimants, particularly when considering this was a novel case—involving an arbitration clause—from which success was far from certain.

### 3. Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in early discovery efforts to prepare for mediation, continued litigation would involve extensive motion practice, including motions to compel arbitration, motions to dismiss, motions for summary judgment, and ultimately a trial on the merits. Further, it is likely to be mid to late-2022 before the case would actually proceed to trial. And, any judgment in favor of Settlement Class Members could be further delayed by the appeal and certiorari petition process, which would likely include a Due Process challenge. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

This factor favors settlement approval.

### 4. Class Counsel Strongly Endorse the Settlement.

Class Counsel and Plaintiffs strongly endorse this Settlement. It is a landmark settlement

that will pave the way for relief for similar claims and discourage similarly alleged conduct in the future. Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar privacy class action cases); (2) Class Counsel engaged in significant investigation and discovery and exhaustively evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel, after an in-person mediation session, which was preceded by multiple rounds of mediation briefing beforehand, before Gregory P. Lindstrom of Phillips ADR, with many additional weeks of contentious negotiations between the parties following the mediation. Mason MPA Decl. ¶¶ 13-19; *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval"); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of approval.

### 5.  The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval.

The Settlement was informed by Class Counsel's analysis of the factual and legal issues involved in the case. Mason MPA Decl. ¶ 3. Counsel's judgment was based upon extensive interviews with clients and significant informal exchange of discovery with Defendants. Mason MPA Decl. ¶¶ 6, 15. Class Counsel possess the discovery necessary to confirm that the Settlement is fair, reasonable, and adequate. Mason MPA Decl. ¶¶ 6, 15.

Settlement negotiations, likewise, were hard-fought. They included a mediation session before Gregory P. Lindstrom of Phillips ADR, as well as numerous communications regarding

terms in the weeks preceding and following acceptance of the mediator's proposal. And prior to the mediation, the Parties engaged in multiple rounds of briefing addressing the strengths and weaknesses of their respective claims and defenses. What's more, the settlement was negotiated at arm's length by vigorous advocates, and there has been no fraud or collusion. Mason MPA Decl. ¶¶ 16-19.

Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through plaintiff investigations, informal discovery, and numerous, contentious arm's-length negotiations. This factor thus supports final approval of the Settlement. *See Isby*, 75 F.3d at 1200 (noting "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough'").

**6.** **The Settlement is Reasonable in Light of the Requested Attorneys' Fees.**

When determining whether a proposed settlement is reasonable, the Seventh Circuit has instructed district courts to "assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

As Counsel describe in their fee petition filed herewith, federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund . . . is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court

for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

Courts in this district have routinely concluded that the percentage-of-the-fund approach is superior to the lodestar approach for determining the market price for legal services in class action settlements. *Aranda v. Caribbean Cruise Line*, Inc., No. 12 C 4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14 C 1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *Craftwood Lumber Co. v. Interline Brands, Inc*., No. 11-cv-04462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (same). The percentage-of-the-fund approach is particularly appropriate in consumer class actions because the custom is for counsel and plaintiff to "negotiate[] a fee arrangement based on a percentage of the recovery." *Capital One*, 80 F. Supp. 3d at 795. "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis," which is something that consumer class members "likely would not be interested in doing." *Kolinek*, 311 F.R.D. at 493–94 (using percentage-of-the-fund method in TCPA class action).

"The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 572 (7th Cir. 1992). Generally speaking, the "ratio that is relevant . . . is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc*., 772 F.3d 778, 781 (7th Cir. 2014) (quoting *Redman*, 768 F.3d 622, 630 (7th Cir. 2014)).

Although there is no hard-and-fast rule, in consumer class actions in the Seventh Circuit,

attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631. Here, Plaintiffs' Counsel has requested the lower end of the fee spectrum: an award of 33%. This amount falls squarely in line with other approved class settlements. *See, e.g., Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class action that included, inter alia, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *see also Kolinek*, 311 F.R.D. at 501 (awarding 36% of net settlement fund); *Martin v. JTH Tax, Inc.*, No. 13-cv-6923 (N.D. Ill. Sept. 16, 2015) (awarding 38 % of net settlement fund).

Plaintiffs' counsel achieved an excellent result for the Class after undertaking substantial risk in prosecuting this novel action on a pure contingency basis, and they should be fairly compensated. Thus, the Settlement is reasonable in light of this factor.

### C.    The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved.

Incentive awards compensating named plaintiffs for work done on behalf of the class are also routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

The requested incentive awards of $2,500.00 each for the named Plaintiffs are reasonable. Plaintiffs worked with Counsel to investigate the case, responded to Counsel's inquiries, were kept

abreast of the proceedings, and reviewed and approved the proposed settlement. Moreover, the amount requested is reasonable, particularly when compared to other awards approved by courts in this District and elsewhere. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Craftwood Lumber Co.*, 2015 WL 1399367 (awarding $25,000 service award to plaintiff in TCPA case); *In re Sw. Airlines Voucher Litig.*, No. 110CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 service awards to both named plaintiffs); *Heekin v. Anthem, Inc.*, No. 05-cv-01908-TWP-TAB, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection).

### D. The Settlement Class Should be Finally Certified.

In the Preliminary Approval Order, the Court conditionally approved certification of the Settlement Class. *See* ECF No. 13. For all the reasons set forth in Plaintiffs' Preliminary Motion briefing, ECF No. 5, the Preliminary Approval Order, ECF No. 13, and described above, the Court should finally approve the Settlement.

## V. CONCLUSION

The Settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiffs respectfully request that the Court grant final approval to the Settlement.

Dated: May 12, 2020                                Respectfully Submitted,


By: */s/ Gary M. Klinger*
Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Phone: (312) 283-3814
Fax: (773) 496-8617
gklinger@masonllp.com

Gary E. Mason
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington D.C. 20016
Phone: (202) 429-2290
Fax: (202) 429-2294
gmason@masonllp.com

*Attorneys for Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 12, 2020, I electronically filed the foregoing document with

the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to

all Counsel of record.

By: */s/ Gary M. Klinger*
Gary M. Klinger