IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.K., THROUGH HER MOTHER SHERRI LESHORE, and A.S., THROUGH HER MOTHER, LAURA LOPEZ, *individually and on behalf of all others similarly situated*,<br><br>           Plaintiffs,<br>  v.<br><br>BYTEDANCE TECHNOLOGY CO., LTD., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and TIKTOK INC.,<br><br>           Defendants. | Case No. 1:19-cv-07915<br><br>Hon. John Robert Blakey<br><br>Mag. Hon. M. David Weisman |

**CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS, AND MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

On December 19, 2019, this Court preliminarily approved a proposed class action settlement between Plaintiffs T.K., through her mother Sherri Leshore, and A.S., through her mother Laura Lopez, ("Plaintiffs") and Defendants Bytedance Technology Co., Ltd., Musical.ly Inc., Musical.ly the Cayman Islands Corporation, and Tiktok Inc., ("Defendants"). *See* Prelim. Order, ECF No. 13. Class Counsel's efforts created a $1,100,000, non-reversionary common fund for the benefit of a Settlement Class consisting of an estimated 6,000,000 persons who registered for or used the Musical.ly and/or TikTok software application when under the age 13 and their parents and/or legal guardians.

Class Counsel have zealously prosecuted Plaintiffs' claims, achieving the landmark settlement only after extensive research and informal discovery; protracted negotiations and brief exchanges prior to mediation; participating in an all-day mediation with respected mediator Gregory P. Lindstrom of Philips ADR in Palo Alto, California; and spending subsequent weeks finalizing the terms of the Settlement Agreement.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $363,000, which represents 33% of the Settlement Fund. Class Counsel additionally seek reimbursement of their out-of-pocket costs of $13,082.50 incurred in prosecuting the case. This request should be approved because (1) it represents the market rate for this type of settlement, and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this first-of-its-kind action, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for an award of $2,500.00 to each of the two Plaintiffs for their work on behalf of the Class.

## II. PROCEDURAL BACKGROUND

Plaintiffs, through their counsel, first sent a demand letter and draft complaint to Defendants in June 2019 alleging violations of the privacy rights of the Plaintiffs in connection with the operation of Defendants' video social networking platform and software application (the "App."). The gravamen of the threatened action was Defendants' alleged collection and use of children's personally identifiable information and/or viewing data through the App. *See generally,* Compl., ECF No. 1. The following is a summary of the specific allegations made by Plaintiffs:[1]

Since at least 2014, Defendants have operated the App., providing a platform for users to create videos and then synchronize them with music or audio clips from various music libraries. Compl. ¶ 18. The App. is free to download from Apple's App Store, Google Play, and the Amazon Appstore. *Id.*

To register for the App., users provided their email address, phone number, username, first and last name, short bio, and a profile picture. Between December 2015 and October 2016, Plaintiffs allege that Defendants also collected geolocation information from users of the App., which, Plaintiffs contend, enabled Defendants and other users of the App. to identify where a user was located. *Id*. at ¶ 19.

Plaintiffs allege that a percentage of the App. users were under the age of thirteen, and that Defendants had actual knowledge they were collecting personally identifiable information and/or viewing data from children without parental consent. *Id.* at ¶¶ 18-51. According to Plaintiffs' Complaint, Defendants did not request age information for users of the App. prior to July 2017.

---

[1] Sections of this brief discussing issues that have not changed since Plaintiffs filed Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement have been adapted from Plaintiffs' memorandum in support of preliminary approval.

Plaintiffs further allege that portions of the App.'s content were directed at and strongly appealed to children under the age of thirteen. Compl. ¶¶ 18-51.

Plaintiffs assert that these acts and omissions resulted in violations of state and federal law. *See generally,* Compl. Indeed, in February of 2019, the Federal Trade Commission ("FTC") filed a complaint against Defendants for violations of the Children's Online Privacy Protection Act ("COPPA") in connection with the App. Subsequent to filing the FTC complaint, Defendants agreed to pay civil penalties in the amount of $5.7 million to settle the allegations that the company illegally collected personally identifiable information from children in violation of COPPA. At the time, the settlement was the largest civil penalty ever obtained by the FTC in a children's privacy case. In addition to the monetary penalty, the settlement also required Defendants to comply with COPPA going forward and to take offline all videos made by children under the age of thirteen. *See* Compl. ¶¶ 18-51.

From Plaintiffs' perspective, although the FTC settlement was a boon for COPPA enforcement, it still did not provide relief to the millions of consumers alleged to have been harmed by Defendants' conduct. *See* Pls.' Unopposed Mot. for Prelim. Approval ("Prelim. Mot.") at Ex. 1, Decl. of Gary E. Mason in Supp. of Pls.' Mot. for Prelim. Approval ¶¶ 11-12, ECF No. 5-1 ("Mason MPA Decl.").

