1    IN THE UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2          EASTERN DIVISION

3
     T.K., THROUGH HER MOTHER, SHERRI    )
4    LESHORE, AND A.S., THROUGH HER      )
     MOTHER, LAURA LOPEZ,                )
5    individually and on behalf of       )    No. 19 CV 7915
     all others similarly situated,      )
6                                         )    Chicago, Illinois
             Plaintiffs,                  )    August 4, 2020
7                                         )    11:00 o'clock a.m.
           -vs-                           )
8                                         )
     BYTEDANCE TECHNOLOGY CO., LTD.,      )
9    MUSICAL.LY, INC., MUSICAL.LY THE     )
     CAYMAN ISLANDS CORPORATION, AND      )
10   TIKTOK, INC.,                        )
                                          )
11           Defendants.                  )

12
           TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motion
13            BEFORE THE HONORABLE JOHN R. BLAKEY

14   APPEARANCES:

15   For the Plaintiffs:      MASON LIETZ & KLINGER LLP
                              BY:  MR. GARY M. KLINGER
16                            227 West Monroe Street
                              Suite 2100
17                            Chicago, Illinois  60606

18
     For the Plaintiffs:      MASON LIETZ & KLINGER LLP
19                            BY:  MR. DAVID K. LIETZ
                                   MR. GARY E. MASON
20                            5101 Wisconsin Avenue NW
                              Suite 305
21                            Washington, DC  20016

22

23               LAURA LACIEN, CSR, RMR, FCRR, CRR
                      OFFICIAL COURT REPORTER
24                  219 South Dearborn Street
                            Room 1212
25                  Chicago, Illinois  60604
                         (312) 408-5032

APPEARANCES:   (Cont'd)


For the Defendants:     WILSON SONSINI GOODRICH & ROSATI PC
                        BY:   MR. ANTHONY J. WEIBELL
                              MR. RYAN S. BENYAMIN
                        650 Page Mill Road
                        Palo Alto, California  94304


For the Defendants:     MANDELL MENKES LLC
                        BY:   MR. STEVEN P. MANDELL
                        One North Franklin
                        Suite 3600
                        Chicago, Illinois  60606


For the Intervenor:     LOEVY & LOEVY
I                       BY:   MR. SCOTT R. DRURY
                        311 North Aberdeen
                        3rd Floor
                        Chicago, Illinois  60607

1          (The following telephonic proceedings were had in open

2      court:)

3          COURTROOM DEPUTY:  19 CV 7915, T.K., et al., versus

4      ByteDance Technology Company.

11:24AM   5          THE COURT:  Good morning, counsel.  As my Courtroom

6      Deputy said, you have to say your name before you speak.  If

7      you don't, it's going to make the transcript impossible to

8      follow.  So every time you speak, you have to say your name.

9      Is that understood?

11:24AM  10          UNIDENTIFIED MALE SPEAKER:  Yes.

11          THE COURT:  You didn't say your name so

12     obviously -- it's just like Simon Says, you just said "yes"

13     and you didn't say your name so let me try that again.

14          Does everyone understand that the first thing out

11:24AM  15     of your mouth every time you speak is your name, does

16     everyone understand that?

17          MR. DRURY:  Scott Drury, your Honor.  Yes, I

18     understand.

19          MR. MASON:  Gary Mason, your Honor.  Yes.

11:24AM  20          MR. MANDELL:  Steve Mandell.  Yes, your Honor.

21          MR. WEIBELL:  Tony Weibell for the defendants.

22     Yes.

23          THE COURT:  You can't speak at the same time.  Try

24     again.

11:24AM  25          MR. WEIBELL:  Tony Weibell for defendants.  Yes, I

1  understand.

2  MR. MANDELL:  Steve Mandell on behalf of the

3  defendants.  I understand, your Honor.

4  THE COURT:  Is that everybody?

5  MR. BENYAMIN:  Ryan Benyamin.  I understand, your

6  Honor.

7  THE COURT:  All right.  I'd like to have

8  appearances, please, beginning with the plaintiffs.  And if

9  you need to know who speaks first, go ahead and take a look

10  at the docket sheet.  I'd like you to make your appearances

11  in that order so we all know who needs to go next.

12  Appearances, please.

13  MR. MASON:  Your Honor, on behalf of the plaintiffs

14  this is Gary Mason from Mason, Lietz & Klinger.

15  MR. KLINGER:  Your Honor, on behalf of the

16  plaintiffs, this is Gary Klinger of Mason, Lietz & Klinger.

17  MR. LIETZ:  Your Honor, this is David Lietz on

18  behalf of the plaintiffs.

19  MR. MANDELL:  Your Honor, this is Steve Mandell.

20  I'm under the assumption that not everybody has the docket in

21  front of them.  I am representing the defendants and Tony

22  Weibell is also on the phone and he's representing defendants

23  as well.

24  MR. DRURY:  Your Honor, this is Scott Drury,

25  D-r-u-r-y.  I represent the Objector and putative Intervenor.

11:25AM

11:25AM

11:25AM

11:26AM

11:26AM

1      THE COURT:  Okay.  Counsel, we have a few things to

2  work through.  Everyone is going to get a chance to make an

3  argument and I'm going to take the matters under advisement

4  and issue a written order as soon as possible.

11:26AM  5      Absent a different proposal from the parties, I was

6  going to take up the Motion to Intervene first and then get

7  into more of the merits.  How does that sound?

8      MR. MASON:  That works, your Honor.  This is Gary

9  Mason.

11:27AM  10      MR. DRURY:  Your Honor, this is Scott Drury.

11  Whatever your Honor prefers is fine with the Objector and

12  Intervenor.  I think it may make sense to talk about the

13  objection first because if your Honor has questions about the

14  objection, the intervention is directly related to that.  But

11:27AM  15  if your Honor wants to move directly to intervention, I'm

16  prepared to address that issue.

17      THE COURT:  Okay.  Well, let's -- I'll hear from

18  the Objector/Intervenor first.  There was a Motion to

19  Intervene filed 5-11.  There was also a letter from an Angela

11:27AM  20  Campbell that was filed on 6-22.  She does not have any

21  separate representation; is that fair to say, counsel?

22      MR. DRURY:  Scott Drury, your Honor.  I do not

23  believe that Ms. Campbell is separately represented.  I think

24  she filed that letter just in response to some comments that

11:28AM  25  were made in other filings about --

1          COURT REPORTER:  He needs to speak up.  I'm sorry.

2          THE COURT:  Okay.  Counsel, you're going to have to

3    keep your voice up.  Okay?  Try that again.

4          MR. DRURY:  Yes, your Honor.  Scott Drury.

5    Ms. Campbell, as I understand it, does not have any separate

6    representation.  She sent a letter to the Court in response

7    to representations that were made about the position of some

8    of her clients and then we attached that letter as an exhibit

9    to our reply brief.

10          THE COURT:  All right.  There's also a supplemental

11   Motion to Intervene that was filed a matter of days ago.

12   Counsel, correct me if I'm wrong, but my understanding is

13   that the initial due date for objections was March 17th; and

14   then through the COVID orders that were entered, the General

15   Orders, that was extended through and including May 6th.  Is

16   that correct?

17          MR. DRURY:  No, your Honor.  My understanding is,

18   is that through the COVID orders, the objection dates were

19   extended up to and including June 2nd, 2020.  There was an

20   order entered on March 16th that extended the date 21 days

21   and then there were two more orders, on March 30th and April

22   24th, that extended a total of 56 days for a total extension

23   of 77 days which brought us to June 2nd, 2020.

24          THE COURT:  All right.  So then the --

25          COURT REPORTER:  Is that Mr. Drury?

11:28AM

11:28AM

11:28AM

11:29AM

11:29AM

1          THE COURT:  That's Mr. Drury.  Again, Mr. Drury,

2     please state your name before you speak so we have a clean

3     record.  So then the supplemental Motion to Intervene is

4     untimely; is that fair to say?

11:29AM    5          MR. DRURY:  I would say so, your Honor.  I have not

6     seen that motion.  It's not brought on behalf of my client

7     but it seems that if it came after June 2nd, it would be

8     untimely.

9          THE COURT:  Okay.

11:29AM   10          COURT REPORTER:  That was Mr. Drury?

