1    IN THE UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION

3  T.K. THROUGH HER MOTHER, SHERRI       )
   LESHORE, and A.S., THROUGH HER        )
4  MOTHER, LAURA LOPEZ,                  )
   individually and on behalf of         )   No. 19 CV 7915
5  all others similarly situated,        )
                                         )   Chicago, Illinois
6            Plaintiffs,                 )   August 7, 2020
                                         )   11:00 o'clock a.m.
7            -vs-                         )
                                         )
8  BYTEDANCE TECHNOLOGY CO., LTD.,       )
   MUSICAL.LY, INC., MUSICAL.LY THE      )
9  CAYMAN ISLANDS CORPORATION, AND       )
   TIKTOK, INC.,                         )
10                                       )
             Defendants,                 )
11

12        TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motion
            BEFORE THE HONORABLE JOHN R. BLAKEY
13

14  APPEARANCES:

15  For the Plaintiffs:      MASON LIETZ & KLINGER LLP
                             BY:  MR. GARY M. KLINGER
16                           227 West Monroe Street
                             Suite 2100
17                           Chicago, Illinois  60606

18
    For the Plaintiffs:      MASON LIETZ & KLINGER LLP
19                           BY:  MR. DAVID K. LIETZ
                             5101 Wisconsin Avenue NW
20                           Suite 305
                             Washington, DC  20016
21

22
               LAURA LACIEN, CSR, RMR, FCRR, CRR
23                OFFICIAL COURT REPORTER
                  219 South Dearborn Street
24                      Room 1212
                 Chicago, Illinois  60604
25                   (312) 408-5032

1    APPEARANCES:   (Cont'd)

2
     For the Defendants:      WILSON SONSINI GOODRICH & ROSATI PC
3                             BY:   MR. ANTHONY J. WEIBELL
                              650 Page Mill Road
4                             Palo Alto, California  94304

5
     For the Defendants:      MANDELL MENKES LLC
6                             BY:   MR. STEVEN P. MANDELL
                              One North Franklin
7                             Suite 3600
                              Chicago, Illinois  60606
8

9    For the Intervenor:      LOEVY & LOEVY
     I                        BY:   MR. SCOTT R. DRURY
10                            311 North Aberdeen
                              3rd Floor
11                            Chicago, Illinois  60607

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (The following telephonic proceedings were had in open

2    court:)

3    COURTROOM DEPUTY:  19 C 7915, T.K., et al., versus

4    ByteDance Technology Company, Ltd.

11:00AM    5    THE COURT:  Good morning, counsel.  Appearances

6    please first with the plaintiff.

7    MR. LIETZ:  Good morning, your Honor.  David Lietz

8    and Gary Klinger for the plaintiffs this morning.

9    THE COURT:  On behalf of defendants?

11:00AM    10    MR. MANDELL:  Good morning, your Honor.  This is

11    Steve Mandell --

12    UNIDENTIFIED MALE SPEAKER:  Go ahead, Steve.

13    MR. MANDELL:  Steve Mandell and Tony Weibell on

14    behalf of the defendants.

11:01AM    15    COURT REPORTER:  Can they introduce separately?

16    THE COURT:  You have -- people have to introduce

17    themselves so that we can recognize the voices when we try to

18    do the transcript.  Please try that again.

19    MR. MANDELL:  Okay.  Steve Mandell on behalf of the

11:01AM    20    defendants, your Honor.

21    MR. WEIBELL:  And this is Tony Weibell also on

22    behalf of the defendants from Wilson, Sonsini, Goodrich &

23    Rosati --

24    THE COURT:  I'm sorry.  Can you repeat that?

11:01AM    25    MR. WEIBELL:  Yes, your Honor.  Tony Weibell of the

1   law firm Wilson, Sonsini, Goodrich & Rosati for the

2   defendants.

3          THE COURT:  Okay.  Anybody who is on a

4   speakerphone, go ahead and pick up the receiver so we get a

5   nice, clear sound from everybody.  I don't know, counsel, if

6   you had it on or not but just -- that's just a good general

7   rule.

8          On behalf of the motion -- the Intervenor's

9   counsel.

10         MR. DRURY:  Scott Drury on behalf of the Objector

11   and Intervenor.  Good morning, your Honor.

12         THE COURT:  Good morning.  Anyone I miss?  Okay.

13   Remember to state your name before you speak so the Court

14   Reporter doesn't have to make any educated guess about who is

15   speaking.

16         And we did interrupt counsel's argument.  Absent

17   some other issue that might have come up, I'd just like to

18   pick up where we left off.  Counsel, are you ready to

19   proceed?

20         MR. LIETZ:  David Lietz.  Yes, I am, your Honor.

21   So David Lietz for the plaintiffs.  May it please the

22   Court --

23         THE COURT:  Thank you, counsel.

24         MR. LIETZ:  Thank you, your Honor.  Since we broke

25   last time, there are three developments that we would ask the

11:01AM

11:01AM

11:02AM

11:02AM

11:02AM

1    Court to take judicial notice of that are germane to the

2    issues here.  This case is definitely on the cutting edge of

3    data privacy litigation when you have three things come up

4    literally in the last four days.  First, while our hearing on

11:02AM   5    Tuesday was taking place, the Judicial Panel on

6    Multi-District Litigation issued its transfer order in the

7    TikTok BIPA MDL, which is MDL 2948, and that order can be

8    found in Case Number 5:20 CV 03212 in the Northern District

9    of California, Document Number 33; and we'd ask the Court to

11:03AM   10    take judicial notice of that order.

11             That order consolidated and transferred the BIPA

12    MDL to the Northern District of Illinois, your very court, in

13    front of the Honorable Judge Lee, and the transfer order

14    expressly notes that the plaintiffs' attorneys in that case

11:03AM   15    have already organized that they've appointed an interim lead

16    plaintiffs' counsel, Katrina Carroll, and they filed a

17    consolidated complaint.

18             Other public filings in the MDL, your Honor, note

19    that the organized plaintiffs' group has arranged a mediation

11:03AM   20    next week, the week of August 10th, 2020, to which all the

21    plaintiffs in all 17 of the BIPA cases against TikTok are

22    invited.  No counsel in that BIPA litigation has attempted to

23    include this case in the MDL either as a direct action or as

24    a tag-along related case.  And, your Honor, this shows that

11:04AM   25    the BIPA litigation is indisputably separate and distinct and

1    Objector's arguments that plaintiffs' counsels failed the

2    class by not asserting the BIPA claims are just meritless.

3            Second, your Honor, the plaintiffs request that the

4    Court take judicial of the settlement in *McDonald versus*

11:04AM    5    *Kiloo*, K-i-l-o-o, A-S, Case Number 3:17 CV 04344 in the

6    Northern District of California, Document Number 363, which

7    was filed on August 5th, 2020, your Honor, just yesterday,

8    and it's being --

9            THE COURT:  Is that a -- hang on a second, counsel.

11:04AM    10   Is that a public filing?

11           MR. LIETZ:  Yes, your Honor.

12           THE COURT:  Okay.  Go ahead.

13           MR. LIETZ:  A public filing, court record.  I'm --

14   definitely something that the Court is entitled to take

11:05AM    15   judicial notice of.  It's being referred to as the Disney

16   settlement.  It was noted in Law360 this morning.  The Disney

17   settlement is a settlement of claims against Disney, Viacom,

18   Kiloo and several other companies who were accused of

19   impermissibly collecting children's information gathered

11:05AM    20   through online apps aimed at adolescents and it was alleged

21   that the game apps in question had secretly embedded code

22   that allowed companies to track children's behavior across

23   multiple apps and devices.  And, your Honor, if that sounds

24   familiar to the case at bar, it should because it's a similar

11:05AM    25   fact pattern here.  And those cases in the Disney settlement

1    are also similar in that the plaintiffs in those cases

2    initially made claims under the Children's Online Privacy

3    Protection Act, or COPPA.

4            Notably, your Honor, the Disney settlement has no

11:05AM    5    cash payout to class members and it's for injunctive relief

6    only.  And in the Disney settlement, your Honor, there was no

7    FTC enforcement action that got the injunctive relief in

8    Disney that precluded the plaintiffs there from seeking and

9    obtaining that relief.  But again, your Honor, the point is

11:06AM   10    that the Disney settlement has no cash payout to the class

11    members.

12            Also, the plaintiffs' COPPA claim in the Disney

13    cases didn't survive a motion to dismiss and the plaintiffs

14    proceeded to their settlement on claims of intrusion upon

11:06AM   15    seclusion, constitutional and statutory rights to privacy

16    claim, and two statutory claims, one under California and one

17    under New York law.  So, your Honor, that calls into question

18    the strength of the COPPA claim that the plaintiffs were

19    asserting here.

