# EXHIBIT M

2013 WL 1120801

Editor's Note: Additions are indicated by Text and deletions by ~~Text~~.

Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

In re NETFLIX PRIVACY LITIGATION.

No. 5:11–CV–00379 EJD.
|
March 18, 2013.

**Attorneys and Law Firms**

Ari Jonathan Scharg, Benjamin Harris Richman, Chandler Randolph Givens, Jay Edelson, Edelson LLC, William Charles Gray, Chicago, IL, for Jeff Milans.

Sean Patrick Reis, Rafey Sarkis Balabanian, Edelson LLP, Rancho Santa Margarita, CA, for Jeff Milans, and Peter Comstock.

David Eldridge Bower, Law Office of David E. Bower, Los Angeles, CA, for Jason Bernal, Michael Rura, and Peter Comstock.

Marc Lawrence Godino, Glancy Binkow & Goldberg LLP, Los Angeles, CA, for Michael Sevy, and Eric Wizenberg.

Joseph Jeremy Siprut, Siprut PC, Chicago, IL, for Michael Sevy.

Keith E. Eggleton, Rodney Grant Strickland, Jr., Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Netflix, Inc.

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF *CY PRES* AWARDS; AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD**

EDWARD J. DAVILA, District Judge.

**\*1** The instant case is a putative class action suit brought by former Netflix subscribers Jeff Milans and Peter Comstock (collectively "Plaintiffs") against Defendant Netflix, Inc. ("Netflix"). Presently before the Court is the Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees ("Final Approval Motion"). *See* Docket Item No. 191. Having reviewed the Settlement Agreement and the parties' and objectors' arguments and papers, the Court has determined that the present Motion will be GRANTED for the reasons set forth below.

**I. Background**

On January 26, 2011, Plaintiff Milans initiated this class action, claiming that Netflix unlawfully retained and disclosed his Entertainment Content Viewing History and other personally identifiable information ("PII") located on Netflix's website and that of thousands of other Netflix customers. *See* Docket Item No. 1. Among other claims, Milans alleged violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *Id.* A wave of similar suits followed, and on August 12, 2011, the Court consolidated six cases, granted Plaintiffs leave to file an Amended and Consolidated Class Complaint, and appointed Jay Edelson of Edelson McGuire, LLC as interim lead Class Counsel. *See* Docket Item No. 59.

After a mediation overseen by retired United States District Court Judge Layn R. Phillips, the parties reached a settlement agreement ("Settlement Agreement"). The parties notified the Court of settlement on February 10, 2012. *See* Docket Item No. 10. The full Settlement Agreement is attached as Exhibit A to Plaintiff's Final Approval Motion. *See* Docket Item No. 191 Ex. A. The Court will summarize the key terms of the Settlement Agreement for the purposes of the present Final Approval Motion:

> • *Class Definition.* The class was defined as follows: "[A]ll Subscribers as of the date of entry of Preliminary Approval. Excluded from the Settlement Class are the following: (i) the Settlement Administrator, (ii) the Mediator, (iii) any respective parent, subsidiary, affiliate or control person of the Defendant or its officers, directors, agents, servants, or employees as of the date of filing of the Action, (iv) any judge presiding over the Action and the immediate family members of any such person(s), (v) persons who execute and submit a timely request for exclusion, and (vi) all persons who have had their claims against Defendant fully and finally

Case: 1:19-cv-07915 Document #: 49-13 Filed: 08/28/20 Page 3 of 14 PageID #:1658

**In re Netflix Privacy Litigation, Not Reported in F.Supp.2d (2013)**

adjudicated or otherwise released." Settlement Agreement § 1.38. The size of the class amounts to approximately 62 million individuals.

• *Injunctive Relief.* The Settlement Agreement requires Netflix to decouple Entertainment Content Viewing Histories from customers' identification and payment methods within one year of the Effective Date of Settlement. *Id.* § 2.1.

• *Settlement Fund.* Netflix has agreed to pay a total amount of $9,000,000.00 into a Settlement Fund. *Id.* § 2.3. The Fund will be used for payment of Settlement Administration Expenses, a fee award to Class Counsel, and incentive award to the Class Representatives and Named Plaintiffs. *Id.* § 2.3. The balance of the Fund will be distributed to *cy pres* recipients. *Id.*

**\*2** • *Settlement Administration Expenses.* Plaintiffs have calculated these costs to be $114,570.58 with additional expected costs of $35,000.00. *See* Final Approval Motion at 24.

• *Fee Award to Class Counsel.* Netflix has agreed to pay Class Counsel a fee award of up to 25% of the amount of Settlement Fund—$2,250,000.00—plus reimbursement of up to $25,000.00 of costs and expenses. *Id.* at 24.

• *Incentive Award to Class Representatives.* Netflix has agreed to pay Class Representatives Milans and Comstock as well as the named-plaintiffs in the Related Actions, a collective incentive award in the amount of $30,000.00. *See* Settlement Agreement § 9.2.

