IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| T.K., *et al.*,  )  | |
| )  | Case No. 19 C 7915 |
| Plaintiffs,  ) | |
| )  | Judge John Robert Blakey |
| vs.  ) | |
| )  | Magistrate Judge M. David Weisman |
| BYTEDANCE TECHNOLOGY CO., LTD., *et al.*,  ) | |
| )  | |
| Defendants.  ) | |

**OBJECTOR MARK S.'s REPLY IN SUPPORT OF MOTION
FOR ENFORCEMENT OF PRELIMINARY INJUNCTION AND FOR
REASSIGNMENT AND CONSOLIDATION OF THE RELATED TIKTOK MDL**

**I.    The Court Should Enforce the Preliminary Injunction.**

Defendants do not oppose enforcement of the Preliminary Injunction[1] (Dkt. 56 at 1, 3), nor could they. Instead, they attempt to justify going around the injunction supposedly because they are saving the judicial system from time-consuming litigation. *Id.* at 1-2. At the outset, it was not for Defendants to decide whether the injunction should be enforced or modified. They should have brought the issue to this Court, instead of selecting new class counsel and class representatives to work with. Moreover, Defendants' supposed justification is a make weight.

Whether the Court sustains or overrules the Objections, the possibility of time-consuming litigation related to the Preliminary Injunction is nil. Because the Proposed Settlement's broad release covers the claims in the TikTok MDL, if the Court were to approve the Proposed Settlement (which it should not), injunction or not, the TikTok MDL claims would be released. If, on the other hand, the Court sustains the Objections, the Preliminary Injunction would terminate. Both this case and the TikTok MDL would proceed accordingly. Under either scenario, there is no time-

---

[1] Defined terms have the same meaning as in Objector's opening memorandum.

1

consuming litigation avoided by violating the injunction. Rather, Defendants had a self-serving purpose which does not provide a basis for not enforcing the Preliminary Injunction.

**II.  Defendants Have Tacitly Conceded that They Should Have Disclosed This Case to the Panel.**

Ignoring the Panel's Rules, Defendants make the incredible assertion that disclosure of this case to the Panel was not required because they subjectively believed the case did not satisfy the requirements for centralization under 28 U.S.C. § 1407 and, therefore, made a conscious decision not to disclose it. *Id.* at 2, n.1. Under the Rules, a "tag-along action" refers to "a civil action pending in a district court which involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407." J.P.M.L. Rule 1.1(h).

Defendants do not contest the existence of multiple common questions of fact in this case and the TikTok MDL. *See, e.g.*, Dkt. 52 at ECF 6-7 (describing common facts). Thus, at minimum, this case is a potential tag-along action. Pursuant to J.P.M.L. Rules 6.2(d) and 7.1(a), Defendants were required to promptly notify the Clerk of the Panel of this case. *See* J.P.M.L. Rules 6.2(d), 7.1(a). Their failure to do so prevented the Panel from considering this case in connection with its overall decision regarding the TikTok MDL, including its assignment decision.

Defendants now seek to take advantage of their violation of the Rules by claiming that their misconduct cannot be undone – *i.e.*, reassignment of the TikTok MDL is not possible. Dkt. 56 at 2-3. As a policy matter, that makes no sense and incentivizes Defendants and others to violate the Rules. Moreover, Defendants' position is contrary to the primary goal of 28 U.S.C. § 1407, which is to centralize civil litigation involving common questions of fact. *See* 28 U.S.C. § 1407(a).

Based on the above, Objector submits that relation, reassignment and consolidation of the TikTok MDL with this case is proper because it effectuates the goals of § 1407 and would put the

parties and the cases in the position in which they likely would have been had Defendants played by the Rules. Alternatively, Plaintiff submits that informal coordination would prevent the waste of resources that would result from the two matters proceeding on parallel paths. Neither of these proposed solutions would cause delay. An answer has not been filed in either matter. To the extent consolidation causes any delay, that delay would be offset by the benefit to the Court and class members of having these related matters resolved in a coordinated fashion.

### III. Plaintiffs' Fail to Provide Valid Grounds for Denying Objector's Motion.

Plaintiffs' response continues their pattern of attacking Objector's counsel rather than addressing the merits of the issue at hand.[2] Plaintiffs' substantive arguments lack merit:

**Timeliness:** Contrary to Plaintiffs' contention (Dkt. 55 at 12), Objector timely filed this motion after definitively learning from defense counsel on September 2, 2020 that the settlement in the TikTok MDL seeks to settle claims released in the Proposed Settlement. Dkt. 52-11.

**Standing:** Plaintiffs incorrectly assert that the Preliminary Injunction only benefits Defendants. *See* Dkt. 55 at 5-7. Plaintiffs ignore that the standard Preliminary Injunction at issue benefits Settlement Class Members by maintaining the status quo and preventing Defendants from end-running the Rule 23 objection process (which is a vital adversarial mechanism to ensure the fairness of class action settlements). *See Redman v. Radio Shack*, 768 F.3d 622, 629 (7th Cir.

