**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| T.K., THROUGH HER MOTHER SHERRI LESHORE, and A.S., THROUGH HER MOTHER, LAURA LOPEZ, *individually and on behalf of all others similarly situated*, | |
| | Case No. 1:19-cv-07915 |
| Plaintiffs, | |
| v. | Hon. John Robert Blakey |
| | Mag. Hon. M. David Weisman |
| BYTEDANCE TECHNOLOGY CO., LTD., MUSICAL.LY INC., MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, and TIKTOK INC., | |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

<u>Page</u>

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF THE FACTS ........................................................................... 2

        A.      Early Investigation and Litigation ............................................................ 2

        B.      The Terms of the Settlement .................................................................... 4

                1.      Class Member Relief .................................................................. 4

                2.      Class Release ............................................................................. 4

                3.      Class Representative Service Awards .......................................... 5

                4.      Attorneys' Fees and Costs .......................................................... 5

                5.      Settlement Administration ........................................................... 6

III.    CLASS NOTICE WAS DISSEMINATED TO THE CLASS, FEW
        OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WHO
        SUBMITTED A VALID CLAIM WILL RECEIVE PAYMENTS. ............................. 10

        A.      CAFA Notice ......................................................................................... 10

        B.      Both the Original and Supplemental Notice were Disseminated via a
                Robust Multi-Faceted Ad Campaign. ...................................................... 10

        C.      Few Objections, Limited Exclusions and a Reasonable Claims Rate ................. 12

IV.     FINAL APPROVAL IS WARRANTED ................................................................. 14

        A.      The Settlement Approval Process ........................................................... 14

        B.      The Settlement Is Fair, Reasonable, and Adequate, and Should Be
                Approved ............................................................................................... 15

                1.      The Settlement Warrants Approval Under Rule 23 ..................... 17

        C.      The Settlement Class Should be Finally Certified. ................................... 29

V.      MARK S.'S OBJECTION LACKS MERIT AND SHOULD BE DENIED. ................. 29

VI.     CONCLUSION ................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

<u>CASE</u>:                                                                                          <u>PAGE</u>:

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305, 312-13 (7th Cir. 1980) ................................................................ 14, 16

*Arthur v. SLM Corp.*,
   No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012) ................................................ 13

*Bayat v. Bank of the W.*,
   No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ................... 13

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   896 F.3d 792, 794-95 (7th Cir. 2018) ................................................................... 6

*Browne v. Am. Honda Motor Co.*,
   No. 09-CV-06750-MMM, 2010 WL 9499072 (C.D. Cal. July 29, 2010).............. 27

*Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985) ............................................. 11, 27

*Davenport v. Discover Financial Services, et al.*,
   No. 1:15-CV-06052 (N.D. Ill. 2017) .................................................................. 13

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
   445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ................................. 15

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ..................................................... 14

*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) ...................... 28

*Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) ................................................ 19

*Fraley v. Facebook*, No. 11-cv-01726 (N.D. Cal. Apr. 4, 2017)............................ 14, 19

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)...................................................... 29

*Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) ...................................... 29

*Gehrich v. Chase Bank, N.A.,* 316 F.R.D. 215, 224 (N.D. Ill. 2016)...................... 17, 20

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)................................. 15

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) ....................... 17

*Google Cookie*, No. 1:12-md-02358 (D. Del. June 12, 2012) .................................... 14

*Google Referrer Header*, No. 5:10-cv-04809 (N.D. Cal., Oct. 25, 2010 ..................... 14

*Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ................................... 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ................................. 20

*Holmes v. Roadview, Inc.*,
No. 15-CV-4-JDP, 2016 WL 1466582 (W.D. Wis. Apr. 14, 2016) ........................ 16

*Hubbard v. Google LLC*, 2021 WL 2711748 (N.D. Cal., 2021) ................................. 23

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018)........................... 27

*In re AT&T Mobility Wireless Data Services Sales Tax Litig.*,
789 F. Supp. 2d 935, 968 (N.D. Ill. June 2, 2011).................................. 11, 15, 22, 27

*In re Briscoe*, 448 F.3d 201, 207 (3d. Cir. 2006)........................................................ 12

*In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) .................................. 28

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992)...................................... 28

*In re Facebook Biometric Information Privacy Litigation*,
Case No. 15-cv-03747-JD (N.D. Cal. Aug. 8, 2019)................................. 26

*In Re Google Plus Profile Litigation*, No. 5:18-cv-06164 (N.D. Cal. 2021).................... 13, 19, 31

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) .................... 25

*In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*,
332 F.R.D. 202, 219 (N.D. Ill. 2019)........................................ 24

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160, 170 (S.D.N.Y. 1989) ........................................ 28

*In re: Sears, Roebuck and Co. Front-loading Washer Products Liability Litigation*,
2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ........................................ 12, 16

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)........................................... 14, 16, 25

*Kaufman v. American Express Travel Related Services, Co.*
2016 WL 806546 (N.D. Ill. March 2, 2016)........................................... 12

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493, 497 (N.D. Ill. 2015) ............................. 13, 15, 27

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806, 812 (E.D. Wis. 2009)............................................ 24

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) ........................ 13

*Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) ................................ 13

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ........................................................ 17

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ............................... 20, 23

*Snyder v. Ocwen Loan Servicing*, LLC,
    No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) .......................................... 27, 31

*Sony Gaming Networks*, No. 3:11-md-02258 (S.D. Cal.) ............................................................. 19

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) .............................. 13

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) .................. 22

*Wilkins v. HSBC Bank Nevada, N.A.* 2015 WL 890566 (N.D. Ill. February 27, 2015) ............... 12

*Wright*, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................................................................. 23

## **STATUTES:**

740 ILCS 14/20 ............................................................................................................................ 26

740 ILCS/14 .................................................................................................................................. 26

Class Action Fairness Act, 28 U.S.C. § 1715 ............................................................................... 10

Children's Online Privacy Protection Act, 15 U.S.C. § 6501-6505 ................................... 14, 20, 22

Video Privacy Protection Act, 18 U.S.C. § 2710 ............................................................................ 3

## **OTHER AUTHORITIES:**

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011) ................................................................... 18

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) .................................................................... 15

*Newberg on Class Actions*, § 11:50 ............................................................................................. 20

## **RULES**:

Fed. R. Civ. P. 23 ............................................................................................................... 15, 25, 27

Fed. R. Civ. P. 23(c)(B) .................................................................................................................28

Fed. R. Civ. P. 23(e) ............................................................................................................... 15, 16

Fed. R. Civ. P. 23(e)(2) ................................................................................................................ 15

Fed. R. Civ. P. 23(e)(2)(A)-(D) ............................................................................................ 16, 17, 19

Fed. R. Civ. P. 23(e)(3) ................................................................................................ 16, 22

Fed. R. Civ. P. 6 ............................................................................................................ 30

Fed. R. Civ. P. 11 ............................................................................................................ 9

## I.  **INTRODUCTION**

Plaintiffs T.K., through her mother Sherri Leshore, and A.S., through her mother Laura Lopez, ("Plaintiffs") renew their motion for final approval of their class action settlement. As the Court knows, the Settlement—the first of its kind—requires Defendants to pay a total of $1,100,000 in cash into a *non-reversionary* Settlement Fund, which will be dispersed *pro rata* to each of the Settlement Class Members who submit a valid claim.