Accordingly, Plaintiffs set out to seek relief on behalf of a nationwide class of consumers affected by the alleged conduct. Through their Counsel, Plaintiffs started with a letter to Defendants, attached to a draft complaint alleging claims of intrusion upon seclusion and violation of various state consumer protection statutes. Mason MPA Decl. ¶ 3. Thereafter, Plaintiffs' counsel also informed Defendants' counsel that should the case proceed, they would be adding an additional nationwide claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq*. Mason MPA Decl. ¶ 14.

Between June 3, 2019 and October 22, 2019, Plaintiffs' counsel and Defendants' counsel engaged in substantial informal discovery and information sharing concerning (i) the claims and potential defenses at issue in Plaintiffs' Complaint; (ii) the size of the potential class contemplated in the Complaint; and (iii) the suitability for class treatment of Plaintiffs' claims. This substantial informal discovery process allowed the Parties to thoroughly investigate their claims and defenses and evaluate the strengths and weaknesses of their respective cases. After months-long negotiations, the Parties agreed to participate in an all-day mediation with Gregory Lindstrom of Phillips ADR, a highly-respected mediator, that resulted in this Agreement—pursuant to a mediator's proposal—to settle the Civil Actions on a class-wide basis. Mason MPA Decl. ¶¶ 13-19.

## III. THE SETTLEMENT

The Settlement requires Defendants to pay $1,100,000 for the benefit of a Settlement Class comprised of an estimated 6,000,000 persons who registered for or used the Musical.ly and/or TikTok software application when under the age 13 and their parents and/or legal guardians. *See* Prelim. Mot. at Ex. 2, Settlement Agreement ¶ 2.3. ("Agr."), ECF No. 5-1.

Each Class Member was entitled to submit a claim for a pro rata share of the Settlement Fund less the cost of Settlement Administration Expenses, Class Counsel's fees and expenses, and any Incentive Award the Court may award. Agr. ¶ 6.1. The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. *Id.* Notice and administration through Angeion Group is expected to cost approximately $268,000. *See* Decl. of Steven Weisbrot, Esq. ¶ 14, ECF No. 28-2 ("Weisbrot MFA Decl."), filed with Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.

-4-

The Claims Administrator estimates that the average payment amount will be over $7.00 per household. Weisbrot MFA Decl. ¶ 5.

## IV. LEGAL STANDARD FOR ATTORNEY'S FEE DECISIONS

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The approach favored for consumer class actions in the Seventh Circuit is to compute attorneys' fees as a percentage of the benefit conferred upon the class; "there are advantages to

utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (finding percentage-of-the-fund to be the "normal practice in consumer class actions"). As other courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The Seventh Circuit has also determined that, in assessing the reasonableness of requested attorneys' fee, courts should consider the ratio of "(1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (omitting administrative costs and incentive awards from analysis). The Seventh Circuit has clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

**V.    ARGUMENT**

Plaintiffs respectfully request that the Court approve attorneys' fees of $363,000, costs of $13,082.50 and $2,500 incentive awards for Plaintiffs, totaling $5,000. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction,

and fairly reflects the result achieved. Similarly, the requested incentive award is comparable to other privacy cases and should be approved.

      A.      **Class Counsel's Requested Fee Award Is Reasonable.**

The percentage-of-the-fund method should be used here. *See Florin*, 34 F.3d at 566. Class Counsel's and Plaintiffs' efforts have resulted in a $1,100,000 non-reversionary Settlement Fund that provides actual value to the Settlement Class. Moreover, Class Counsel believe that this settlement—which partly arises out of COPPA violations and involves the unlawful collection of children's personally identifiable information and/or viewing data without parental consent—represents ***the first settlement of its kind***. Class Counsel therefore believe it is a groundbreaking class action settlement in that respect. Class Counsel deserve to be compensated for the result they achieved in this landmark privacy case.

Class Counsel seek attorneys' fees of 33% of the Settlement Fund, or $363,000, plus out-of-pocket costs of $13,082.50. Given the result obtained for the Class in this case, and the fact that the fee request is set at the "market range," the requested fee award is presumptively reasonable. Further, the requested fee award of 33% of the total Settlement Fund is also consistent with the "market price" as reflected in the fees approved by judges in this Circuit in other class cases, considering the risks of non-payment, the quality and extent of Class Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

      1.      **Seventh Circuit Attorney Fee Analysis**

"Reversionary" or "claims made" settlements, where the defendant takes back any amount of unclaimed/unused settlement funds, have come under scrutiny by the Seventh Circuit. Here, however, there is a non-reversionary, "true" lump-sum cash fund of $1,100,000. *Pearson*'s discussion of *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), highlights the difference:

> [I]n [*Boeing*] the "harvest" created by class counsel was an actual, existing judgment fund, and each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479. "Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id.* at 480 n.5. The class members [in *Boeing*] were known, the benefits of the settlement had been "traced with some accuracy," and costs could be "shifted with some exactitude to those benefiting." *Id.* at 480-81. [Unlike in *Boeing*,] . . . [t]here is no fund in the present case and no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did.