11          THE COURT:  Again, Mr. Drury --

12          MR. DRURY:  Scott Drury.  I apologize, your Honor.

13          THE COURT:  -- I know these are trying times for

14     everyone.  It requires a lot of patience.  These telephonic

11:30AM   15     and/or remote hearings in general are not as good as

16     in-person hearings.  We're all going to have to learn new

17     habits and that includes stating your name before you speak.

18     Okay?

19          All right.  Counsel, do you want to get into the

11:30AM   20     merits of both your objection and the -- your Motion to

21     Intervene, whether it is as of right or a permissive

22     intervention under 24(a)(2) or 24(b)?  Go ahead; and if you

23     want to argue those together, that's fine with me.  Go ahead.

24          MR. DRURY:  Scott Drury, your Honor, on behalf of

11:30AM   25     the Objector and Intervenor.

1          Your Honor, this case is about the collection,

2       disclosure, and distribution of Personally Identifiable

3       Information.  That is made clear in multiple filings and,

4       most importantly, it's made clear in the complaint and the

11:30AM   5       various claims that are asserted in the complaint.  The

6       parties, plaintiffs and defendants, brought before your Honor

7       a proposed settlement -- it's a preliminary approval -- which

8       your Honor -- which your Honor granted back in December.

9       After seeing the proposed settlement, Objector timely filed

11:31AM  10       numerous objections because the settlement does not meet the

11       standards of being fair, reasonable, and adequate.  Your

12       Honor, one just needs to look at the facts and figures of

13       this settlement to see why it does not meet those standards

14       by any stretch of the imagination.

11:31AM  15          As the plaintiffs stated in their complaint, the

16       goal of this complaint was to make six million child victims

17       who had their personal information collect -- surreptitiously

18       collected and distributed to make them whole.  That's at

19       Docket 1, Paragraph 57 of the complaint.  After

11:31AM  20       issuing -- after reaching the settlement and distributing the

21       class notice, only 90,953 payable claims were submitted by

22       members of this -- by the six million members of the class;

23       and specifically the six million seventy thousand members of

24       the class.  That's a paltry 1.5 percent of the class that

11:32AM  25       submitted claims which as the Seventh Circuit found in *Redman*

1        indicates that indifference and rejection of the settlement.

2               But more importantly than the small amount of

3        claims, your Honor, is that 59 percent of the settlement

4        fund, the $1.1 million settlement fund, 59 percent of that --

11:32AM    5        exactly $649,082.50 -- go to the three lawyers for the

6        plaintiffs' counsel, one administrator, and the two class

7        representatives leaving only 41 percent to go to the six

8        million child victims.  On a pro rata basis, that's seven

9        cents per victim, your Honor.  If we look at it just on

11:32AM   10        the -- with the claimants, that's just $5 per claim -- per

11        claimant.

12               The settlement doesn't provide for any injunctive

13        relief.  It doesn't require the deletion of all the

14        information of all of the children under 13 whose data the

11:33AM   15        defendant has collected.  It doesn't require the defendant to

16        claw back the data that it improperly collected and disclosed

17        and it doesn't even require the defendant to disclose who it

18        gave the data to.

19               Now the plaintiffs and the defendants have

11:33AM   20        indicated that the settlement -- injunctive relief is not

21        appropriate in this case because there's a different

22        injunction that has been entered by the FTC.  And, your

23        Honor, I want to make clear that the Objector in no way is

24        trying to assert the claims of the FTC.  We're not trying to

11:33AM   25        enforce the FTC settlement.  But the fact is, is that there

1    is a gap in the injunctive relief that the FTC settlement

2    reached that could be part of this settlement that would

3    provide these six million victims the relief they need to be

4    made whole.  And as the Objector -- as the plaintiffs cited

11:34AM    5    in one of their cases, in *Fraley*, a settlement allows for any

6    relief the parties want so certainly there could be

7    injunctive relief in this case.

8         And as I'll address a little bit later, there is

9    other litigation going on related to TikTok in front of Judge

11:34AM    10    Lee that is set for a settlement conference.  And in that

11    case, the defendant who is represented by the same counsel

12    has represented to Judge Lee that they intend to offer

13    injunctive relief at that settlement conference directly in

14    contradiction to what they're telling you in their briefs

11:34AM    15    here.

16         So just again, from the facts and figures, this

17    settlement is not fair, reasonable, or adequate.  When we

18    look at it under the factors of Federal Rule of Civil

19    Procedure 23(e)(2), we can see that the claim -- that the

11:34AM    20    relief is not adequate.  The alleged claims that the

21    plaintiffs make in their complaint are strong despite the

22    fact that they now try to downplay their own claims; and

23    they're worth well in excess of the $1.1 million settlement

24    fund.

11:35AM    25         They bring claims under the Video Privacy

1   Protection Act which allow --

2          COURT REPORTER:  I'm sorry.

3          THE COURT:  Counsel, try that again.

4          MR. DRURY:  Yes, your Honor.

5          THE COURT:  Louder and slower.

6          MR. DRURY:  Okay.  They bring claims -- the

7   plaintiffs bring claims, your Honor, under the Video Privacy

8   Protection Act which allow for statutory damages of $2,500

9   per violation.  The requisite elements under the Video

10  Privacy Protection Act is that the defendant is a video

11  service provider, which it clearly is, that the plaintiffs

12  are subscribers, which they clearly are by registering and

13  signing up for this service, and that the information is

14  Personally Identifiable Information, which it is.

15         The information at issue here, your Honor, are

16  first and last names, biographical information, pictures,

17  videos, user names.  And as we cited in our reply brief in *In*

18  *re Vizio*, the courts have found that conduct almost identical

19  to the conduct here is a violation of the Video Privacy

20  Protection Act so that is a very strong claim.

21         The common law privacy claims, intrusion upon

22  seclusion, and under the California constitution are also

23  very strong claims.  There certainly is an expectation of

24  privacy that children have and parents of children have in

25  their child's viewing habits and it's been found in the case

11:35AM
11:35AM
11:35AM
11:36AM
11:36AM

1    that we cited *Kiloo v. McDonald* -- the *Kiloo* case that

2    the -- the conduct of taking children's data is highly

3    offensive.  Here the conduct was luring kids to using a video

4    app while claiming that they weren't trying to -- while

11:36AM    5    claiming that this app was not directed at children in direct

6    violation of a federal statute that did not allow them to do

7    this.

8         The remaining claims under the Consumer Legal

9    Remedies Act under California law and the Illinois Consumer

11:37AM    10   Fraud and Deceptive Business Practices Act are equally

11   strong.  As here, the defendants engaged in -- engaged in

12   deceptive practices again in luring children into signing up

13   and registering for this service and using this sort of

14   service while knowing that they were going to be collecting

11:37AM    15   their data, distributing their data and not giving them

16   any -- without any consent.

17        Your Honor, if the Court were just to look at the

18   91,000 victims that submitted claims in this case under the

19   Video Privacy Protection Act and say that there was a single

11:37AM    20   violation for just each one of those victims, which again is

21   only 1.5 percent of the class, the total value of those

22   claims is $225 million.  Under the California Consumer Legal

23   Remedies Act, there's $1,000 per violation statutory damages

24   clause.  Again, looking at that with just the 90,000 or so

11:38AM    25   victims that submitted claims, that would equal $90 million.

1   This does not even get into the punitive damages award that a

2   jury would likely give in this case given the fact that the

3   defendant engaged in this conduct both before and after a

4   federal injunction was entered preventing them from doing

11:38AM   5   this and the fact that the defendants have not been deterred

6   by a -- deterred by a $5.7 million penalty that was entered

7   against them.

8          On the other side when looking at the defenses to

9   these claims, they're very weak, Judge.  The defendants claim

11:38AM   10   that these claims are subject to arbitration; but under both

11   California and Illinois law, a minor can disaffirm any

12   agreement even past the age of 18.  And under those laws, a

13   plaintiff or a child can disaffirm that contract even if

14   they've received some benefits from the contract.

11:39AM   15          The other claim that the defendant largely relies

16   on is preemption.  They say that the claims are preempted

17   under the Children's Online Privacy Protection Act, COPPA,

18   but COPPA doesn't preempt federal claims and Count One of

19   this complaint is a federal claim under the Video Privacy

11:39AM   20   Protection Act.  But even looking at the state claims, those

21   claims are not premised on the collection of data without

22   parental consent.  They're just premised on the fact that the

23   defendants collected this data without consent at all so

24   they're outside of the COPPA rule.