11:06AM   20            Notably, the fees sought in the Disney settlement

21    are in excess of $9 million for injunctive relief only.  And

22    here where the plaintiffs achieved a cash settlement and

23    where there were injunctive relief that the plaintiffs would

24    have tried to get was already handled by the FTC -- and it's

11:07AM   25    being handled by the FTC -- that they will presumably move to

1    correct any perceived violations of the consent order.  And

2    where the fees sought by the plaintiffs' attorneys are a

3    fraction of those sought in the Disney settlement, the Court

4    can see what an excellent settlement that this really is with

11:07AM    5    a cash payment to class members.

6    And third, your Honor, the plaintiffs asked the

7    Court to take judicial notice of the Federal Executive Orders

8    issued by the Trump Administration just yesterday on August

9    5th, 2020, that would ban TikTok from operating in the United

11:07AM    10    States in 45 days' time if they are not sold by their parent

11    company ByteDance.  And the Executive Orders, your Honor,

12    regarding TikTok prohibit after 45 days, quote, any

13    transaction by any person or with respect to any property

14    subject to the jurisdiction of the United States with

11:08AM    15    ByteDance, Limited, the Chinese company that owns TikTok.

16    Your Honor, those executive orders in 45 days' time

17    might foreclose TikTok from even doing this settlement or any

18    other settlement for that matter or TikTok might be

19    disinclined to do any future settlement if it goes away in

11:08AM    20    the United States or is sold to Microsoft.  And so, your

21    Honor, this is a reason why getting this settlement finally

22    approved today becomes critical to protect the rights of the

23    over 90,000 class members who have filed valid claims and who

24    are awaiting a check from this settlement.

11:08AM    25    Your Honor, as you may recall, this case arises out

1       of a settlement that was entered into between the FTC and the

2       defendants contending that the defendants illegally collected

3       minors' personal information on an app at issue without first

4       obtaining parental consent to do so in violation of COPPA.

11:08AM   5       And the FTC settlement was first announced in February of

6       2019 and was widely publicized at the time because it was the

7       largest fine at that time under the history of the COPPA

8       statute, approximately 5.5 million as well as significant

9       injunctive relief.

11:09AM  10              And despite the high publicity of that FTC

11      settlement, between February 2019 and December 2019,

12      approximately ten months and really a lifetime in terms of

13      plaintiffs' attorneys looking around for potential class

14      actions to file, not a single class action case was filed

11:09AM  15      arising out of the alleged unlawful conduct.  And not even

16      the most fervent of so-called child advocacy lawyers filed a

17      civil case seeking redress.

18              And the burning question, your Honor, has been why

19      didn't anybody file a civil case?  And the answer is simple,

11:09AM  20      other than class counsel here, no attorney thought that there

21      was a civil remedy to pursue since the alleged unlawful

22      conduct arose under COPPA which does not provide for a

23      private right of action.  And, indeed, if we look to one of

24      the cases that we just asked the Court to take judicial

11:10AM  25      notice of, the Disney settlement, the COPPA claims fail.  So,

1      even so without any precedent for COPPA recovery in past

2      cases, plaintiffs' counsel here in this case began

3      investigating untested and novel theories of potential

4      recovery to get some monetary relief for the putative class

11:10AM      5      members; and there was no monetary relief for individuals for

6      class members in the FTC settlement.  That's the one

7      component that was missing in the FTC settlement.

8           At the same time, plaintiffs were vetting more than

9      800 putative class members in formulating their claims and

11:10AM     10      the process culminated in plaintiffs' counsels sending a

11      demand letter and a draft complaint with hundreds of named

12      plaintiffs from virtually every state in the country in June

13      of 2019 alleging these novel privacy claims.  Now one might

14      ordinarily think that a defendant in TikTok's shoes would

11:11AM     15      simply ignore a demand letter since there was no precedent

16      for recovery under COPPA and also the defendants had an

17      arbitration clause and a class action waiver in their terms

18      of service.

19           But, your Honor, where class counsel really

11:11AM     20      succeeded here and what we firmly believe is that our

21      litigation strategy of obtaining hundreds of clients and

22      making defendant aware of the same played a large role in

23      prompting the defendants to explore resolving our case

24      because defendants knew that regardless of what happened,

11:11AM     25      they'd still have to deal with a mini mass action even if we

1    couldn't get a class action certified.

2             And because of these efforts and because of the

3    pressure that we put on to TikTok between June and October of

4    2019, we began engaging in informal discovery concerning the

11:11AM  5    claims and potential defenses at issue, the size of the

6    potential class contemplated, and the suitability for class

7    treatment of the plaintiffs' claims.  And after months' long

8    negotiations, the parties agreed to participate in an all-day

9    mediation and that's what culminated in what we believe is a

11:12AM  10   landmark settlement that's now before your Honor for final

11   approval.

12            On December 2019 after reviewing the settlement and

13   plaintiffs' supporting motion, this Court granted preliminary

14   approval and directed the notice program to be implemented.

11:12AM  15   And, your Honor, despite Objector's arguments, the notice

16   program was highly effective by any measure.  Direct notice

17   was not possible here; and we'll let defense counsel address

18   the reasons for that.  But the gist of it is, your Honor,

19   that defendants didn't have the mechanism to pull up the

11:12AM  20   accounts to give direct notice.  Obviously, we would have

21   preferred direct notices.  It would have been far more cost

22   effective.  It could have just sent messages to the class

23   members via the app that would have cost virtually no money

24   at all.  But, your Honor, we couldn't do it.

11:12AM  25            In the notice program we did implement included a

comprehensive media notice program that targeted the known

demographics of the settlement class and was designed to

deliver an approximate 70 percent reach by serving

approximately 12,747,000 digital banner ad impressions. The

notice program was successful in that regard, your Honor, and

it resulted in over 13 million impressions, an approximate 72

percent reach. Separately while we got those 13 million

impressions, the settlement administrator set up a website

and a toll-free number devoted to this settlement. And by

using digital ads placed in the same ad network used by the

TikTok app, additional digital apps targeting the proposed

settlement class demographic and supplementing the notice

with the settlement website and toll-free telephone number,

the parties here ensured that the notice program comported

with due process and protected all class members' rights.

Separately, your Honor, the parties caused CAFA

notice -- because this is a federal court case under CAFA --

to be sent along with related materials to the attorney

generals of all U.S. states as well as the attorney general

of the United States. And notwithstanding the high publicity

surrounding this settlement, not a single state AG launched

an objection or even inquired into this settlement.

And, indeed, your Honor, despite the objection

here, the settlement was well received. As of the claim

deadline, only six individuals requested an exclusion which

1    is about 0001 percent -- .0001 percent of the settlement

2    class and there were only 11 objections out of a class of

3    millions of people notwithstanding the media attention this

4    settlement gained and the media attention that TikTok is on

11:14AM   5    TikTok right now.  So the objections were all received well

6    after the claims deadline that was set by the preliminary

7    approval order.  And even so, the objections again amounted

8    to a fraction, .0001 percent, of the settlement class.

9            On the other hand, your Honor, class members

11:15AM   10   submitted more than 100,000 claims for relief which is an

11   incredibly high number for any class action settlement and it

12   represents somewhere approaching a two percent claims rate,

13   and possibly even more.  The Court may recall that we're not

14   exactly sure how big this class is.  It's somewhere between

11:15AM   15   three million and six million individuals.  And depending on

16   how big the class really is, the claims rate is either, you

17   know, in excess of either 1.5 percent or in excess of 3

18   percent.  And this falls in line and even exceeds other

19   consumer class action settlements both in this circuit and

11:15AM   20   other consumer class action data privacy settlements around

21   the country.

22           Now Objector's counsel claims this isn't sufficient

23   under Seventh Circuit case law *Redman v. RadioShack*.  And,

24   your Honor, *Redman v. RadioShack* could not be more

11:15AM   25   inapposite.  The Seventh Circuit never said that the claims

1    rate achieved here were, per se, impermissible.  Also, *Redman*

2    was a coupon settlement where only a third of the entire

3    settlement class of 16 million people actually even received

4    notice, which just isn't the case here.  Also, in *Redman* the

11:16AM   5    claims rate was less than half a percent of the class and

6    that's not what happened here either.  This case isn't

7    anything like *Redman*, which was a coupon-only settlement, no

8    cash value settlement, and it's misleading to suggest

9    otherwise.  The claims rate of, you know, one and a half to

11:16AM   10   two percent that was achieved here is the norm in consumer

11   class actions and it's exactly what the notice program

12   achieved here.

13        So given the little opposition to the settlement

14   compared to how well it was received by the rest of the

11:16AM   15   settlement class, plaintiffs' counsel fully believed that

16   final approval is warranted consistent with the Court's

17   earlier determination granting preliminary approval.  Courts

18   in this circuit considered five factors in the final approval

19   stage to determine whether final approval is warranted and

11:17AM   20   it's the strength of the plaintiffs' case, the likely and

21   complexity and length and expense to continue litigation, the

22   amount of opposition to settlement among affected parties,

23   the opinion of competent counsel, and the stage of the

24   proceedings and discovery completed.