• *Cy Pres Distribution.* The parties have agreed to distribute the balance of the Settlement Fund to not-for-profit organizations, institutions, and programs for the purpose of educating "users, regulators, and enterprises regarding issues relating to protection of privacy, identity, and personal information through user control, and to protect users from online threats." *Id.* § 2.4.1. The parties have selected twenty such organizations which will "spend the funds solely on privacy protection and education efforts." Final Approval Motion at 23. A list of the twenty proposed *cy pres* recipients and explanation of how they intend to use the funds is provided in the Final Approval Motion as well as posted on the litigation website (www.videoprivacyclass.com). The precise disbursement from the Settlement Fund to each of these organizations was filed with the Court. *See* Notice of Proposed Cy Pres Award Recipients, Docket Item No. 193.

• *Release of Claims.* In exchange for the relief explained above, the Settlement Agreement provides that Netflix and each of its related affiliates and entities will be released from any claims arising out of, relating to, or regarding the alleged retention and disclosure of Plaintiffs' and the Settlement Class's personally identifiable information, Video Rental History, and other information, including but not limited to all claims that were brought, alleged, argued, raised, or asserted in any pleading or court filing in the Action. *See* Settlement Agreement §§ 1.31, 1.32, 1.33, 1.42, 3.

Plaintiffs moved the Court to preliminarily approve the settlement on May 25, 2012. *See* Docket Item No. 76. The Court granted this motion on July 5, 2012. *See* Am. Order Grant'g Mot. for Prelim. Approval of Class Action Settlement ("Preliminary Approval Order"), Docket Item No. 80. Pursuant to the Preliminary Approval Order, Class Notice, including notice of the hearing on the final approval of the class action settlement, was sent to the Class. The Court received over 100 Objections to the settlement.

A hearing on the final approval of the settlement was held on December 5, 2012 where the Court heard arguments of counsel as well as that of individual class member objectors. *See* Minute Entry, Docket Item No. 233. Plaintiffs filed the present Final Approval Motion on October 31, 2012. *See* Docket Item No. 191. In addition, Plaintiffs and Defendant each filed responses addressing the procedural and substantive issues raised by the objections. *See* Pls.' Reply Memo. in Supp. of Final Approval Mot., Docket Item No. 226; Def.'s Response to Objections to Class Action Settlement, Docket Item No. 225.

**II. Legal Standard**

**\*3** A class action may not be settled without court approval. [Fed.R.Civ.P. 23(e)](). "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.* When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." [*Staton v. Boeing Co.,* 327 F.3d 938,]()

952 (9th Cir.2003). "[J]udges have the responsibility of ensuring fairness to all members of the class presented for certification." *Id.*

The law favors the compromise and settlement of class action suits. *See, e.g., Churchill Village, LLC. v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir.2004); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992); *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998).

First, the district court must assess whether a class exists under Federal Rule of Civil Procedure 23(a) and (b). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Second, the district court must carefully consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable," pursuant to Federal Rule of Civil Procedure 23(e); recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon,* 150 F.3d at 1026 (citations omitted).

**III. The Settlement Agreement**
The Court reasserts its conclusion in the Preliminary Approval Order that the Settlement Agreement "appears fair, non-collusive and within range of possible final approval" and "was a product of arm's length negotiation before a mediator and does not appear to benefit those who participated in the mediation at the expense of any other parties." Preliminary Approval Order at 4. The Court also iterates the following: "In light of the minimal monetary recovery that would be realistically recoverable by individual Settlement Class members and the immediate benefits offered to the Class by the injunctive relief and cy pres donations, the Settlement Agreement is deserving of preliminary approval." *Id.*

**A. Class Certification**
In accordance with first step for approving a class action settlement agreement, *see Windsor,* 521 U.S. at 620, the Court notes that class certification is appropriate for this litigation under Federal Rule of Civil Procedure 23. Because the Objections do not appear to raise a viable challenge to that conclusion, the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order. *See* Preliminary Approval Order at 4–6.

**B. Reasonableness of the Settlement Agreement**
**\*4** The Court now turns to the question of whether the Settlement Agreement is "fair, adequate, and reasonable" as prescribed under Federal Rule of Civil Procedure 23(e). In answering this question, district courts have been instructed to balance several factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon,* 150 F.3d at 1026; *Churchill,* 361 F.3d at 575.

Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08–CV–1365–CW, 2010 WL 1687832, at \*13 (N.D.Cal. Apr.22, 2010). Because this Court has concluded that the settlement negotiations were conducted free of collusion, *see* Preliminary Approval Order at 4, and the Objections do not raise a viable challenge to this notion, the Court will evaluate each of eight *Hanlon* approval factors under the presumption of fairness and reasonableness.

**1. Strength of Plaintiff's Case**
In determining the probability and likelihood of a

plaintiff's success on the merits of a class action litigation, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice,* 688 F.2d at 625 (internal quotation marks omitted). There is no "particular formula by which that outcome must be tested." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir.2009). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner,* No. 08–CV–1365–CW, 2010 WL 1687832, at *9 (citing *Rodriguez v. West,* 563 F.3d at 965).