---

[2] The attacks on Plaintiffs' counsel are too numerous to address on an individual basis. Many of the attacks stem from Plaintiffs' misconception that Objectors' counsel are inexperienced. However, the facts belie the contention, as Defendants know. *See* Dkt. 38 at ECF 14; Dkt. 38-1. Other attacks stem from Plaintiffs' misconception of what is presently the matter captioned *In re Clearview AI, Inc. Cons. Priv. Litig.*, MDL No. 2967. *See* Dkt 55 at 7, 9, n.4. Contrary to Plaintiffs' representations, Objector's counsel are the only counsel currently appointed as interim lead class counsel in any of the matters, and that occurred after numerous other plaintiffs' counsel agreed to the appointment based on Objector's counsel's leadership. While Plaintiffs repeatedly cite to an opinion in which a motion to intervene was denied, that motion was brought in an effort to consolidate multidistrict litigation without the need for a motion under 28 U.S.C. § 1407. As Plaintiffs' counsel know, one of the factors considered in a § 1407 centralization motion is whether efforts short of centralization have been attempted.

2014). Likewise the injunction protects Settlement Class Members from what may have happened here – *i.e.,* Defendants seeking to minimize a class' recovery by buying a release from the lowest bidder in the event of a sustained objection.[3] *See* MDL Dkt. 5 at 2 (accusing Defendants of only working with hand-selected plaintiffs' counsel); MDL Dkt. 12 at 9 (same).

**The Motion Benefits Class Members:** Plaintiffs' contention that Objector's counsel are acting to benefit themselves, not class members (*id.* at 3, 7), ignores the facts. The Proposed Settlement is not fair, reasonable or adequate. Rule 23(e)(5), which governs class member objections, along with the actions of Objector's counsel here, are designed to protect the interests of class members to ensure they are not saddled with a defective settlement. Seemingly, Objector's actions already have yielded positive results. To the extent Defendants have offered a higher pro rata payment to Settlement Class Members via the TikTok MDL than in the Proposed Settlement, that is a direct result of the Objections herein. Neither Plaintiffs nor Defendants can credibly claim that Defendants would have offered Settlement Class Members more money (and refrained from pleading release in the TikTok MDL) if Defendants had been able to quickly obtain final approval of the paltry Proposed Settlement.

**Relatedness:** In attempting to differentiate this case from the TikTok MDL, Plaintiffs ignore their own allegations and the foundation of their complaint. *Id.* at 7-8. As set forth in Objector's motion (Dkt. 52 at ECF 3), Plaintiff's complaint adopted COPPA's broad definition of "personally identifiable information" – namely, "individually identifiable information about an

---

[3] While Plaintiffs claim that Settlement Class Members may benefit from multiple settlements by being "twice compensated" (*id.* at 6-7), that is just a play on words. The issue of concern is that Defendants' conduct allows them to avoid compensating the class at a fair amount. Given that the net expected value of the VPPA claim is over $200 million, it is likely that the class would receive less in two payments than it should receive with one had Defendants not been able to create a negotiation market with alternative plaintiffs and lawyers. Moreover, as a practical matter the broad release in the Proposed Settlement precludes double compensation.

individual collected online" – and alleged that Defendants unlawfully tracked, collected and distributed that data and viewing data of children under 13 without parental consent. *See* Dkt. 1 ¶¶ 1, 13. This same conduct of collecting and distributing personally identifiable information online underlies the TikTok MDL. In a desperate effort to distinguish this case from the TikTok MDL, Plaintiffs disregard the plain language of the COPPA and, instead, point to an FTC request for comment regarding the definition. *See* Dkt. 55 at 7-8. But the Court need only look at COPPA's unambiguous plain language. *See Green v. Time Ins. Co.*, 629 F.Supp.2d 834, 837 (N.D. Ill. 2009). Because this case and the TikTok MDL arise out of the online collection and distribution of "personally identifiable information" – a term that categorically includes biometric data – the cases are related. *See* Dkt. 52 at ECF 12.

**Requested Relief:** While Plaintiffs criticize the relief requested by Objector, as set forth above, reassignment and consolidation align with the primary goal of § 1407 and are proper from a public policy standpoint. Similarly, informal coordination allows for judicial efficiency and the coordination envisioned by § 1407.

**Plaintiffs Wish to Ignore Evidence of Defendants' Conduct:** Plaintiffs criticize Objector for highlighting the direct and circumstantial evidence of Defendants' efforts to game the system. Dkt. 55 at 10-13. While the Motion does not directly accuse Defendants of collusion or conspiracy, Plaintiffs clearly believe the evidence leads to this conclusion based on their repeated use of the terms. *See id.* Contrary to Plaintiffs' contention, it is permissible for Objector to argue inferences and conclusions based on the evidence, even if Plaintiffs wish the evidence was different.

For the foregoing reasons, the Court should grant Objector's motion.


Dated: November 16, 2020          Respectfully submitted,

MARK S.

By: /s/ Scott R. Drury
SCOTT R. DRURY
*One of the attorneys for Mark S.*

Mike Kanovitz
Scott R. Drury
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
mike@loevy.com
drury@loevy.com

## **CERTIFICATE OF SERVICE**

  I, Scott R. Drury, an attorney, hereby certify that on November 16, 2020, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

                   /s/ Scott R. Drury
                   *One of the attorneys for Mark S.*