The Settlement was preliminarily approved by this Court on December 19, 2019, and Notice was issued to the class as ordered, resulting in the submission of 104,612 claims (of which 90,953 were deemed valid). On April 28, 2021, this Court approved a proposed Supplemental Notice Plan ("SNP"), providing Settlement Class Members approximately 45 additional days to opt-out or object, and 80 additional days to make a claim. The SNP resulted in *an additional 89,316 claims* being filed, bringing the total claims number to 193,928—an estimated 168,607 of which are likely to be approved for payment after the Settlement Administrator's review for fraudulent claims and deduplication efforts. Notably, despite the submission of over 89,000 additional claims, there was not a single objection or request for exclusion. This steep increase in claims, and complete lack of additional objections or requests for exclusion, demonstrates the overwhelming class support for this Settlement.

The increased claims rate and additional costs required to implement the SNP also serves to reduce the amount that each claimant is able to receive in payment. In an initial attempt to counterbalance the increased costs of settlement administration, Class Counsel reduced their original fee request of $363,000 to $332,965 to cover the costs of the SNP. Even with this reduction, the amount that each valid claimant is expected to be paid decreased due to the significant increase in claims, and a concomitant increase in the settlement administration costs

necessary to process and pay those claims (i.e., mailing out checks to approximately 89,000 additional class members). As a result, and in an effort to keep the amount received by valid claimants closer to the original projection, Class Counsel here further ***reduce their fee request to $200,000***. This allows for a per claimant recovery up to approximately $3.06.

This result compares favorably to similar privacy class action settlements. Perhaps unsurprisingly then, after receiving over 100,000 claims during the initial claims period, and almost 90,000 additional claims during the SNP, there is currently only one pending objection (that of Mr. Drury's client Mark S.). Again, no additional objections or opt-outs were filed during the pendency of the SNP.

Plaintiffs respectfully submit that these facts demonstrate that the Court's preliminary determination that the Settlement should be approved was correct—especially in light of the universal support received by the Settlement Class after the SNP. Accordingly, Plaintiffs now renew their motion and seek final approval of the Settlement and final certification of a nationwide settlement class. Plaintiffs submit that this Settlement is an excellent result for the Class in view of the novel claims asserted, and satisfies all criteria for final settlement approval under Rule 23 and Seventh Circuit criteria. Plaintiffs therefore respectfully request that the Court grant their motion.

## II.     STATEMENT OF THE FACTS[1]

### A.      Early Investigation and Litigation

Counsel for Plaintiffs began investigating potential claims against Defendants in June 2018, interviewing over 800 affected individuals while refining claims and putting together both a complaint and an initial demand. Dec.n of Gary E. Mason in Support of Pls.' Unopposed Mot.for

---

[1] Sections of this brief have been adapted from Plaintiffs' original Motion for Final Approval at Dkt. 28 and from Plaintiffs' Supplemental Motion for Attorneys' Fees, Costs and Service Awards at Dkt. 69.

Preliminary Approval, Dkt. 5-1, Ex. 1 at ¶ 6. On June 3, 2019, Plaintiffs, through their counsel, sent a demand letter and draft complaint to Defendants alleging violations of the privacy rights of the Plaintiffs in connection with the operation of Defendants' App. Dkt. 5-1, Ex. 1 at ¶ 13; *see also* Settlement Agreement, Dkt. 5-1, Ex. 2 ("Agr.") at Ex. A. In particular, Plaintiffs' draft complaint—which formed the basis for the operative complaint in this case—alleged that Defendants' conduct formed the basis for claims of (i) intrusion upon seclusion; and (ii) violation of state consumer protection statutes. Plaintiffs' counsel also informed Defendants' counsel that should this case proceed, Plaintiffs would be adding an additional nationwide federal claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 et seq.[2] Dkt. 5-1, Ex. 1 at ¶ 14.

Between June 3, 2019 and October 22, 2019, Plaintiffs' counsel and Defendants' counsel engaged in substantial informal discovery and information sharing concerning (i) the claims and potential defenses at issue in Plaintiffs' Complaint; (ii) the size of the potential class contemplated in the Complaint; and (iii) the suitability for class treatment of Plaintiffs' claims. Dkt. 5-1, Ex. 1 at ¶ 15. Based on the limited information available to Defendants, the best estimate that can be made is that the Settlement Class is comprised of 6,000,000 individuals. *Id.* ¶ 21. This substantial informal discovery process allowed the Parties to thoroughly investigate the claims and defenses and evaluate the strengths and weaknesses of their respective cases. *Id.* After months-long negotiations, the Parties agreed to participate in an all-day mediation with Gregory Lindstrom of Phillips ADR that resulted in this Agreement—pursuant to a mediator's proposal—to settle the Civil Action on a class-wide basis. Dkt. 5-1, Ex. 1 at ¶¶ 13-19.

---

[2] The VPPA imposes civil liability on "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider" without informed written consent. The VPPA broadly defines the term "video tape service provider," in part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." (emphasis added).

On December 19, 2019, and after a complete briefing form Plaintiffs (Dkt. 5), the Court entered an Order granting preliminary approval to the proposed Settlement. Dkt. 13.

### B.   The Terms of the Settlement

### 1.   Class Member Relief

The Settlement requires Defendants to pay $1,100,000 for the benefit of a Settlement Class comprised of an estimated 6,000,000 persons who registered for or used the Musical.ly and/or TikTok software application when under the age 13 and their parents and/or legal guardians.[3] Agr., ¶ 2.3. Each Class Member is entitled to submit a claim for a pro rata share of the Settlement Fund less the cost of Settlement Administration Expenses, Class Counsel's fees and expenses, and any Incentive Award the Court may award. Agr. ¶ 6.1. The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. *Id.*

### 2.   Class Release

In exchange for the benefits allowed under the Settlement, Class Members will provide a release expressly bounded by the facts asserted in this lawsuit and tailored to the practices at issue in this case, i.e., the collection of minor children's personal information. Specifically, they will release any and all federal, state, or common law claims "arising out of or relating to any acts,