*Pearson*, 772 F.3d at 782.

The $1,100,000, non-reversionary common Settlement Fund here presents precisely the type of "actual, existing judgment fund" cited with approval by the Seventh Circuit in *Pearson*. Further, each Class Member has "an undisputed and mathematically ascertainable claim" to their share of a lump-sum judgment. And while, in a reversionary settlement like the one addressed in *Pearson*, "class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims," *id.*, the notice plan in *this* case (*i.e.*, a robust multi-media campaign) presents no such issue because no money will revert to Defendants.

The Seventh Circuit has regularly found that "a district court should compare attorney fees to what is actually recovered by the class and presume that fees that exceed the recovery to the class are presumptively unreasonable." *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 867 F.3d 791, 792 (7th Cir. 2017) (citing *Pearson,* 772 F.3d at 782). Here, Class Counsel's requested fee award easily satisfies the *Pearson* presumption of reasonableness: It is

approximately 44.4% of the total of requested attorneys' fees plus anticipated Settlement Class benefits—well under the 50% high-mark referenced as presumptively reasonable in *Pearson*.[2]

Class Counsel submit that at 33% of the common fund, this fee request is reasonable, consistent with market rates, and should be approved. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, inter alia, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *see also Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, 2017-cv-01307 (N.D. Ill. Aug. 8, 2019) (approving 35% of the settlement fund).

### 2. The risk associated with this litigation justifies the requested fee award of one-third of the common fund.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols.,, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court, in applying percentage-of-the-fund approach, refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a

---

[2] $363,000 Fee Award ÷ ($1,100,000 Settlement Fund - $283,782.50 Estimated Costs including Settlement Administration Expenses) = approximately 0.4447.

class because their fee is linked to the success of the suit[;] . . . [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

This case presented unique difficulties for class certification, summary judgment, and trial, which support the fee request. For example, Defendant's preemption defense with regard to the claims settled by the FTC under COPPA presented a potential total block to Plaintiffs' claims. Defendants also contended that all of the Plaintiffs were bound by an arbitration agreement and class action waiver purportedly contained in the App. Moreover, in the face of the arbitration clause, Class Counsel undertook a substantial risk in bringing the novel privacy claims to prosecute this action—despite the fact that recovery was far from guaranteed, they undertook the effort on behalf of the Class. The Settlement is the first of its kind—and Counsel should be fairly compensated.

Class Counsel assumed the risk of this litigation, including the advancement of time, costs, and expenses necessary to prosecute this matter zealously on behalf of Plaintiffs and the Class. *See* Decl. of Gary E. Mason in Supp. of Pls.' Unopposed Mot. for Final Approval ¶¶ 9-11, ECF No. 28-2 ("Mason MFA Decl."); Ex. 1, Decl. of Gary M. Klinger in Supp. of Pls.' Mot. for Attys.' Fees, Costs, & Service Awards ¶ 9 ("Klinger Costs Decl."), filed herewith. Given the lack of fee shifting under the relevant privacy statutes, the uncertainty surrounding relevant law and its application to data breaches where both causation and actual damages are difficult to prove, and the unknown variables in relation to the size and nature of the class pre-suit, whether this Court would ultimately certify Plaintiffs' proposed class, and whether Plaintiffs would ultimately be successful on the merits of their claims, the risk Class Counsel assumed was significant. This factor supports the requested fee award.

### 3. The requested fee comports with the contract between Plaintiffs and Class Counsel, and typical contingency fee agreements in this Circuit.

The "actual fee contracts that were negotiated for private litigation" may also be relevant considerations to a fee request. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Synthroid I*, 264 F.3d at 719); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (finding 40% to be "the customary fee in tort litigation"); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"). The agreement between Plaintiffs and Counsel for Plaintiffs is consistent with such customary contingency agreements. Mason MFA Decl. ¶ 12; Klinger Costs Decl. ¶ 11.

The fees contemplated under Class Counsel's representation agreements for cases in this District and elsewhere generally fall within the one-third to 40% range. Mason MFA Decl. ¶ 12; Klinger Costs Decl. ¶ 11. Here, Class Counsel's fee request falls at the lower end of this range. This factor supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee ex ante, and should therefore be awarded.

### 4. The requested fee reflects the fees awarded in other settlements.

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) (citation omitted).