11:39AM   25          And to the extent that the Court were to find that

11:39AM

1    they're not wholly outside of the COPPA rule, the claims are

2    consistent with COPPA because the liability that they're

3    claiming is based on the defendant's actual knowledge that

4    kids are using the app, which is wholly consistent with

5    COPPA.  And again for that, your Honor, we cited the *New*

6    *Mexico versus Tiny Lab* case which found to be the same

7    finding.

8                COURT REPORTER:  I'm sorry.

9                THE COURT:  Go ahead, counsel.  If you could repeat

11:40AM    10   that last statement.  Go ahead.

11               MR. DRURY:  We cited -- your Honor, we cited to the

12   case *New Mexico versus Tiny Lab* which is a case that asserts

13   claims on behalf of child victims and on behalf of -- against

14   advertisers and app makers that were collecting child data

11:40AM    15   and there was a claim by the defendant in that case -- and I

16   believe defense counsel is one of the lawyers in that case.

17   There was a claim by them that COPPA preempted the case and

18   the federal judge in New Mexico found that that is not the

19   case, that COPPA did not preempt those claims.

11:40AM    20               There's also a case pending, your Honor, in the --

21   (telephone interruption) and to COPPA claims brought by on

22   behalf of children.  And, your Honor, we've cited that case

23   and that's the -- I believe it's the *Kiloo* case but I can get

24   your Honor and the Court the exact cite after the hearing if

11:41AM    25   it needs it.  But in that case, the Court has also allowed

1   the case to go on beyond a motion to dismiss.  So this case

2   is not preempted by COPPA, which is the main defense.

3          The defendants also argue that this case is not a

4   good case for class action because there's not common

11:41AM  5   questions of law in fact.  But, your Honor, there's many

6   common questions of law in fact in this case that make it

7   ideal for a class action and certainly at this early stage,

8   that is not sufficient to determine that this case should

9   settle, not even for pennies on the dollar, your Honor, but

11:41AM 10  it seems like half pennies on the dollar.

11         Furthermore, your Honor, there's no support for

12  this settlement.  As I said, there's a 1.5 percent claim rate

13  which the Seventh Circuit has found indicates indifference

14  and rejection of the settlement.  And even if the Court were

11:42AM 15  to look at the low opt-out rate which the plaintiffs and

16  defendants cite to, that does not indicate that the

17  settlement is fair or that the Court should accept it.  And

18  the Seventh Circuit found that in the *Eubank* case,

19  E-u-b-a-n-k, which again is cited in our brief.

11:42AM 20         And finally with respect to support for the

21  settlement, I want to point out that the plaintiffs relied

22  heavily in their opposition to the objection to the position

23  of the child advocates.  And, your Honor, I submit that the

24  child's advocates and the advocacy groups, some that are

11:42AM 25  represented by Professor Campbell, are a good proxy for

1   whether -- a good proxy for the child victims and the

2   positions of the victims as they're keeping up with these

3   issues and were aware of the settlement.  And as Professor

4   Campbell made clear, the child advocates from day one did not

11:43AM   5   support and do not support this settlement --

6   THE COURT:  Counsel, counsel, let me interrupt you.

7   MR. DRURY:  Yes?

8   THE COURT:  Professor Campbell has not made a

9   Motion to Intervene, has not made an appearance, correct?

11:43AM   10   MR. DRURY:  She has not, your Honor.  And as she

11   said in her letter, she did not believe because she herself

12   is not a child victim and the organization she represents are

13   not child victims that the position -- as I believe she put

14   in her letter -- was that they didn't have standing to be

11:43AM   15   present in these proceedings.

16   Certainly, your Honor, if your Honor wanted to hear

17   from them, my guess is -- and I don't represent them -- that

18   that could be arranged.  But no, you're correct, they have

19   not filed an appearance before your Honor or before this

11:43AM   20   Court.

21   THE COURT:  Okay.  Go ahead, counsel.  I

22   interrupted you.

23   MR. DRURY:  But my point is, is that they submitted

24   in the record because we submitted the letter as part of our

11:44AM   25   reply that the representations that have been made by

1   plaintiffs that the child advocacy groups support this

2   settlement is not -- is inaccurate at best.

3           So, again, when looking at the strength of the

4   claims versus what's been offered, there's just -- there's a

11:44AM   5   complete disconnect, your Honor.  The strength of the claims

6   are strong.  They're worth far in excess of $1.1 million and

7   the $1.1 million settlement fund is totally disattached from

8   the actual worth and strength of the claims.

9           The next factor that the Court, I believe, should

11:44AM   10   look at in its analysis is whether or not class counsel and

11   the class representatives have adequately represented the

12   class.  And here we have a settlement that principally served

13   to induce the defendant to -- we have a case that principally

14   served to induce the defendant to pay money to class counsel

11:45AM   15   to make them go away.  And, in fact, the plaintiffs indicated

16   that that's what they think all settlements are is just an

17   amount of money to make plaintiffs go away.  Well, the

18   Seventh Circuit has expressly said that that is not the case

19   in *In re Subway*.

11:45AM   20           And beyond that, your Honor, the fees that the

21   class counsel are seeking here of $363,000 are completely

22   unsupported.  They want to do a percentage of the funds fee

23   but here it's unclear what work they did to earn that fee and

24   at minimum Objector believes that the calculus should be a

11:45AM   25   lodestar or at least a lodestar cross-check.

1        When looking at where the substantive allegations

2    of this complaint came from, which is important because it

3    indicates the investigation that went into these claims, the

4    plaintiffs in this case wholly copied them from a previously

11:46AM    5    filed complaint in the FTC matter and we set forth those --

6    the copied allegations in our initial objection.  So when the

7    plaintiffs come forth and say they should get $363,000 plus

8    expenses, which is a third of the small settlement already,

9    the fact is, is that the investigation that went into this

11:46AM   10    case was done by government attorneys; not done by

11    plaintiffs' counsel.

12        Moreover, in terms of the inadequate

13    representation, the release in this case, your Honor, is

14    extremely broad.  They seek to release any claims that arise

11:46AM   15    out of or related to -- for all time anything related to the

16    civil actions which are the claims in this case or the

17    subject matter of the complaint and we set forth in our

18    objection and in our response numerous claims that are

19    subject to the release.  And this has already become a

11:47AM   20    problem because as we said in our objection, your Honor, one

21    of the claims that is subject to the release indisputably are

22    claims under the Biometric Information Privacy Act, an act

23    which wholly deals with personal information and taking

24    personal information, namely biometric data, without people's

11:47AM   25    consent; and we raised in our objection that this was subject

1   to the release.

2           And the reason that I highlight this is because the

3   defendants and the plaintiffs have spent some time saying

4   that these claims under the Biometric Information Privacy

11:47AM   5   Act, referred to as BIPA, were not part of the release.  And

6   this is important, your Honor, because the defendants and the

7   plaintiffs at once are trying to have your Honor uphold the

8   settlement and at the same time they're trying to disregard

9   parts of the settlement that they don't like making it

11:47AM   10   impossible for people to know what their rights are even

11   under the settlement.

12           Your Honor, in your order on December 19th, 2019,

13   your preliminary approval order, you entered a preliminary

14   injunction that barred any settlement class members from

11:48AM   15   bringing any new alleged class actions or asserting any

16   released claims in any other action.  Shortly after you did

17   that, a bunch of class actions were filed in the Northern

18   District of Illinois.  They've all been consolidated in front

19   of Judge Lee in matter 20 CV 2810, *E.R. v. TikTok*.

11:48AM   20           Each of those complaints initially tried to abide

21   by your preliminary injunction and they defined the class in

22   those cases, which were all cases -- privacy cases against

23   TikTok based on BIPA.  They limited the class to Illinois

24   residents ages 14 to 17.  That's important because the class

11:48AM   25   here was children under 13.  So those plaintiffs knew at the

1      time or at least thought they knew that the release in this

2      case included the BIPA claims and that your Honor's

3      injunction barred anyone from bringing those claims.