11:17AM   25        The first factor, your Honor, the strength of the

1    plaintiffs' case compared to the terms of the proposed

2    settlement is the most important factor and also weighs

3    heavily in favor of final approval here.  Despite what

4    Objector argues, this case was far from a slam dunk.

11:17AM    5    Defendants have a number of case-dispositive defenses that

6    would have eliminated the case entirely; and they're going to

7    talk at length about those, your Honor, I assume, because

8    that's what their opposition said.

9           First and foremost, your Honor, defendants' app had

11:17AM    10    an arbitration clause and class action waiver in their terms

11    and conditions.  And again, as we said earlier, these types

12    of clauses are considered the death mill of class actions.

13    It's unclear how the plaintiffs could have avoided these

14    clauses.  And even if we did defeat a motion to compel

11:18AM    15    arbitration, that could have caused an appeal and the case to

16    be tied up in the appellate courts for years.  The

17    arbitration clause was a massive hurdle in this litigation,

18    your Honor, and plaintiffs believe that if they hadn't

19    deployed the litigation strategy that they did suing with

11:18AM    20    hundreds of clients, defendants would have attempted to

21    enforce this clause before even discussing settlement.

22           Second, your Honor, plaintiffs contended all of

23    plaintiffs' claims were preempted by COPPA.  Again, novel

24    legal issue and there's at least one case out there that

11:18AM    25    tends to support defendant's position on that, possibly also

1  an appellate issue.

2  Third, your Honor, there's a question of whether or

3  not the plaintiffs would be able to certify a class and

4  unclear how common law privacy claims would have been

11:18AM  5  certified on a national basis given the variance of laws in

6  all 50 states and the developing case law in Bristol Myers

7  Squibb, your Honor, so we have tons of problems with

8  certifying a national litigation class.

9  Also, your Honor, this case doesn't have anything

11:19AM  10  to do with biometric information.  It's solely about the

11  unlawful collection of minors' personal information on the

12  app without first obtaining parental consent and that

13  includes collecting a name, email address, or date of birth

14  without first getting consent and that's what this case is

11:19AM  15  about, the unlawful collection of personal information.  It's

16  not a BIPA case.  And even if the other BIPA cases weren't

17  out there, which they clearly are, this is not a BIPA case.

18  So trying to evaluate the strength of this case on a bunch of

19  facts that relate to a putative BIPA claim is not germane to

11:19AM  20  the inquiry for final approval here.

21  Given the barriers to success in this case, your

22  Honor, the terms of the settlement are fair and reasonable

23  and they fall in the range of related class action data

24  privacy settlements.  Indeed, your Honor, one of the most

11:20AM  25  notable recent ones is the *Google Plus* case that was

1   discussed at length on plaintiffs' brief on Page 12 and where

2   the plaintiff -- or where the class members will net $5, just

3   about the same amount here, and if -- it might even be less

4   than $5, your Honor, because that settlement allows for a pro

11:20AM   5   rata reduction if the claims rate gets too high.

6   So, your Honor, the most recent case law from May

7   of this year from the Northern District of California, one of

8   the leading federal district courts on data privacy

9   litigation, shows that this class action cash payment is

11:20AM   10   totally consistent with what is achieved in these data

11   privacy cases.

12   And, your Honor, it makes no difference if TikTok

13   is a billion-dollar company.  Settlements like this are not

14   about punishment.  They're about compensation.  That's what

11:20AM   15   this is a settlement for, compensation; not punishment.  And

16   as the case law we've cited earlier said, it's not even

17   appropriate in the final approval context to contemplate

18   punitive damages.

19   Moreover, your Honor, the settlement is comparable

11:21AM   20   to the fine levied against TikTok by the FTC, which was 5.5

21   million.  We're achieving a 20 percent bump on top of what

22   the FTC settlement was.

23   And on top of all that, your Honor, the settlement

24   represents the first of its kind given that it arises out of

11:21AM   25   COPPA and using the COPPA standards of conduct to make a

1   claim for private compensation even where there's no private
2   right of action.

3          So, your Honor, we've already discussed the next
4   factor, the amount of opposition to the settlement.  Again,
11:21AM 5   there's very little.  You know, 99.9 percent of the class
6   approves of this.  And in terms of there being objections,
7   they're all untimely.  And stripping away all of these claims
8   that cannot be made here that Objector says should be made,
9   basically all of the objections boil down to the same thing
11:21AM 10  which is we don't think this settlement is for enough money.
11  But, your Honor, it's in line with other data privacy
12  settlements.  It clearly is enough money.

13         Last -- next factor, your Honor, likely complexity,
14  length, and expense of continued litigation.  We've also
11:22AM 15  touched on this but there's a multitude of possibilities for
16  additional appeals here.  And, you know, given the dynamics
17  of what's happening to TikTok in the world right now, your
18  Honor, tying up this settlement for years with appeals on all
19  sorts of issues is not in the best interest of the class.
11:22AM 20  And, your Honor, also the Seventh Circuit overwhelmingly
21  favors class action settlements and this case should be no
22  different.

23         Your Honor, we haven't talked much about the next
24  factor, the opinion of counsel, and it gets into a
11:22AM 25  mudslinging contest between plaintiffs' counsel and

1    Objector's counsel but I think our pleadings make clear that

2    plaintiffs' counsel is experienced, competent.  They've been

3    appointed counsel on some of the most significant complex

4    class actions in the past decades, including prominent data

11:23AM    5    privacy cases, and it's our opinion that this is a good

6    settlement, one that we're proud of and that we believe it

7    represents a landmark settlement.  So that is something that

8    should go into the calculus here as well, your Honor.

9         Final factor, your Honor, the stage of the

11:23AM   10    proceedings and discovery completed.  We are fully informed

11    of the factual and legal issues.  We've surveyed hundreds of

12    clients.  We exchanged informations with defendants for six

13    months in voluntary discovery and we decided to go to an

14    all-day mediation with one of the most respected mediators in

11:23AM   15    the country, Gregory P. Lindstrom of Phillips ADR, and -- but

16    before we even got to that, we had joint meetings with the

17    mediator to discuss the case and engaged in multiple rounds

18    of briefing with respect to the factual and legal issues,

19    including the arbitration issue, the preemption issue, and

11:23AM   20    the class certification issues.

21         And even after an all-day mediation, your Honor,

22    when the parties still could not reach an agreement and we

23    hit a dead end, the mediator made a mediator's proposal for

24    settlement of the case and both parties accepted that to

11:24AM   25    break the log jam.  And the imprimatur of the mediator's

1   proposal on this settlement, your Honor, gives immense

2   support to the fairness of this settlement and its terms.

3           So, your Honor, for all these reasons, we ask the

4   Court find that the settlement is fair, reasonable, and

11:24AM   5   adequate and it's consistent with your earlier determination

6   in the preliminary approval process and we respectfully

7   request that the Court approve this settlement.

8           One last thing, your Honor, that we also request

9   that the Court approve our fees in this matter.  I'm not

11:24AM   10   going to belabor that.  We'll rest upon the pleadings.  But

11   the Seventh Circuit has long recognized when counsels'

12   efforts result in the creation of a common fund that benefits

13   plaintiffs and unnamed class members, counsel have a right to

14   be compensated from that fund for their successful efforts in

11:25AM   15   creating it and courts in this circuit have routinely

16   concluded that percentage of the fund approach is superior to

17   the lodestar approach for determining the market price for

18   legal services in common fund class action settlements.

19           We requested an amount that's fully in line with

11:25AM   20   prior cases even if you include the cost and we ask that our

21   fees be approved as fair and reasonable as well as the

22   incentive awards of $2,500 per class member.

23           Unless the Court has any other questions, I thank

24   you, your Honor, for your attention this morning.

11:25AM   25           THE COURT:  Counsel, two of the things that counsel

1   for the Objector raised, one was the absence of injunctive

2   relief within the settlement and the other thing was what he

3   characterized as a lack of clarity regarding which claims

4   would be covered or not covered because that would cause

11:25AM   5   confusion in other litigation.  Do you want to address either

6   or both of those points?

7            MR. LIETZ:  Yes, your Honor.  With regard to the

8   second point, your Honor, there doesn't seem to be any

9   confusion among other claims.  The BIPA, you know, MDL,

11:26AM   10   consolidated complaint seems perfectly clear and comfortable

11   in what claims that it's asserting and it doesn't seem to be

12   having any issues with there being a suggestion that that

13   claim or the claims raised there are somehow released or

14   obviated by this settlement.  So that was counsel's --

11:26AM   15   Objector's counsel's sole example of how there is being

16   alleged confusion created.