Plaintiffs have suggested that they intended to bring two theories in support of their VPPA violation claims which underlie the class action. The first of these theories is that Netflix had unlawfully disclosed customers' PII by providing that information to third-party analytics companies working to improve Netflix's recommendation algorithm or for other purposes. However, after the commencement of formal and informal discovery, Plaintiffs determined that Netflix had not been disclosing Netflix customers' PII to third parties. In addition, Plaintiffs concluded that the third-party services theory would be unlikely to succeed given the broad interpretation of the VPPA's "ordinary course of business" exception courts in this district have been employing. *See, e.g., Rodriguez v. Sony Computer Entm't of Am. LLC,* No. 11–CV–4084–PJH (N.D.Cal. Apr. 20, 2012) (granting defendant's motion to dismiss plaintiff's unlawful disclosure VPPA claim for this reason). With that, and other possible defenses Netflix might have raised—such as lack of Article III standing—Class Counsel has estimated that the "unlawful disclosure" claims would have a 5% chance of success on the merits.

*5 The second of Plaintiffs' theories of the case was that Netflix had been unlawfully retaining customers' PII in violation of the VPPA. One particularly potent defense Netflix could bring in response to this theory is that numerous courts have found that Congress only intended for litigants suing under the VPPA to receive injunctive relief and not monetary damages. *See, e.g., Rodriguez v. Sony Computer Entm't of Am. LLC,* No. 11–CV–4084–PJH, 2012 WL 4464563 (N.D.Cal. Sept.25, 2012) (dismissing with prejudice plaintiff's unlawful retention VPPA claims for this reason); *Sterk v. Redbox Automated Retail, LLC,* 672, F.3d 535 (7th Cir.2012) (finding no private right of action for statutory damages for a violation of 18 U.S.C. § 2710(e), VPPA's unlawful retention prong); *Daniel v. Cantrell,* 375 F.3d 377 (6th Cir.2004) (same). While this defense might have prevented a monetary damage award under the VPPA, Class Counsel still intended to bring suit under the "unlawful" prong of California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, which could have provided for monetary damages. Taking into consideration other potential defenses—such as, again, lack of Article III standing—Class Counsel estimated a 55% change of succeeding on the merits under the "unlawful retention" theory.

Class Counsel has placed a net value of the case at $6,398,667 plus fees. *See* Final Approval Motion § III (outlining in detail the arrival at this figure). The calculation first estimates the amount of recovery in the event of success on the merits after surmounting all procedural and substantive obstacles of litigation as well as takes into account various costs and fees. The calculation then takes into account the time value of money at the appropriate discount rate. The Court has concluded that this figure, derived in the course of the settlement negotiations, is reasonable for the purposes of this factor of settlement approval. Because this figure is lower than the Settlement Fund disbursement (even after the deduction of attorneys' awards and fees, incentive awards, and other costs)—not to mention the value of the injunctive relief—this factor weighs strongly in favor of approval.

### 2. Risk of Continuing Litigation

Proceeding in this litigation in the absence of settlement poses various risks such as dismissal upon a dispositive motion, potentially potent defenses, increased costs and fees, and expiration of a substantial amount of time. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez v. West,* 563 F.3d at 966; *Curtis–Bauer v. Morgan Stanley & Co., Inc.,* No. 06–C–3903 TEH, 2008 WL 4667090, at *4 (N.D.Cal. Oct.22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). This is especially true here after taking into consideration the potential pitfalls of Plaintiffs' case, massive size of the Class, and substantial costs that would have to be incurred in order to disburse any *de minimis* monetary payments to Class members in the event of a litigation victory. As such, this factor weighs in favor of approval.

### 3. Risk of Maintaining Class Action Status

**\*6** The notion that a district court could decertify a class at any time, *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), is one that weighs in favor of settlement. *Rodriguez v. West,* 563 F.3d at 966. While this Court certified the Class in the Preliminary Approval Order—and is reaffirming that certification in this Order—this certification was for settlement purposes only. In the absence of settlement, Netflix would likely vigorously oppose class certification and challenge it before or during trial as well as on appeal. As such, the risk of losing class status in the absence of settlement weighs in favor of approval.

### 4. Amount Offered in Settlement

The amount offered to the Settlement Fund for distribution totals $9,000,000.00 plus the agreed-upon injunctive relief that seeks to undo and prevent the harm Plaintiffs have sought to vindicate in bringing this class action suit. Class Counsel has valued the injunctive relief at approximately $4,650,000.00. *See* Final Approval Motion at 19, 32 (explaining the arrival at this figure). As noted, the value of the Settlement Agreement exceeds Class Counsel's total valuation of the case in the absence of settlement, even after accounting for the requested fee awards.

The method of distribution of the cash settlement is pursuant to *cy pres* remedy of distributing the funds to various institutions and organizations for the purposes of furthering privacy research, protections, and education efforts. A *cy pres* remedy is a settlement structure wherein class members receive an indirect benefit (usually defendant donations to a third party) rather than a direct monetary payment." *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir.2012). The *cy pres* doctrine "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the next best class of beneficiaries." *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1036 (9th Cir.2011) (internal quotation marks omitted). *Cy Pres* is employed where "proof of individual claims would be burdensome or distribution of damages costly." *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1305 (9th Cir.1990)). A *cy pres* distribution is reasonable where it "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members ...." *Nachshin,* 663 F.3d at 1036.