---

[3] In his objection at Dkt. 74, Mark S. takes issue with the Parties' estimation of the size of the class. The 6,000,000 figure used by the Parties was the result of informal discovery exchanged prior to mediation, and is based on Defendant's review of its own records. Dkt. 5-1 ¶ 21. In sharp contrast, Mark S.'s contentions are based off of his counsel's extrapolations of data from third-party sources, and make particular assumptions that are, at best, incredibly unlikely to be true. For example, Mark S. claims that as of August 2020, Tik Tok has 100 million users and that 32.5% are between the ages of 10-19. He then reaches his 9.75 million class figure by assuming, essentially that the same number of 10 year olds use the app as 17 year olds. He has no data to support this.

facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Civil Actions or the subject matter of the Complaint." Agr. ¶ 2.24. The release in this case allows Settlement Class Members in this case to fully participate in the Tik Tok MDL, and releases no claims asserted in the MDL proceeding. Despite arguments Defendants may have previously raised to the contrary (arguments that were never tested in any court, including this one), Defendants have committed to allowing Settlement Class Members to fully participate in the Tik Tok MDL settlement, and to not construe the release given in this case as releasing any of the claims asserted in the Tik Tok MDL. Dkt. 68.

### 3. Class Representative Service Awards

Class Representatives seek service awards of $2,500 each in light of the time and effort they have personally invested in this Action in order to pursue class claims. The Settlement is not contingent on the Court's granting of such an award. Agr. ¶12.2. Plaintiffs have fully briefed their request for Service Awards at Dkt. No. 69.

### 4. Attorneys' Fees and Costs

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel originally moved the Court for an award of attorneys' fees of $363,000, which represents 33% of the total Settlement Fund, as well as for reimbursement of reasonable litigation costs. *See* Pl.s' Mot. for Attorneys' Fees, Costs and Service Awards, Dkt. 29. In renewing their motion after the Supplemental Notice had issued, Class Counsel made a similar request with an important distinction: Class Counsel deducted the cost of the supplemental notice program from their requested fees, and sought only $332,965 in fees (representing 30% of the total Settlement Fund), and $16,133.53 in reasonable litigation costs. *See* Pl.s' Suppl. Mot. for Attorneys' Fees, Costs and Service Awards, Dkt. 69. In reducing their request, Class Counsel attempted to preserve the

original projected value of the payments to valid claimants of approximately $4.00 to $6.00 per claim, or an average of $7.00 per household.

Here, in light of the steep increase in claims made, Plaintiffs further revise and amend their request for fees. Plaintiffs now seek **$200,000** in attorneys' fees, the equivalent of 18.2% of the total Settlement Fund, and 28.8% of the amount of net funds after the costs of settlement administration. Even if one were to add the $16,133.53 in out-of-pocket costs and expenses for which Class Counsel seeks reimbursement (which is approximately 2.2% of the net funds after the costs of settlement administration), this is 5% less (31% total) than the 36% approved in case law cited with favor by Mark S. *See* Dkt. 74 at 15, citing *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 794-95 (7th Cir. 2018).[4]

As addressed in detail in Plaintiffs' attorneys' fee motion, Seventh Circuit courts commonly award even higher percentages of settlement common funds as attorneys' fees, and it is appropriate to compensate Class Counsel in this amount here for the work they have performed in litigating this novel class action. *See generally,* Dkt. 69. The Settlement is not contingent on Court approval of an award of attorneys' fees or costs. Agr. ¶ 12.

### 5. <u>Settlement Administration</u>

All costs of notice and claims administration are to be paid from the Settlement Fund. Agr. ¶ 2.29. The Court has appointed Angeion Group to administer the Settlement and issue Notice to the Class. Dkt. 13, ¶ 8. Notice and settlement administration is estimated to cost $362,115.11. Dec. of Danielle Bracy of Angeion Group LLC ("Bracy Dec.") ¶ 18, filed herewith.

---

[4] Class Counsel's fee request is also less than the $234,000 in attorneys' fees requested by Mark S. in this case whose conduct to date has only ***increased*** the fees and expenses borne by the Class and Class Counsel in this Settlement.

### C.    Motion for Preliminary Approval and Original Notice Program

On December 19, 2019, this Court preliminarily approved the proposed class action settlement, and directed Notice to be implemented through media publication according to the terms of the Settlement Agreement and Preliminary Approval Order. Dkt. 13. Initial notice and administration through Angeion Group was expected to cost approximately $268,000. Declaration of Steven Weisbrot, Esq., filed with Pl.s' Unopposed Mot. for Final Approval of Class Action Settlement at Dkt. 28-2 ¶ 14. After Notice was implemented and as of the original claims deadline, 104,612 claims had been submitted. Dkt. 28-2. At that time, the Claims Administrator estimated that each claim would be paid out at $4.00 to $6.00 per claim, and that the average payment amount be over $7.00 per household. Dkt. 28-2 ¶ 5. During the initial notice program, only ten objections to the Settlement were submitted to Class Counsel. Dec. of Gary E. Mason in Support of Pls.' Motions for Final Approval of Class Action Settlement and Attorneys' Fees, Costs, and Service Awards at Dkt. 28-1 ¶ 7. During the same period, only six individuals requested exclusion. Dkt. 28-2 ¶ 12 Ex. E.

### D.    Motion for Final Approval and Continuing Litigation

On May 11, 2020, objector Mark S., by and through his counsel, filed an objection and moved to intervene in the suit. Dkt. 23. Pursuant to the Preliminary Approval Order, Plaintiffs filed their motion for fees and their motion for final approval, and also opposed the objection and objector's motion to intervene. Dkt. Nos. 28, 29, 33. On August 7, 2020, the Court held a telephonic hearing on the outstanding motions. Dkt. 46. After supplemental briefing, on March 29, 2021, the Court denied Plaintiffs' motions for final approval and for attorneys' fees, costs, and service awards without prejudice, and denied the objector's motion to intervene and declined his request to be appointed class counsel. Dkt. Nos. 61, 62. In its Order the concern voiced by the

Court was that the original Notice Program failed to take into account the extended deadlines provided for by the Court's COVID-related general orders. Dkt. 62. The Court required the Parties to propose a supplemental notice program allowing Class Members additional time to make a claim, object, or exclude themselves from the Settlement. *Id.*

On April 9, 2021, the Parties submitted a Joint Status Report proposing a SNP to address the concerns of the Court. Dkt. 63. In the Report, the Parties noted the delicate balancing act involved with providing supplemental notice, inducing additional claims, and the likeliness of lowering the per claimant estimated recovery. *Id.* Objector Mark S., by and through his counsel, sought enforcement of a preliminary injunction and leave to object to the proposed SNP, which Plaintiffs opposed. Dkt. Nos. 64, 66. On April 21, 2021, the Parties appeared for a telephonic conference with the Court, during which the Court found that the proposed SNP "sufficiently cures defects in the in the initial notice program" and "provides adequate notice to the class regarding the claims, the proposed settlement, and their rights[,]" and set a schedule for the SNP and additional briefing on fees requests and final approval. Dkt. 68. The Court also denied the objector's request for enforcement of a preliminary injunction, finding Defendants' assurances that class members in the present action could seek double recovery in the Tik Tok MDL precluded any need for the objector's requested injunction or consolidation. *Id.*

E.      **The Supplemental Notice Program**

On April 28, 2021, this Court approved a proposed Supplemental Notice Plan. The SNP was designed to create millions of additional digital impressions across programmatic and paid social media tactics, and to provide additional time for Class Members to make a claim, request exclusion, or object to the Settlement. Weisbrot Dec. Dkt. 63-1 Ex. A. In addition, the Settlement

Website was updated with the new deadlines for filing a claim, objecting, opting out, and the new Final Approval Hearing. Bracy Dec., ¶ 8.