The reasonableness of Class Counsel's 33% fee request here is further supported by the fact that awards of more than 35% of a settlement fund are commonplace. *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *Karpilovksy*, 2017-cv-01307, (approving 35% of the settlement fund); *see also Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund).

Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit and it, respectfully, should be approved.

### 5. The quality of performance and work invested support the fee request.

The quality of Class Counsel's performance and time invested through substantial informal discovery and adversarial negotiations to achieve a $1,100,000 Settlement Fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation, whatsoever, only achieving the Settlement after substantial negotiations. Mason MFA Decl. ¶ 9. Prior to filing the Complaint, Class Counsel expended significant hours in preparing and negotiating the claims. They conducted a pre-suit investigation, interviewed more than 800 potential claimants to evaluate potential claims, engaged in substantial informal discovery and pre-suit negotiations, participated in an all-day mediation in Palo Alto preceded by the exchange of multiple rounds of mediation briefs, and spent weeks thereafter negotiating and finalizing the settlement and ancillary papers. Mason MPA Decl. ¶¶ 5-19, ECF No. 5-1.

Class Counsel are experienced in litigating consumer class actions, including privacy cases. *See* Mason MFA Decl. ¶ 3, Ex. A; Klinger Costs Decl. ¶¶ 3-8. And because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the strength of the Settlement obtained for the Class, the extensive discovery and lengthy and adversarial nature of the settlement negotiations, Class Counsel respectfully submit that their experience and the quality and amount of work invested for the benefit of the Class supports the requested fee.

### 6. The stakes of the case further support the fee request.

The stakes of the case further support the requested fee award. This case involves approximately 6,000,000 minor Settlement Class Members whose private information was allegedly retrieved and stored by Defendants without parental consent. As privacy claims of this type are novel—indeed, Class Counsel believe this is the first settlement of its kind—the amount each Settlement Class Member is individually eligible to recover is unknown—and thus individuals are unlikely to file individual lawsuits, especially because it is unclear whether fees are recoverable under many of the applicable statutes. A class action is realistically the only way that many individuals would receive any relief.

In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### B. The Court Should Also Award Reasonable Reimbursement for Expenses.

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478). The Seventh Circuit has held that costs and expenses should be awarded based on the types of

"expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722; *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation).

Here, Class Counsel have incurred $13,082.50 in reimbursable expenses related to (1) legal research; (2) court fees; (3) travel to mediation; and (4) mediator's fees. Mason MFA Decl. ¶¶ 2, 10; Klinger Costs Decl. ¶¶ 2, 9. These expenses were necessary to prosecute this case and modest in comparison to both similarly sized lawsuits and the enormous costs that likely would have been incurred if litigation had continued. *Id.* Accordingly, Class Counsel request that the Court approve as reasonable expenses in the amount of $13,082.50.

### C. The Incentive Award to the Class Representative Should Be Approved.

Class Counsel also respectfully request that the Court grant a service award, in total, of $5,000.00 to Plaintiffs—$2,500.00 to each—for their efforts on behalf of the Class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Indeed, without Plaintiffs serving as Class Representatives, the Class would not have been able to recover anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. 10-4038, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach . . . plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes this commitment and

the benefits secured for other class members, and is thus reasonable under the circumstances of this case.").

The Class Representatives spent considerable time pursuing Class Members' claims. In addition to lending their names to this matter, and thus subjecting themselves to public attention, Plaintiffs and their Guardian Mothers, were actively engaged in this Action. Among other things, they (1) provided information to Class Counsel for the complaint and other pleadings; (2) reviewed pleadings and other documents, including the complaint; (3) communicated on a regular basis with Counsel and kept themselves informed of progress in the litigation and settlement negotiations; and (4) reviewed and approved the proposed settlement. Mason MFA Decl. ¶ 13; Klinger Costs Decl. ¶ 12. Their dedication to this Action was notable, particularly given the relatively modest size of their personal financial stakes in this case.

Moreover, the total amount requested here, $2,500.00 each for two Plaintiffs, is less than many other awards approved by federal courts in this Circuit. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); Final Approval Order ¶ 20, ECF No. 243, *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive awards in TCPA class settlement).

## VI. CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $363,000 in fees and $13,082.50 to reimburse their out-of-pocket

costs. Class Counsel further request that the Court approve a service award to both Plaintiffs in the amount of $2,500.00 each.

Dated: May 12, 2020                                     Respectfully Submitted,

                                                               By: */s/ Gary M. Klinger*
Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Phone: (312) 283-3814
Fax: (773) 496-8617
gklinger@masonllp.com

Gary E. Mason
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington D.C. 20016
Phone: (202) 429-2290
Fax: (202) 429-2294
gmason@masonllp.com

*Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2020, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all Counsel of record.

                                                               By: */s/ Gary M. Klinger*
Gary M. Klinger