4      We filed our objection on May 11th, 2020, where we

11:49AM    5      raised the issue of the broad release.  On June 5th, 2020,

6      both the plaintiffs -- well, the plaintiffs in their

7      opposition explicitly stated that no, the BIPA claims are not

8      released even despite the broad language in those claims.

9      Exactly one week later, the plaintiffs in those cases in the

11:49AM   10      Northern District of Illinois filed a consolidated complaint

11      and they changed the class definition to all children under

12      18.

13      Now why is this important?  Well, it's important,

14      your Honor, because it's unclear to members of the settlement

11:49AM   15      class, including the Objector, whether or not -- what their

16      rights are even under the settlement and what other claims

17      they could be bringing or could not be bringing.  The

18      plaintiffs fault the Objector for not filing his own

19      complaint but doing so would be in direct violation of your

11:50AM   20      Honor's order unless the plaintiffs and defendants say that

21      it wouldn't be.  And there's just no -- right now, there's no

22      certainty as to what the -- what your Honor's order is and

23      the plaintiffs and defendants are seemingly just trying to

24      play games by trying to salvage the settlement where they can

11:50AM   25      and move forward with other litigation where they can all in

1   hopes of having the settlement go forward but not really even

2   looking at their own language that they put forward.  So it's

3   problematic and it demonstrates that the -- that the

4   plaintiffs and the plaintiffs' counsel are not adequately

5   representing the class, which again provides grave problems

6   for the settlement and is a reason that the settlement should

7   not be approved.

8          Finally, your Honor, there's an issue of the

9   defective notice program in this case which we set forth at

10  length in our brief.  There was no direct notice provided to

11  the class members and it's unclear and no one has explained

12  why the defendant simply couldn't have direct messaged

13  through their app to members of TikTok that this settlement

14  had happened and that they could enforce their rights.

15         Further, the fact is that the way TikTok works,

16  it's able to identify people through facial recognition and

17  show them videos and other materials that seemingly based on

18  data that we've seen show people and videos just like the

19  people watching them that they know who is watching these

20  videos and they have the technology to identify children that

21  they believe or believe to be are under 13 and no effort was

22  made.

23         But even if we put that technology aside, the fact

24  is that the targeting in this case was completely wrong.

25  They -- they targeted parents of children under 18 where the

11:50AM

11:51AM

11:51AM

11:51AM

11:52AM

1   parents use music apps, use social media, or use video apps

2   and there's no explanation as to why the belief was that

3   someone who has a child under 13 who uses TikTok themselves

4   are heavy app users, be it TikTok or any other app, and why

11:52AM   5   traditional methods of notification weren't used.  And the

6   fact that there's such a small response, 1.5 percent, is

7   indicative of the fact that either this settlement was too

8   small for people to care or the fact that people didn't get

9   notice.

11:52AM   10   Further, the notice program failed to update class

11   members of the changes in the schedule through the COVID

12   orders as has been an issue in this case.  What were the

13   actual dates when objections were due, what were the actual

14   dates of this hearing.  That information was not being

11:53AM   15   updated on the site even though your Honor's order in

16   December specifically required the parties to update the

17   notice on the website.  That's at Paragraph 14 of Docket 13.

18   The notice had the wrong effective date of when

19   people's claims -- the effective date of people's claims.  It

11:53AM   20   cut off the effective date on May 6th even though the

21   effective date has not run even as of this hearing, your

22   Honor.

23   And finally as we raised, the original schedule set

24   forth in the notice program improperly required the

11:53AM   25   objections to be put forth before the motion for approved --

1   for final approval on the fee petition.  And, your Honor, I

2   want to make clear that in doing that, there was no attack on

3   the court that the plaintiffs had said.  This was a schedule

4   that the plaintiffs proposed and at no point did anyone make

11:54AM   5   your Honor aware of the issue until it was raised in the

6   objection.  So for all these reasons, your Honor, the

7   Objector submits that this case -- this case should not be

8   approved and, you know, there should be further proceedings.

9   There were a couple of procedural issues that the

11:54AM   10   plaintiffs raised.  One was class membership which we

11   took -- we believe the initial objection satisfied the class

12   membership but certainly through the declaration of the

13   Objector have taken care of any questions whether or not the

14   Objector and his son fit within the broad scope of -- the

11:54AM   15   broad definition of class membership here, that's (telephone

16   interruption) the age of 13 and their parents, who used or

17   registered the TikTok app before the effective date, which

18   again, your Honor, has not yet run.

19   There also was a procedural issue related to

11:55AM   20   the -- related to whether or not the length of the brief --

21   and, your Honor, we submit that given the issues in this

22   case, the brief was succinct as it could be, we know it was

23   lengthy, and ask for leave to have that -- our filing

24   accepted nunc pro tunc to the date on which it was -- on

11:55AM   25   which it was filed.

1    Your Honor, do you want me to move right forward in

2  intervention or do you want me to pause here?

3    THE COURT:  I'm going to -- I want you to take a

4  moment, look at your notes regarding intervention.  I'm going

5  to ask you about that in a moment and then I'm going to hear

6  from the plaintiffs and the defendants.  I have a criminal

7  case that -- due to this case running over, I'm going to take

8  a break from this case and I'm going to take up my criminal

9  case and then I'm going to come back with you all so my

10  Courtroom Deputy is going to put you on mute for a while.  Go

11  over your notes and then I would like you to stay on the line

12  and I will expedite things as fast as I can and I thank you

13  in advance for your patience.

14    I do have to have this criminal matter resolved and

15  I believe I can do that in fairly short order.  It's not

16  substantive.  It has to do with some procedural matters

17  regarding a trial that's going to proceed with COVID

18  guidelines so it's not the substantive pretrial conference.

19  So at this point, we're going to take a recess on the civil

20  case and we're going to switch over to the criminal case.

21    Gloria, could you mute this -- the attorneys on the

22  line, please?

23    (The Court turned his attention to other matters on his

24  call, after which the following telephonic hearing was held

25  in open court:)

1   COURTROOM DEPUTY:  19 C 7915, T.K. versus ByteDance

2   Technology; recall.

3   THE COURT:  Thank you, counsel, for your patience.

4   I needed to have that criminal matter proceed and I apologize

12:27PM    5   for the inconvenience.  It seems to be the norm nowadays.

6   Everything's inconvenient.

7   Counsel for the Intervenor, you were about to

8   address the factors under Rule 24(a)(2) and Rule 24(b)

9   regarding intervention of right and -- or permissive

12:28PM   10   intervention.  Go ahead, counsel.

11   MR. DRURY:  Scott Drury, your Honor.  If I may, I

12   just wanted to go back and provide some citations to the

13   cases that I cited unless your Honor would prefer me to

14   dispense of that and just move forward with intervention.

12:28PM   15   THE COURT:  No, go ahead.  Put the cites of record.

16   That will be useful later.

17   MR. DRURY:  Your Honor, I cited the case *In re*

18   *Vizio, Inc.*, *Consumer Privacy Litigation* with respect to the

19   Video Privacy Protection Act.  The citation is 238 F.Supp.3d

12:28PM   20   1204.  238 F.Supp.3d 1204.  I also referred to *McDonald v.*

21   *Kiloo*, K-i-l-o-o, *APS* with respect to a motion to dismiss

22   opinion in the Northern District of California related to

23   child -- children's claims and COPPA and intrusion upon

24   seclusion.  The citation is 385 F.Supp.3d 1022.  And again,

12:29PM   25   that's a Northern District of California case.  Also, this

1    *New Mexico versus Tiny Lab Productions* regarding preemption

2    and the citation for that case is 2020 WL 2065275; and so I

3    just wanted to make sure those were in the record.

4                    With respect to intervention, your Honor, the

12:29PM    5    Objector and putative Intervenor seeks to intervene both as

6    of right and if the Court does not grant that as of right,

7    permissibly under 24(b).  With respect to intervening as of

8    right, your Honor, the main objections to intervention seem

9    to be that the motion is untimely and that Mark S., the

12:30PM   10    Objector, doesn't have an interest that's impaired.

11                    Turning first to the timeliness, the Motion to

12    Intervene is presumed timely because Mark S. has moved to

13    intervene before the objection or the opt-out deadline.  And

14    that comes directly from a case that the plaintiffs cite, *In

12:30PM   15    re Community Bank of North Virginia.*  And I can get your

16    Honor the cite to that.  I'll give you -- your Honor, I can

17    provide the cite at the end of the argument if your Honor

18    wants.