17            And, your Honor, the facts and the records in the

18   MDL proceeding -- which again are now before this court and

19   are totally available to the court are -- speak volumes about

11:26AM   20   the absence of confusion.  So that argument, your Honor, is

21   just not one that is supported by the facts.

22            THE COURT:  Well, is it your position that the

23   release could not be amended to have more clarity on that

24   because it's a pretty general -- it's a pretty broad release,

11:27AM   25   right?

1          MR. LIETZ:  It could be construed, your Honor, as a

2     very broad release.  We believe that the release is bounded

3     by the facts that are alleged in the complaint and that that

4     is what limits it.  However, your Honor, if the sole sticking

11:27AM     5     point to final approval of this settlement is to go back and

6     rework the release to make it more clear and to make sure

7     that there's a clear understanding of what the limitations

8     are, we're certainly happy to caucus with defense counsel and

9     to -- and to work something out that would make it clear to

11:27AM    10     the world, although we think it already is clear to the

11     world, what's being released here so we're not --

12          THE COURT:  I interrupted you.  With respect to

13     injunctive relief, did you want to address that?

14          MR. LIETZ:  No.  I actually was saving that for a

11:28AM    15     second, your Honor.  Very briefly, we just think that

16     the -- all the injunctive relief that was fit to be obtained

17     here was obtained by the FTC.  You know, there's this -- the

18     privacy advocates, the child privacy advocates case to get

19     the FTC to go back and enforce its consent order, I mean,

11:28AM    20     that action is not saying that the injunctive relief that the

21     FTC obtained was insufficient.  It's basically just saying

22     that TikTok is violating it.  And so, your Honor, that makes

23     our point that all the injunctive relief that could have been

24     obtained in this case was obtained already by the FTC.  And

11:28AM    25     the only missing piece of the puzzle here, your Honor, was a

1   cash payment to the class members so there just wasn't any

2   additional injunctive relief that under the claims that we've

3   asserted could have been obtained.

4            You know, again, if you go back and look at the

5   Disney settlement which we asked the Court to take judicial

6   notice of, you'll see, your Honor, that the injunctive relief

7   that's being obtained there with age, dates, and whatnot is

8   exactly what the FTC got in their case.  So, I mean,

9   there's -- there's no room to seek additional injunctive

10  relief here, your Honor.

11           Whether or not TikTok complies with the injunctive

12  relief that the FTC obtained is a question that just isn't

13  applicable to the question of whether or not we should have

14  obtained injunctive relief.  There just isn't any more to

15  obtain here, your Honor.

16           THE COURT:  Okay.  Does that -- that concludes your

17  remarks, right?

18           MR. LIETZ:  Yes, it does, your Honor; and I thank

19  you very much.

20           THE COURT:  Thank you, counsel.  Who is next?

21           MR. WEIBELL:  Hello, your Honor.  This is Tony

22  Weibell of Wilson, Sonsini, Goodrich & Rosati for the

23  defendants.  Can I -- is my voice clear and loud enough for

24  the Court?

25           THE COURT:  You sound great.  Go ahead, counsel.

1          MR. WEIBELL:  Great.  Thank you.  So, your Honor,

2    exactly what plaintiffs' counsel has just explained, the most

3    important factor under the Seventh Circuit's analysis is the

4    weakness of the case.  And just to again provide background

11:30AM    5    here, this is a case where you have parents who allowed their

6    children to have access to mobile phones and download an app

7    that expressly told them not to use the app and they did it

8    anyway and they lied about their age in order to use the app.

9    And when they did that, their information as disclosed in

11:30AM   10    TikTok's privacy policy was collected.  All right.  That's

11    the situation we have here.

12          In such a situation, the class members haven't

13    suffered any injury at all.  There would be no right for them

14    to recover.  And the COPPA claims that have been asserted

11:31AM   15    here, as has already been explained, don't provide a private

16    right of action.  In fact, you know, when Congress was

17    considering all of this and when they enacted COPPA, they

18    expressly carved that out.  They could have created a private

19    right of action but they didn't and the reason they didn't is

11:31AM   20    because they recognized that there's no real injury here,

21    right.  It's just as a matter of public policy in order to do

22    a preemptive strike against potential, you know, concerns

23    that society has, they put in place COPPA which, you know,

24    puts restrictions on how you collect information from

11:31AM   25    children who are under 13 that are using --

1    THE COURT:  Well, counsel, counsel -- hang on a

2    second, counsel.  I mean, I understand your argument.  But to

3    say there's no injury, I mean, COPPA was enacted for a cause.

4    I mean, aren't you overstating that a little bit?

11:32AM    5    MR. WEIBELL:  I don't think so, your Honor, because

6    it certainly was enacted; and if you look at the purpose for

7    which it was enacted, it was enacted to protect children,

8    right.  It was enacted because the concern is that if you do

9    collect information from children under 13, you might end up

11:32AM    10    collecting more information than, you know, an older

11    individual would have normally wanted to give you, that

12    there, you know, not at a sufficient age to consider and

13    weigh the balances of that exchange that happens when you

14    provide information online in exchange for free services.

11:32AM    15    And also, to protect against what someone might do with that

16    information down the road and --

17    THE COURT:  Exactly, exactly -- counsel, counsel,

18    exactly, which is there's a privacy interest and in order to

19    prevent injury to that privacy interest, the statute was

11:32AM    20    enacted.  That's fair to say, right?

21    MR. WEIBELL:  Certainly, your Honor.  Yes,

22    that's -- to the extent there is an agreement here, that's

23    exactly what it is.  It's the potential for the privacy issue

24    that you just mentioned.  Exactly.

11:33AM    25    THE COURT:  Well, it's not a potential.  It's an

1      actual privacy interest and the statute is designed to

2      prevent an injury to that privacy interest, correct?

3                MR. WEIBELL:  Well, it's a little bit different

4      than that, your Honor, because normally you have an

11:33AM   5      expectation of privacy, right, that's what creates the

6      privacy interest.  So, in other words, if someone takes

7      information from me -- private information from me without

8      disclosing that they're doing that, that would, you know,

9      arguably be -- and I have an expectation that they wouldn't

11:33AM   10      do that because they said they wouldn't do that, that's where

11      you have a privacy-type injury.

12                But in this situation, in a COPPA situation, it's

13      different because we've told the kids, right, we've said

14      don't use the app if you're under 13 --

11:33AM   15                THE COURT:  Counsel, I'm going to interrupt you

16      again.  A child is not able to give consent, which is the

17      whole point, so I don't want to get sidetracked on a minor

18      children.  I'm just going to state that you're overstating

19      your case when you say there's no injury.  The statute is

11:34AM   20      designed to prevent a private -- injury to a privacy interest

21      and children are not able to consent so therefore there are

22      certain protections they have in the statute.  Why don't you

23      move on to -- in your argument?

24                MR. WEIBELL:  Yes, your Honor.  So in a

11:34AM   25      situation -- in these types of cases -- and let's look at

even the broader picture of non-children, right, so even where adults are in a situation where their data has been collected online in a way that they didn't anticipate, right, in cases where they have alleged -- like here, right -- there was an invasion of privacy because they didn't think certain information would be collected and it was collected.  In those cases, the normal way that those have been settled, as counsel for plaintiffs have pointed out, is through an injunctive relief type settlement or cy-pres settlement where the class gets no direct monetary benefit at all.

In this case -- this is one of the first of its kind settlements where in a privacy class action like this we decided to give a direct monetary benefit to class members where they can actually, you know, collect something.  And we did it at a rate that was on par or better than other major privacy class actions where information was actually collected and it was collected, you know, in violation of someone's privacy policy or in a deceptive manner and --

THE COURT:  Counsel, hang on a second, hang on a second.  And again, I'm sorry to interrupt you.  When you talk about those other comparables, is that part of the record in front of me?

MR. WEIBELL:  Yes, your Honor.  Those cases have been cited both -- I want to say both by plaintiffs and defendants but I know it's in the plaintiffs'.  So, for

1    example, there is the *Google Cookie Placement* litigation

2    settlement that was in the record.  That -- that recovery

3    involved essentially every, every person who has used an

4    Apple Safari browser or an internet -- Microsoft Internet

11:36AM    5    Explorer browser and the argument there was that Google

6    collected information without authorization.  And it was the

7    similar type claims that were at issue here in that there was

8    an invasion of privacy essentially, right, and the Third

9    Circuit found that that claim survived a motion to dismiss

11:36AM    10    and so it was that claim, as your Honor pointed out, that

11    privacy injury that was settled.  And in that case, no money

12    went directly to the class.  It went to, you know, cy-pres

13    recipients.  And if you were to look at the number of class

14    members and the value of the settlement and divide that, the

11:36AM    15    total fund essentially comes out to less than five cents per

16    class member.  This settlement here is multiples above that

17    and beyond that.