In *Lane v. Facebook,* the Ninth Circuit affirmed the approval of a *cy pres* settlement distribution similar to the one presently before this Court. That case, brought on behalf of a class of millions, involved claims of violations of the VPPA and other privacy statutes based on allegations that defendant Facebook had been gathering and disseminating the personal information of its members. 696 F.3d 811. The settlement agreement included a $9.5 million cash payout to a settlement fund which, after subtracting attorneys' fees and other awards and costs, would be used by Facebook to set up a new charity organization whose stated purpose would be to "fund and sponsor programs designed to educate users, regulators[,] and enterprises regarding critical issues relating to protection of identity and personal information online through user control, and the protection of users from online threats." *Id.* at 817. The Ninth Circuit concluded that this settlement warranted approval because, in addition to the $9.5 million pay-out being a "substantial" sum for this type of class action, "it would be burdensome and inefficient to pay the $6.5 million in *cy pres* funds that remain after costs directly to the class because each class member's recovery under a direct distribution would be *de minimis." Id.* at 824–25 (internal quotation marks omitted). The *Lane* court also noted that the injunctive relief provided for under the settlement—which would terminate the complained-of activity—would provide reasonable and fair relief when coupled with the *cy pres* distribution. *Id.* at 825.

**\*7** In *In re Google Buzz Privacy Litigation,* a court in this district approved a similar settlement agreement in a similar privacy-related putative class action. No. 10–00672–JW, 2011 WL 7460099 (N.D.Cal. June 2, 2011). That case, brought on behalf of a class estimated to be in the tens of millions, included allegations that defendant Google Inc. had disseminated the private and personal information of users of its Google Buzz program in violation of federal privacyrelated and stored communications statutes. *Id.* The settlement agreement in that case included an $8.5 million payout to be distributed to third-party *cy pres* recipients for the purpose of furthering consumer privacy protection and security efforts. *Id.* In approving the agreement, the *Google Buzz* court found that the *cy pres* distribution would "provide[ ] an indirect benefit to the Class Members consistent with the Class Members' claims herein." *Id.* at \*4.

Like in both *Lane* and *Google Buzz,* the present class action contains a very sizeable class amount. Given the sheer size of the Class (over 62 million Netflix members) each Class member would receive a *de minimis* payment in the event of a direct class cash payout. This amount would likely prove to be nullified by distribution costs.

See *Lane,* 696 F.3d at 825. Unlike *Lane,* which essentially returned the *cy pres* funds back to the defendant for the purpose of having the defendant of set up a privacy-related organization, the present Settlement Agreement provides for distribution to already-existing third-party organizations.[1] *See* Notice of Proposed Cy Pres Award Recipients. The list of the *cy pres* recipient organizations—which the Court notes is similar to that of the *Google Buzz cy pres distribution, see* No. 10–00672–JW, 2011 WL 7460099, at *3—includes leading consumer and privacy advocacy groups and academic institutions. The organizations are located throughout the country so as to best benefit the far-reaching Class through outreach and education programs, litigation and public advocacy, development of privacy-protecting tools, and other methods.

Accordingly, the Court finds that the settlement amount—which includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief—to be a factor that weighs in favor of approval.

**5. Extent of Discovery**
Before settlement, discovery was on-going. Plaintiffs have propounded, and Netflix responded to, formal written discovery questions including interrogatories and requests for the production of documents. *See* Final Approval Motion Ex. C, Declaration of Jay Edelson ¶¶ 64. Class Counsel also engaged in informal discovery with Netflix's Vice President of Product Engineering and its Vice President of Marketing and Analytics. *Id.* These discovery efforts allowed Plaintiff's counsel to accurately valuate by compiling information ranging from the extent to which Netflix compiled and collected PII to the number of members that might fall into the Class. *Id.* ¶ ¶ 62–64. While formal discovery had not been completed, Class Counsel has established that they had acquired sufficient information to make an informed decision about the valuation of the case, potential obstacles and pitfalls, and likelihood of success so to as effectively engage in settlement negotiations. As such, this factor weighs in favor of settlement. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.").

**6. Experience and Views of Counsel**
\*8 The next factor the Court will consider is the experience and opinion of counsel. In evaluating this factor, the Court notes that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West,* 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir.1995)). Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." (*In re Omnivision Techns., Inc.,* 559 F.Supp.2d 1036, 1043 (N.D.Cal.2009) (quoting *Boyd v. Bechtel Corp.,* 485 F.Supp. 610, 622 (N.D.Cal.1979)). This factor weighs in favor of approval in light of Class Counsel's experience with these types of class action cases rooted in issues involving online technology and consumer privacy. *See* Final Approval Motion at 36–37. The Court also notes that Class Counsel was appointed as such by this Court after a leadership fight among the seven plaintiffs' firms involved in this litigation. *See* Order Appointing Interim Class Counsel, Docket Item No. 59.

**7. Presence of a Government Participant**
Although no government entity was or is a party to this action, Netflix complied with the notice requirement of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715 and provided the requisite notice to government officials. *See* Pls.' Final Approval Mot. Ex. H. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner,* No. 08–CV–1365–CW, 2010 WL 1687832, at *14. The Court notes that the Office Attorney General of the Texas sent a letter dated July 9, 2012, which expressed concerns regarding the proposed settlement. *See* Letter from Wade Phillips, Assistant Attorney General of Texas, to Hon. Edward J. Davila, Judge, Northern District of California (July 9, 2012) (on file with the United States District Court, Northern District of California). This letter urged the Court not to approve the settlement for similar reasons as do many of the class member Objections.[2] The Court will address—and ultimately overrule—these Objections that contain such reasoning in Part IV of this Order below.