### F. <u>Claims, Objections, and Requests for Exclusion</u>

The original notice program resulted in the submission of 104,612 claims. *Id.* ¶ 14. Dkt. 68. The SNP resulted in an additional *89,316* claims being filed, bringing the total claims number to 193,928—an estimated 168,607 of which are likely to be approved for payment. Bracy Dec. ¶¶ 14-15. After completion of the SNP, the estimated claims rate is 3.2%.

Despite the additional notice and steep increase in claims, no additional class members objected to the Settlement or requested exclusion. Dec. of Gary E. Mason in Supp. of Pls.' Suppl. Mot. for Final Approval, ("Mason Suppl. FA Dec.") ¶ 3, *filed herewith*.

### G. <u>Supplemental Motion for Attorneys' Fees, Continuing Response to Objector, and Final Approval</u>

On June 4, 2021, Plaintiffs filed their Motion for Approval of Attorneys' Fees, Costs, and Service Awards, reducing the fees requested in their original motion for attorneys' fees (Dkt. 29) from $363,000 (33% of the total Settlement Fund) to $332,965 in fees (30% of the Settlement Fund), and seeking $16,133.53 in reasonable costs and expenses. Dkt. 69. Plaintiffs also sought approval of Service Awards in the amount of $2,500 per Plaintiff. *Id.*

Thereafter, objector Mark S. sought fees of his own in the amount of $234,600, despite his continuing objections to the Settlement, and as payment for the completely imagined benefit he values (with no factual basis) at $6,256,000. Dkt. 71. In response to his outrageous request, Plaintiffs opposed his motion for fees, and sought sanctions pursuant to Rule 11. If granted, Plaintiffs have requested be awarded to the Class to increase the Settlement Fund. Dkt Nos. 73, 75, 76.

On June 19, 2021 objector Mark S., by and through his counsel, also filed supplemental objections to class certification, the settlement agreement, and Plaintiffs' request for attorneys' fees and costs. As discussed below, the objections are without merit and should not stand in the way of final approval.

III. **CLASS NOTICE WAS DISSEMINATED TO THE CLASS, FEW OBJECTIONS WERE FILED, AND ALL CLASS MEMBERS WHO SUBMITTED A VALID CLAIM WILL RECEIVE PAYMENTS.**

A. **CAFA Notice**

On December 16, 2019, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, the Claims Administrator caused notice of the Settlement and related materials ("CAFA Notice") to be sent to the Attorneys General of all U.S. states and territories, as well as the Attorney General of the United States. Dkt. 28-2 ¶ 4, Ex. A. No objections were received to the Settlement from the Attorneys General of the U.S. Bracy Dec. ¶ 3.

B. **Both the Original and Supplemental Notice were Disseminated via a Robust Multi-Faceted Ad Campaign.**

On January 17, 2020 the Claims Administrator launched the Notice Program, as described in Plaintiffs' Motion for Preliminary Approval at Dkt. 5. *See also* Dkt. 28-2 ¶ 5. The Notice Program included a comprehensive media notice program that targeted the known demographics of the Settlement Class and was designed to deliver an approximate 70.00% reach with an average frequency of 3.00 times by serving approximately 12,747,000 digital banner ad impressions. *Id.* ¶ 5, Ex. B. The Notice Program was successful: it resulted in 13,118,198 impressions and an approximate 72% reach. *Id.* ¶¶ 5-6.

On May 5, 2021, the Claims Administrator launched the Supplemental Notice Program, as described in the Parties Joint Report at Dkt. 63. *See also* Bracy Dec. ¶ 6. The Supplemental Notice

Program generated 6,684,270 additional digital impressions across programmatic and paid social media tactics. Bracy Dec. ¶ 7.

The Claims Administrator also set up a settlement website linked to the ads, where potential Settlement Class Members could find important documents and court filings including the long form notice. The website has been maintained at www.MusicallyClassActionSettlement.com since January 17, 2020 and was updated on May 5, 2021 to reflect the new deadlines for Settlement Class Members to make a claim, object, or exclude themselves from the Settlement. Bracy Dec. ¶¶ 8-9. As of August 12, 2021, the Settlement Website had 33,851 unique visitors and 435,635 page views. *Id.* ¶ 10.

And finally, beginning January 17, 2020, the Claims Administrator established and maintained a 24/7 toll-free number to field questions about the settlement and to allow potential class members to request mail copies of the long form notice. *Id.* at ¶ 11. On May 5, 2021, the Claims Administrator updated the toll-free hotline to advise Class Members of extended deadline to submit Claim Forms, request exclusion from the Settlement or to object to the Settlement. *Id.* ¶ 12. As of August 12, 2021, the Claims Administrator received a total of 253 calls to the toll-free number, totaling 836 minutes of call time. *Id.* ¶ 13.

Due process does not require that every class member receive notice. *In re AT&T Mobility Wireless Data Services Sales Tax Litig.,* 789 F. Supp. 2d 935, 968 (N.D. Ill. June 2, 2011) (collecting cases). Rather, parties are required, "within the limits of practicality, to send such notice as [is] reasonably calculated to reach most interested parties." *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985).

By utilizing digital ads placed through the same ad network used by Defendants' App., additional digital ads targeting the proposed settlement class demographic, and supplementing that

Notice with a Settlement website and toll-free telephone number, the parties ensured that Notice comported with due process and protected all Class Members' rights. *See e.g., Kaufman v. American Express Travel Related Services, Co.* 2016 WL 806546 (N.D. Ill. March 2, 2016) (granting final approval where notice, including digital ads, was estimated to have reached 70% of the settlement class); *Wilkins v. HSBC Bank Nevada, N.A.* 2015 WL 890566 (N.D. Ill. February 27, 2015) (granting final approval where a combination of direct notice and banner ads were estimated to have reached 79.2% of the class); *In re: Sears, Roebuck and Co. Front-loading Washer Products Liability* Litigation, 2016 WL 772785 (approving the use of banner ads a notice where many settlement class members could not be identified in Defendants' records); *In re Briscoe*, 448 F.3d 201, 207 (3d. Cir. 2006) (affirming the trial court's decision to use a notice plan that included banner advertisements on the internet directing class members to the official settlement website).