19                    Beyond it being presumed to be timely, the fact is,

12:30PM   20    your Honor, that no substantive action has taken place in

21    this case beyond the filing of the complaint and then

22    immediately after that the filing of the proposed settlement

23    so there would be no prejudice to the parties should this

24    case -- should Mark S. be allowed to intervene in the case.

12:31PM   25    The plaintiffs and the defendants contend that the prejudice

1     would be that the settlement would be derailed.  But as I

2     just argued at length about, the settlement is not a

3     settlement that should be approved to begin with and the mere

4     fact that intervention may disrupt a settlement is not the

12:31PM    5     type of prejudice that amounts to someone not being able to

6     intervene; and that was set forth clearly in the *In re*

7     *Discovery Zone* case.

8         Moreover, your Honor, prior to this case being

9     filed and because of the procedural way in which it carried

12:31PM   10     out that they settled the case before filing it, there was no

11     way to intervene before the settlement was put before your

12     Honor.  So again, following the Court's orders and the

13     COVID -- the amended -- the COVID-related order that extended

14     everything to June 2nd, the objection was timely.

12:32PM   15         On the other hand, the prejudice to Mark S. and to

16     settlement class members is immense if they're not allowed to

17     intervene in this case.  As I stated during the argument on

18     the objections, there is an extremely broad release in this

19     case that requires the settlement class members to give up a

12:32PM   20     lot of rights to a lot of claims, including the Biometric

21     Information Privacy Act claims, including claims for unjust

22     enrichment and the other claims set forth in our objection.

23     In return for that, the settlement class members (phone

24     interruption) $5, maybe $5, and nothing more.

12:33PM   25         Moreover, your Honor, the fact is that without

1    being allowed to intervene, it's unclear what -- well, it is

2    clear that class counsel is no longer representing the

3    interests of the class.  They're representing the interests

4    of protecting the settlement and that's made clear in

12:33PM    5    multiple ways.  It's made clear by the fact that in their

6    opposition to (telephone interruption), they try to discredit

7    their --

8                THE COURT:  In their opposition -- what, counsel?

9    Are you on speaker, counsel?

12:33PM    10                MR. DRURY:  I'm not.

11                THE COURT:  Okay.  All right.  There's just a --

12                MR. DRURY:  I'm talking on a microphone.  Are you

13    having trouble hearing me, your Honor?

14                THE COURT:  Well, it's just -- there's interference

12:33PM    15    every once in a while.  Go ahead, counsel.

16                MR. DRURY:  Your Honor, I'm going to take the

17    microphone off and just try to talk directly into the phone.

18                THE COURT:  That will be great.

19                MR. DRURY:  Okay.  Can your Honor hear me?

12:33PM    20                THE COURT:  Yes.

21                MR. DRURY:  Okay.  Getting back -- what I was

22    saying, your Honor, is that it's clear that class counsel is

23    representing the settlement in trying to preserve this

24    settlement as opposed to representing the class members --

12:34PM    25    the settlement class members in this case.  And an example of

1          that is the fact that in their opposition to our objection,

2          they try to downplay or discredit their own claims and make

3          it seem as if they filed a case that they don't even have any

4          faith in.  The case was filed and one day later the case was

12:34PM    5          settled.  There has been no discovery that's been seen

6          despite Objector's efforts to obtain the information that

7          went back and forth between the parties.  So to bring the

8          case, they must have thought that these claims were good; and

9          if they didn't, then they shouldn't have brought the case to

12:34PM    10         begin with.  But under no circumstances can it be said that

11         they're out to represent the class members when they're

12         looking at the lame defenses of the defendant and trying to

13         trump those up.

14                 The other issue that indicates that class counsel

12:35PM    15         is not representing the interests of the class members is

16         what I was saying about the release.  The release in this

17         case is very broad and includes the BIPA claims.  Again, your

18         Honor entered an injunction preventing any additional

19         litigation related to released claims.  But to protect the

12:35PM    20         settlement, the plaintiffs' counsel has not opposed the other

21         litigation going on in front of Judge Lee and in other areas

22         of the country related to the BIPA claims to protect the

23         class members.

24                 And the reason I bring this up is not because of

12:35PM    25         the BIPA claims but because it raises and impairs the

1       interests of class members.  It's unclear to them what claims

2       are released, what claims aren't released.  It's unclear to

3       them -- it's unclear to class members if they're enjoined

4       from bringing additional claims or if it's just defined by

12:36PM    5    what the plaintiffs' counsel wants -- wants the release to

6       mean.  And it could ultimately result in multiple --

7                   THE COURT:  Counsel, counsel, let me interrupt.

8                   MR. DRURY:  -- releases --

9                   THE COURT:  Counsel, counsel, let me interrupt.

12:36PM    10   Counsel, let me interrupt.  I'm sorry.

11                  MR. DRURY:  Yes.

12                  THE COURT:  Without repeating the merits arguments,

13      if you could address the intervention factors.  Go ahead.

14                  MR. DRURY:  Okay, your Honor.  And that -- in

12:36PM    15   talking about the merits factors, one of them is prejudice to

16      the Objectors and so that's what I was addressing but I won't

17      repeat the argument, your Honor.

18                  In terms of the interests and the potential

19      impairment, the class members again have an interest in this

12:36PM    20   case by the fact that they are class members; and that was

21      found in *In re Discovery Zone*.  But again, they have an

22      interest in not having their claims waived or released

23      without receiving due compensation and the compensation in

24      this case does not -- does not offset or does not provide

12:37PM    25   them with proper compensation for the broad release they're

1    giving.  And the impairment that they face without being able

2    to intervene is again -- the impairment is presumed, which

3    was set forth in *In re Community Bank of North Virginia*.  But

4    in addition to the presumption, their interests are impaired

12:37PM   5    by the broad release that they're required to give in this

6    case in order for class counsel to protect the settlement.

7         So when we look at the factors, the intervention is

8    timely.  The class members and Objector specifically has an

9    interest in the case as a class member, has an interest in

12:37PM   10   the case in protecting his claims and protecting his rights,

11   and there's a potential impairment to those rights should the

12   settlement go forward.

13        Moreover, there's a lack of prejudice to the

14   plaintiffs in this case or the defendants because the case is

12:38PM   15   in its infancy.  So should intervention be allowed as of

16   right, your Honor, the case will proceed as any other case

17   would be.  The complaint is on file.  If we're allowed to

18   intervene and join in as interim class counsel or co-class

19   counsel, a consolidated complaint will be filed and the case

12:38PM   20   will move forward and no one will be set back.  Because the

21   settlement shouldn't be approved to begin with, there's no

22   prejudice there.

23        If we turn to the 24(b) permissive intervention, in

24   large part they overlap with intervention as of right so I

12:38PM   25   won't repeat myself.  But the -- it's important to note that

1       there is no interest or impairment requirement under

2       intervention as of right and the main factor is whether

3       there's common issues of fact and law between what the

4       putative Intervenor is seeking to protect and the claims in

12:39PM  5       the case. And here as a settlement class member and a

6       putative class member, clearly all of the issues overlap both

7       legal and factual. And while the plaintiffs and defendants

8       say that the Objector seeks to inject extraneous issues into

9       the case, that's not the fact at all, your Honor. Everything

12:39PM  10      that the Objector has raised is based on the allegations made

11      in the complaint. While there are claims that the plaintiffs

12      failed to assert, important claims which they also seek a

13      release for, that's not an extraneous issue. It's an issue

14      that's directly involved in the litigation. And again,

12:39PM  15      because this litigation has not been going on for years and

16      years and years and progressed through discovery, there's not

17      an issue of this case going back to the station and having to

18      start over. The case is at the beginning.

19              And one last thing, your Honor, just in terms of

12:39PM  20      the interest, I mean, what's at issue here is the private

21      data of children; their names, their addresses, their

22      biometrics. And as was thoroughly briefed in our

23      objection -- and we filed a supplement to that, a notice of

24      supplemental information -- the company that is taking this

12:40PM  25      information is a nefarious and frankly scary company. The

1   Department of Defense has banned it.  Both parties in

2   Congress have passed legislation to ban it from all devices.

3   There's talk of the company being outright banned in the

4   United States.  Yet, this company is taking the very personal

5   private information of children without anyone's consent.