18            Other privacy class actions that are similar would

19    be the -- another Google case, the *Google Referrer Header*

11:37AM    20    settlement, which I believe is also in the record, as well as

21    the *McDonald* settlement that plaintiffs' counsel was just

22    mentioning was approved this week or, sorry, that was

23    submitted this week.  So -- so plaintiffs' counsel has put

24    those comparables into the record after your Honor --

11:37AM    25            THE COURT:  Well, counsel, the cases are -- or at

1   least the judicial cases are -- have been cited.  Are you

2   stating that also the terms and conditions of those

3   settlements, including amounts, injunctive relief or what

4   have you, are you saying that's part of the record as well or

11:37AM   5   just the citation to judicial cases?

6           MR. WEIBELL:  Just the citation to the judicial

7   cases.

8           THE COURT:  Well, is there anything else?

9           MR. WEIBELL:  Not the actual documents.

11:37AM   10          THE COURT:  Is there anything else that I would

11   need -- and this is obviously your chance to make whatever

12   record you want, anything else I would need because if you're

13   going to rely on the terms and conditions of settlements,

14   then I would need to look at those in context rather than

11:37AM   15   just at an evaluation of some legal issue by a court, right,

16   or no?

17          MR. WEIBELL:  I think we're citing those, your

18   Honor, just for the proposition that when you look at the

19   total fund for a settlement in these types of cases and where

11:38AM   20   it's going, it's -- it usually doesn't go to -- directly to

21   class members in these types of cases.  It usually just goes

22   to cy-pres where there is no payment and there's just

23   injunctive relief.

24          And again, the recognition is that because in an

11:38AM   25   invasion of privacy case like this involving the collection

1  of information online, it is extremely difficult if not

2  impossible for the plaintiffs to ever prove a monetary amount

3  of recoverable damages and because of that, you usually don't

4  end up with a settlement where money is going to the

11:38AM  5  class and so --

6  THE COURT:  Well, in this case, though, there is --

7  there is money going to the class and the one of the

8  arguments in the pleadings is that the amounts are comparable

9  to other cases and I'm just trying to figure out if the

11:39AM  10  amounts are -- that is being -- we anticipate going to the

11  class members, if the amount is going to be argued to me as a

12  reasonable amount and you're going to use comparable cases,

13  then I'm trying to see what factual record I have to make any

14  of those findings.  So am I mistaken in the characterization

11:39AM  15  that you're arguing that the amounts going here are

16  reasonable in light of other similar cases or are you arguing

17  something different?

18  MR. WEIBELL:  So we are arguing the amount is

19  reasonable and the citations to the other cases that your

11:39AM  20  Honor can use as comparables that are in the record I believe

21  do also identify the amounts -- both the value of the total

22  settlement compared to the number of class members that were

23  affected in those cases.  But also the simple fact that in

24  those cases, there's no recovery at all.  There's no direct

11:40AM  25  monetary recovery at all.

1           And so the fact that this case, this settlement

2    provides a direct monetary benefit to the class is

3    extraordinary, right.  It's a -- it's a novel and great

4    benefit to the class that they collect anything at all

11:40AM    5    because normally in a case like this you don't collect that;

6    and that's sufficient in the record from the citations that

7    plaintiffs' counsel provided.

8           THE COURT:  Let me interrupt you one more time.

9    Counsel for plaintiff, do you need to respond to that -- the

11:40AM   10    Court's question?

11           MR. LIETZ:  Yes, your Honor.  I have our brief up

12    in front of me and it's half and half, your Honor.  So for

13    the most recent settlement, the *Google Plus Profile*

14    litigation, we did provide a reference to ECF Number 69 and

11:40AM   15    the case number.  We didn't attach the actual case but we

16    certainly could submit that as a supplemental.  Two of the

17    other five examples are reported case decisions.  The other

18    three decisions we just have the case number citation and not

19    the ECF number and we'd ask the Court to either allow us to

11:41AM   20    submit a supplemental that has the ECF document filing

21    number, whatever document number that is for those three

22    cases of the settlement, or to actually submit those

23    settlement proposals for the Court's review.

24           COURT REPORTER:  That was --

11:41AM   25           THE COURT:  Okay.  Great.  That was counsel for the

1   plaintiff, Mr. Lietz, right?

2           MR. LIETZ:  Yes.  That was David Lietz, your Honor.

3   Sorry.

4           THE COURT:  Yeah.  I sometimes -- I get in trouble

11:41AM    5   if I don't enforce the rule that you speak before you -- that

6   you say your name before you speak.

7           All right.  Counsel for defense -- and I'm sorry, I

8   interrupted you again -- go ahead.

9           MR. WEIBELL:  Thank you, your Honor.  This is again

11:41AM   10   Tony Weibell for the defendants.

11           So moving on, your Honor, to again the weakness

12   factor of this case is that was the main focus of our briefs

13   and that's the most important factor identified by the

14   Seventh Circuit is -- already touched on that the claims here

11:42AM   15   are subject to arbitration.  While it may be true that under

16   some laws in some states like Illinois, a minor can choose to

17   disaffirm a contract.  What can't happen is a minor doesn't

18   have the right to cancel another minor's contract.  And so

19   the situation you have here is that they were seeking to

11:42AM   20   certify a litigation class of minors who may not want to

21   disaffirm their contracts.  Under the law, if a minor chooses

22   to disaffirm a contract, they have to walk away from it.

23   They can't continue to benefit from that contract.

24           And so, in essence, in order to certify a

11:42AM   25   litigation class here, it would be impossible because

1    individual issues about whether each minor chose -- you know,

2    decides that they're going to walk away from their TikTok

3    accounts in order to pursue these claims in federal court

4    would obviously predominate in a litigation.

11:43AM    5        In the class settlement context in which we are in,

6    we can -- the defendants, we can waive the right that we have

7    to enforce the arbitration agreement and allow recovery on a

8    settlement so that concern evaporates with the settlement

9    class.  But the arbitration is certainly -- it would be

11:43AM    10   number one bar here to the litigation going forward as a

11   class.  And it's not correct as may have been presented in

12   other papers and by the Objector that these arbitration

13   agreements are invalid simply because they're made with

14   minors.  Under the law, minors can enter into a contract,

11:43AM    15   they can enter into a valid contract, and they are bound by

16   that contract so long as they take the benefits from it.

17   They can just -- under the law, they can choose to disaffirm

18   it if they want but they're still bound until they fully

19   reach that point.  And so here, there's no chance that the

11:43AM    20   case could have proceeded towards, you know, a certified

21   class for litigation purposes because of that arbitration

22   agreement.

23        The other bar to plaintiffs' claims as has already

24   been mentioned is the COPPA preemption.  The -- you know,

11:44AM    25   Congress when they created COPPA allowed certain entities to

1   bring claims based on the collection of information from

2   children under 13.  The FTC can do it.  The FTC can bring an

3   action and they did here in this case and also state attorney

4   generals can bring an action if they choose to do it.  And

11:44AM   5   here, even though the state attorney generals of each state

6   were notified of the settlement and of this action, none of

7   them have chosen to bring an action so that I think is

8   significant in terms of whether there was merit here.  But

9   also because I think everybody recognize that the FTC action

11:44AM   10  essentially preempts everything because the FTC is in the

11  best position to investigate and to enforce COPPA especially

12  since the FTC is the one that was tasked with designing the

13  COPPA rule that interprets and applies, you know, how COPPA

14  works.

11:45AM   15      For that reason, no cause of action that's based on

16  the collection of data from children under 13 can survive

17  COPPA preemption.  The courts have recognized that in a

18  situation like that, the only way claims survive is if there

19  is something more, right, if there is a separate and

11:45AM   20  independent deceptive act.  For example, in the *McDonald* case

21  that settled this week but also that our Objector raised in

22  his argument and in his papers, in that case the argument was

23  that you had Disney and Nickelodeon, Viacom, these children's

24  oriented properties that were inviting children to use their

11:45AM   25  services, right, affirmatively inviting them to use the

1    service and the alleged deception is that they deceptively

2    then collected information when the plaintiffs would have

3    thought it would not have been collected under those

4    circumstances because of COPPA.

5    Here it was the opposite situation.  Here with

6    TikTok, TikTok was telling users when they registered do not

7    use the service if you were under 13.  In fact, they're

8    saying don't use it if you're under 18.  And they had to

9    affirmatively agree that they were over the age in order to

10   use the service.  So it wasn't that -- there's been no

11   deception alleged here and there is no deception.  It was, in

12   fact -- to the extent there was a deception, it was the users

13   deceiving TikTok.  If they had not lied about their age,

14   their information never would have been collected and so

15   that's the situation you have here that sets it apart

16   differently from some of those other cases where COPPA did

17   not preempt.