WESTLAW  © 2020 Thomson Reuters. No claim to original U.S. Government Works.  6

**8. Reaction of Class Members**

The next factor the Court must consider is the reaction of the class to the proposed settlement. *Hanlon* 150 F.3d at 1026. The Settlement Class consists of some 62 million members. As of November 27, 2012, 2508 class members opted out of the settlement—approximately one in every 24,800 class members. *See* Exclusion List, Affidavit of Tore Hodne Ex. A. Approximately 110 class members filed objections with the Court[3]—approximately one in every 560,000 class members. Courts have considered relatively low numbers of objectors compared to the class size to weigh in favor of settlement. *See, e.g., Churchill,* 361 F.3d at 577 (affirming approval of class action settlement with 45 objections from a 90,000–person class); *Hanlon,* 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); *In re TD Ameritrade Acc't Holder Litig.,* Nos. C 07–2852 SBA, C 07–4903 SBA, 2011 WL 4079226, at *7 (N.D.Cal. Sept.13, 2011) (finding that reaction of a class was "positive" where there were "only 23 [objections] and less than 200 [opt-outs]" out of six million class members receiving notice); *Browning v. Yahoo! Inc.,* No. 04–C–01463–HRL, 2007 WL 4105971, at *12 (N.D.Cal. Nov.16, 2007) (concluding that a ratio of one objector for every 100,720 class members to be a "low" objection rate "even compared to objection rates in other, similar class action settlements"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D.Cal.2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). The Court agrees and concludes that this factor weighs in favor of settlement. *See Lane,* 696 F.3d 811; *Google Buzz,* No. 10–00672–JW, 2011 WL 7560099. Nevertheless, the Court will still consider and address the substantive arguments raised by the Objections to the Settlement Agreement in Part IV of this Order below.

**C. Notice**

**\*9** Under Federal Rule of Civil Procedure 23(c), the parties need only provide notice "reasonably certain to inform the absent members of the plaintiff class[.]" *Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir.1994) (internal quotation marks omitted). The notice need only "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill,* 361 F.3d at 575 (internal quotation marks omitted); *see also Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir.1980) ( "Notice in a class suit may consist of a very general description of the proposed settlement.").

In this case the parties created and agreed to perform a Notice Plan, which was outlined in the Preliminary Approval Order. *See* Settlement Agreement § 4; Preliminary Approval Order at 6–8. This plan included providing class members with notice via email, creating and maintaining a settlement website containing pertinent and detailed information regarding the settlement, and notification via print and online publication. The Court finds that this plan has met the requirements of Rule 23 and due process and that it has been fully and properly implemented by the parties and the Settlement Administrator. Additionally, as noted, the Court has found that notice had been properly given to the appropriate federal and state government officials in accordance with CAFA.

**D. Attorneys' Fees**

Under the Settlement Agreement, Netflix has agreed to pay Class Counsel a fee award of up 25% of the Settlement Fund plus reimbursement of up to $25,000.00 of costs and expenses. Settlement Agreement § 9.1. Accordingly, Class Counsel seeks attorneys' fees of $2,250,000.00 plus the $25,000.00 in costs and expenses. Final Approval Motion at 41. Class Counsel contends that this fee request is appropriate under the percentage-of-the-fund analysis with the lodestar cross-check.

**1. Percentage–of–the–Fund**

For common fund settlements, like the one before the Court, the Ninth Circuit has set a "benchmark" fee award at 25% of the recovery obtained. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir.2002); *In re Bluetooth Headset Prods. Liab. Litig.,* 645 F.3d 935 (9th Cir.2011). A district court may depart from this benchmark after providing adequate explanation of "special

circumstances" so justifying. *Id.* at 942. "The Ninth Circuit has set forth a non-exhaustive list of factors which may be relevant to the district court's determination of the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.,* No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D.Cal. Nov.3, 2009) (citing *Vizcaino,* 290 F.3d at 1048–50).

**\*10** The Court finds that Class Counsel's request for $2,250,000.00 meets the Ninth Circuit's benchmark test and is appropriate under the present circumstances. The Court has taken into account the complexity of this litigation, the novelty and risk of the claims and Plaintiffs' theory of the case, potential potent defenses and weaknesses of the case, the favorable result Class Counsel has achieved on behalf of Plaintiffs and the Class, and other factors in finding that no departure from this benchmark is warranted. The Court also notes that this attorneys' award is similar to that of similar settlements involving *cy pres* distribution. *See, e.g., Google Buzz,* No. 10–00672–JW, 2011 WL 7560099; *Lane v. Facebook, Inc.,* No. C 08–3845 RS, 2010 WL 2076916 (N.D.Cal. May 24, 2010).