### C.     <u>Few Objections, Limited Exclusions and a Reasonable Claims Rate</u>

As of August 12, 2021, Angeion has received 6 requests for exclusion from the Settlement, all of which were received during the initial notice period. Bracy Dec. ¶ 16. Angeion did not receive any additional requests for exclusion during the Supplemental Notice Period. *Id.* Class Counsel received only eleven objections to the Settlement – ten boilerplate objections that were not properly interposed, and the ongoing objection of Mark S. Dkt. 28-1 ¶ 5, Ex. B. Other than Mark S.'s renewed objection, no additional objections or requests for exclusion were received during the pendency of the Supplemental Notice Program. Bracy Dec. ¶¶ 16-17.

Class Members submitted a total of 193,928 claims by the Supplemental Notice Claim Deadline – approximately 3.2% of what is estimated to be a 6,000,000 member Settlement Class. Bracy Dec. ¶ 14. The claims have not yet been checked for fraud or deduplication. Angeion estimates that out of the 193,928 total claims, approximately 10% of the new claims submitted

will be deemed duplicative and/or fraudulent, and will not be approved for payment. *See* Bracy Dec. ¶ 15. Adding these additional duplicative, fraudulent, or unapproved claims to those previously disallowed would bring the number of valid and approved claims submitted to approximately 168,607. *Id.* Such claims rates exceed other consumer class action settlements approved in the Seventh Circuit and elsewhere. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving 7.26 million-member settlement class when just 55,346 — less than 1% — filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 — approximately 1.1% — filed claims); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA settlement with 2% claims rate); *Davenport v. Discover Financial Services, et al.*, No. 1:15-CV-06052, Dkt. No. 110 (N.D. Ill. 2017) (approving settlement with 3% claims rate); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement with approximately 1% claims rate); *Arthur v. SLM Corp.*, No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (claims rate of approximately 2%); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

It is expected individual Class Members will receive payments of approximately $3.06 individually, after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration. Bracy Dec. ¶ 19. This is within the range of acceptable settlement amounts. *See e.g., In Re Google Plus Profile Litigation*, No. 5:18-cv-06164 (N.D. Cal. 2021) Dkt. 110 at 10 (settlement granted final approval in case concerning disclosure of account holder profile information that was projected to pay $2.50

per valid claimant). In light of the significant hurdles should litigation continue—including, in overcoming an arbitration clause, defeating arguments that Class Member claims are preempted by COPPA, and obtaining class certification—and the class members' opportunity for additional recovery in the Tik Tok MDL, the Settlement Agreement represents a reasonable compromise.[5]

Within 14 days of the judgment becoming final, should the Court grant final approval to the Settlement, payments will be issued to all Class Members who submitted Valid Claims in accordance with the Agreement. Agr. 6.2.7; Bracy Dec. ¶ 20.

## IV. FINAL APPROVAL IS WARRANTED

### A. The Settlement Approval Process

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally

---

[5] The settlement value of $0.18 per class member is also consistent with other recent class action settlements involving similar privacy claims, which have settled in a general range of $.05 to $.13 per class members. *See, e.g., Google Cookie*, No. 1:12-md-02358 (D. Del. June 12, 2012) (~$.055 per class member); *Google Referrer Header*, No. 5:10-cv-04809 (N.D. Cal., Oct. 25, 2010) (~$.085 per class member); *Fraley v. Facebook*, No. 11-cv-01726 (N.D. Cal. Apr. 4, 2017) (~$0.13 per class member).

favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Indeed, as one Court in District previously observed:

> [T]he law recognizes class actions as a legitimate part of the U.S. litigation system. The Supreme Court has made this clear on several occasions. *See, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (explaining that, in appropriate cases, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"); *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). In addition, Federal Rule of Civil Procedure 23 provides for the use of such a procedure.

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 497 (N.D. Ill. 2015) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 982 (N.D. Ill. 2011) (St. Eve, J.)).  For these reasons, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

### B. <u>The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved</u>

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate."  *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). Federal Rule 23(e)(2) requires certain factors to be considered by a court before granting final approval of a class action settlement: (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Before the 2018 revisions to Rule 23(e), the Seventh Circuit had developed its own list of factors for consideration in determining whether to grant final approval of a class action settlement:

(1)    the strength of plaintiffs' case compared to the terms of the proposed settlement;

(2)    the likely complexity, length, and expense of continued litigation;

(3)    the amount of opposition to settlement among affected parties;

(4)    the opinion of competent counsel; and

(5)    the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199; *accord Holmes v. Roadview, Inc.*, No. 15-CV-4-JDP, 2016 WL 1466582, at *4 (W.D. Wis. Apr. 14, 2016). In reviewing these factors, courts view the facts "in a light most favorable to the settlement" and "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Isby*, 75 F.3d at 1199; *In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (citing *Armstrong*, 616 F.2d at 315).

Application of both the Rule 23 and the Seventh Circuit specific factors confirms that the Settlement is fair, reasonable, and adequate, and should be finally approved. Although there is some overlap, Plaintiffs will review both tests below.

### 1. **The Settlement Warrants Approval Under Rule 23.**

   a. *The class representatives and class counsel have adequately represented the class.*

Adequacy involves two inquiries: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gehrich v. Chase Bank, N.A.,* 316 F.R.D. 215, 224 (N.D. Ill. 2016), citing *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011). In the context of settlement, this includes consideration of the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Formal discovery is not required: the relevant inquiry with respect to this factor is whether the parties have "completed a sufficient amount of discovery to be able to place a value on their respective positions" in this case. *Gehrich v. Chase Bank, N.A.,* 316 F.R.D. 215, 224, 230 (N.D. Ill. 2016).

The Plaintiffs here are adequate representatives because they have no interests that are "antagonistic or conflicting" with those of the other class representatives or absent class members. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiffs allege they were harmed in the same way as all class members when Defendants collected and shared what Plaintiffs consider to be personally identifiable information and/or viewing data without parental knowledge or consent. In light of this common injury, the named Plaintiffs have every incentive to vigorously pursue the class claims. Each Plaintiff agreed to undertake the responsibilities of serving as a class representative, and each has sworn that she will continue to act in the class members' best interests.

As such, the Plaintiffs are adequate representatives for the class.