6   And what the plaintiffs have said in their initial complaint

7   is they want to make the class members, the victims, whole

8   and on that the Objector agrees.

9   Unfortunately, the settlement and the

10  representation shows that this case as it currently stands is

11  not going to make those children whole.  So the Objector

12  stands here not to be opportunistic as was alleged but to

13  protect the interests of these child victims and that is

14  something that I personally as an attorney throughout my

15  career have sought to do and our law firm is quite -- has

16  sought to do over its career, too.  So in intervening, it's

17  not opportunistic, your Honor.  What we're trying to do is

18  protect the victims and we're in a position to be able to do

19  that and unfortunately for whatever reason the plaintiffs do

20  not share that goal.

21  So for those reasons, your Honor, we submit that

22  the objection should be sustained and that the Motion for

23  Intervention should be granted and -- in addition, I know

24  your Honor said he's going to take this under advisement but

25  there is some concern that this case is going to become more

12:40PM

12:40PM

12:41PM

12:41PM

12:42PM

1   complicated if intervention isn't allowed because there is

2   going to be an issue possibly of dueling releases and trying

3   to figure out in which case what rights have been released

4   and haven't been released because there's been a seeming

12:42PM   5   violation of your Honor's preliminary injunction order where

6   settlement class members have moved forward with litigation

7   based solely on the representations of plaintiffs' counsel

8   and not on any order that your Honor has submitted.

9   And finally, your Honor, I just want to note for

12:42PM   10   the record a couple things:  One is that the Objector Mark S.

11   was planning on being at the in-person hearing.  When the

12   order came out yesterday that this was going to be a status

13   hearing, I had him not attend believing this was going to be

14   a status.  But if there's some reason that your Honor needs

12:42PM   15   to hear from Mark S. or if there's additional questions of

16   him, he certainly is willing and available to answer those.

17   And then finally, earlier --

18   THE COURT:  Counsel, counsel, counsel.

19   MR. DRURY:  Yes?

12:43PM   20   THE COURT:  It was clear from the Court's order and

21   my standing orders that we were going to at least address the

22   motions today.  This was not a scheduling appearance and

23   there was no reason to excuse him.  If you need to proffer

24   what he would have said, then go ahead and take the

12:43PM   25   opportunity to proffer whatever information you think Mark S.

1    would have added to the mix.

2         MR. DRURY:  Certainly, your Honor.  Mark S., in

3    addition to what was stated in his declaration, would have

4    made clear that his son A.S. -- and I'm just using initials,

12:43PM    5    your Honor, because he's a minor -- registered for the TikTok

6    app.  He didn't just use it.  And that he registered for it

7    on two separate occasions so he both used and registered for

8    the app before the effective date and he would have testified

9    to that, your Honor -- to that fact, your Honor.  And if, you

10   know, sworn statements are necessary, he certainly is

12:44PM   11   available to make them.

12         We submit that -- the fact that his -- that A.S.

13   simply used the app is sufficient to be a member of the class

14   based on the broad class definition but wanted to clarify

12:44PM   15   that he also registered for the app on two separate

16   occasions.  And with that, your Honor, I will -- I will turn

17   it over to -- I will turn it over to your Honor.

18         THE COURT:  Thank you, counsel.  On behalf of

19   plaintiffs?

12:44PM   20        MR. LIETZ:  David Lietz, your Honor.  I will start

21   for the plaintiffs and then Gary Klinger will have a

22   presentation to add in support of the Motion for Final

23   Approval of the settlement but I wanted to address the

24   objections and the Motion for Intervention first.

12:44PM   25        THE COURT:  Go ahead.

1       MR. LIETZ:  The objection and the motion -- I'm

2    sorry, your Honor?

3       THE COURT:  I said go ahead.  That sounds great to

4    me.

5       MR. LIETZ:  Wonderful.  Thank you, your Honor.  So

6    the objection and the Motion for Intervention are both really

7    about control of this case.  Objector wants to criticize and

8    derail this settlement in order to convince this Court to

9    hand in control of this case for his own pecuniary gain.  The

10   Objector isn't even subtle about this.  Explicitly asked the

11   Court to take the unprecedented step of handing complete

12   control of this case to him.  This is the same tactics

13   employed by Objector's counsel in the *Clearview AI* litigation

14   that's pending in the Southern District of New York where

15   that court found that Objector's counsel was seeking control

16   for his own pecuniary gain.

17       We can also say this, your Honor, because the

18   Motion for Intervention is undercut and contradicted by the

19   objections.  This is not a case where there was a class

20   certified after a class certification hearing.  This is a

21   settlement class, your Honor.  If there's no settlement as

22   Objector would like to see and vigorously argues against,

23   then there is no class.  There is nothing to be class counsel

24   of or (telephone interruption) class counsel or interim class

25   counsel.  If the settlement is derailed, there will be no

1   class.  What will remain, your Honor, is only the named

2   plaintiffs' individual claims and a putative class action

3   with no certified class.  And that, your Honor, is where this

4   Motion for Intervention really flies off the rails.  If the

5   Intervenor is given the relief that he requests --

6            THE COURT:  Counsel, let me interrupt you.

7   Counsel -- I'm sorry.  Let me interrupt you.

8            MR. LIETZ:  Yes?

9            THE COURT:  Are you saying that the -- that if

10  there was a putative class action, that a motion for -- to

11  certify a class couldn't be filed, and if one was filed,

12  especially in light of the settlement which talks about some

13  of the merits of a class, do you think that's a motion that

14  would be denied?

15           MR. LIETZ:  No, your Honor.  I'm not saying that.

16  What I'm saying is, if this settlement is not finally

17  approved at this point, where does that take the case

18  procedurally?  As Objector's counsel himself admits, it takes

19  the case back to square one and square one, your Honor, is

20  with the complaint filed and then there would need to be an

21  answer and a scheduling order and a workup toward a class

22  certification hearing.

23           But the procedural posture of the case, your Honor,

24  that would necessarily obtain if the settlement was derailed

25  at this point would be these named plaintiffs' individual

12:46PM

12:46PM

12:47PM

12:47PM

12:47PM

1   action as a putative class action.  And, your Honor, this is

2   where the interests of Objector are not impaired because,

3   your Honor, as Objector freely admits, the case is in its

4   infancy so what's the difference if the Objector and his

12:48PM   5   counsel go file their own lawsuit at that point which would

6   also be in its infancy.  The two cases would be in the exact

7   same procedural posture.

8           So really what's happening here is the Intervenor

9   is trying to hijack plaintiffs' individual cases and --

12:48PM   10   because that's all that would remain procedurally if this

11   settlement is not finally approved.  It would essentially

12   substitute Intervenor's counsel as counsel of record for

13   plaintiffs' clients negating plaintiffs' client's contract

14   with their own clients and taking away the named plaintiffs'

12:48PM   15   rights to choose their own attorney.  So this is

16   unprecedented and outrageous, your Honor, and it shows why

17   there's just no impairment of Objector's rights that warrants

18   intervention as of right under Rule 24(a).  The Objector can

19   just opt out.  The Objector can and is asserting and

12:49PM   20   protecting his rights via the objection.

21           And, your Honor, if the Court denies the objection

22   and approves this settlement, the Objector has the right to

23   appeal and there doesn't need to be an Intervenor to have

24   appeals rights.  The Supreme Court foreclosed that question

12:49PM   25   in *Devlin v. Scardelletti* back in 2002 when it ruled that

1    class members who object to a settlement may appeal the

2    judgment without having been allowed to intervene.  And, your

3    Honor, that 2002 case is pertinent to the primary authority

4    that Objector relies upon in his reply brief in *In re*

12:50PM    5    *Discovery Zone Securities Litigation* case which predates

6    *Scardelletti* and *Scardelletti* basically undercut some of the

7    logic of *In re Discovery Zone* because part of the reason that

8    the investor was permitted to have limited intervention was

9    for the purpose of pursuing an appeal.