18   There's also another case that the Objector raised

19   and that was the New Mexico attorney general case against

20   Tiny Lab in New Mexico where the court's decision found that

21   certain claims were not preempted by COPPA.  And I just want

22   to point that case out because that is an entirely different

23   situation than this case.  In that case, it was the attorney

24   general for New Mexico that was bringing the action and the

25   COPPA statute allows -- expressly allows for such an action

1    by the attorney general whereas for private plaintiffs like

2    we have here, there is no such exception so that case is

3    completely inapplicable.  For those reasons, you know, the

4    plaintiffs here really had an uphill battle and we think they

11:47AM    5    never would have been able to state a claim that could have

6    survived COPPA preemption.

7         The other issues that the Objector has raised deal

8    with the merits of the claims that were -- that the Objector

9    would want to bring to this case but those are hypothetical

11:48AM    10   claims.  Those are -- those are claims that plaintiffs'

11   counsel, I'm sure, looked at and examined and chose not to

12   bring for good reason.  We think they have no merit.

13        As the plaintiffs' counsel has already represented,

14   there's, you know, a BIPA claim, an Illinois Biometric

11:48AM    15   Information Privacy Act claim that is pending in other

16   litigation.  We think it has no merit.  In fact, we think it

17   actually violates Rule 11 to assert it because the TikTok app

18   just doesn't collect biometric information and in any way

19   that could be considered in violation of the law.  And so for

11:48AM    20   that reason -- that's a hypothetical but just doesn't belong

21   here.  And I don't think we need to even get into the

22   question of whether this settlement covers a BIPA claim for

23   that reason, right.  It wasn't contemplated by the plaintiffs

24   here.  It -- it's certainly not covered by the conduct that

11:49AM    25   was at issue and so we don't think that would be a problem.

1               Moving to the injunctive relief issue, I know your

2       Honor had a question about that earlier for plaintiffs'

3       counsel.  In a situation like this where the FTC has already

4       challenged the conduct and already obtained a consent

11:49AM    5       order -- and there's a federal court that has already entered

6       an injunctive order in that case, there's no reason for a

7       duplicative injunction here.  In fact, there's a very high

8       risk that any additional injunctive relief here would be in

9       conflict with the order that was entered by the other federal

11:49AM   10       court in Los Angeles in the FTC case and the FTC may have

11       concerns about that; and I can provide an example of why that

12       would be.

13               So, for example, it was proposed that, you know,

14       one way to enjoin a defendant in a case like this would be to

11:50AM   15       enjoin the defendant from allowing users who are under 13 to

16       even use the service.  That seems like a very obvious and

17       complete injunctive relief that you could award in a case

18       like this because if they don't collect -- you know, if they

19       don't allow users under 13 to use the service, there will be

11:50AM   20       no collection of their information.  Very simple.  But the

21       FTC and the COPPA rule that comes from the FTC actually

22       expressly disallows that.

23               They require -- and the FTC required in this case

24       TikTok to create an -- what we call an under-13 experience,

11:50AM   25       right, an opportunity to allow under 13 year olds to register

1   for this service and use it and do it in a way that their

2   accounts are flagged as being under 13 so that information

3   that should not be collected is not collected.  And so that's

4   why you have to be very careful in a case like this not to

11:50AM   5   run into a problem of inconsistent injunctive relief.  And

6   certainly the FTC is taking -- is very much on top of that

7   order, right.  As has been pointed out by the other counsel,

8   the FTC is continually investigating in compliance with that

9   order and for us to try and even mess with injunctive relief

11:51AM   10   here would only interfere with that process and it's entirely

11   duplicative.

12          The other issue that was mentioned by plaintiffs'

13   counsel is we now have the executive order that was issued

14   just last night by President Trump which gives TikTok

11:51AM   15   essentially 45 days to give itself away to a U.S. company

16   that is going to completely take over, you know, the data

17   collection practices and all of the privacy practices as

18   President Trump has described in his numerous comments and

19   discussions about this topic.  And so in a situation like

11:51AM   20   this, the landscape is going to be very different 45 days

21   from now and the concerns that people have had about the

22   collection of data through the app are either going to

23   evaporate or be under a very tightly controlled and different

24   regime.  So that's another reason why there really should be

11:52AM   25   no concern here about the appropriateness of the settlement

1   in not providing duplicative injunctive relief to what's

2   already been entered.

3           With that, your Honor, there was one last point I

4   think the Objector raised and it was also mentioned by

5   plaintiffs' counsel which is the notice, you know, was the

6   class notice here reasonable.  And because of the FTC orders

7   that TikTok had to sequester or delete and not make use of

8   any contact information it received from children, it wasn't

9   able to, you know, use that information here or identify it

10  either because it's already been deleted or because it's

11  subject to some other order where it has to be sequestered

12  and not used.

13          But also, the main point is in this situation we're

14  dealing with a class who lied about their age in order to use

15  the service and so it's impossible to tell them -- it's

16  impossible to identify who those users are that may have lied

17  about their age to use the service in order to send them

18  notice.  And also, the users when they sign up for the

19  service don't usually, don't typically -- and certainly not

20  always -- provide contact information, right.  They generate

21  a user name, there may be an email address associated with it

22  or another account but it's not a means whereby we could, you

23  know, feasibly provide direct notice and so the notice here

24  was certainly adequate.  In fact, we were shocked by the

25  claims rate that did occur, right.  It was the number of

1    people that responded to the settlement to submit a claim

2    was, I think, double what we were expecting based just on our

3    only analysis and experience and so I think that the notice

4    program was effective in getting that notice out to class

11:53AM    5    members.

6        And with that, your Honor, I'll go ahead and close

7    but I would be interested to answer any questions or concerns

8    that your Honor may still have about the settlement.

9        THE COURT:  This is, I guess, a question for both

11:54AM    10    the plaintiff, defense, and Objector counsel.  You indicated

11    there is some -- even since our last meeting, there were some

12    recent developments, not -- you know, including, among other

13    things, a change in ownership, et cetera.  I'm going to --

14    just so you have a heads up on this, I'm going to give the

11:54AM    15    parties until August 28th if there's any additional materials

16    you need to submit.  This is not inviting another round of

17    briefing; let me tell you that.  But if there's something

18    else that has happened recently that you think is not

19    contained in the current state of the pleadings that you want

11:54AM    20    to add, then I'm going to give you an opportunity through and

21    including August 28th for that.

22        I'm also going to ask counsel to order the

23    transcript of both our last meeting and today's meeting and

24    if you could go ahead and do that.  And then I don't

11:55AM    25    have -- beyond those two points, I don't have any direct

1   questions to the parties so if you have anything else in your

2   argument, counsel, go ahead.

3       MR. WEIBELL:  Your Honor, this is Tony Weibell for

4   defendants.  Just for clarification on your request, the

11:55AM   5   materials you'd like submitted -- and you said without

6   additional briefing -- would you like us just to submit a

7   notice of supplemental materials and then attach them as

8   exhibits for your Honor's consideration or how much do you

9   want us to get into describing what it is we're submitting?

11:55AM   10      THE COURT:  Whatever you -- whatever you think is

11  appropriate, counsel.  I just don't want another -- I don't

12  want the parties to incur the expense of another 15-page

13  memorandum.  If you need to have a cover page to explain

14  what's attached, that's fine.  I'm going to leave it to the

11:55AM   15  parties to act in good faith on that.

16      And you don't have to file anything.  I'm just

17  giving you that opportunity because it does seem like we have

18  a very dynamic factual situation that's happening and

19  changing even this week and who knows what's going to happen

11:56AM   20  next week.  So I just want to make sure that the parties have

21  an opportunity to make sure that they put whatever facts they

22  believe are important in front of the Court.

23      Does that answer your question?

24      MR. WEIBELL:  Yes, your Honor.  It does.  Thank

11:56AM   25  you.

1          THE COURT:  All right.  If there's nothing else on

2     behalf of defense counsel, is there anything that any of the

3     parties want to add before we conclude today?

4          MR. DRURY:  Scott Drury, your Honor, on behalf of

11:56AM     5     the Objector.  I would like to respond to some of the issues

6     that were raised by both plaintiffs and defendants with your

7     Honor's permission.

8          THE COURT:  Yeah, sure.  Go ahead.

9          MR. DRURY:  Your Honor, first of all, I think it's

11:56AM    10     important for the Court to note that none of the claims

11     asserted in this case are direct claims under COPPA.  So when

12     the plaintiffs and defendants keep saying these are COPPA

13     claims and this is the first case that's brought under COPPA,

14     that's just inaccurate.  There's a statutory claim under the

11:57AM    15     Video Privacy Protection Act, there's statutory claims under

16     Illinois and California law, and there's common law claims;

17     and those are the claims that are asserted and none of them

18     are preempted.  The critical statute that plaintiffs and

19     defendants ignore is the Video Privacy Protection Act.