### 2. Lodestar Comparison

"[W]hile the primary basis of the fee award remains the percentage method, the lodestar [method] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino,* 290 F.3d at 1050. The "lodestar method" of calculating attorneys' fees "involves multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonably hourly rate." *Staton,* 327 F.3d at 965 (internal quotation marks omitted). The lodestar method is merely a "cross-check" to test the percentage figure's reasonableness under the circumstances of the case; the lodestar method's limitations lie in its creating a possible incentive for counsel to expend more hours than is necessary on a litigation or to delay settlement. *Vizcaino,* 290 F.3d at 1050 n. 5.

Here, Class Counsel calculates attorneys' fees under the lodestar method to be $1,352,025 plus costs of $47,502.56. Final Approval Motion at 50. Counsel provides sufficient support for this calculation considering reasonable hours and rates. *See id.* at 50–52. Moreover, the Court agrees with Class Counsel's suggested lodestar multiplier of 1.66 which would equate attorneys' fees with the amount calculated under the percentage method. This multiplier figure is comparable to other multipliers in similar approved settlements. *See, e.g., Google Buzz,* No. 10–00672–JW, 2011 WL 7560099; *Lane,* No. C 08–3845 RS, 2010 WL 2076916. As such, the Court finds that the lodestar method of fee calculation confirms the reasonableness of the percentage-based calculation.

### E. Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton,* 327 F.3d at 977. In judging the appropriateness of incentive awards a district court should use "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Id.* (internal quotation marks omitted).

**\*11** The Settlement Agreement provides that the Class Representatives and named Plaintiffs in the Related Actions shall receive a total Incentive Award of $30,000 from the Settlement Fund. Settlement Agreement § 9.2. The Agreement designates that "Class Counsel shall have the sole responsibility of ensuring that the collective Incentive Award is distributed appropriately ...." *Id.* § 9.2. Class Counsel requests dividing this award as follows: $6000 to each of the four Class Representatives and $3000 to each of the two named Plaintiffs in the Related Actions. Final Approval Motion at 55. The Class Representatives and named Plaintiffs in this case assumed the responsibilities and burdens of acting as representatives in this lawsuit, including expending time participating in the litigation of the case with Class Counsel as well as facing public scrutiny through media coverage of this high profile suit. Accordingly, the Court finds the incentive award to be reasonable in light of the incentive award eligibility factors set forth in *Staton.*

### IV. Objections to the Settlement Agreement and Awards

The Court now turns to the substance of the Objections to the Settlement Agreement. The Objectors bear the burden of proving any assertions they raise challenging the

reasonableness of a class action settlement. *United States v. Oregon,* 913 F.2d 576, 581 (9th Cir.1990). The Court iterates that the proper standard for approval of the settlement is whether it is fair, reasonable, adequate, and free from collusion—not whether the class members could have received a better deal in exchange for the release of their claims. *See Hanlon* 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). The Court also reasserts that the proper notice procedures were followed in this case which allowed class members to opt out of the Settlement Agreement and preserve their potential claims if they were unhappy with the results of the Agreement.

After reviewing the Objections the Court has determined that they are to be overruled.[4] The Court will provide an explanation of this determination with regard to some of the meritorious arguments raised in the Objections.

### A. Objections to the *Cy Pres* Nature of Funds Distribution

A majority of the Objections criticize the Settlement's use of the *cy pres* method of distribution of the Settlement Fund. Many of these Objections present philosophical and generalized attacks on the law providing for *cy pres* distribution in class action settlements. Similar Objections express disapproval that the charitable *cy pres* organizations, and not the class members, receive the monetary settlement funds. Objections of this nature find no support in the law; as the Court has explained, *cy pres* distribution has been found to be an appropriate relief mechanism. *See, e.g., Lane,* 696 F.3d at 819; *Nachshin,* 663 F.3d at 1036. Further, as noted, Plaintiffs have made a sufficient showing that the cost of distributing the settlement to the 62 million individual class members would exceed the size of the fund, thus making such a remedy cost-prohibitive and infeasible.

**\*12** Other objections take issue with the process by which the *cy pres* recipients were selected, arguing that the individual class members should have been the ones making such decisions. Again, the law in this Circuit rejects this notion: "We do not require as part of that doctrine that settling parties select a *cy pres* recipient that the court or class members would find ideal. On the contrary, such an intrusion into the private parties' negotiations would be improper and disruptive to the settlement process." *Lane,* 696 F.3d at 820–21; *see also Hanlon,* 150 F.3d at 1027. In fact, contrary to the contentions of these types of Objections, Class Counsel set up an application system which included fielding input and suggestions from Class Members as to which organizations should be named as *cy pres* recipients.

A next line of argument raised by some of these Objections challenge the types of organizations selected as *cy pres* recipients. Some suggest that funds should be distributed to other charities for the purposes of helping the poor or needy. This argument does not take into account Ninth Circuit precedent, which requires that *"[c]y pres* distributions account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin,* 663 F.3d at 1036. On the opposite end of the spectrum, other Objections suggest there is not a sufficient nexus between the recipients and the claims alleged in this litigation. The Court rejects these arguments having found the *cy pres* recipients to be sufficiently related to the issues that form the core of this lawsuit. As noted, the organizations provide an array of consumer advocacy, protection, and education services in the field of online privacy. As such, the Court overrules these Objections.