Class Counsel too has demonstrated their adequacy in their vigorous litigation of this matter. Class Counsel have decades of combined experience in class action litigation and a demonstrated track record as vigorous litigators. Dkt. 5-1 Exs. 1A, 2. Moreover, in this case Counsel vetted more than 800 potential claimants to evaluate the claims that eventually formed the operative complaint in this case. Dkt. 5-1 Ex. 1 at ¶ 6. In furtherance of an attempt to reach settlement without the assistance of a third-party, between June and October 2019 the Parties engaged in substantial discovery and information sharing concerning: (i) the claims and potential defenses at issue in Plaintiffs' Complaint, (ii) the size of the potential class; and (iii) the suitability for class treatment of Plaintiffs' claims. *Id.* ¶ 15. This substantial informal discovery process allowed the Parties to thoroughly investigate their claims and defenses and evaluate the strengths and weaknesses of their respective cases, and to eventually attend mediation with a solid understanding of the legal issues and value of the case. *Id.* ¶¶ 16-18. The Settlement was informed by Class Counsel's analysis of the factual and legal issues involved in the case. *Id.* ¶ 3. And since winning preliminary approval, Class Counsel has worked tirelessly to bring this case to conclusion, battling a constant barrage of frivolous assaults from objector Mark S.

Accordingly, Plaintiffs and Class Counsel have served as adequate representatives to the Class.

### b. *The proposal was negotiated at arm's length.*

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011). Settlement negotiations in this matter were hard-fought. The settlement was

negotiated at arm's length by vigorous advocates, and there has been no fraud or collusion. Dkt. 5-1 Ex. 1 at ¶¶ 16-19. After multiple detailed submissions, the Parties attended a full day mediation session before Gregory P. Lindstrom of Phillips ADR. *Id.* ¶¶ 16-19. The parties' views of the case differed sharply, and the negotiations were highly adversarial and would have ended in a logjam had it not been for the mediator's proposal provided by Mr. Lindstrom. *Id.* ¶ 19. Accordingly, this factor weighs in favor of final approval.

<em>c.    The relief provided for the class is adequate.</em>

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The Settlement negotiated here provides for significant relief. If approved, it will create a non-reversionary $1,100,000 Settlement Fund. Each class member is entitled to submit a claim for a pro rata share of the Settlement Fund less the cost of Settlement Administration Expenses, Class Counsel's fees and expenses, and any Incentive Award the Court may award. Agr. ¶ 6.1.

The estimated recovery of $3.06 for individuals who made valid claims, or gross settlement value of $0.18 per class member, is comparable with other privacy class action settlements that courts have approved. For example, *In Re Google Plus Profile Litigation*, No. 5:18-cv-06164 (N.D. Cal. 2021) Dkt. 110 at 10, concerning disclosure of account holder profile information settled for $7,500,000, and had an average estimated payment of $2.50 per class member who submitted a claim. *Sony Gaming Networks*, No. 3:11-md-02258 (S.D. Cal.) Dkt. 204-1 at 6-10, which concerned the disclosure of Sony PlayStation account holder information for 77 million class members, settled for $15 million, or approximately $4.00 per class member who submitted a claim, with a settlement value of $0.19 per class member. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 942–44 (N.D. Cal. 2013), aff'd sub nom. *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016),

which involved the alleged misappropriation of 146 million class members' personal data, settled for $20 million, with a settlement value of $.13 per class member.

i. The costs, risks, and delay of trial and appeal are great.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise").

Continued litigation would involve extensive motion practice, including motions to compel arbitration, motions to dismiss, motions for summary judgment, and ultimately a trial on the merits. Plaintiffs would also have to both gain and maintain class certification. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

In addition, Plaintiffs believe that this settlement—which partly arises out of COPPA

violations and involves the unlawful collection of children's personally identifiable information and/or viewing data without parental consent—represents the first settlement of its kind. Plaintiffs therefore believe it is a landmark class action settlement in that respect. Accordingly, under the circumstances, including the uncertainties involved in proceeding with the litigation, the Parties believe the monetary terms of this proposed settlement fall favorably within the range of related privacy class action settlements, and should be approved.

ii.     <u>Upon approval, relief to the class will be distributed in an effective manner.</u>

The Settlement here calls for a *pro rata* distribution of Settlement Proceeds to all valid claimants less the cost of Settlement Administration Expenses, Class Counsel's fees and expenses, and any Incentive Award the Court may award. Agr. ¶ 6.1. The distribution is straightforward, equitable, and will be carried out by the Settlement Administrator beginning 14-days after the Effective Date, or as soon thereafter as reasonably practicable. Agr. ¶ 6.2.7. Payment will be issued to valid claimants via Paypal. Bracy Dec. ¶ 20.

iii.     <u>The terms of any proposed award of attorney's fees, including the timing of payment, support final approval.</u>

The Settlement Agreement provides for payment of a reasonable award attorneys' fees and reimbursement of costs as approved by the Court. *Id.* ¶ 12. Class Counsel originally sought $363,000 (33% of the Settlement Fund) in fees, but reduced that request to $332,965 (approximately 30% of the Settlement Fund) in order to cover the cost of the Supplemental Notice Program. Dkt. 69. Class Counsel here further reduces their requested fee to $200,000—18.2% of the gross Settlement Fund and 28.8% of the combined amount of fees and funds awarded to claimants combined. Class Counsel's request is reasonable, appropriate, and compares favorably with fees approved by Seventh Circuit Courts, Any approved attorneys' fees and incentive awards

-21-

shall be paid by the Settlement Administrator as soon as is reasonably practicable, *after* payment of all valid claims by Class Members. *Id.* ¶ 12.5.

iv. <u>No additional agreement are required to be identified under rule 23(e)(3)</u>.

There are no additional agreements that require identification and/or examination under Rule 23(e)(3).

d. *The proposed Settlement Agreement treats class members equitably to each other.*

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Each Class Member originally had until April 16, 2020, and later until July 23, 2021 under the Supplemental Notice Program to make a claim for their *pro rata* share from the Settlement Fund. As such, each Class Member has had an equal opportunity to benefit from the Settlement, and each Settlement Class Member who has chosen to take advantage of the Settlement will take an equal share. As such, this factor weighs in favor of Settlement Approval.