12:50PM    10    Here, this Intervenor doesn't want limited

11    intervention.  He wants unlimited control of the entire

12    litigation.  And, your Honor, the reason that he wants

13    unlimited control of the litigation as is also made plain is

14    not to pursue the claims that are actually asserted in this

12:50PM    15    case based upon the facts actually pled in this case but

16    instead to try and turn this case into the 18th BIPA

17    litigation case against TikTok.  There are currently now 17

18    cases that are all encompassed within the MDL proceeding,

19    your Honor, and none of them are filed by Intervenor's

12:50PM    20    counsel here.  None of them are filed on behalf of

21    Intervenor's counsel's claimants.  So this case would be the

22    oldest case against TikTok in the Northern District of

23    Illinois and would therefore be in a preferential position or

24    control of that entire BIPA litigation if Intervenor's

12:51PM    25    counsel gets his way.  So, again, the intervention isn't

1   about actually protecting rights for not having an interest

2   impaired.  It's all about control, your Honor.

3            Also, just procedurally there's no

4   complaint-in-intervention here, your Honor, and so the motion

5   files -- fails as a matter of law under Rule 24(c).  Rule

6   24(c) says the motion must state the grounds for intervention

7   and be accompanied by a pleading that sets out the claim or

8   defense for which intervention is sought.

9            And the Objector's claim that no prejudice will

10  result to the parties from the absence of there being the

11  intervention -- the complaint-in-intervention is incorrect.

12  The Objector threw out a laundry list of potential claims,

13  statutory and otherwise, in his objection and he apparently

14  believed that plaintiffs' counsels failed to assert all these

15  claims but it isn't clear at all exactly what claims Objector

16  believes the plaintiff should have asserted.

17           Take, for example, the Illinois School Student

18  Records Act and the California Consumer Privacy Act claims.

19  In the objection and Motion to Intervene, there was not a

20  thing to indicate that the Objector wasn't arguing that these

21  were causes of action that plaintiff should have pled.  And

22  now only after the plaintiffs point out that these claims

23  have zero applicability here, Objector is all of the sudden

24  saying that these statutes were simply cited to show the

25  strong public policy for protecting children's data.  Not

1  only is that obviously a wholly manufactured after-the-fact

2  argument where the California Consumer Privacy Act has

3  absolutely nothing to do with protecting children's data

4  specifically, the point remains in this

12:53PM   5  motion-in-intervention, your Honor, is that there's just no

6  way to tell exactly what claims Objector is seeking

7  intervention for.

8  It's also a hundred percent clear, your Honor, that

9  Objector fully intends to try and turn this into a BIPA case;

12:53PM   10  and he admits as much on Pages 7 and 8 of his reply brief.

11  This case, however, your Honor, is not a BIPA case.  It's not

12  predicated upon facts giving rise to any BIPA claim.  This

13  case involves Personally Identifying Information, or PII; not

14  biometric information.  Not only that, but this case is for a

12:53PM   15  nationwide class and BIPA wouldn't even apply to non-Illinois

16  residents.

17  The absence of a proposed amended complaint showing

18  exactly how Objector proposes to raise BIPA allegations out

19  of the facts that are actually pled in this complaint, your

12:54PM   20  Honor, and to raise BIPA allegations for non-Illinois

21  residents is prima facie evidence of why the absence of the

22  mandatory pleading under Rule 24(c) is highly prejudicial.

23  Also, your Honor, turning to untimeliness under

24  Rule 24(a), the original opt-out deadline was March 17th,

12:54PM   25  2020, three months after preliminary approval was granted and

1       more than three months after the settlement drew wide media

2       attention at the beginning of December 2019 and now Objector

3       wants to use the COVID emergency as his excuse for his

4       untimely objection but that's just rewriting history, your

12:54PM   5       Honor.  Governor Pritzker didn't announce his Illinois

6       Shelter In Place order until March 20th, 2020, three days

7       after the original opt-out deadline and the order wasn't

8       effective until March 21st, 2020.  Objector has absolutely no

9       answer for why his Motion to Intervene wasn't filed from

12:55PM   10      December 2019 to March 17, 2020, and COVID is not the answer.

11              Objector also has no explanation for why he waited

12      past the first two extensions of the March 17th, 2020,

13      deadline by this Court's scheduling orders missing what was

14      another deadline of May 6th, 2020.

12:55PM   15              The timeliness inquiry also has other factors as

16      well, factors that Objector and counsel just ignore.

17      Objector really has no answer for the prejudice to

18      plaintiffs, defendants, and the 90,000-plus class members who

19      are expecting a settlement check at this point.  Objector has

12:55PM   20      no answer for who would bear the quarter of a million dollar

21      cost of the notice in claims administration incurred to date.

22              And again, your Honor, Objector's interests are not

23      impaired.  Objector can go file the 18th BIPA class action

24      against TikTok.  He can assert all of these other statutory

12:56PM   25      claims that he believes exist.  And if the Court does not

1    approve this settlement, the Objector can file his own

2    lawsuit that would be on the equal footing with this case.

3    Objector himself admits this case is in its infancy.  A newly

4    filed case by him would be in no different position and there

5    would be no impairment of his rights from having to take that

6    court of action.

7         Permissive intervention also isn't warranted, your

8    Honor, under Rule 24(b) because Objector makes it clear that

9    he intends to add both additional facts, the facts supporting

10   a BIPA claim, and additional claims.  Intervenor wants to

11   rework this lawsuit into something which it currently isn't

12   and these are reasons for denying the Motion for Intervention

13   as well.

14        Last, your Honor, the U.S. Supreme Court precedent

15   holds that this type of intervention isn't permitted.  Absent

16   class members who merely express dissatisfaction to specific

17   aspects of the proposed settlement or that attorneys would

18   have to find any one or more class members and clients who

19   wish to share in the forthcoming fee, they have no right to

20   intervene.  The role -- the goals of Rule 23 would be

21   seriously hampered if that were permitted.  *American Pipe and*

22   *Construction Company versus Utah*, 414 U.S. 538, 551, 1974,

23   stating that the filing of individual motions to join or to

24   intervene was precisely the multiplicity of activity which

25   Rule 23 was designed to avoid.

1    And so, your Honor, for all those reasons, the

2    Court should deny the Motion for Intervention, it's not well

3    taken, your Honor, and its goals are really just to wrest

4    control of this case from the plaintiffs' attorneys.

5    THE COURT:  Thank you, counsel.

6    MR. LIETZ:  Turning to the objection, your Honor --

7    oh.  Thank you very much, your Honor.  Did you have any

8    questions for me on the Motion for Intervention or should I

9    turn to objections?

10   THE COURT:  You could turn to objections.  Thank

11   you.

12   MR. LIETZ:  Thank you very much, your Honor.  So

13   turning to the objection, your Honor, this objection is

14   really just a meritless complaint that this settlement isn't

15   enough.  And as this Court found in *Snyder v. Ocwen Loan*

16   *Servicing LLC*, 2019 WL 2103379, that's not a basis -- a valid

17   basis for objecting.  Here, the defendants are going to pay a

18   total of 1.1 million in cash into a non-reversionary

19   settlement fund which will be disbursed pro rata to each

20   settlement class member with a valid claim.  Not a single

21   penny of the settlement fund will revert to defendants.

22   And, your Honor, this is where the repeated

23   references to the so-called racket and the attempt by

24   Objector's counsel to liken this case to the *In re Subway*

25   litigation is really offensive, your Honor.  That case was

12:58PM

12:58PM

12:58PM

12:58PM

12:59PM

1    about illusory injunctive relief where Judge Wood found that

2    the injunctive relief that was given wasn't going to stop or

3    change anything about whether or not one got a sandwich that

4    was slightly less or slightly more than 12-inches long.

12:59PM   5    Normal variations in the baking process basically made that

6    impossible to get full relief that it would always be exactly

7    a 12-foot -- inch-long sentence -- or sandwich. And, your

8    Honor, illusory injunctive relief is completely different

9    than a non-reversionary cash settlement fund. You can

01:00PM   10    quibble with the amount but you cannot quibble with the idea

11    that a non-reversionary cash settlement fund is actual relief

12    to the class members.

13        The settlement will deliver an average of $5 to the

14    90,000-plus claimants with valid claims, or $7 per household,

01:00PM   15    and that's exactly in line with the per claimant amount that

16    was accurately forecast by settlement class counsel Gary E.

17    Mason in the preliminary approval papers that this Court

18    reviewed. It's just not the case that there's no real relief

19    here. And this settlement compares well with settlements in

01:00PM   20    other similar data privacy cases.