11:57AM    20     That's a federal statute that is in no way preempted by COPPA

21     because it's a federal law.

22          The other thing that's important about the Video

23     Privacy Protection Act, your Honor, is that it allows for

24     $2,500 of statutory damages.  So when the plaintiffs and

11:57AM    25     defendants cite to data breach cases where there's results

1    where people get $5 per class and the cases that they cite

2    actually -- there's even -- the settlements are more than

3    just $5 and I'll get into that in a second.  Here, it's

4    $2,500 per violation and so the damages here are easily

11:58AM    5    calculable and are far in excess of the $1.1 million.  A case

6    that I would respectfully suggest your Honor look at is

7    *Reynolds v. Beneficial National Bank*, 288 F.3d, 277.  It's a

8    Seventh Circuit case from 2002.  As well as *Synfuel Tech v.*

9    *DHL*, 463 F.3d 646 at Page 653; and that's another Seventh

11:58AM    10    Circuit case from 2006.  In there, the Seventh Circuit says

11    that in calculating the strength of the case versus the

12    offer, a court and the parties should try to look at

13    different scenarios and compare the outcomes that would

14    happen under the scenarios.  And in *Reynolds*, the court

11:58AM    15    specifically said that the court -- that the district court

16    should look at a high option, a medium option, a low option

17    and a zero option in terms of recovery.

18           In applying the numbers here using the $2,500

19    number, assuming that's the only claim that is successful

11:59AM    20    here, $2,500 times six million class members, your Honor, is

21    $15 billion.  And the court there in *Reynolds* what it did is

22    it said let's assume that there's only .5 chance of success

23    of success of getting $15 billion and it took that into

24    consideration.  It then gave numbers for medium and low.  And

11:59AM    25    using the same ratios that the court used in *Reynolds*, the

1   medium number here, your Honor, would be $600 million.  And

2   again the court in *Reynolds* then apply a 20 percent value to

3   the possibility of success.  And the low rate here, your

4   Honor, would be $30 million and the court in *Reynolds* said

11:59AM   5   let's assume that's a 30 percent chance of success.  And then

6   for 49.5 percent, we could assume that there is no chance of

7   success at all.

8   If we use those ratios, your Honor, the net

9   expected value of this case is $204 million.  I'm not talking

12:00PM   10   about punitive damages.  I'm just talking about statutory

11   relief.  And neither the plaintiffs nor the defendants tried

12   to explain anywhere, in their briefs or in their arguments,

13   how their $1.1 million settlement relates remotely to the net

14   expected value of the case that the Seventh Circuit laid out

12:00PM   15   in *Reynolds v. Beneficial*.

16   Now I don't want to get bogged down in BIPA because

17   this case is not about BIPA and I want to make that clear for

18   the Court.  But when looking at the value of the settlement

19   and is this a good settlement, I think a more apt analogy is

12:00PM   20   to BIPA cases because in BIPA cases there are statutory

21   damages of $1,000 to $5,000.  And as we set forth in our

22   brief in a recent case in the Northern District of California

23   involving Facebook -- and we discussed that at Docket Number

24   38 at ECF Page 9, the district court there rejected a $550

12:00PM   25   million settlement that would have returned $150 to $300 to

1    the class members saying it wasn't good enough based on the

2    statutory damages and the parties recently came back and

3    upped the settlement to $650 million.

4              So I think it's important, your Honor, to consider

12:01PM   5    that this case has this federal claim under the Video Privacy

6    Protection Act, it's a viable claim as I stated during my

7    initial comments under *In re Vizio* and there's simply no

8    rebuttal to that and so I just -- I want to make that clear.

9              The other thing that plaintiffs' counsel has

12:01PM  10    repeatedly argued is that this is -- that the Objector is

11    just claiming that this -- that this settlement just isn't

12    enough; and that simply isn't the fact, your Honor, and I've

13    already talked about that at length.  But when one looks at

14    *In re Subway* and *Redman v. RadioShack* and *Eubank v. Pella* --

12:01PM  15    all Seventh Circuit cases -- this settlement is a train

16    wreck.  It gives 60 percent of the settlement to fees and --

17    to fees and administration fees.  44 percent of that goes to

18    the lawyers and the class members are left with a mere $5 and

19    it's important to take note of that.

12:02PM  20              The plaintiffs keep saying that this objection

21    isn't timely and that's just a bizarre argument given all of

22    the COVID orders and given that we -- it clearly was filed

23    before it was due.  And what they ignore is that if the

24    objection was untimely, then their papers for their fee

12:02PM  25    petition and the Motion for Final Approval also was untimely

1    but that's just -- it's just not an issue.

2            In terms of the relief and in terms of BIPA,

3    they're right that there's an MDL going on and this case

4    is -- we did not object because we're trying to get into the

12:02PM    5    BIPA case.  We've merely made the point, your Honor, that

6    there are viable claims that they did not bring.  When they

7    say that no one has stopped those BIPA cases from going

8    forward, your Honor, all that shows is more inadequacy of the

9    plaintiffs' counsel because they have an injunction from your

12:03PM    10   Honor that prohibits those cases from moving forward and they

11   didn't do it presumably to protect their settlement.  And

12   once they publicly said that they weren't going to pursue the

13   injunction, the plaintiffs in the MDL case changed their

14   class to include the class -- the settlement class in this

12:03PM    15   case and that is the point that we were trying to raise.

16           The last thing I want to talk about, your Honor --

17   I'm sorry, did someone say something?

18           THE COURT:  No.  You're good, counsel.  Go ahead.

19           MR. DRURY:  Okay.  I heard some background noise.

12:03PM    20   I apologize.  I just wanted to talk a bit about the

21   intervention because there's been a number of comments that

22   this is an unprecedented request to intervene in this case

23   but there's nothing unusual, your Honor, about a Court

24   replacing inadequate counsel.  In fact, in *Eubank v. Pella*,

12:04PM    25   753 F.3d 718 at 729, the Seventh Circuit discussed replacing

1   inadequate class counsel.  The Seventh Circuit did that again

2   in *In re Walgreen Stockholder* litigation, 832 F.3d 726.   In

3   *Reynolds v. Beneficial National Bank*, which I have been

4   discussing the Seventh Circuit's opinion but in the lower

12:04PM  5   court they didn't accept typical class counsels' settlement

6   and said there should be new counsel.

7           Now all of those cases were not in the context of

8   intervention; but in this case if we fast forward things, if

9   the Court sustains the objection and determines that the

12:04PM  10   settlement shouldn't go forward, the case then is at the

11   point where there's going to be counsel who did an inadequate

12   job of the case moving forward with the case where it's known

13   that they're not going to be able to be class counsel.  And

14   while the plaintiffs and defendants are saying that the

12:05PM  15   Objector and Intervenor shouldn't be allowed in the case, as

16   we've stated in our papers, from a practical standpoint we

17   end up at the same place if we were to file our own complaint

18   in front of a different judge or get assigned a different

19   judge, it gets related, it gets consolidated, and then we're

12:05PM  20   back in front of your Honor presenting these same claims.

21   There's really no response to that.

22           And the other point that should be noted is that by

23   the plaintiff saying that Objector should simply file another

24   case concedes that we have an interest in the case and that

12:05PM  25   an interest -- the interest is going to be impaired.

1          Also, under Rule 24(c) as we stated, we believe

2     that given the lengthy objection that we submitted, the Court

3     and the parties have sufficient facts and allegations to

4     apprise them of the claims we would assert.  And because this

12:05PM    5     case is in its infancy, it's likely that whether the case

6     proceeded in litigation that there would be an amended

7     complaint brought by the plaintiffs so there certainly is

8     no -- there's no prejudice to the parties in this case and we

9     respectfully request that to the extent 24 -- Rule 24(c) is

12:06PM   10     an issue, that it be waived just as the Court found in *Omega*

11     *Demolition Corp. versus Tech Insurance*, 2016 WL 307924, at

12     Page 3, Note 5.

13          THE COURT:  Counsel, on that argument, you've had

14     more than --

12:06PM   15          MR. DRURY:  Yes?

16          THE COURT:  -- an opportunity to file a proposed

17     complaint if that was what you wanted.  You're just going to

18     rely on a waiver argument if, in fact, that's at issue?

19          MR. DRURY:  No, your Honor.  The -- with leave of

12:06PM   20     Court, we would gladly provide a proposed complaint.  We

21     could not file a separate complaint because there's an

22     injunction in this case and we certainly wouldn't want to run

23     afoul of that.  And it was in their response that they raised

24     the issue of Rule 24(c) and we didn't want to be accused of

12:07PM   25     submitting completely new information in our reply.  But if

1  your Honor would like to see what a revised complaint -- what

2  our proposed complaint would be, we certainly could do that.