### B. Objections Suggesting an "In–Kind" Form Relief

Several Objections suggest an alternative "in-kind" form of relief such as, among others, a reduction in Netflix member dues or a free month of Netflix services. These Objections have many flaws some of which include failing to demonstrate the economic feasibility of such a form of relief or failing to take into account class members who are no longer Netflix customers. But notwithstanding the weaknesses of these suggestions, the Court notes that these Objections merely suggest a different or arguably better settlement award rather than sufficiently calling into question the fairness or adequacy of the Agreement. *Hanlon,* 150 F.3d at 1027 ("Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate."). Accordingly, these types of Objections are overruled.

#### C. Objections to the Amount of the Settlement Fund

Several Objections call into question the amount of the Settlement Fund, claiming it is too small. As explained above, the Court has found that the amount of the cash settlement to be fair and adequate considering the strength of Plaintiffs' case, potential defenses, experience and opinion of counsel, the settlement amount of similar class action litigations, and other factors. Again, the Court has been instructed not to substitute its own judgment for that of the parties who were the ones actually engaging in the negotiations. *See* [Pac. Enterprises Sec. Litig., 47 F.3d at 378](#) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

#### D. Objections to the Injunctive Relief

**\*13** Another group of Objections takes issue with the injunctive relief provided for as part of the Settlement Agreement. These Objections argue that the decoupling of information is reversible or unconnected to the wrongs for which Plaintiffs sought relief in bringing this suit. Like with many of the others, these Objections do not sufficiently show that the injunctive relief is inherently unfair so as to disapprove of the Settlement Agreement. To the contrary, the injunctive relief seeks to prevent Netflix from engaging in precisely the activity which underlies this class action. In *Lane,* the Ninth Circuit approved of this type of injunctive relief despite objections suggesting that the complained-of activity have already been ceased by the defendant in that case. *See* [Lane 696 F.3d at 825](#) (approving an injunction that required defendant Facebook to terminate the complained-of Beacon program over objections that Beacon had already been terminated). As for the Objections' suggestions that the decoupling is reversible, the Court notes that if it reversed the decoupling, Netflix would be violating the Court-approved Settlement Agreement. As such, these Objections are overruled.

#### E. Objections to Attorneys' Fees and Incentive Wards

A sizeable group number of Objections challenge the Settlement Agreement's provisions with regard to attorneys' fees for Class Counsel and incentive awards to the Named Plaintiffs and Class Representatives. These objections amount to generalized quarrels with the law regarding such fees and awards in class action settlements, the processes used to calculate such fees, and whether the fees and awards are justified in light of Settlement Agreement. These arguments ignore the well-established Ninth Circuit law regarding attorneys' fees and incentive awards, which have been addressed above. Because the Court has found that the fees and awards are reasonable and proper under the law, these objections are rejected.

### V. Conclusion and Order

For the foregoing reasons, the Court finds that the Settlement Agreement including the Award of Attorneys' Fees, Expenses, and Incentive Award, is fair, adequate, and reasonable; that it satisfies [Federal Rule of Civil Procedure 23(e)](#) and the fairness and adequacy factors of this Circuit; and that it should be approved and implemented as set out in this Court's Final Order and Judgment. The Final Approval Motion is therefore GRANTED.

Since this Order effectively disposes of the entire case, the Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

### [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE.

Pending before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees, Expenses, and Incentive Award (Dkt.190) (the "Motion"). The Court, having reviewed the papers filed in support of and in opposition to the Motion, heard argument of counsel, and good cause appearing therein, Plaintiffs' Motion is hereby GRANTED and it is hereby ORDERED, ADJUDGED, and DECREED THAT:

**\*14** 1. Terms and phrases in this Order shall have the same meaning as ascribed to them in the Parties' April 30, 2012 Class Action Settlement Agreement (the "Settlement Agreement").

2. This Court has jurisdiction over the subject matter of

this action and over all Parties to the Action, including all Settlement Class Members.

3. On July 5, 2012, this Court granted Preliminary Approval of the Settlement Agreement and preliminarily certified a settlement class consisting of:

> All Subscribers as of the date of entry of Preliminary Approval. Excluded from the Settlement Class are the following: (i) the Settlement Administrator, (ii) the Mediator, (iii) any respective parent, subsidiary, affiliate or control person of the Defendant or its officers, directors, agents, servants, or employees as of the date of filing of the Action, (iv) any judge presiding over the Action and the immediate family members of any such Person(s), (v) persons who execute and submit a timely request for exclusion, and (vi) all persons who have had their claims against Defendant fully and finally adjudicated or otherwise released.

(Dkt. 80 at 2.)

4. Attached hereto and incorporated into this Order as Appendix 1 is a schedule of all such persons who have timely and validly requested to be excluded from the Settlement Class.

5. This Court now affirms certification of the Settlement Class and gives final approval to the settlement and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class. The complex legal and factual posture of this case, and the fact that the Settlement Agreement is the result of arms' length negotiations presided over by a neutral mediator support this finding. The Class Representatives and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement. Accordingly, the Settlement Agreement is hereby finally approved in all respects, and the Parties are hereby directed to perform its terms.

6. The Court-approved Notice Plan to the Settlement Classes, as set forth in the Preliminary Approval Order on July 5, 2012, was the best notice practicable under the circumstances and included comprehensive nationwide newspaper publication, website publication, and direct e-mail notice. The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process.