**2.** **The Settlement Warrants Approval After Consideration of Traditional Seventh Circuit Factors.**

*First,* "[t]he most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted). While Plaintiffs strongly believe in their claims, Plaintiffs understand that Defendants assert a number of potentially case-dispositive defenses including the presence of an arbitration agreement and class action waiver, preemption under COPPA, and the

-22-

inherent difficulties in certifying a class. While Plaintiffs dispute every one of these defenses, must unfortunately concede that their likelihood of success at trial was far from certain. Indeed, as Settlement Class Counsel has explained before, this was the first settlement of its kind. The claims were novel and untested. And since this settlement, courts have held similar claims are preempted and therefore subject to dismissal under the facts specific to that case. *See, e.g., Hubbard v. Google LLC*, 2021 WL 2711748, at * 1 (N.D. Cal., 2021). All that is to say the risk is very real that the Class Members would recover nothing in this litigation if it were to proceed. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

*Second*, continued litigation would be lengthy, complex, and expensive. Although the parties engaged in early discovery efforts to prepare for mediation, continued litigation would involve extensive motion practice, including motions to compel arbitration, motions to dismiss, motions for summary judgment, and ultimately a trial on the merits. Further, it is likely to be early to mid 2023 before the case would actually proceed to trial. And, any judgment in favor of Settlement Class Members could be further delayed by the appeal and certiorari petition process, which would likely include a Due Process challenge. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted). Thus, this factor favors settlement approval.

*Third,* as discussed at length *infra,* the reaction of class members to the Settlement Agreement has been overwhelmingly positive. Of the estimated 6,000,000 class members, only 6 class members sought exclusion from the Settlement Agreement, and the only objections received by class counsel were the 10 near identical objections received during the initial notice period and the lengthier objections lodged by Mark S. Not only are the objections completely without merit, (*see infra* Section IV.B.3), but the general paucity of objections and small number of exclusions strongly support approval of the settlement. *See e.g. In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation,* 332 F.R.D. 202, 219 (N.D. Ill. 2019) (approving settlement where 22 of 4 million class members had objected).

*Fourth,* highly qualified and competent counsel support the Settlement in this matter. Class Counsel have decades of combined experience in class action litigation, and it is their opinion that the Settlement is fair, reasonable, and adequate. Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar privacy class action cases); (2) Class Counsel engaged in significant investigation and discovery and exhaustively evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel, after an in-person mediation session, which was preceded by multiple rounds of mediation briefing beforehand, before Gregory P. Lindstrom of Phillips ADR, with many additional weeks of contentious negotiations between the parties following the mediation. Dkt 5-1 Ex. 1; *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval"); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill.

2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of approval.

*Fifth,* the Settlement was informed by Class Counsel's analysis of the factual and legal issues involved in the case. Dkt. 5-1, Ex. 1 at ¶ 3. Counsel's judgment was based upon extensive interviews with clients, significant informal exchange of discovery with Defendants, the exchanging of lengthy mediation briefs where the parties briefed the strengths and weaknesses of their claims and class certification. Accordingly, at the time of negotiations, Class Counsel possessed information sufficient to evaluate the claims and defenses, assess the monetary value of the case, and confirm that the Settlement was fair, reasonable, and adequate. Dkt. 5-1, Ex. 1 at ¶¶ 6, 15. The final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through plaintiff investigations, informal discovery, and numerous, contentious arm's-length negotiations. *Id.* This factor thus supports final approval of the Settlement. *See Isby*, 75 F.3d at 1200 (noting "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough'").

As was true with the Rule 23 factors, an assessment of the factors traditionally examined by Seventh Circuit Courts supports a finding that the Settlement is in fact fair, reasonable, and adequate, and warrants Final Approval.

### 3. The Objections Lodged Against Class Certification, the Settlement Agreement, and the Supplemental Request for Attorneys' Fees, Costs, and Service Awards are Without Merit.

#### a. *The Settlement Fund is Sufficient.*

Class Counsel has negotiated a significant benefit for the Settlement Class—made even more so by the ability of Settlement Class Members to receive double recovery in the present action and the Tik Tok MDL. Mark S., by and through his counsel, baselessly urges this Court to

believe that had Class Counsel simply "insisted", the long-negotiated Settlement Fund that came to be only after the vigorous arms' length negotiations of the Parties and a Mediator's Proposal when the Parties were at stalemate, could have been simply increased from the $1,100,000 agreed upon to $6,256,000. Dkt. 74.

Amidst his wild conjectures, Mark S. has failed to notice (or deliberately ignored) a point germane to the valuation of the Settlement and any comparison to the value of the MDL settlement: the MDL Plaintiffs bring additional claims than were not brought in this litigation. For example, unlike here, the MDL plaintiffs have brought a claim on behalf of an Illinois subclass for violations of the Biometric Information Privacy Act ("BIPA"). BIPA claims alone have huge value, distinct from any of the other claims brought in Plaintiffs' Complaint here. A single claim for a violation of BIPA is worth $1,000, or $5,000 if the violation is intentional or reckless. 740 ILCS 14/20. Even with the lower value BIPA claim, if only 4% of the settlement class members were from Illinois, the starting value of this case for an Illinois BIPA subclass alone would be $240,000,000.[6] Despite Mark S.'s claims, such funds were simply not in play in the present case, where no BIPA claims were alleged. The Court need only look at the recent *Facebook* BIPA settlement, which settled for $650 million, to confirm this fact. *See In re Facebook Biometric Information Privacy Litigation*, Case No. 15-cv-03747-JD, Dkt. 537 (N.D. Cal. Aug. 8, 2019).

Moreover, the 10 clearly coordinated and nearly identical objections submitted to Class Counsel fail to set forth a detailed explanation for the objection. Dkt 28-1 ¶ 7 Ex. B. At most, the objections state simply that $10-15 was insufficient, and request "mediation". Some do not even state that the estimated pay-out is insufficient at all. *Id.*

---

[6] Illinois has approximately 4% of the population of the United States. 4% of the 6,000,000 Settlement Class is 240,000 individuals. $1,000 x 240,0000 = $240,000,000.

Objections for insufficiency of recovery are not grounds to deny approval. *See e.g., Snyder v. Ocwen Loan Servicing*, LLC, No. 14 C 8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019) (overruling various objectors because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suit"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (overruling 28 objections that claimed "the Settlement is too low or otherwise insufficient"—" the positive response from the Class favors approval of the Settlement."); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 497 (N.D. Ill. 2015) (overruling 20 objections that claimed the settlement was inadequate because "[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *Browne v. Am. Honda Motor Co*., No. 09-CV-06750-MMM, 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) (overruling 117 objectors in a class of only 740,000 because "[t]he fact that there is opposition does not necessitate disapproval of the settlement. Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair.").  Any Settlement Class Member can exclude themselves from the Settlement and independently seek additional compensation.

> b.   The Supplemental Notice Program satisfied the requirements of Rule 23 and constitutional due process.