21        So here, there were a 104,612 claims submitted,

22    your Honor, and only 11 objections and no opt outs. This

23    means that 99.99 percent of the class members submitting

24    claims approve of the settlement, which is really the

01:01PM   25    definition of overwhelming support. And, your Honor, that's

1  another one of the factors that this Court looks at when

2  evaluating whether or not to finally approve a class action

3  settlement.  Does the class support the settlement?  Here, we

4  have overwhelming support and Objector's counsel simply

01:01PM   5  glosses over this and says, oh, well, I'm not even going to

6  address it.

7  Objector's counsel also attempts to criticize the

8  notice program here, your Honor, but by every objective

9  metric, the notice program implemented was highly effective

01:01PM  10  and it engendered a claims rate that's consistent with or

11  exceeds comparable cases.

12  So here, your Honor, there's some question about

13  how big this class actually is; but for purposes of this

14  settlement, the parties used the high estimate of six million

01:02PM  15  class members.  It might be only a $3 million -- or

16  three-million person class.  But even if it's a $6 million

17  class, that's a 1.5 percent claims rate.  And as our briefing

18  in this case points out, your Honor, that is fully consistent

19  with or better than with the claims rate in other data

01:02PM  20  privacy cases like this.

21  Another part of the objection -- and it also bleeds

22  into the Motion for Intervention, your Honor -- is this whole

23  issue of the release of the BIPA claims against TikTok.  Your

24  Honor, this case is at base a case about impermissibly

01:02PM  25  collecting and disseminating the Personally Identifiable

1   Information, or PII, of children by letting them sign up for

2   Musical.ly accounts -- Musical.ly was previously inserted

3   what is now TikTok -- without parental consent.

4           This isn't a case about biometric information.

01:03PM   5   It's about the sign-up information.  And critically the

6   relief here does not release the BIPA claims against TikTok;

7   and there are 17 lawsuits filed against TikTok in MDL 2948

8   that all assert these BIPA claims and not a single one of

9   those plaintiffs' attorneys in any of those cases have come

01:03PM   10   before this court and objected to this settlement or moved to

11   intervene on this case on the basis that this release covers

12   the BIPA claims.  And why is that, your Honor, it's because

13   the language of the release is bounded by the facts and

14   claims asserted in the class action complaint here and there

01:03PM   15   were no allegations or claims in this complaint that invoke

16   or implicate BIPA.  And again, if Objector wants to pursue a

17   BIPA claim, he's free to do so in any of those other 17

18   lawsuits in MDL 2948 or on his own and this settlement

19   doesn't foreclose that possibility.

01:04PM   20           Objector also talks a lot about the strength in

21   value of the plaintiffs' claims here and he has an

22   overinflated view of the strength in value of the claims.

23   And his arguments about maximum statutory damages that should

24   have been obtained are unavailing.  It's well settled case

01:04PM   25   law that a proposed settlement may be acceptable even though

1   it amounts to only a fraction of the potential recovery that

2   might be available to the class members at trial; and that's

3   what's happened here, your Honor.  This is a settlement.  You

4   don't hit a home run at settlement.  You -- the parties agree

01:04PM  5   to settle for some amount that's acceptable to both.

6   Settlements are normally described as a result that makes

7   both sides unhappy at the end of the day.

8        And, your Honor, this court in *Kolinek v. Walgreen*

9   *Company*, 311 F.R.D. 483 rejected Objector's arguments that

01:05PM  10   this failure to obtain maximum statutory penalties is grounds

11   for a valid objection.  So all of this argument that Objector

12   brings before the Court today about the alleged value of

13   these claims is predicated upon the statutory maximum

14   penalties, this court has already rejected those arguments,

01:05PM  15   your Honor.

16        Also, Objector suggested and I think adequacy of

17   the release secured by the settlement would be measured by

18   the potential for punitive damages is also contravened by

19   established authority.  And we find that in *Carnegie v.*

01:05PM  20   *Household International, Inc.*, 445 F.Supp.2d 1032, 1035,

21   Northern District of Illinois, 2006, in determining a

22   settlement value where potential for treble damages should

23   not be taken into account.

24        So, your Honor, just has been in briefing,

01:06PM  25   Objector's counsel here wildly overinflates the value of

01:06PM

1  these claims to try and torpedo a settlement because he

2  doesn't believe the amount is enough.  And, your Honor, this

3  Court has found that that's just not a basis for a valid

4  objection.

5          THE COURT:  Thank you, counsel.

6          MR. LIETZ:  The main complaint that --

7          THE COURT:  Yes?

8          MR. LIETZ:  Oh.  Are you --

9          THE COURT:  Hang on.  Hold on one second, counsel.

10  I have a criminal matter that is -- I did not anticipate, nor

11  was I advised that this hearing would take more than an hour,

12  and we are over that at this point.  I have a criminal case,

13  an in-custody sentencing that needs to occur.

14          Are the parties able to finish up at 11:00 o'clock

15  on Friday, which is my first available?  We would appear by

16  telephone.  We would pick it up right where we left off and I

17  would be able to conclude the hearing at that time.  Are the

18  parties available for an 11:00 o'clock on Friday?

19          MR. DRURY:  Scott Drury, your Honor.  I am

20  available.

21          MR. LIETZ:  Your Honor, David Lietz for the

22  plaintiffs' team.  We do have a mediation that begins at 1:00

23  p.m. Eastern time, noon Central time but we have an hour from

24  11:00 to noon your time that's available so that will induce

25  us to speak quickly.

01:06PM

01:07PM

01:07PM

01:07PM

1        THE COURT:  Okay.  Do the parties anticipate -- and

2    you tell me if you need it, do you anticipate needing more

3    than one hour?  How long -- your mediation would fill the

4    rest of that day; is that correct?

01:08PM    5        MR. LIETZ:  Correct, your Honor.  Yep.

6        THE COURT:  Okay.  How long do the parties envision

7    needing to complete this hearing?  Is it more than an hour?

8    Tell me what you need.

9        MR. WEIBELL:  Your Honor, this is Tony Weibell for

01:08PM   10    the defendants.

11        MR. DRURY:  Your Honor, I probably --

12        COURT REPORTER:  I'm sorry.  I didn't hear.

13        THE COURT:  One at a time, please.

14        MR. WEIBELL:  Your Honor, Tony Weibell for the

01:08PM   15    defendants.  Assuming that -- now that the Objector has, you

16    know, mostly argued their position and the plaintiffs have

17    done the same, defendants do not anticipate, you know,

18    needing more than 15 to 20 minutes for their arguments

19    depending on whatever questions your Honor may have based on

01:08PM   20    the arguments you've already heard.

21        THE COURT:  All right.  Let me put it this way:  Is

22    there anyone on the phone who thinks that we cannot complete

23    it within an hour if we start at 11:00 and finish at noon?

24    Okay.  No one said anything.  All right.

01:09PM   25        MR. LIETZ:  David Lietz for the plaintiffs, your

1    Honor.  No.

2         THE COURT:  Okay.  All right.  This case is going

3    to be entered and continued and we will finish up at 11:00

4    o'clock.  It will be telephonic appearances just like today

01:09PM    5    in order to maintain social distancing, et cetera, et cetera,

6    so I will hear from the parties.

7         And I apologize for interrupting your argument,

8    counsel, but don't worry about it.  I'm going to review the

9    transcripts and all of the pleadings as part of my

01:09PM   10    preparation and I do not anticipate a ruling on Friday but,

11    rather, I will take the matter under advisement so the fact

12    that your argument was divided, don't worry about that.

13    That's not going to affect you in any way.

14         The case will be continued until 11:00

01:09PM   15    p.m. -- excuse me, 11:00 a.m. -- 11:00 a.m. on Friday by

16    telephonic appearance.  Thank you, counsel.  I'll hear you on

17    that time and date.

18         MR. LIETZ:  Thank you, your Honor.

19         MR. DRURY:  Thank you, your Honor.

20         (Proceedings concluded at 1:10 o'clock p.m.)

21

22

23

24

25

1          C E R T I F I C A T E

2          I hereby certify that the foregoing is a transcript of

3     telephonic proceedings before the Honorable John Robert

4     Blakey on August 4, 2020.

5
      /s/*Laura LaCien*                    August 11, 2020
6     Official Court Reporter                   DATE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25