3  THE COURT:  Well, that's totally up to you --

4  MR. DRURY:  And in connection --

5  THE COURT:  Hang on a second, counsel.  That's

6  totally up to you and the Court, of course, has given the

7  parties an opportunity to file whatever they think is

8  appropriate on or before August 28th.  Okay.  Go ahead,

9  counsel.  I interrupted you.

10  MR. DRURY:  Yes.  Thank you, your Honor.  Along

11  those lines, one of the issues that I believe plaintiffs and

12  defendants have raised is the issue of there being

13  extraneous -- that any proposed complaint would have

14  extraneous issues and they raised that in the context of

15  permissive intervention.  And while we believe that we

16  satisfy all of the elements for intervention as of right,

17  even under permissive intervention, the elements of there

18  being a claim or defense in common that the motion is timely,

19  those have been met and any other elements are entirely

20  within the Court's discretion.

21  The cases that the -- I believe it's the

22  plaintiffs' cite regarding there being extraneous issues in

23  this case, *General Election -- Electric Capital Corporation*

24  and *Westefer,* in those cases, the issues that the Intervenor

25  was trying to introduce were completely separate.  There was

1  no commonality in the actual claim with the existing claim.

2  That's not the case here, your Honor.

3  And finally, you had asked some questions about the

4  settlements in other cases that the plaintiffs and defendants

12:08PM  5  have cited to. One case that's been cited to by plaintiffs

6  is *In re Vizio Consumer Privacy Litigation* and in that case

7  the settlement provided for $16.50 cash payout as opposed to

8  the $5 here. With respect to *In re Google Cookie Placement*

9  and the In re Google Referrer Header litigation, those cases

12:09PM  10  at least as of the filing of our brief on June 17th were

11  still pending after the proposed settlements had been

12  reversed on appeal by the U.S. Supreme Court in *In re Google*

13  *Referrer Header* litigation and the Third Circuit and in *In re*

14  *Google Cookie Placement*. They also cite *Target Corporation*

12:09PM  15  litigation and there, there was full reimbursement provided

16  to the -- to the class members for their loss. But again,

17  those cases did not involve the high statutory damages that

18  are involved here.

19  If your Honor has any questions, I am -- I'm happy

12:09PM  20  to -- oh, I also wanted to talk about arbitration because

21  they -- the defendants claim that arbitration prevents this

22  case from moving forward and we have never argued that kids

23  can't contract in California or Illinois or in other states

24  but they can disaffirm contracts. And certainly this case

12:10PM  25  would move forward -- this case would move forward based on

1    that case law.

2            They want to raise issues about is there going to

3    be a class and how big is this class going to be.  We're not

4    there yet.  We've asked both defendant and plaintiff for the

12:10PM    5    informal discovery that they did to reach this resolution and

6    they haven't provided any so we don't know what their data

7    looks like and we also -- there's been no litigation and no

8    discovery, no briefing into whether the arbitration provision

9    is valid and whether anyone even entered into the arbitration

12:10PM    10    provision.  So for them to claim at this very early stage

11    that there would not be a class based on the arbitration

12    provision again weighs in favor of not approving this

13    settlement because there's just not enough information that's

14    known at this time.

12:11PM    15            And the defendants' repeated referral to "these are

16    kids that voluntarily signed up for TikTok and lied about

17    their age," your Honor, that's just not the case.  I mean,

18    that's akin to Camel saying that it's children's fault that

19    kids were smoking Camels when they used Joe Camel to lure

12:11PM    20    kids to do that.  In our brief, our initial brief, Docket 24,

21    Page 16, we quote from the founder of Musical.ly who says he

22    knows that kids under 13 are using it and it's one of the

23    most popular parts of their platform.  They lured these kids

24    to use the product.  Now they're trying to use that same

12:11PM    25    conduct to get out of class litigation and that simply is not

1    the result that should be here, your Honor.

2            As the Seventh Circuit found in *Eubank*, the

3    proposed settlement is stacked against the class.  The

4    plaintiffs' lawyers support the settlement to get their fees,

12:11PM    5    the defendants support it to evade liability, and the class

6    members have become a mere casualty.  Based on class

7    counsels' conduct throughout, the Court can have no

8    confidence that they have acted -- that the plaintiffs'

9    counsel have acted or will act as conscientious fiduciaries

12:12PM    10    of the class.  As a result, your Honor, Objector respectfully

11    requests that his objections be sustained and that his Motion

12    for Intervention be granted and that the case proceed from

13    there.  If there are any questions, your Honor, I'm happy to

14    answer them.

12:12PM    15            THE COURT:  Anything further on behalf of any

16    party?

17            MR. LIETZ:  Your Honor, David Lietz for the

18    plaintiffs, your Honor.  Your Honor, three brief points.

19    Number one, the courts rejected Objector's arguments that the

12:12PM    20    failure to obtain maximum statutory penalty is grounds for a

21    valid objection.  That's plain in *Kolinek v. Walgreen

22    Company*, 311 F.R.D. 483, Northern District of Illinois, 2015.

23            Secondly, your Honor, this analysis -- this

24    so-called analysis of the Video Privacy Protection Act

12:12PM    25    completely ignores the fact that the term Personally

1       Identifiable Information in the VPPA is totally different

2       than in data privacy litigation and it, quote, includes

3       information which identifies a person as having requested or

4       obtained specific video materials or services from a

12:13PM  5      videotape service provider.

6              You know, the plaintiffs here shoehorn that into

7       the facts of this case.  But to say that this is a Video

8       Privacy Protection Act claim that warrants any sort of

9       damages calculation based upon maximum statutory values, it's

12:13PM  10     just -- it's just incorrect, your Honor.

11             And last, your Honor, in terms of us providing

12      discovery to the Objector/Intervenor, they're not entitled to

13      that under the rules.  So if they get in a case by the

14      Court's order, we will happily provide discovery but the case

12:13PM  15     law is clear there's no entitlement to discovery at this

16      stage.  Thank you, your Honor.

17             THE COURT:  Anybody else?

18             MR. WEIBELL:  Yes, your Honor.  Tony Weibell for

19      the defendants.  Just to add to what plaintiffs' counsel

12:14PM  20     mentioned about the Video Privacy Protection Act claim, the

21      Objector's counsel pointed out that that claim has statutory

22      damages and it's not based on COPPA.  There's two issues with

23      that.  One is to the extent this case goes beyond the

24      allegation of the collection of information from children

12:14PM  25     about parental consent, those claims would get captured and

1    be related to the MDL that's pending now before Judge Lee in

2    the Northern District of Illinois.  We don't think it does

3    and my understanding is that plaintiffs' counsel also doesn't

4    think it does.

12:14PM    5        And with respect specifically to the Video Privacy

6    Protection Act claim, I think all the parties involved -- not

7    the Objector but the plaintiffs and defendants -- recognize

8    after that claim was asserted there really -- there was

9    nothing there.  There was no merit to it because there's no

12:15PM   10   facts that TikTok actually disclosed to a third party for

11   non-business operational purposes both the actual name and

12   the videos that a particular user was watching, right, and

13   that's what you need to state a claim under VPPA.  So I think

14   we all recognize that that claim just wasn't going anywhere

12:15PM   15   in this litigation and it shouldn't factor into whether the

16   settlement is fair except to the extent that the Seventh

17   Circuit has said the most important factor is the weakness of

18   the case and so that's all I wanted to add, your Honor.

19        THE COURT:  Okay.  Anyone else?

12:15PM   20        MR. DRURY:  Your Honor, Scott Drury.  Just very

21   briefly.  I just wanted to make note that in the settlement,

22   there's no indication that the Video Privacy Protection Act

23   was dismissed and so for the plaintiffs and the defendants to

24   now claim that that -- that the Court shouldn't really

12:15PM   25   consider Count One of the complaint, it's just inaccurate and

again shows that there's really at this point no one

arguing on -- no one in the case arguing on behalf of the six

million class members.

4          THE COURT:  Okay.  Thank you, counsel.  The

12:16PM     5  Court -- obviously any -- if the parties want to make any

6  supplemental submissions to the Court, they should do it on

7  or before 8-28.  Counsel should order the transcript.  The

8  Court will take all motions under advisement and I will issue

9  a written ruling by separate order.  Thank you, counsel.

12:16PM    10          MR. LIETZ:  Thank you, your Honor.

11          MR. WEIBELL:  Thank you, your Honor.

12          THE COURT:  Court's in recess.

13      (Proceedings concluded at 12:16 p.m.)

14

15          C E R T I F I C A T E

16      I hereby certify that the foregoing is a transcript of

17  telephonic proceedings before the Honorable John Robert

18  Blakey on August 7, 2020.

19

20  /s/*Laura LaCien*                    August 11, 2020
    Official Court Reporter              DATE

21

22

23

24

25