7. The Court finds that the Defendant properly and timely notified the appropriate state and federal officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of Defendant's notice and accompanying materials, and finds that they complied with all applicable requirements of CAFA.

8. Subject to the terms and conditions of the Settlement Agreement, this Court hereby dismisses the action on the merits and with prejudice.

*15 9. Upon the Effective Date of this settlement, Plaintiffs and each and every Settlement Class Member, fully, finally, completely and forever, release, acquit and discharge each released Party from any and all Released Claims, except that Released Claims shall not extend to claims that are asserted in the case of *Mollett v. Netflix, Inc.,* No. 5:11–cv–01629–EJD as of the date of the Settlement Agreement.

10. Upon the Effective Date, the above release of claims and the Settlement Agreement will be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Settlement Class Members, Releasing Parties, and their heirs, executors, and administrators, 00 successors, and assigns. All Settlement Class Members who have not been properly excluded from the Settlement Class are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on or arising out of the Released Claims.

11. Netflix is hereby ordered to implement and comply with Sections 2.1 and 2.2 of the Settlement Agreement regarding the injunctive relief made available to the Settlement Class Members.

12. The Court awards to Settlement Class Counsel $*2,250,000.00* as attorneys' fees and costs.

13. The Court awards to the Class Representatives and named-Plaintiffs in the Related Actions $ *30,000.00* as an Incentive Award for their roles in this case and the Related Actions.

14. Defendant shall pay the Fee Award and Incentive Award pursuant to and in the manner provided by the terms of the Settlement Agreement.

15. Except as otherwise set forth in this Order, the Parties shall bear their own costs and attorneys' fees.

16. This Court hereby directs entry of this Final Judgment based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Final Judgment notwithstanding the Court's retention of jurisdiction to oversee implementation and enforcement of the Settlement Agreement.

17. This Final Judgment and order of dismissal with prejudice, the Settlement Agreement, the settlement that it reflects, and any and all acts, statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, or used as an admission or concession by or against the Parties with respect to any fault, wrongdoing, or liability, or of the validity of any Claim or defense, or of the existence or amount of damages, or that the consideration to be given under the Settlement Agreement represents an amount equal to, less than or greater than the amount that could have or would have been recovered after trial.

18. The Parties, without further approval from the Court, are hereby permitted to agree and to adopt such amendments, modifications, and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Judgment and do not limit the rights of Settlement Class Members.

*16 19. Without affecting the finality of this Final Judgment in any way, this Court hereby retains continuing jurisdiction over, *inter alia,* (a) implementation, enforcement, and administration of the Settlement Agreement, including any releases in connection therewith; (b) resolution of any disputes concerning class membership or entitlement to benefits under the terms of the Settlement Agreement; and (c) all Parties hereto, for the purpose of enforcing and administering the Settlement Agreement and the Action until each and every act agreed to be performed by the Parties has been performed pursuant to the Settlement Agreement.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1120801

**Footnotes**

[1] Several judges on the Ninth Circuit have expresses disapproval of the *Lane* settlement, albeit in dissenting opinions. One of the reasons these judges took issue with that settlement involves that fact that the *cy pres* funds were to be used in part by the defendant to set up an organization to educate users about issues related to privacy and protection of their PII. See *Lane v. Facebook, Inc.,* No. 10–16380, No. 10–16398, 2013 U.S.App. LEXIS 3935, at *4, 2013 WL 765140 (9th Cir. Feb. 26, 2013)*, denying petition for reh'g en banc 696 F.3d 811 (9th Cir.2012) (Smith, J., dissenting) ("The 'charity' is simply a bespoke creation of this settlement."); *Lane,* 696 F.3d at 832 (Kleinfeld, J., dissenting) ("Every nickel of the remainder of the $9,500,000 ... goes not to the victims, but to an entity partially controlled by Facebook and class counsel). The *cy pres* recipients in this case, unlike the settlement in *Lane,* are already-existing charitable organizations that provide educational as well as legal services related to online privacy issues and concerns.

[2] The letter expresses concerns with the *cy pres* nature of distribution, the fact that the individual class members do not receive monetary compensation, and that Class Counsel receives 25% of the $9,000,000.00 Settlement Fund as an award.

[3] The properness of the filing of several objections is disputed by Plaintiffs. See Pls.' Reply Memo. in Supp. of Final Approval Mot. 1 n. 1. For the purposes of this Order the Court has considered the substantive arguments of all objections, even those whose properness of filing is under dispute.

[4] Shortly before and after the Final Fairness hearing, there have been several requests to file and strike additional

**In re Netflix Privacy Litigation, Not Reported in F.Supp.2d (2013)**

briefings in this matter. *See* Docket Item Nos. 231, 239, 243, 246, 253. Netflix's Motion to Strike, Docket Item No. 231, is GRANTED. Class Member Tanner's Motion for Leave to File Supplementary Memorandum, Docket Item No. 239, is DENIED. Netflix's Motion to file a Surreply, Docket Item No. 243, is DENIED. Netflix's Motion to Strike, Docket Item No. 246, is GRANTED. Class Counsel's Motion for Leave to File *Instanter,* Docket Item No. 253, is DENIED.

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.