As discussed in detail at Section III, *supra*, the digital media notice campaign carried out by Angeion satisfies the requirements of due process and Rule 23. Due process does not require that every class member receive notice. *In re AT&T Mobility Wireless Data Services Sales Tax Litig.,* 789 F. Supp. 2d 935, 968 (N.D. Ill. June 2, 2011) (collecting cases).  Rather, parties are required, "within the limits of practicality, to send such notice as [is] reasonably calculated to reach most interested parties." *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985). It is worth noting that

the "best notice practicable under the circumstances" that is required by Rule 23(c)(2)(B) does not require individual notice to be provided where individual contact information cannot be reasonably procured. Subpoenaing multiple third parties for the contact information of millions of individuals who have purchased a particular App. as Mark S. suggests is outside the realm of reasonableness—especially where the third parties producing the contact information would have no idea as to the age of the individual purchasing and/or using the App. and therefore could not reasonably determine which purchasers were in fact members of the Class.

The initial Notice, combined with the SNP, provided millions of impressions and reached an estimated 72% of the class. Such reach is *higher* than that originally approved by the Court, and certainly warrants approval. As such, Mark S.'s objection regarding Notice provides no grounds for refusal of final approval here.

c.     *Plaintiffs' requested fees of $200,000 are reasonable and appropriate.*

In order to keep claimant recovery closer to the original figures projected, Class Counsel has reduced its fee request to $200,000. The percent of benefit approach is the favored method in the Seventh Circuit for computing attorneys' fees because it avoids the time-wasting computations of lodestars and multipliers and provides an effective way of determining whether the requested fee is reasonable. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (finding percentage-of-the-fund to be -7- the "normal practice in consumer class actions"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple

to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), aff'd, 160 F.3d 361 (7th Cir. 1998).

The requested fee of $200,000 represents the equivalent of 18.2% of the total Settlement Fund, and 28.8% of the amount of net funds after the costs of settlement administration.[7] The reduction in Class Counsel's fee request moots Mark S.'s objection, and is an inherently reasonable request in light of all of the factors discussed in Plaintiffs' Supplemental Motion for Attorneys' Fees, Costs, and Service Awards, including the contingent nature of the case, the risk involved in the litigation, fees awarded in similar cases, and the quality of the work performed. *See* Dkt. 69.

### C. The Settlement Class Should be Finally Certified.

In the Preliminary Approval Order, the Court conditionally approved certification of the Settlement Class. *See* Dkt. 13. For all the reasons set forth in Plaintiffs' preliminary approval briefing (Dkt. 5), the Preliminary Approval Order (Dkt. 13), and described above, the Court should grant certification for settlement purposes and final approval of the Settlement.

### V. MARK S.'S OBJECTION LACKS MERIT AND SHOULD BE DENIED.

To the extent that it has not been addressed above and in other pleadings, Mark S.'s supplemental objection lacks merit and should be denied. The supplemental objection can be broken down into 3 parts: 1) renewed objections to the amount of the settlement; 2) renewed objections to the notice program, and; 3) objections to the attorneys' fees requested.

Working backwards, Mark S.'s objections to the requested attorneys' fees are that the amount of fees and percentage claimed is too high. Both of these issues are resolved by Class

---

[7] Although Class Counsel request that the Court award their fees based on a percentage-of-the-fund approach, they would be remiss if they failed to mention their lodestar on this case vastly exceeds fees requested ($200,000). In other words, Class Counsel seeks a negative lodestar award by their fee request because the value of the hours and work they performed to bring this Settlement over the finish line now exceeds the amount by which they seek to be reimbursed.

Counsel's voluntary reduction of their fee request to $200,000, which is 28.8% of the net settlement funds to the Settlement Class (and 31% of the net settlement funds if Class Counsel's costs and expenses actually incurred are added in). This is a fair and reasonable amount under the facts and circumstances of this case, and under the very case law cited by Mark S. Mark S. also tacitly concedes the reasonableness of this amount of attorneys' fees, as his counsel Mr. Drury has requested $34,000 more than this in fees in his frivolous fee petition. Class Counsel worked hard to ensure that, despite a hugely successful supplemental notice program that generated nearly 90,000 additional claims, the net recovery to Class Members exceeded $3.00 per person, and stayed in line with commensurate recoveries in the other similar cases previously cited.

With regard to Mark S.'s criticism of the supplemental notice program, he is just wrong that direct notice is required, when the case law cited above plainly says it isn't. The Supplemental Notice program was tremendously successful, and any criticisms levied by Mark S. are belied by this success and the claims rate here which plainly meets or exceeds similar consumer class actions. Moreover, there is no requirement that the administrator itemize its request for fees. Also, it isn't the case that the initial notice program cost approximately nine times more than the Supplemental Program. The administrator's fees include all the claims processing costs, including hard out of pocket amounts like creating and sending out checks. This argument is just another example of Mark S.'s counsel making things up.

Mark S. does have an actual point about the objection and opt-out date not being properly stated on the Settlement website, because Federal Rule of Civil Procedure 6 operated to extend the 45-day period that ended on a Saturday to the following Monday. Given the fact that there were almost 90,000 claims made and zero objections or opt-outs (and no late filed objections or opt-outs), this is clearly harmless error. The Settlement Class was still afforded 45 calendar days to

object or opt-out, just as this Court ordered. This is just a "gotcha" argument by Mark S., not any substantive reason for this Court to overturn this entire settlement.

Finally, with regard to the amount of the settlement, Mark S.'s arguments are just another iteration of his same tired argument that this settlement isn't enough. That wasn't a proper basis for objection the first time that Mark S. raised it, and it still isn't. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019) (overruling various objectors because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suit"). Indeed, this Settlement exceeds other privacy cases with similar facts. *See e.g., In Re Google Plus Profile Litigation*, No. 5:18-cv-06164 (N.D. Cal. 2021) Dkt. 110 at 10 (settlement granted final approval in case concerning disclosure of account holder profile information that was projected to pay $2.50 per valid claimant).

As Class Counsel has already shown the Court at length in other filings, Mark S.'s $6.256 million number is a self-serving fabrication. See Dkt. 73 and Dkt. 79. The so-called "meaningless" relief is not only in line with other comparable settlements, but the Settlement Class itself has voted unambiguously that receiving an actual cash benefit from this settlement isn't "meaningless," even if that benefit is only a *pro rata* share of $1.1 million. Class Counsel obviated Mark S.'s concern about "60% of the proceeds" going to fees and expenses, with the total amount of the settlement now being split almost evenly between settlement administration costs (much of which are hard out-of-pocket costs) and attorneys' fees and costs on one hand, and cash to the class on the other. As for the claim of inadequate representation, this offensive claim of "doing nothing" is predicated upon Mark S.'s utter delusion that more money could have been obtained <u>in this case</u> had Class Counsel simply asked for it.

## VI.  CONCLUSION

The Settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiffs respectfully request that the Court grant final approval to the Settlement.

Dated: August 13, 2021

Respectfully Submitted,

By: /s/ *Gary M. Klinger*
Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@masonllp.com

Gary E. Mason
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@masonllp.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2021, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all Counsel of record.

By: /s/ *Gary M. Klinger*
Gary M. Klinger