**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| T.K., THROUGH HER MOTHER SHERRI LESHORE, and A.S., THROUGH HER MOTHER, LAURA LOPEZ, *individually and on behalf of all others similarly situated,* | |
| Plaintiffs, | Case No. 19-CV-7915 |
| v. | |
| BYTEDANCE TECHNOLOGY CO., LTD., MUSICAL.LY INC. MUSICAL.LY THE CAYMAN ISLANDS CORPORATION, | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs T.K., through her mother Sherri Leshore, and A.S., through her mother Laura Lopez, move for final approval of a proposed class action settlement (the "Proposed Settlement Agreement"), [81], and attorneys' fees, costs, and service awards, [69]. Separately, Mark S., a member of the Proposed Settlement Class, objects to the settlement proposal. [24]; [74]. Mark S. also moves for attorneys' fees and a service award. [71]. For the reasons explained below, this Court grants Plaintiffs' motion for final approval, [81], and, subject to the modifications described herein, grants Plaintiffs' motion for attorneys' fees, costs, and service awards, [69]. This Court denies Mark S.' motion for attorneys' fees and service award, [71], and denies Plaintiffs' motion for sanctions, [75].

1

I.      **Background**[1]

On May 12, 2020, Plaintiffs filed their initial motion [28] for final approval of the Proposed Settlement, a settlement this Court had preliminarily approved in December 2019, [13].  In March 2020, after finding that the Proposed Settlement Class had not received adequate notice of the settlement within the meaning of Federal Rule of Civil Procedure 23, this Court denied Plaintiffs' motion for final approval, along with Plaintiffs' related motion for attorneys' fees, costs, and service awards, [29], without prejudice.  [62].  This Court required that Plaintiffs provide additional notice to the class before filing any renewed motion for final approval or renewed motion for fees, costs, and service awards.  *Id.*  In the same opinion and order, this Court denied Mark S.' motion to intervene.  *Id.*

The following month, the parties reached an agreement regarding potentially overlapping claims in this action and in *In re TikTok, Inc., Consumer Privacy Litigation*, No. 20-CV-4699, MDL No. 2948 (N.D. Ill.) (the "TikTok MDL"), whereby Defendants confirmed that they would not seek to enforce their rights under the Proposed Settlement Agreement's release clause against members of the Proposed Settlement Class in the event class members also sought recovery in the TikTok MDL.  [68].  Given that agreement, this Court denied Mark S.' motion to enforce this Court's preliminary injunction and for reassignment of the related TikTok MDL [51].

---

[1] This Court assumes familiarity with the factual background explained in its Memorandum Opinion and Order denying Plaintiff's first motion for class certification.  [62].  This Court incorporates by reference the facts and findings explained therein.

2

In accordance with this Court's March 2020 order, Plaintiffs launched their Supplemental Notice Program ("SNP") on May 5, 2021. [81-2] at 2. During the SNP, Angeion Group LLC, the settlement administrator, received an additional 89,316 claim forms, bringing the total number of claim forms received to 193,928. *Id.* at 4. The launch of the SNP also triggered additional windows for members of the Proposed Settlement Class to submit objections to the Proposed Settlement or opt-out of the class entirely. *Id.* at 4–5. During the SNP no additional class members submitted objections or requested exclusion. *Id.*[2] The costs of the SNP amounted to $30,035. [81-1] ¶ 10.

Plaintiffs now move for final approval of the Proposed Settlement. [81]. Plaintiffs and Mark S. both move for attorneys' fees and service awards, with Plaintiffs also seeking costs. [69]; [71]. In connection with Mark S.' motion for attorneys' fees and service award, Plaintiffs' have filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. [75].

## II. Plaintiffs' Motion for Final Approval

### A. Legal Standard

The class action suit constitutes "an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated," *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 744 (7th Cir. 2008), one ideal for "situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate," *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1030 (7th

---

[2] Mark S. supplemented his objections to the Proposed Settlement during the SNP. [74].

Cir. 2018) (quoting *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)). But with these economies come a significant risk. Defendants, who have the goal of "minimizing the sum of the damages they pay the class and the fees they pay the class counsel," may find themselves "willing to trade small damages for high attorneys' fees," creating a "community of interest between class counsel, who control the plaintiff's side of the case, and the defendants." *Thorogood*, 547 F.3d at 744–45. And the class members may have stakes in the class action "too small to motivate them to supervise the lawyers in an effort to make sure that the lawyers will act in their best interests." *Id.* at 744.

To help mitigate this risk, Rule 23 lays out requirements for settlement. Before approving a proposed settlement, a court must first find that the settlement is "fair, reasonable, and adequate." *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 555–56 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). This Court's assessment of the Proposed Settlement under Rule 23 follows.

### B. Analysis

#### 1. Certification of the Settlement Class

Federal Rule of Civil Procedure 23 states that the "claims, issues, or defenses *of a certified class* may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed R. Civ. P. 23(e) (emphasis added). Accordingly, before approving the Proposed Settlement, this Court must certify the Proposed Settlement Class. This means that the Proposed Settlement Class has to satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy. The class at

issue here must also meet Rule 23(b)(3)'s requirements that "questions of law or fact common to class members predominate over any questions affecting individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, the Seventh Circuit imposes an additional requirement: "the class must be 'identifiable as a class,'" meaning that the class definition "must be 'definite enough that the class can be ascertained.'" *Greene v. Mizuho Bank, Ltd.*, 327 F.R.D. 190, 194 (N.D. Ill. 2018) (alteration in original) (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)).

### a.  Definiteness and Ascertainability

To satisfy the requirement of definiteness and ascertainability, a class must "be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Under the "weak" version of ascertainability employed by the Seventh Circuit, courts worry most about "the adequacy of the class definition itself," not "whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Id.* A class definition that "identifies a particular group of individuals . . . harmed in a particular way . . . during a specific period in particular areas" indicates a definite and ascertainable class. *Id.* at 660–61.

Here, the Proposed Settlement defines the class as "all persons residing in the United States who registered for or used the Musical/.ly and/or TikTok software application prior to the Effective Date when under the age of 13 and their parents

and/or legal guardians."[3]  [5-2] at 22.  This definition "is as objective as they come." *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417–18 (N.D. Ill. 2012) (finding that class consisting of "individuals holding an Abercrombie promotional gift card whose value was voided on or around January 30, 2010" met Rule 23's ascertainability requirement).

Although Plaintiffs note the impossibility of identifying all members of the Proposed Settlement Class, *e.g.*, [81] at 28, this fact does not destroy definiteness and ascertainability.  Rule 23 does not require the identification of "absent class members' actual identities." *Boundas*, 280 F.R.D. at 417.  Instead, it suffices "that the class be ascertain*able*." *Id.* (emphasis in original).  A class that requires its members to identify themselves through affidavits or claim forms, like the one used here, *see* [28-2] at 4, 28, meets that standard, *see Boundas*, 280 F.R.D. at 417–18 (finding class ascertainable where the only way to identify certain class members was through the submission of affidavits in which they claimed membership).  This Court finds that the class definition meets the requirements of definiteness and ascertainability.

### b.    Rule 23(a) Requirements

### i.    Numerosity

Rule 23(a)(1) permits class certification only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The rule contains no magic number that will satisfy this requirement, but the Seventh Circuit has held

---

[3] The "Effective Date" represents the first date after either: (1) the time to appeal an order by this Court approving the settlement has expired, with no appeal having been filed; or (2) an appellate court affirms an order by this Court approving the settlement and, in doing so, forecloses the possibility of further review.  [5-1] at 22.

that a class of forty members constitutes "a sufficiently large group" to satisfy numerosity "where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)). While Plaintiffs may not "rely on 'mere speculation' or 'conclusory allegations'" to show numerosity, *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (quoting *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990)), they need not "plead or prove the exact number of class members," *Barnes*, 310 F.R.D. at 557. Courts may also rely on "common sense assumptions" when determining numerosity. *Phipps v. Sheriff of Cook Cty.*, 249 F.R.D. 298, 300 (N.D. Ill. 2008).

Here, Plaintiffs estimate that the Proposed Settlement class contains approximately six million members. [81] at 3. Plaintiffs base this estimate upon the "limited information . . . provided to Class Counsel" by Defendants. *Id.*; *see also* [5-1] at 5.[4] This reasonable estimate satisfies numerosity. As other courts have noted, TikTok has over 100 million users in the United States alone. *See, e.g.*, *Marland v. Trump*, No. CV 20-4597, 2020 WL 5749928, at *2 (E.D. Pa. Sept. 26, 2020). Plaintiffs note the impossibility of determining the exact class size, [28] at 9,

---

[4] Mark S. offers up his own estimate as to the size of the class, but this Court declines to adopt his figures. Whereas the Plaintiffs' estimate draws from TikTok's own records, [5-1] at 5, Mark S.' estimate extrapolates from data collected by third-parties and makes unsupported assumptions about use of the TikTok app across age groups, [74] at 4–5. For example, Mark S.' model would require this Court to assume that, out of his projected universe of 32.5 million TikTok users aged ten to nineteen, ten-year-olds make up *exactly* one-tenth, eleven-year-olds another tenth, and so on.

but even a sliver of this user base would constitute a class large enough to satisfy the numerosity requirement.[5]

### ii.        Commonality

A court may certify a class only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Plaintiffs meet this requirement of commonality by demonstrating that "class members 'have suffered the same injury'" and that their claims "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Determination of the "truth or falsity" of that common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  Rule 23 requires only one common question to satisfy commonality. *Id.* at 359.

Here, Plaintiffs allege that Defendants "surreptitiously tracked, collected, and disclosed the personally identifiable information and/or viewing data of children under the age of 13," "without parental consent." [1] ¶ 1. All members of the Proposed Settlement Class share statutory claims based upon Defendants' alleged violations of federal and California privacy law. *Id.* ¶¶ 70–77, 86–103. The core issue of whether Defendants collected and shared class members' personally identifiable information without parental consent remains central to these claims.  Accordingly, the Proposed Settlement Class meets the Rule 23(a)(2)'s commonality requirement.

---

[5] Additionally, the settlement administrator notes receipt of 193,928 claims, of which it estimates 168,607 "will be deemed valid and approved for payment."  [81-2] at 4.  This further suggests that the class here satisfies numerosity.

8

### iii.    Typicality

Rule 23 also requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This typicality requirement ensures "that the named representative's claims have the same essential characteristics of the class at large." *Oshana*, 472 F.3d at 514 (quoting *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 597 (7th Cir. 1993)). A named plaintiff has a "typical" claim if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and has "the same legal theory" at its core. *Lacy v. Cook Cty.*, 897 F.3d 847, 866 (7th Cir. 2018) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Plaintiffs have established typicality. Every member of the Proposed Settlement Class, including the named Plaintiffs, alleges that Defendants "tracked, collected, and disclosed" their "personally identifiable information and/or viewing data" without parental consent while they were "under the age of 13," or that they are the parent or legal guardian of such a person. [1] ¶¶ 1–3, 18–37, 49–51; [5] at 6–8. Because the class members' claims all arise from the same course of conduct, and the class members base their claims upon the same legal theories, this Court finds that the Proposed Settlement Class meets the typicality requirement.

### iv.    Adequacy

To determine adequacy, courts consider two factors: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class

counsel." *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011). A named plaintiff will not serve as an adequate representative of a proposed class when her claims are "antagonistic or conflicting" with those of the other class members, *Rosario*, 963 F.2d at 1018, or when she remains "subject to a defense that would not defeat unnamed class members," *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). The adequacy of class counsel turns on counsel's qualifications, experience, and ability to conduct the litigation. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (citing *Rosario*, 963 F.2d at 1018).

The named plaintiffs here share the same injuries as other members of the Proposed Settlement Class; each of the Plaintiffs contends either that Defendants collected, used, and disclosed their personally identifiable information while they were under the age of thirteen and without parental consent, or that they are the parent or legal guardian of such a person. [1] ¶¶ 2–3. Nothing in the record suggests that the named Plaintiffs have claims antagonistic to or conflicting with those of the class as a whole, or that defenses not applicable to the claims of other class members apply to those of the named Plaintiffs.

Nor does the record support a finding of inadequacy as to Class Counsel. Plaintiffs present unrefuted evidence of their counsel's expertise in litigating consumer class actions, many of which involve privacy rights, [5-1] at 10–20, and there has been no credible allegation of "a lack of integrity" on the part of Class Counsel, or other allegation that would cast "serious doubt on their trustworthiness

10

as representatives of the class," exists.[6] *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011).

### c.     Rule 23(b) Requirements

Here Plaintiffs seek to certify the Proposed Settlement Class under Rule 23(b)(3), which requires that common questions predominate over individual ones and that a class action suit constitutes a superior method for resolving the dispute. Fed. R. Civ. P. 23(b)(3). This Court addresses each requirement in turn below.

### i.     Predominance

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This assessment focuses upon the "'the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)). Although the predominance requirement resembles "Rule 23(a)'s requirements for typicality and

---

[6] In his objections to the settlement, Mark S. asserts that the "current putative class representatives have failed to fairly and adequately protect the interests of the class," [24] at 28, and that "class counsel and Defendants acted in concert" to reach a settlement that "serves to benefit class counsel and Defendants, without consideration" of the Proposed Settlement Class, *id.* at 39. As discussed in greater detail below, these allegations lack merit.

commonality," this criterion "is far more demanding." *Id.* (quoting *Amchem*, 521 U.S. at 623–24).

A class satisfies the predominance requirement when "common questions represent a significant aspect" of a case and can be "resolved for all members" of a "class in a single adjudication." *Id.* (quoting 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)). A question "becomes a common question" when the "same evidence will suffice for each member to make a prima facie showing." *Id.* at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If, on the other hand, "members of a proposed class will need to present evidence that varies from member to member" in order to "make a prima facie showing on a given question," that question remains an individual one. *Id.* (quoting *Blades*, 400 F.3d at 566).

But the case management and judicial economy concerns at the heart of the predominance requirement matter less when plaintiffs seek to certify a class for settlement purposes only. *See* Fed. R. Civ. P. 23(b) advisory committee's note to 1966 amendment. In deciding whether to certify a settlement-only class, "a district court *need not inquire* whether the case, if tried, would present intractable management problems," an inquiry typically necessary to satisfy Rule 23(b)(3)'s predominance requirement. *Douglas v. W. Union Co.*, 328 F.R.D. 204, 211 (N.D. Ill. 2018) (emphasis added) (quoting *Amchem*, 521 U.S. at 620). Accordingly, "individualized issues" that may bar certification for adjudication purposes will not necessarily bar certification for settlement. *See* 2 William Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed.

12

2021) (hereinafter *Newberg*). In fact, courts "regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." *Id.*

Plaintiffs' Video Privacy Protection Act ("VPPA") claims turn on whether Defendants "knowingly disclose[d]" Plaintiffs' "personally identifiable information" without the "informed . . . consent" of their parents or legal guardians. 18 U.S.C. § 2710(b). From these claims, this Court identifies two key questions: (1) whether Defendants collected and disclosed Plaintiffs' personally identifiable information; and (2) whether Defendants obtained consent from the parents of users under the age of thirteen before doing so.

The question of whether Defendants obtained parental consent before collecting personally identifiable information of under-thirteen users remains common to all class members. Clearly, individualized issues would no doubt arise at trial. For example, this Court would likely need "individual proof" that each Plaintiff "actually uploaded or generated any information that was collected by TikTok" in order to determine whether Defendants collected and disclosed Plaintiffs' personally identifiable information. [34] at 9. In the trial context, where case management concerns help guide the predominance analysis, the need for such individualized proof might weigh against certification. Not so here.

Nor do individualized damages questions bar certification here. Courts in every circuit "have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations." 2 *Newberg*

13

§ 4:54; *see also, e.g., Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) (noting district court's error in ruling that "class certification was precluded based on the need for damages to be assessed individually"). In the settlement-class context, the need for individualized damages presents even less of a problem because case management concerns have minimal import.

Similarly, differences between the federal and state law claims present in this case do not prevent certification. Although class certification will sometimes "be inappropriate" when recovery "depends on law that varies materially from state to state," the settlement context presents no need to "draw fine lines among state-law theories of relief." *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746–47 (7th Cir. 2001). Thus, "the fact that . . . claims . . . implicate the laws of different states" will not "defeat predominance for the purpose of certifying a settlement class." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 974 (N.D. Ill. 2011).

### ii.      Superiority

To certify a class under Rule 23(b)(3), this Court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This occurs when a class action achieves "economies of time, effort, and expense" and promotes "uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 304 (N.D. Ill. 2010) (quoting *Amchem*, 521 U.S. at 615). Where plaintiffs seek to certify a class

14

for settlement purposes only, trial-related concerns do not factor into a court's analysis of superiority. *Amchem*, 521 U.S. at 620.

Here the superiority requirement is satisfied. The Proposed Settlement Class represents millions of similar lawsuits. Because certification of the Proposed Settlement Class and approval of the Proposed Settlement will resolve these claims in one fell swoop, a class action constitutes the most efficient means of adjudicating this controversy. The Proposed Settlement Class meets the requirements set out in Rule 23(a) and Rule 23(b)(3), and this Court hereby certifies the class for the purpose of settlement only.

### 2. Notice

Federal Rule of Civil Procedure 23 requires notice to a class when it is certified under Rule 23(b)(3), when the parties reach a settlement, and when class counsel files a fee petition. Fed. R. Civ. P. 23(c)(2)(B), (e), (h)(1). Separately, the Class Action Fairness Act ("CAFA") requires that certain government agencies receive notice of a proposed class action settlement in a federal case. 28 U.S.C. § 1715. For the reasons explained below, this Court finds that the parties provided adequate notice to the Proposed Settlement Class.

### a. Rule 23

### i. Form of the Notice

Under Rule 23(c)(2)(B), absent members of a "class proposed to be certified for settlement under Rule 23(b)(3)" must receive "the best notice" of class certification "that is practicable under the circumstances, including individual notice to all

15

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (notice of certification). Notice of the settlement itself or notice of a fee petition must meet a similar standard. *See* Fed. R. Civ. P. 23(e)(1)(B) (requiring notice of settlement "in a reasonable manner to all class members who would be bound by the proposal"); Fed. R. Civ. P. 23(h)(1) (requiring notice of class counsel's motion for attorneys' fees to "be . . . directed to class members in a reasonable manner").

Of course, the members of the class must receive the best notice practicable "not just because the Rules require it, but 'as a matter of due process.'" *Kaufman v. Am. Exp. Travel Related Servs., Inc.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012). Rule 23 incorporates constitutional due process standards. *See Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145 (N.D. Ill. 2010). A "reasonable" notice effort, one that satisfies both Rule 23 and constitutional due process requirements, should reach at least seventy percent of the class. Fed. Jud. Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide at 1, 3 (2010).

This Court previously approved the parties' plan for a "single, combined notice advising the class of the proposed certification and settlement of (b)(3) classes under both Rule 23(e)(1) and (c)(2)(B)," [5] at 27, finding that the notice plan satisfied "all requirements provided in Rule 23(c)(2)(A) and due process," and finding it "reasonable within the meaning of Rule 23(e)(1)(B)," [13] ¶ 8.[7]

---

[7] Settlement class actions typically employ combined notices encompassing notice of certification, settlement, and fees. 3 *Newberg* § 8:1.

16

Here, Angeion Group, LLC ("Angeion"), a class action and settlement administration firm, developed and implemented the initial notice program. [5-1] at 182. Plaintiffs attest that Defendants had "no way to directly contact or identify class members." [5] at 10. Accordingly, Angeion's notice program relied primarily upon internet advertisements. [5-1] at 186. Angeion constructed the target audience for the advertisements (estimated at some 6,070,000 individuals) by using a media database to identify key demographic information about the Proposed Settlement Class. *See id.* at 186–87. Angeion then purchased internet advertisements designed to reach at least 70% of the members of its target audience, "on average 3.0 times each." *Id.* at 186–88. By Angeion's estimates, the more than 13 million digital banner ad impressions delivered through its notice program reached approximately 72% of its target audience "with an average frequency of 3.00 times each." [81-2] at 2. Additionally, after this Court's prior order denying Plaintiffs initial motion for final approval, Angeion's SNP delivered over 6.6 million more impressions. *Id.* at 3.

Both the initial notice program and the SNP also included a website linked to the internet advertisements and a toll-free twenty-four-hour telephone hotline. *Id.* at 3–4. The website contained "general information about this class action," relevant "Court documents," "important dates and deadlines pertinent to [the] Settlement," an online claim form, and a contact page allowing individuals to send questions to a dedicated email address. *Id.* at 3, 17. Similarly, the hotline provided callers with essential information regarding the Proposed Settlement and responses to frequently asked questions. *Id.* at 3–4. In connection with the SNP, Angeion updated both the

settlement website and hotline to inform class members of the new settlement-related deadlines. *Id.* As of August 12, 2021, Angeion reported over 435,635 visits to its website from 233,851 unique visitors and 253 calls to its hotline, "totaling 836 minutes of call time." *Id.*

Having reviewed the form of notice, this Court finds the notice here to be the best notice practicable under the circumstances.

### ii.    Content of the notice

Rule 23 not only controls the form of notice, but also its content. The combined notice at issue here notified members of the Proposed Settlement Class of certification, settlement, and attorneys' fees. Because Rule 23 has different requirements for notice of certification, settlement, and fees, this Court evaluates each component of the combined notice in turn below.

### A.    Certification and Settlement

When plaintiffs send notice of class certification to a class "proposed to be certified for purposes of settlement under Rule 23(b)(3)," that notice must "clearly and concisely . . . in plain, easily understood language" state the following:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

18

Fed. R. Civ. P. 23(c)(2)(B).  In contrast, Rule 23 says nothing about the content of a settlement notice.  Accordingly, this Court has "nearly complete discretion to determine the . . . content of [a settlement] notice to class members." *Kaufman*, 283 F.R.D. at 406.  Other courts have found the contents of a settlement notice "sufficient" if the notice "informs the class members of 'the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.'" *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688, at *15 (N.D. Ill. Dec. 20, 2017) (quoting *In re AT&T*, 270 F.R.D. at 351).

This Court has reviewed the internet banner advertisements displayed as part of the notice program, archived versions of the settlement website linked to those advertisements and dating back to the notice period, and the long form notice and claim form both posted on said website.  The content of these materials meets Rule 23's requirements as to certification and settlement notice.[8]

## B.  Fees

Under Rule 23, this Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Where class counsel seeks such an award, the claim "must be made by motion under Rule 54(d)(2)" with notice "served on all parties and . . . directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).  In the Seventh Circuit,

---

[8] To the extent the initial notice contained incorrect deadlines, this Court's extension of the deadlines and the SNP administered by Angeion ensured that class members had adequate notice of certification and settlement.

class counsel must file the Rule 54 petition before the deadline for objections to the settlement.  *See Redman v. RadioShack Corp.*, 768 F.3d 622, 637–38 (7th Cir. 2014). And, of course, the initial notice that class counsel intends to seek fees should also "be sent in advance" of the deadline for objections.  3 *Newberg* § 8:24.

Although Rule 23 does not detail the content of a fee notice, that notice should at the very least "advise class members that their counsel will seek fees" and state "the general level at which the fee will be sought," "inform class members of the date on which the full fee petition will be filed and how class members can gain access to it," and "inform class members of the precise deadline by which they must file objections and the required structure of those objections." *Id.* § 8:25. The fee petition itself must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award," "state the amount sought or provide a fair estimate of it," and "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claims is made."  Fed. R. Civ. P. 54(d)(2)(B)(ii)–(iv).

The class here received sufficient notice of fees.  In the settlement notice distributed through the Notice Program, Class Counsel informed the class that the Proposed Settlement would "provide $1,100,000" to pay class members claims, "Plaintiffs' attorneys' fees, costs, a service award for the named plaintiffs, and the administrative costs of the settlement."  [81-2] at 19.  The notice further stated that:

> Class Counsel intends to request up to 33% of the Settlement Fund for attorneys' fees and reimbursement of reasonable, actual out-of-pocket expenses incurred in the litigation.  The Court will decide the amount of fees and expenses to award.

> Class Counsel will also request that a Service Award of $2,500.00 each ($5,000 total) be paid to the Class Representatives for their services as representatives on behalf of the Settlement Class.

*Id.* at 25. Although the settlement notice does not appear to provide class members with information about the *filing* of the full fee petition, this Court finds notice of fees sufficient, given the clear indication of the amount of fees sought by Class Counsel and instructions on how to object. *Id.* at 24–25; [81-2] at 3.

Class Counsel filed its renewed fee petition on June 4, 2021. [69]. Because Class Counsel filed this motion two weeks in advance of the June 19 deadline for class members to object or opt out, *see* [81-2] at 5, members of the Proposed Settlement Class had ample opportunity to voice their concerns with respect to fees. Thus, this Court finds that Class Counsel's motion meets the requirements of Rule 54(d)(2)(B).

Because both the form and the content of the notice meet Rule 23's requirements, this Court finds that Plaintiffs have provided adequate notice to the Proposed Settlement Class.

### b. CAFA

Under the Class Action Fairness Act of 2005, "each defendant that is participating in [a] proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement" no later than ten days "after a proposed settlement of a class action is filed in court." 28 U.S.C. § 1715(b). In the absence of a state level "primary regulator, supervisor, or licensing authority" with jurisdiction

over the defendant, "the appropriate State official shall be the State attorney general." *Id.* § 1715(a)(2). Notice to the class should include:

(1) a copy of the complaint and any materials filed with the complaint . . . ;
(2) notice of any scheduled judicial hearing in the class action;
(3) any proposed or final notification to class members of--
    (A) (i) the members' rights to request exclusion from the class action . . . ; and
    (B) a proposed settlement of a class action;
(4) any proposed or final class action settlement;
(5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;
(6) any final judgment or notice of dismissal;
(7) . . . (B) . . . a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement; and
(8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

*Id.* § 1715(b). Class members may "refuse to comply with and may choose not to be bound by a settlement agreement . . . in a class action" if defendants fail to provide the notice required under CAFA. *Id.*

Here, the Settlement Administrator, acting on behalf of Defendants, sent notice of the settlement to the Attorney General of the United States and the attorneys general of all fifty states. [81-2] at 1–2. The Settlement Administrator did so on December 16, 2019, *id.*, eleven days after Plaintiffs filed their motion for preliminary approval of the Proposed Settlement with this Court, [5]. Although CAFA requires notice to issue within ten days of filing a proposed settlement, the delay here is not fatal to final approval of the Proposed Settlement. *See, e.g.*, *Beaty v. Cont'l Auto. Sys. U.S., Inc.*, No. CV-10-S-2440-NE, 2012 WL 1886134, at *5, 9 (N.D. Ala. May 21, 2012) (granting final approval of class action settlement

where defendant provided notice to the relevant attorneys general sixteen days after filing of the proposed settlement with the court).  The content of the notice meets CAFA's requirements, [81-2] at 7–8, and, to the date of this order, no attorneys general have objected to the Proposed Settlement, *id.* at 2–3.  Accordingly, defendants served proper notice under CAFA.

### 3.  Proposed Settlement Fair, Reasonable, and Adequate

Under Rule 23(e), a court may approve a settlement "only on finding that it is fair, reasonable, and adequate."  Because the rule did not provide further guidance, courts were left to develop their own tests for fairness, reasonableness, and adequacy. 4 *Newberg* § 13:48.  The Seventh Circuit developed the following:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)).  The Seventh Circuit deems the first factor most important. *Id.*

The 2018 revisions to Rule 23(e) added factors that courts must consider when determining whether a proposed settlement is "fair, reasonable, and adequate," namely whether:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate . . . ; and
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). But, as the Advisory Committee's notes state, this amendment did "not . . . displace any factor" developed by a given circuit court. Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendment. Accordingly, to determine whether the proposed settlement meets the "fair, reasonable, and adequate" standard, this Court will consider both the factors set forth in Rule 23(e)(2) and, to the extent not duplicative, the factors developed by the Seventh Circuit.[9]

### a.    Adequate Representation

Although courts make "an initial evaluation of counsel's capacities and experience" when appointing class counsel, at the final approval stage courts focus "on the actual performance of counsel acting on behalf of the class." *Id.* Courts may consider a number of factors when evaluating the adequacy of representation, including the "nature and amount of discovery," which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) advisory committee's notes to 2018 amendment.

As discussed above, and in this Court's March 2021 opinion and order, this Court has already found representation here adequate in the context of both class certification and Mark S.' motion to intervene. So too here. The parties engaged in substantial informal discovery and information sharing over a five-month period and Class Counsel surveyed hundreds of potential class members. [5] at 9; [48] at 11:2–

---

[9] Specifically, the post-2018 four-prong test for the adequacy of relief, Fed. R. Civ. P. 23(e)(2)(C), captures the "strength of the case" and the "complexity, length, and expense of further litigation" factors already considered by the Seventh Circuit. This Court's assessment of the adequacy of representation, Fed. R. Civ. P. 23(a)(2)(A), will incorporate the "stage of proceedings and amount of discovery completed" factor previously considered by the Seventh Circuit.

7, 19:9–12. This shows that Class Counsel had "an adequate information base" while negotiating for the settlement at issue here. Class Counsel also has extensive experience with class action litigation, including cases involving data privacy. [33] at 26–29; [33-9] at 3–9. Thus, based upon the record as whole, Class Counsel and the named Plaintiffs have adequately represented the Proposed Settlement Class.

### b. Negotiation at Arm's Length

By evaluating whether the parties negotiated the proposal at arm's length, courts aim to "root out settlements that may benefit the plaintiffs' lawyers at the class's expense." 4 *Newberg* § 13:50. The best evidence of a "truly adversarial bargaining process" is the "presence of a neutral third-party mediator." *Id.*; *see also* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's notes to 2018 amendment (noting that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

The record here reflects an arm's length negotiation. After several months of informal discovery, the parties participated in mediation led by Gregory P. Lindstrom, a neutral, third-party mediator. [33] at 33–34. In the time leading up to that all-day mediation, the parties met jointly with Lindstrom and submitted "multiple rounds of briefing" regarding contested issues. [47] at 19:12–20. And Class Counsel represents that the Proposed Settlement resulted from a proposal the mediator made after the parties hit a "dead end" during mediation. *Id.* at 19:21–25.

25

This Court will discuss the benefits of the Proposed Settlement and the proposed fees for Class Counsel in due course, but at this juncture, this Court finds no evidence of improper side deals or other misconduct, and there is nothing in the record that might suggest something less than an arm's length negotiation. Accordingly, this factor weighs in favor of approval of the Proposed Settlement.

### c. Adequacy of Relief

Under Rule 23, courts consider the following factors when assessing the adequacy of a settlement proposal:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3)[.]

Fed. R. Civ. P. 23(e)(2)(C). This court discusses each factor in turn below.

### i. Costs, risks, and delay of trial

Although Rule 23 first included this factor in 2018, courts in the Seventh Circuit have long considered "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement" to be the "most important factor relevant to the fairness of a class action settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Relatedly, courts also considered the "likely complexity, length and expense of the litigation." *Id.* Accordingly, Seventh Circuit analysis of these two factors will inform this Court's assessment of the "costs, risks, and delay of trial" within the meaning of Rule 23.

Courts measure the strength of a plaintiff's case by determining the "net expected value of continued litigation to the class." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 196 (N.D. Ill. 2018) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)). With this figure in hand, courts then "estimate the range of possible outcomes and ascribe a probability to each point on the range." *Kolinek*, 311 F.R.D. at 493 (quoting *Synfuel Techs.*, 463 F.3d at 653). But this is not an exact science. Courts are expected "only to estimate and come to a 'ballpark valuation'" of continued litigation. *Id.* (quoting *Reynolds*, 288 F.3d at 285).

This analysis also requires valuation of the settlement proposal. Here, the Proposed Settlement requires Defendants to pay $1.1 million into a settlement fund. [5-1] at 26. After payment of fees and awards, eligible class members who have made timely claims will receive pro rata shares of the remaining funds. *Id.* at 27–28. If each of the approximately six million class members submitted a valid claim, this would result in a recovery of $0.18 per person.[10] Of course, that did not happen here. The Settlement Administrator notes receipt of 193,928 claim forms, of which it anticipates "approximately 168,607 . . . will be deemed valid and approved for payment." [81-2] at 4. After deduction of the costs of notice and claims administration; counsels' proposed fees and costs; and service awards for the class representatives from the settlement, this equates to a per claimant recovery of $3.06. *See* [81] at 5–6.

---

[10] If this Court approves the proposed attorneys' fees, costs, and service awards, per class member recovery would fall to $0.08.

This Court now turns to the expected valuation of continued litigation. This valuation starts with the complaint. Plaintiffs assert the following: Count I—violation of the Video Privacy Protection Act, 18 U.S.C. § 2710; Count II—intrusion upon seclusion; Count III—violation of the California constitutional right to privacy; Count IV—violation of the California Consumers Legal Remedies Act; and Count V—violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. [1] ¶¶ 70–110.

Of these claims, only two allow for statutory damages. Plaintiffs may recover a minimum of $2,500 per VPPA violation, *see* 18 U.S.C. § 2710(c)(2)(A), and $1,000 per violation of the California Consumers Legal Remedies Act, *see* Cal. Civ. Code § 1780(a)(1). Two other claims allow for actual damages with no statutory minimums. *See* 815 Ill. Comp. Stat. § 505/10a(a) (noting availability of actual damages for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) (noting availability of actual damages for intrusion upon seclusion claims under California law).[11]

Here, the parties' failure to present valuations of the claims complicates this Court's efforts to determine the value of continued litigation. But the statutory damages here offer some guidance. If all class members proved they each suffered at

---

[11] While some of these claims also allow for "the potential for treble damages" or other punitive damages, that "should not be taken into account" when "determining a settlement value." *Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032, 1035 (N.D. Ill. 2006); *see also Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-CV-660, 2018 WL 6606079, at *4 & n.1 (S.D. Ill. Dec. 16, 2018) (collecting cases). Accordingly, the possibility of punitive damages does not factor into analysis of the adequacy of relief here.

least one VPPA violation and one violation of the California Consumers Legal Remedies Act, they would stand to recover at least $3,500 each, totaling $21 billion.

Of course, this lofty valuation reflects just one possible outcome and, given the record here, a remote one at that. The record here indicates a much smaller recovery at trial, perhaps even zero. The arbitration and class action waiver agreement entered into by TikTok users is perhaps the biggest obstacle to recovery; if Defendants were to enforce this agreement, it would bring the litigation here to a grinding halt, with Plaintiffs forced to pursue their claims individually and through arbitration.

Plaintiffs would likely have little success challenging the arbitration and class action agreement, given the strong presumption in favor of enforceability. *E.g., Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235, 238–39 (2013) (holding arbitration and class action waiver agreement enforceable despite fact that the costs of individualized proceedings outweighed any individual litigant's possible recovery). And, at least with respect to the VPPA and Illinois state law claims, the minor class members would have little chance of disaffirming the agreement because they cannot return the benefits obtained from TikTok. *See, e.g., E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp., 2d 894, 898–900 (S.D. Ill. 2012) (holding that minor plaintiffs could not disaffirm forum-selection clause in Facebook user agreement because they had already accepted the benefits of the contract by using Facebook); *Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 153–54 (N.D. Ill. 1997) (refusing to allow minor Plaintiffs to disaffirm arbitration clause in employment

29

application where they had already enjoyed the benefit of employment). *But see, e.g.*, *Coughenour v. Del Taco, LLC*, 271 Cal. Rptr. 3d 602, 605, 609–10 (Cal. Ct. App. 2020) (affirming trial court's order denying a defendant's motion to compel minor plaintiff to arbitrate pursuant to arbitration clause in employment agreement, because California law provides "for a minor's right of disaffirmance allowing for a minor to disaffirm a contract before reaching majority age or within a reasonable time afterward" (internal quotation omitted)), *review denied* (Mar. 10, 2021).

Class certification would also present a further obstacle to this matter proceeding to trial. If Plaintiffs were to seek class certification for the purpose of trial rather than settlement, this Court would have to consider whether "the case, if tried, would present intractable management problems." *Douglas v. W. Union Co.*, 328 F.R.D. 204, 211 (N.D. Ill. 2018) (quoting *Amchem*, 521 U.S. at 620). With this increased focus on manageability, "individualized issues" that would not prevent certification of a settlement-only class "may bar certification for adjudication." 2 *Newberg* § 4:63. As discussed above, significant individual issues exist here, namely whether each class members had their personally identifiable information collected by Defendants and, if so, the nature of actual damages.

Even if Plaintiffs could fully litigate their individual claims at trial, further impediments would threaten recovery. Defendants assert the preemption of Plaintiffs' state-law claims by the Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501–6506; that the alleged conduct is not within the scope of VPPA or the cited state consumer protection laws; that the alleged conduct does not amount

to a common law invasion of privacy or a violation of Plaintiffs' rights under the California Constitution; and that Plaintiffs could not recover actual damages. [34] at 4–7. If Plaintiffs failed to rebut these claims at trial, they would substantially limit recovery and eliminate other claims entirely.

Lastly, the recovery here of $0.08 per class member, or $3.06 per claimant, after factoring in attorneys' fees and other costs, resembles recovery obtained by plaintiffs in similar class action litigations arising from the unauthorized collection or exposure of personal information. *See, e.g.*, *In re Google Plus Profile Litigation*, No. 5:18-cv-6164, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021) (stating that projected per claimant of $2.50 for settlement of California unfair competition and privacy-related claims stemming from "alleged exposure of Google+ users' Profile Information" did not form "a basis for rejecting a settlement, considering the risks of proceeding to trial"), *appeal dismissed* (May 6, 2021); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943–44 (N.D. Cal. 2013) (finding settlement of California privacy, unfair competition, and unjust enrichment claims stemming from alleged misappropriation of Facebook users' names and likenesses fair and adequate where monetary relief would allow for recovery of $0.60 per class member, or $15 per claimant, post fees), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 258, 268–69 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010) (finding settlement of claims alleging cable company's collection and disclosure of customers' personally identifiable information—and failure to give notice of such practices—in

31

violation of privacy provisions of Cable Communications Policy Act fair and adequate where monetary relief would allow for recovery of $0.52 per class member, or $5.00 per claimant, post fees and cy pres relief). This too weighs in favor of a finding the relief here adequate.[12]

In sum, parties must compromise to reach a settlement. Accordingly, "courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re Capital One Tel. Consumer Prot. Act. Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (quoting *In re AT&T*, 270 F.R.D. 330 at 347). This rings particularly true here, where Plaintiffs would face mighty challenges to any recovery if this case were to proceed to trial.

### ii. Effectiveness of Proposed Method of Distribution

To determine whether a proposed settlement provides adequate relief, courts must also examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Of particular concern are methods of processing claims so complex that they discourage class members from pursuing valid claims. *See* Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendment. A requirement that potential claimants "fill out a form in order to collect from the settlement fund"

---

[12] At the August 31, 2021 fairness hearing, Mark S. questioned the estimate of $3.06 per claimant, a figure based, in part, upon the Settlement Administrator's estimates as to the number of invalid claims. Mark S. suggested, without evidence, that the Settlement Administrator and Plaintiffs had overestimated this number and that the true calculation would yield a lower per claimant recovery. But even if the Settlement Administrator found all 193,928 claims valid, each claimant would still recover $2.66. That amount remains on par with the per claimant recovery in similar class action litigations.

seldom raises such concerns. 4 *Newberg* § 13:53; *see also, e.g.*, *Kolinek*, 311 F.R.D. at 499 (holding that it was "neither unfair nor reasonable" to ask claimants to submit a "short and direct" claim form that required claimants to provide their names, address, and signature, and to check a box if they wished to make a claim). Nor will a requirement that class members attest to their eligibility for recovery. *See, e.g.*, *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. Wis. 2009) (describing requirement on claim forms that claimants "verify . . . that they meet class requirements" as not "improper").

In addition to the method of submitting a claim, courts must also consider how claims are paid out. Courts are "especially wary" of complex claims processes paired with either "claims-made settlements," distributing only the "amount actually claimed by the class members," or reversionary funds. 4 *Newberg* § 13:53. On the other hand, a settlement that requires defendants to disgorge a predetermined sum "is more likely to be found fair, reasonable, and adequate." *Id.*; *see also, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable.").

Under the terms of the Proposed Settlement, Defendants will pay the sum certain of $1.1 million into a settlement fund. [5-1] at 24. After payment of settlement administration expenses, taxes, and allocation of fee and service awards, the class members will receive the balance of the settlement fund, with awards distributed equally on a pro rata basis to all class members who submit a valid claim.

[5] at 20; [5-1] at 27. No reversion will take place here; instead, this Court "may direct the Settlement Administrator to pay the residue to an appropriate cy pres recipient or other recipient as the Court may decide in its discretion." [5-1] at 28.

Members of the Proposed Settlement Class could make a claim by submitting a completed claim to the Settlement Administrator via the settlement website or U.S. mail. [28-2] at 22. The form required class members to provide their name, residential address, email address, and signature. By signing, the prospective claimant attested that they met the eligibility requirements for the Proposed Settlement Class and that they had not submitted more than one claim. [28-2] at 28.

The proposed method of distribution here is straightforward and unlikely to have discouraged anyone from submitting a claim. And, because no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendants or class counsel. Accordingly, this factor weighs in favor of finding the relief here adequate.

### iii. Proposed Attorneys' Fee Award

The proposed attorneys' fee award also weighs in favor of finding the relief adequate. As this Court discusses in greater detail below, the proposed attorneys' fees of $200,000, payable upon approval by the Court, are reasonable in light of the Class Counsel's work, their investment of resources in the case, their prosecution of the action for the benefit of the Class, the risks that they faced in the litigation, and

the overall benefit of the Settlement achieved.[13]  Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval of the Settlement; as noted in the Proposed Settlement, any "order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or inventive awards [sic] . . . shall not operate to modify, terminate, or cancel this Agreement." [5-1] at 31.

### iv.      Agreements

When evaluating the adequacy of relief, courts must also take "any agreement required to be identified under Rule 23(e)(3)" into account.  Fed. R. Civ. P. 23(e)(2)(C)(iv).  Under Rule 23(e)(3), the "parties seeking approval" of a settlement "must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).  Although Plaintiffs did not file such a statement here, other submissions to this Court state that, aside from the Proposed Settlement, "no other settlements or other agreements have been contemporaneously made between the Parties." [28-2] at 9.  Thus, this factor weighs in favor finding the relief here adequate.

### d.      Equitable Treatment of Class Members

Before finding a proposed settlement fair, reasonable, and adequate, courts must also consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  Generally, a settlement that provides for pro

---

[13] As discussed below, Class Counsel initially requested a fee award of $363,000.  [29].  Class Counsel subsequently reduced that request to $332,965, to cover the cost of the SNP, and then settled on the present value of $200,000.  [81] at 1–2; 5–6.

rata shares to each class member will meet this standard. *E.g.*, *Burnett v. Conseco Life Ins. Co.*, No. 18-CV-0200, 2021 WL 119205, at *9 (S.D. Ind. Jan. 13, 2021). Because class representatives do more work and take more risks than the average class member, service awards to named class members will generally not "raise a red flag." 4 *Newberg* § 13:53. Of course, courts may "become suspicious" of a service award if the disparity between this payment and the average settlement distribution "is very large" or if "absent class members receive nothing or de minimis relief." *Id.*

The Proposed Settlement provides for pro rata shares to each member of the Proposed Settlement Class. [5-1] at 27. Such distribution plans indicate equitable treatment of class members relative to each other. Accordingly, this Court turns its focus to the service awards requested by Class Counsel. Counsel moves for awards of $2,500 each for the two named Plaintiffs. [29] at 14. If approved by this Court,[14] these payments would create a sizeable disparity between the named Plaintiffs and claimants who will likely receive $3.06.

On balance, this Court finds that the Proposed Settlement treats class members equitably. Without the involvement of the named Plaintiffs, the other class members would gain nothing. And service awards have real value when they "induce individuals to become named representatives." *Redman v. RadioShack Corp.*, No. 11-CV-6741, 2014 WL 497438, at *12 (N.D. Ill. Feb. 7), *rev'd on other grounds*, 768 F.3d 622 (7th Cir. 2014). While the gap between the proposed service awards and the average distribution may be large here, it does not render treatment of class

---

[14] This Court discusses below whether this amount is reasonable given the named Plaintiffs' contributions to this litigation.

members inequitable. *See, e.g.*, *Graves v. United Indus. Corp.*, No. 17-CV-6983, 2020 WL 953210, at *8–9 (C.D. Cal. Feb. 24, 2020) (finding that proposed settlement treated class members equitably where all class members would receive approximately $7 each and class representatives would receive service awards ranging from $3,000 to $5,000).  Service awards aside, all class members here will receive equal shares from the settlement fund.

### e.    Amount of Opposition and Reaction of Members of the Class

As noted above, the Seventh Circuit developed its own set of factors to assess the fairness, reasonableness, and adequacy of settlement proposals.  Those factors include "the amount of opposition to the settlement" and "the reaction of members of the class to the settlement."  *Wong*, 773 F.3d at 863 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)).

Here, the fact that so few members of the Proposed Settlement Class objected to or opted out of the Proposed Settlement suggests strong support.  Only seven class members opted out of the Proposed Settlement, [81-2] at 28–54, and only one individual formally filed objections with the Court, [24]; [74].  An additional ten individuals submitted objections to Class Counsel but did not file their objections with this Court.  [81-1] ¶ 2.  These ten objections, virtually identical in both form and substance, [28-2] at 15–33,[15] smack of "an organized campaign, rather than the

---

[15] Eight of the ten putative objectors state that the proposed recovery stated in the notice program "is not acceptable" and all ten state that they are "requesting mediation."

sentiments of the class at large," 4 *Newberg* § 13:58 (quotation omitted). Objections like these will "not necessarily doom a proposed settlement." *Id.*

This Court will discuss the substance of these objections below. Most important here: the miniscule number of objections relative to the size of the class (estimated at some six million members). [5-1] at 6. The overwhelming support by class members weighs strongly in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement.

### f.      Opinion of Competent Counsel

Seventh Circuit courts assessing the fairness, reasonableness, and adequacy of a settlement proposal must also consider the "opinion of competent counsel." *Wong*, 773 F.3d at 863 (quoting *Gautreaux*, 690 F.2d at 631). What matters here is that "experienced counsel—particularly counsel experienced in class action litigation— have reached" the settlement "and are proposing it." 4 *Newberg* § 13:58.

Class Counsel here "strongly endorse" the Proposed Settlement. [28] at 24. And, as this Court has already noted, Class Counsel has extensive experience with class action litigation, experience that includes data privacy litigation. Thus, this factor weighs in favor of approval of the Proposed Settlement.

### C.      Objections to the Settlement

Mark S., a member of the Proposed Settlement Class, filed objections to the Proposed Settlement with this Court on May 11, 2020, [24], and supplemented these objections on June 19, 2021, [74]. Mark S. argued his objections at the first fairness hearing in this matter held on August 4 and August 7, 2020 and at the supplemental

38

fairness hearing held on August 31, 2021. Separately, ten members of the Proposed Settlement Class sent objections to Class Counsel via U.S. mail. Because these ten objections, largely identical in form and substance, share the same procedural and substantive defects, this Court will discuss these objections together.

### 1. Mark S.' Objections

This Court begins with Mark S.' objections.

### a. Adequacy of Representation

Mark S. asserts that Class Counsel has not adequately represented the Proposed Settlement Class. [24] at 28; [74] at 11. For that reason, Mark S. argues that this Court should not certify the class or find the Proposed Settlement fair, reasonable, and adequate. Specifically, Mark S. argues that Class Counsel failed to act with "integrity," [24] at 30–31, that Class Counsel reached a settlement that requires members of the Proposed Settlement Class to release certain claims not alleged here, *id.* at 31, and that the Proposed Settlement is a "racket" that does not make the class members whole, *id.* at 29–30. This last argument is better understood as an objection to the adequacy of relief, not the adequacy of representation and will be addressed in due course.

### i. Class Counsel's Integrity

To support his argument that Class Counsel acted without integrity, Mark S. alleges that Class Counsel "largely copied" the complaint filed in this case. *Id.* at 30. Mark S. also cites "the unlawful filing schedule that required the filing of objections

*before* the filing of counsel's fee petition." *Id.* Lastly, Mark S. alleges that Class Counsel misrepresented the value of the Proposed Settlement to the class. *Id.* at 31.

This Court turns first to the allegations of copying. Courts do not look kindly upon plagiarism, and many "have found such behavior unacceptable and a violation of the Rules of Professional Conduct that govern attorneys' behavior." *Consol. Paving, Inc. v. County of Peoria*, No. 10-CV-1045, 2013 WL 916212, at *6 (C.D. Ill. Mar. 8, 2013) (collecting cases). Here, Mark S. alleges that Class Counsel's complaint "largely copied" the complaint in a prior FTC enforcement action. [24] at 30.

To support this accusation, Mark S. identifies twenty-one instances of similar language between the two complaints. [24-8]. This language, however, comprises a small portion of the complaint filed here. [1]. It bears no resemblance to the wholesale copying of pages of legal analysis punished by courts in other cases. *See, e.g.*, *A.L. v. Chi. Pub. Sch. Dist. No. 299*, No. 10 C 494, 2012 WL 3028337, at *6 (N.D. Ill. July 24, 2012) (reducing attorneys' fee award by 90% where "Plaintiff's counsel lifted verbatim large portions of Plaintiffs' briefs directly from judicial decisions, without appropriate attribution").

Even if this Court accepts Mark S.' allegations as true, they cast little doubt on the quality of Class Counsel's representation. As discussed above, Class Counsel reached a settlement *before* filing the complaint in this matter. Any alleged copying sheds little light on the quality of representation with respect to the settlement (or the preceding months of informal discovery and negotiation).

Turning next to the filing schedule, Mark. S. correctly notes that the filing schedule, as originally submitted by Class Counsel, permitted Class Counsel to file their fee petition after the deadline for objections. [24] at 30–31. Notwithstanding the original schedule, Class Counsel did ultimately file the fee petition several weeks before the revised June 2, 2020 deadline for objections. But Class Counsel failed to notify the class of the updated deadline.[16]

While Mark S.' points to these errors as purported proof of Class Counsel's "inadequate representation and lack of integrity," this argument does not square with the record. Most notably, Class Counsel discussed the fees it would seek in its notice to the class. In the Settlement Notice, Class Counsel stated its "intent to request up to 33% of the Settlement Fund for attorneys' fees and reimbursement of reasonable, actual out-of-pocket expenses incurred in the litigation" and that it would also "request that a Service Award of $2,500 each ($5,000 total) be paid to the Class Representatives for their services." [28-2] at 24. Given that these figures align with those in fee petition, this Court does not view Class Counsel's inadvertent errors above as a deliberate attempt to obfuscate fees or deprive class members of a meaningful opportunity to object.

Lastly, this Court examines the alleged misrepresentation of the value of the Proposed Settlement to the class. Specifically, Mark S. alleges that Class Counsel

---

[16] In light of the supplemental notice ordered by this Court, [61]; [62], members of the Proposed Settlement Class have now had ample opportunity to object to the fees and cost awards proposed by Class Counsel. And on the matter of integrity, Class Counsel first deducted the costs of the SNP from its proposed attorneys' fee award, [69], and then further reduced the award sought so that, after more class members filed claim forms during the SNP, the recovery per claimant would remain in line with the relief initially projected, [81] at 5–6. Based on the record, this Court finds Mark S.'s attack on the integrity of Class Counsel unfounded.

neglected to inform the class that the Proposed Settlement would result in a recovery of $0.11 per class member.  [24] at 41.  Once again, Mark S.' bold assertion falls flat. The eleven-cent figure rests on the assumption that *all six million* members of the Proposed Settlement Class would submit valid claims.  But in "most class actions," most class members "will never step forward and file claims for relief."  4 *Newberg* § 12:17.  Having reviewed Class Counsel's initial projections for recovery per claimant and their most recent estimates of $3.06, this Court sees no evidence of misrepresentation.

Mark S.' audacious claim that Class Counsel acted without integrity has no support in the record here.  The evidence cited by Mark S. gives this Court no reason to revisit its earlier findings that Class Counsel provided adequate representation.

### ii.        Failure to Allege Claims

Mark S. also argues that Class Counsel has not adequately represented the class because it negotiated a settlement that requires class members to release "significant" unalleged "claims held by the Child Victims, including breach of contract, unjust enrichment and violation of deceptive business practices and privacy statutes," specifically the Illinois Right of Publicity Act, 765 Ill. Comp. Stat. § 1075/1– 60, the Illinois Biometric Information Privacy Act (BIPA), 740 Ill. Comp. Stat. § 14/1– 99, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/1–7.  [24] at 31, 33–34.  But, as other courts have noted, adequate representation does not require lead plaintiffs to allege every single claim available. *See, e.g.*, *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-

2247, 2012 WL 2512750, at *5 (D. Minn. June 29, 2012) (describing objector's contention that adequate representation requires class representatives to "raise every state law claim available" as untenable and noting that such a rule would cause "nationwide class-action litigation" to "effectively cease" (quotation omitted)), *aff'd*, 716 F.3d 1057 (8th Cir. 2013); *Bruce v. Wells Fargo Bank, N.A.*, No. 05 CV 243, 2006 WL 8452671, at *4 (N.D. Ind. Dec. 20, 2006) (discussing Seventh Circuit's rejection of argument that a named plaintiff is "inadequate" if he fails "to allege all available claims"). This is especially true of claims that have little chance of success, like those pushed by Mark S. here.

Moreover, Mark S. neglects to explain how Class Counsel could have pled these unalleged claims. In fact, most of the claims do not appear viable at all. To start, the Illinois Children's Privacy Protection and Parental Empowerment Act explicitly states that it "shall not be considered or construed to provide any private right of action." 325 Ill. Comp. Stat. § 17/20. Clearly, any claim brought by Plaintiffs under that act would fail. So, even if such claims are within the scope of the relief, members of the Proposed Settlement Class give up nothing here.

The putative Illinois Right of Publicity Act claim identified by Mark S. also suffers from fatal defects. To bring a claim under the act, a plaintiff must allege that a defendant used the plaintiff's identity for a "commercial purpose" within the meaning of the act. 765 Ill. Comp. Stat. § 1075/30. But here none of the named Plaintiffs allege such facts. Nor, for that matter, does Mark S.

43

Lastly, in light of representations by the parties, members of the Proposed Settlement Class remain free to pursue their BIPA claims in the pending MDL. [68].

Once again, Mark S.' assertions about the adequacy of Class Counsel's representation lack merit and give this Court no reason to revisit its earlier findings on this issue.

### b.     Adequacy of Relief

Mark S. also objects that the Proposed Settlement does not provide adequate relief. Namely, he argues that the Proposed Settlement does not properly value class members' claims, offers no meaningful benefit to the class, does not disclose requested attorneys' fees, and is not the product of arm's length negotiation. [24] at 32–39; [74] at 8–9. This Court addresses each argument in turn.

### i.     Valuation of Claims

Mark S. argues that the value of the settlement is too small when compared to the statutory damages available for the claims.[17] *Id.* at 33–34. But settlement is a compromise; the fact that a proposed settlement amounts "to a fraction of potential recovery does not" automatically render it "inadequate and unfair." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011). What's more, in the absence of a settlement, class members would likely not have the chance to litigate their class claims at trial. Instead, the arbitration and class action waiver here would force members of the Proposed Settlement Class to pursue their claims individually and

---

[17] Additionally, Mark S. cites the availability of punitive damages as a basis for challenging the valuation of the alleged claims. Punitive damages, however, "are generally not appropriate in measuring the fairness of a proposed class action settlement." *Mangone v. First USA Bank*, 206 F.R.D. 222, 229–30 (S.D. Ill. 2001).

through arbitration. And each class member would have to bear the costs of discovery, expert testimony, and so on. The idea that all class members would secure complete recovery through arbitration, "is but one potentiality, and . . . a dubious one at that." *Kolinek*, 311 F.R.D. at 494.

Mark S. also relies upon the valuation of certain unalleged claims to support his argument that the value of the settlement is too low. But, as this Court discussed above, these claims either fail or remain available in the TikTok MDL (meaning that Mark S. can still pursue them).

Lastly, Mark S. relies upon the value of the TikTok MDL proposed settlement to assert that the Proposed Settlement here grossly undervalues class members claim. [74] at 8–9. But the TikTok MDL stems from different conduct and involves different claims. Unlike the TikTok MDL, this case does not challenge the collection of biometric information in violation of BIPA. Instead, this case results "solely" from "the unlawful collection of minors' personal information on the [TikTok] app without first obtaining parental consent." [48] at 16:9–20. Mark S.' argument misses these important distinctions and provides no basis to deny Plaintiffs' motion for final approval.

### ii.     Meaningful Benefit to Class

Mark S. also claims that the Proposed Settlement provides no meaningful benefit to the class. [24] at 36–37; [74] at 9. Specifically, Mark S. argues that the settlement only provides for recovery of four cents per class member, [74] at 9, and

that other privacy related settlements have "provided materially different relief" than the cash payments "contemplated by the Proposed Settlement." [24] at 36–37.

Turning first to the argument about the amount of recovery, this Court has already noted that recovery per *claimant*, not recovery per class member, forms the appropriate yardstick by which to measure the settlement. By that metric, the recovery of $3.06 per claimant is a meaningful benefit, and, as discussed above, one comparable to similar recoveries in other privacy-related settlements.

In arguing that the Proposed Settlement should provide more than just a cash benefit to class members, Mark S. cites other privacy-related settlements that required Defendants to amend the offending business practices at the heart of the litigation. [24] at 37; *e.g.*, *In re VIZIO, Inc. Consumer Privacy Litig.*, No. 16-ML-2693, 2019 WL 3818854, at *10–11 (C.D. Cal. Aug. 14, 2019) (settlement providing cash payments to claimants and requiring changes to defendants' business practices including deletion information collected from consumers and revision of disclosures to consumers regarding data collection policies). But the FTC already obtained such relief. *See generally* Stipulated Order for Civil Penalties, *United States v. Musical.ly*, No. 19-cv-01439 (C.D. Cal. Mar. 27, 2019), ECF No. 10 (requiring TikTok to delete data obtained in violation of COPPA and mandating compliance reporting to the FTC). Mark S.' argument that the Proposed Settlement must require Defendants to change their business practices boarders on the frivolous, given that Defendants are already enjoined from the conduct that gave rise to this litigation.

46

### iii.     Disclosure of Attorneys' Fees

Mark S. argues that Class Counsel's failure to timely disclose its proposal for attorneys' fees precludes this Court from finding the Proposed Settlement adequate. [24] at 39; *see also* Fed. R. Civ. P. 23(e)(2)(C)(iii).  Class Counsel had yet to file its petition for attorneys' fees when Mark S. filed his objections.  But, as this Court has already discussed, notice to the Proposed Settlement Class clearly stated Class Counsel's intention to seek fees totaling up to 33% of the Proposed Settlement fund, in addition to costs and service awards of $2,500 for each of the named Plaintiffs.  *See* [28-2] at 24.  And Class Counsel subsequently filed its fee petition on May 12, 2020. [29].  Accordingly, this Court had sufficient information to assess the adequacy of relief under Rule 23.  Also, given the delay of the fairness hearing until August 2020 and the supplemental notice ordered by this Court, members of the Proposed Settlement Class have now had more than an ample opportunity to object to the attorneys' fees sought by Class Counsel.

### iv.     Arm's Length Negotiation

Mark S. argues that the "Proposed Settlement . . . does not satisfy the requirement of Rule 23(e)(2)(B) that negotiations be at arm's length" because it "serves to benefit class counsel and Defendants, without consideration of the Child Victims." [24] at 39; *see also* [74] at 15.  Further, Mark S. asserts that "class counsel and Defendants attempted to cloak the Proposed Settlement with neutrality." [24] at 39.  This Court finds no basis for these allegations.  As noted above, this Court finds the Proposed Settlement fair, reasonable, and adequate; and finds that it

47

provides class members with a material benefit. The fact that the parties reached the Proposed Settlement after extensive informal discovery and mediation led by a neutral third party only further evidences an arm's length negotiation.

### c.      Notice to the Class

Mark S. asserts that this Court should reject the proposed settlement because of defects in notice to the Proposed Settlement Class. Mark S. cites: (1) the failure to inform class members of the correct deadlines to object or opt-out, [24] at 41–42; [74] at 6–7, 12; and (2) a method of notice that failed to provide individual notice and ultimately targeted the wrong people, [24] at 40–41; [74] at 10–12. This Court addresses each purported defect in turn.

### i.      Content of the Notice

In his initial objections to the Proposed Settlement, Mark S. claimed notice inadequate because the settlement administrator failed to update the settlement website and hotline to reflect various pandemic-related orders, issued by the Chief Judge of this Court, that shifted all deadlines in civil cases. [24] at 41–42. This Court agreed. [61]; [62]. But this Court's order requiring supplemental notice, and the subsequent SNP, have remedied this defect by providing members of the Proposed Settlement Class with additional notice of the Proposed Settlement and additional time to object or opt-out. Accordingly, this failure to provide the correct deadlines no longer serves as a reason to deny Plaintiffs' motion for final approval.

In his supplemental objections, Mark S. raises a much narrower issue. In accordance with this Court's April 2021 order, members of the Proposed Settlement

48

Class could "opt-out of or object to the settlement no later than 45 days after the SNP begins." [68]. As the SNP began on May 5, 2021, this forty-five-day deadline fell on June 19, 2021, a Saturday. *See* [81-2] at 4. Accordingly, Rule 6(a)(1)(C) rolled the deadline to opt-out or object to the Proposed Settlement to "the end of the next day that is not a Saturday, Sunday, or legal holiday." Although Rule 6 pushed this deadline to Monday, June 21, 2021, the settlement website and settlement hotline both indicated a June 19 deadline. *Id.* at 3–5.

This failure to comply with the letter of Rule 6 does not render notice inadequate. The Court required that members of the Proposed Settlement Class receive an additional forty-five days to object or opt-out, and they did. The error identified by Mark S. did not compromise class members' due process rights or their rights within the meaning of Rule 23 and does not warrant additional notice or denial of the motion for final approval. *Cf. Tennille v. W. Union Co.*, 785 F.3d 422, 439–40 (10th Cir. 2015) (holding that errors within settlement notice did not materially affect class members' right to file objections where settlement notice which mistakenly stated that objectors must "be willing to agree to sit for a deposition, within the *county or state* in which you reside," rather than "the *County* in which he, she, or it resides" and the settlement website did not include the correct information); *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1247 (D. Kan. 2015) (finding that error on settlement notice listing incorrect address for the location of the final fairness hearing, "while not the ideal," did not constitute "a material defect in the notice" and did "not require the Court to withhold approval of the settlement"

49

or "warrant the cost of an additional round of notice to the class members"); *Arnett v. Bank of Am., N.A.*, No. 3:11-CV-1372, 2014 WL 4672458, at *3 n.7 (D. Or. Sept. 18, 2014) (concluding that error in notice stating that the final approval hearing would take place on Friday, September 9, 2014, instead of Tuesday, September 9, 2014, "did not render the Class Notice insufficient"); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 295 n.16 (E.D. Pa. 2012) (finding that "inadvertent typo as to the end date for the Class Period" in settlement notice did not require "additional notice").

### ii.        Form of the Notice

Mark S. claims the form of notice here inadequate because it did not provide individual notice, targeted the wrong people, and failed to take advantage of "traditional notice methods, such as newspaper publication and television advertisements." [24] at 40–41; *see also* [74] at 10–12. Again, his assertions miss the mark.

Turning first to individual notice, Rule 23 does not require individual notice for (b)(3) classes; instead, the rule simply requires "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Courts routinely find forms of notice other than individual notice sufficient to meet this standard. *See, e.g.*, *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013) (stating that "notice by publication . . . may be substituted" when the individual members of a class cannot be identified through reasonable effort). These alternatives can also satisfy

due process. *See In re AT&T*, 789 F. Supp. 2d at 968 ("Due process does not require that every class member receive notice.")

Mark S. asserts that Defendants "undoubtedly had, and have, the capability to identify" those members of the Proposed Settlement Class who used TikTok while they were under the age of thirteen (as opposed to their parents). [24] at 41. Of course, if the Defendants did have the ability to identify members of the Proposed Settlement Class, then individual notice may very well have constituted the "best notice" within the meaning of Rule 23. But this conclusory remark regarding Defendants' ability to identify class members, once again, fails.

Even if Defendants possess the "email addresses, first and last names and geolocation information" associated with child members of the Proposed Settlement Class, *id.*, as Mark S. asserts, this information would not help to identify those TikTok users who belong to the class. As Defendants note, "the only way Plaintiffs' information could have been collected was if Plaintiffs affirmatively lied about their age and deceived TikTok's technical barriers" meant to prevent children under the age of 13 from using TikTok. [34] at 1–2. Because of this misrepresentation, *all* personal information collected during the relevant time period would *appear* to belong to TikTok users who do *not* fall within the Proposed Settlement Class.

Sending notice by email using these records would "provide individual notice to an overinclusive group of individuals." *Yeoman v. Ikea U.S. W., Inc.*, No. 11-CV-0701, 2013 WL 5944245, at *5 (S.D. Cal. Nov. 5, 2013) (quotation omitted). And courts routinely find such "overly broad or over-inclusive" individual notice "improper

and not required by Rule 23." *Id.* (first citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 169 (2d Cir. 1987); then citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977); and then citing *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539 (N.D. Ga. 1992)); *see also, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-2200, 2019 WL 1512265, at *2 (N.D. Cal. Apr. 8, 2019) ("Direct notice is inappropriate when it is overly broad or overinclusive."); *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV 0214, 2010 WL 5187746, at *7 (S.D.N.Y. Dec. 6, 2010) ("As discussed, individual notice to an overinclusive group is not required by Rule 23.").

Individual notice to "an overinclusive list of class members may be proper," if not necessarily required by Rule 23, when "the list 'indisputably contain[s] the universe of class members.'" *Schneider*, 2019 WL 1512265, at *2 (alteration in original) (quoting *Marcaz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 60–61 (D. Conn. 2001)). But that principle does not apply here. As Defendants note, many users declined to provide valid email addresses when creating TikTok accounts. [48] at 39:13–25. Accordingly, any attempt to provide individual notice via user email addresses maintained by TikTok, in addition to reaching many individuals who do not fall within the Proposed Settlement Class, would *not include* the full universe of class members.

For the same reasons, notice through the TikTok app also fails to constitute the "best notice" within the meaning of Rule 23. Defendants now acknowledge their ability to provide notice via the TikTok app's "Inbox" feature or through push

52

notifications.  *See* Defendant TikTok, Inc.'s Supplemental Answers to the Court's Questions About Plaintiffs' Motion for Preliminary Approval of Class Settlement at 1–3, *In re TikTok, Inc. Consumer Privacy Litig.*, No. 20-CV-4699 (N.D. Ill. Mar. 23, 2021), ECF No. 139.[18]  But because this notice would go out to *all* app users, not just those belonging to the Proposed Settlement Class, it would constitute the type of overly broad notice that, as discussed above, courts find improper and not required by Rule 23.  At the same time, it would miss those class members who no longer use the TikTok app or, depending on their individual settings, do not use the app during the notice period.  *Id.* at 2.

Mark S. also suggests that Defendants could "manually review videos" submitted by TikTok users during the relevant time period "to identify Child Victims."  [24] at 41.  But this utterly impractical idea would require the reviewers of a vast sum of videos (drawn from a class of approximately six million members) to simply guess each user's age and ignores the fact that only a fraction of the Proposed Settlement Class submitted videos or otherwise had their personal information collected.  [34] at 9.  Rule 23 does not require such extremes, but rather "best notice that is *practicable* under the circumstances."

---

[18] Defendants made this representation in the TikTok MDL.  At the final fairness hearing held on August 31, 2021, Objector Mark S. and Defendants disputed the legality of notice via this method to the class at issue in this litigation.  Later, in response to a supplemental notice filed by Mark S., *see* [88], Defendants pointed out that "[u]nlike the MDL, which includes *all* TikTok users, this action was brought only on behalf of users under 13.  Users under age 13 are restricted to TikTok's under-13 mode . . . due to legal restrictions under COPPA."  [89] at 1–2 (emphasis in original).  Given these restrictions, "users under 13 cannot therefore receive such notifications from TikTok" and "in-app notice of the MDL settlement was *not* received by class members under 13 and could not have been distributed to the class members here."  *Id.* at 2.

### 2.    Other Objections

In addition to the objections Mark S. filed with this Court, ten individuals claiming membership in the Proposed Settlement Class mailed their objections to Class Counsel. [28] at 22. These individuals did not actually file their objections, as this Court required, nor did they provide copies to the Settlement Administrator. *Id.*; [28-1] at 2-3. This Court explained the procedure for filing objections in its order granting the motion for preliminary approval, [13] ¶ 10, and notice to the class explicitly stated these simple requirements, [28-2] at 24. This failure to comply with procedural requirements provides reason enough to disregard these objections, and thus, this Court disregards them. *See, e.g.*, *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1303 n.6 (S.D. Cal. 2017) (declining to consider objections to settlement not properly filed with the court), *aff'd*, 881 F.3d 1111 (9th Cir. 2018).

In the alternative, however, this Court also rejects these objections on the merits. Eight of the ten objections state that the potential recovery per claimant is too low and request mediation. [28-1] at 15–16, 18, 20, 22, 26, 28, 30. Courts routinely overrule similarly bare objections to settlements. *See, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 CV 8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019) (overruling objection to settlement based on "relatively low per-claim award" in part because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suits"). The two other individuals' objections similarly merit no consideration, as they merely

request "mediation," but state no real issues with the settlement. [28-1] at 24, 32. These too do not merit further consideration or discussion.

This Court, having certified the Proposed Settlement Class and having found notice adequate and the Proposed Settlement fair, reasonable, and accurate, now grants Plaintiffs' supplemental motion for final approval [81].

## III.  Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards

Plaintiffs seek $200,000 in attorneys' fees, $16,133.53 in costs, and $5,000 in service awards ($2,500 to each of the two named Plaintiffs). [69]; [81]; [84]. This Court addresses each request in turn.

### A.  Attorneys' Fees

Rule 23(h) permits courts to "award reasonable attorney's fees" that are authorized by law or by the parties' agreement, and when a lawyer "recovers a common fund for the benefit of persons other than himself or his client" he "is entitled to a reasonable attorney's fee from the fund as a whole." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 831 (7th Cir. 2018) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Courts in common fund cases "determine reasonableness" by awarding counsel the "'market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Kolinek*, 311 F.R.D. at 500 (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).

Although this Court has discretion to use "either a percentage of the fund or lodestar methodology," the "percentage method is employed by the vast majority of

courts in the Seventh Circuit." *Hale*, 2018 WL 6606079, at *7 (internal quotations omitted). Regardless of the method used, the Seventh Circuit notes a "presumption" that "attorneys' fees awarded to class counsel should not exceed a third," or "at most a half of the total amount of money going to class members and their counsel," *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), with the "typical" fee "between 33 and 40 percent," *Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 458 (7th Cir. 2018) (quoting *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)). Because administrative costs and service awards taken out of the common fund "are not a direct benefit to the class," courts should also deduct these costs before awarding any attorneys' fees. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 199 & n.4 (N.D. Ill. 2018) (first citing *Redman*, 768 F.3d at 622, 630; and then citing *Pearson*, 772 F.3d at 780–81)).

## 1. Market Rate

Several factors inform the appropriate market rate, namely: "the risk of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case." *Camp Drug Store*, 897 F.3d at 832–33. Additionally, courts also consider the "normal rate of compensation in the market." *Id.* Applied here, these factors support a market rate of 33.3%.

### a. Risk of Nonpayment

As the "risk of walking away empty-handed" increases, so too must the fee award in order to "attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). Initially, the fact that this litigation

followed the FTC's February 2019 settlement with TikTok could suggest that class counsel risked little because it simply "benefitted from the work of others," *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 848 (N.D. Ill. 2015) (same) (noting that one "proxy" for assessing the risk of nonpayment "is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter"). But this Court nonetheless finds a substantial risk of nonpayment here.

Plaintiffs' case relied upon a novel legal argument involving COPPA, which itself does not provide for a private right of action. *See Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 629 (N.D. Cal. 2020). Plaintiffs also faced significant legal hurdles, including the possible preemption of their claims by the FTC's settlement with TikTok and class action and arbitration waivers entered into by class members, that could have prevented them prevailing at trial. Of course, other case management problems, also discussed above, could have prevented Plaintiffs from even certifying a class for trial.

### b. Quality of Performance and Amount of Work

Here, Class Counsel has negotiated a non-reversionary settlement agreement that provides a benefit to the Proposed Settlement Class. The settlement is the product of over two years of work, including substantial pre-suit discovery, interviews of more than 800 potential claimants, months of negotiation, and mediation. Given the difficulty of success at trial, this settlement constitutes a significant achievement and reflects highly upon Class Counsel's performance.

### c.    Stakes of the Case

Here, the stakes in the case are large, given the complexity of the legal issues, the costs of bringing this case to trial, and the potential loss to Class Counsel should they have litigated the case to judgment and not prevailed.

### d.    Normal Rate of Compensation

In the Seventh Circuit, and elsewhere, courts "regularly award percentages of 33.33% or higher to counsel in class action litigation." *Hale*, 2018 WL 606079, at *10 n.4 (collecting cases); *In re Dairy Farmers*, 80 F. Supp. 3d at 846 & n.3 (same). And Class Counsel asserts that their "representation agreements for cases in this District, including . . . this case" include rates that "generally fall within the one-third to 40% range." [29-1] ¶ 11.

### 2.    Plaintiffs' Request

Although this Court finds that a fee of 33.3% constitutes the appropriate market rate, Plaintiffs here request fees totaling $200,000, [81] at 5–6, a figure that represents 27.2% of the common fund, net administrative fees and service awards. Such an award satisfies the presumption that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the *total amount of money going to class members and their counsel.*" *Pearson*, 773. F. 3d at 782 (emphasis added). And because Plaintiffs' request falls short of the market rate (a rate that would generate $244,294.96 in fees), it more than makes up for the $30,035 in administrative costs associated with the SNP. [70] ¶ 10. As the SNP resulted from an error on the part of Class Counsel or the Settlement Administrator, any fee award

should ensure that the Proposed Settlement Class does not bear the costs of the SNP. Plaintiffs' proposal does just that.

### 3.    Mark S.' Objections

Mark S.' objections to Plaintiffs' fee petition distill to just one: Plaintiffs' "request for 43% of the net settlement value is outrageous when considered in connection with the facts underlying the Proposed Settlement." [74] at 12–15. The objection is not supported in the facts. As this Court has already found, based upon the very same facts, a fee equal to 33% of the net settlement represents the market rate. At 27.2% of the net settlement (not 43%), Plaintiffs' modified fee request of $200,000 comes in below that market rate. And this lowered request ensures that class members do not have to foot the bill for any notice-related errors. This Court overrules Mark S.' objections and grants Plaintiffs' request for a $200,000 attorneys' fee award.

### B.    Costs

Class Counsel requests "$16,133.53 in reimbursable expenses related to (1) legal research; (2) court fees; (3) travel to mediation; and (4) mediator's fees." [69] at 14; [84-2] ¶ 17. Rule 23(h) also permits courts to "award . . . nontaxable costs that are authorized by law or by the parties' agreement." By now, it "is well established that counsel who create a common fund . . . are entitled to the reimbursement of litigation costs and expenses." *Hale*, 2018 WL 6606079, at *14 (quotation omitted). Class counsel should support any request for expenses with sufficient records to allow courts to carry out their "duty to ensure that the expenses are reasonable." *In re*

59

*Dairy Farmers*, 80 F. Supp. 3d at 853. Generally, "bills with the level of detail that paying clients find satisfactory" will do. *Id.* (quoting *In re Synthroid*, 264 F.3d at 722).

Here, Class Counsel has provided records with sufficient detail for this Court to fulfill its oversight role. And these expenses comprise less than 1.5% of the common fund here (or roughly 2.2% of the common fund net administrative costs and service awards), a portion smaller than the "average" of "4 percent of the relief for the class." *In re AT&T*, 792 F. Supp. 2d at 1041 (alteration in original) (quoting Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 27, 70 (2004)). In light of the facts of this case, the Court finds the claimed expenses reasonable.

## C. Service Awards

Because a "named plaintiff is an essential ingredient of any class action," courts will deem a service award "appropriate if it is necessary to induce an individual to participate in the suit." *Camp Drug Store*, 897 F.3d at 834 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). To decide whether a plaintiff's participation merits an award, courts examine "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (quoting *Cook*, 142 F.3d at 1016).

60

Here, Class Counsel requests two $2,500 service awards, one for each of the named Plaintiffs.  [69].  But the named Plaintiffs' efforts, while certainly deserving of some remuneration, do not warrant awards of this size.  Here, Plaintiffs:

> (1) provided information to Class Counsel for the complaint and other pleadings; (2) reviewed pleadings and other documents, including the complaint; (3) communicated on a regular basis with counsel and kept themselves informed of progress in the litigation and settlement negotiations; and  (4)  reviewed and approved the proposed settlement

[70] ¶ 14.

The named Plaintiffs do not appear to have missed school or work as a result of their participation in this litigation, nor did they sit for depositions, produce discovery, or submit affidavits, all factors that often justify awards of this size.  *See, e.g.*, *Faulkner v. Ensign U.S. Drilling Inc.*, No. 16-CV-3137, 2020 WL 550592, at *3 (D. Colo. Feb. 4, 2020); *Blair v. Rent-A-Center, Inc.*, No. 17-CV-2335, 2020 WL 408970, at *3 (N.D. Cal. Jan. 24, 2020); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 505 (E.D. La. 2020).  And this case does not involve particularly "sensitive and personal" allegations that might otherwise justify such a large award in the absence of any participation in discovery.  *See N.P. v. Standard Innovation Corp.*, No. 16-CV-8655, 2017 WL 10544061, at *5 (N.D. Ill. July 25, 2017).  Accordingly, this Court declines to award the requested amounts and instead awards each named Plaintiff $1,000, with the extra $3,000 remaining in the Settlement Fund.

## IV.    Objector Mark S.' Motion for Attorneys' Fees and Service Award

The risk of collusion over attorneys' fees and the terms of a class action settlement makes it "desirable to have as broad a range of participants in the fairness

hearing as possible." *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 226 (N.D. Ill. 2019) (quoting *Reynolds*, 288 F.3d at 288), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019). Allowing "lawyers who contribute materially to the proceeding" to recover fees encourages such participation. *Id.* (quoting *Reynolds*, 288 F.3d at 288). But when objectors do seek fees, "principles of restitution" require that they "produce an improvement in the settlement worth *more* than the fee they are seeking." *Id.* (emphasis added) (quoting *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008)).

Here, Mark S.' bases his fee request on the "700%", or $6,256,000, "increase in compensation" his counsel purportedly secured for members of the Proposed Settlement Class by forcing Defendants to allow class members to "participate in" both this settlement and the pending TikTok MDL settlement "regardless of which settled first." [71] at 1. Charitably, Mark S. "only" requests "an award of 25% of the increased benefit—namely $1,564,000." *Id.* at 2. Perhaps recognizing that a request for attorneys' fees *$464,000 greater* than the value of the Proposed Settlement would gain little traction here, Mark S. lowers his request further to a mere "15% of those fees" or $234,600. *Id.*

Even *if* Mark S. could somehow take credit for Defendants' agreement to permit a "double recovery" for members of the Proposed Settlement Class (which he cannot), his request is utterly misplaced. If Mark S. truly believes himself responsible

for class members' right to recovery in the TikTok MDL, he can go seek attorneys' fees in that action.

As Mark S. notes in his response to Plaintiffs' Rule 11 motion, at least one court has awarded fees to a settlement objector who "ask[ed] for and obtain[ed] a modified release," ultimately enabling class members in that action to preserve claims that otherwise would have been released. *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 414–15 (E.D. Wis. 2002); *see* [78] at 14. In that case, the district court found that this constituted "a benefit" for the "class as a whole." *Great Neck*, 212 F.R.D. at 414–16. But Mark S. gets no such credit here.

On October 30, 2020, the "settling parties" in the TikTok MDL, a group that includes Defendants, wrote in a joint status report that they had "expressly negotiated the right of class members" in this action "to participate in the MDL settlement class, such that" this Court's approval of the Proposed Settlement Agreement would not "preclude participation in the MDL settlement, and approval of the MDL settlement" would not "preclude participation" in this settlement. Joint Status Report at 3, 20-CV-04699, *In re TikTok, Inc., Consumer Privacy Litig.* (N.D. Ill. Oct. 30, 2020), ECF No. 99. The settling parties do not mention Mark S., and Mark S. does not claim involvement in those negotiations. So, when Defendants informed *this Court* of their commitment to allowing a "double recovery," [63] at 7–8, they were simply restating a position they had landed on months before and, more importantly, without any help from Mark S.

63

At the August 31, 2021 fairness hearing, Mark S. claimed that he also provided a benefit to the class by getting Class Counsel to reduce its fee request to $200,000. Objectors can confer "a benefit on the class" by successfully "challenging an award of attorneys' fees to lead class counsel." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 272 F. Supp. 2d 563, 565 (D.N.J. 2003)*, aff'd*, 103 F. App'x 695 (3d Cir. 2004); *see also In re Easysaver Rewards Litig.*, No. 09-CV-2094, 2021 WL 230013, at *3 (S.D. Cal. Jan. 22, 2021) ("The Court finds Objector is entitled to fees here. Although Objector did not prevail on many of his challenges to the settlement, he did succeed in convincing the Court to significantly reduce class counsel's fee award."). But that did not happen here.

Here, this Court has not reduced Class Counsel's fee award at all. Instead, Class Counsel requested $332,965 in fees, [69], and then, of their own volition, cut their request to $200,000, [81] at 5–6. Class Counsel represents that, after the SNP led to a near doubling in the number of claims, it reduced its fee request so that per claimant recovery would remain in line with Plaintiffs' initial projections. [81] at 6. This reasoning remains consistent with the record. Of course, the timing here—Class Counsel reduced its request *after* Mark S. objected to their fee petition—could suggest Mark S. had some hand in Class Counsel's decision. But such mere speculation cannot justify taking money away from members of the Proposed Settlement Class to place in Mark S.' pocket (or that of his counsel).

This Court observes that Mark S. *might* have obtained a benefit for this class by raising serious questions about the timing of notice, *e.g.*, [38] at 12, as discussed

in this Court's March 29, 2021 order, [62].[19]  But only a *substantial* benefit will justify attorneys' fees.  And where, as here, "no monetary benefit has been provided to the class," this Court must take "special care" when deciding whether to award fees to an objector.  *In re Leapfrog Enters., Inc. Sec. Litig.*, No. C-03-5421, 2008 WL 5000208, at *3 (N.D. Cal. Nov. 21, 2008) (citing *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 147 (3d Cir. 1998)).

The record here confirms that Mark S. did not obtain a substantial benefit for the Proposed Settlement Class.  Although his initial objections to the Proposed Settlement did note the Plaintiffs' failure to extend deadlines in accordance with certain, pandemic-related court orders, his efforts changed nothing about the overall value of the Proposed Settlement.  Mark S. himself seems to think little of this contribution—in his fifteen-page motion for attorneys' fees and a service award, Mark S. devotes all of two sentences to his efforts to improve notice.  [71] at 4, 6.  And he offers no suggestion at all as to how this Court should value this purported benefit. In any event, because he has not shown that he has "secured a benefit for the class *that outweighs the fees he is seeking*," *Kolinek*, 311 F.R.D. at 503–04 (emphasis added), this Court denies his request for attorneys' fees.

Mark S. also requests a service award of $2,500.  [71] at 15.  Because Mark S.'s request lacks any information about actions Mark S. (rather than his counsel) "has taken to protect the interest of the class," or the "amount of time and effort" he "expended in pursuing the litigation," *Camp Drug Store*, 897 F.3d at 834 (quoting

---

[19] "Might" represents the appropriate word here, because this Court would have identified this issue without Mark S.' help, as part of its independent review of the adequacy of notice.

*Cook*, 142 F.3d at 1016), this Court has no basis upon which to grant his request. Accordingly, this Court also denies Mark S.' request for a service award.

## V.   Plaintiffs' Motion for Rule 11 Sanctions

Pursuant to Rule 11, Plaintiffs move for sanctions against Scott Drury, Mark S.' attorney, and Drury's law firm, Loevy & Loevy.[20]  [76].  Rule 11 allows courts to impose sanctions on any attorney or law firm who presents any paper to the court in which "the claims, defenses, and other legal contentions are" not warranted by either "existing law" or by "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2); *see* Fed. R. Civ. P. 11(c)(1).  Courts can also impose sanctions when the "factual contentions" in such papers lack "evidentiary support."  Fed. R. Civ. P. 11(b)(3).  And under Rule 11(b)(1), even if a paper "is support[ed] by the facts and the law" and results from a "careful . . . pre-filing investigation," a paper filed "for any improper purpose is sanctionable."  *Diamond v. Nicholls*, 483 F. Supp. 3d 577, 597 (N.D. Ill. 2020) (quoting *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 931–32 (7th Cir. 1989)).

Here, Plaintiffs allege that Drury's petition for fees and a service award, filed on behalf of Mark S.: (1) "violates Rule 11(b)(2)" because "the claims and legal contentions" in the petition "are not warranted by existing law, and the arguments are patently frivolous"; (2)  "violates Rule 11(b)(3)" because "there is no evidence to support Drury's contention that his actions in the case created any additional value for the Settlement Class,"; and (3) "violates Rule 11(b)(1)" because "it is filed for an

---

[20] Plaintiffs have complied with Rule 11's safe harbor requirements.  [75].

improper purpose," specifically "seeking attorneys' fees for work that plainly did not increase the settlement in this case" and "needlessly increases the cost of litigation." [76] at 1–2.

First, this Court considers the purported Rule 11(b)(2) violation. As noted above, Mark S. argument that he deserves fees for his contributions to this litigation, while ultimately unavailing, has some support in existing law. Courts have awarded objectors fees when their efforts result in improved notice, *see, e.g.*, *In re Homestore.com, Inc. Sec. Litig.*, No. CV 01-11115, 2004 WL 2792185, at *1 (C.D. Cal. Aug. 10, 2004), or when they help class members preserve claims that initially fell with the scope of a settlement's release clause, e.g., *Great Neck*, 212 F.R.D. at 414– 16. And *Great Neck*, discussed in greater detail above, provides *some* support, albeit indirectly, for Drury's use of the TikTok MDL settlement when calculating the value of his benefit to the class. *Cf.* 212 F.R.D. at 416 (describing the "problem of determining an appropriate award" for the objector as "particularly difficult" because the value of the claims carved out of the settlement release thanks to the objector had yet to "be determined" in a separate lawsuit). Accordingly, this Court finds that Drury's filing did not violate Rule 11(b)(2).

Turning next to the purported Rule 11(b)(3) violation, as this Court noted above, Drury might have provided a minimal benefit to the class by bringing attention to defects in notice. And Drury, by moving to enforce this Court's preliminary injunction or, alternatively, for consolidation with the TikTok MDL, [51], may have played some minimal role in getting the Defendants to state on the record their

commitment to allowing class members here to pursue claims in the TikTok MDL. Ultimately, however, this "benefit" cannot justify fees for Drury because the Defendants had already made this commitment in a separate proceeding and without Drury's help.  But this Court "cannot say" that Drury's "claims were 'so devoid of factual support that sanctions were appropriate.'"  *Diamond*, 483 F. Supp. 3d at 597 (quoting *Great Eastern Entertainment Co., Inc. v. Naeemi*, No. 14 C 4731, 2015 WL 6756283, at *2 (N.D. Ill. Nov. 5, 2015)).

Lastly, this Court needs to examine whether Drury brought his fee petition for an improper purpose, namely by seeking fees "for work that plainly did not increase the settlement in this case" or "needlessly increas[ed] the cost of litigation."  This first argument largely centers on whether Drury had a legal and factual basis for his fee petition.  As discussed, both in the context of Drury's fee petition and Plaintiffs' Rule 11 motion, courts have awarded objectors fees for benefits to the class that do not necessarily increase the monetary value of a settlement.  While Drury's arguments failed here, he did not make arguments devoid of any legal and factual support.  The fact that he made unsuccessful arguments does not, in and of itself, merit Rule 11 sanctions.  Nor does the record here otherwise contain evidence that Drury filed this fee petition simply to increase the costs of litigation or delay proceedings as Plaintiffs allege with factual support.  Based upon the record, this Court denies Plaintiffs' motion for sanctions.

## VI.    Conclusion

For the reasons explained above, this Court grants Plaintiffs' supplemental

motion for final approval of the Proposed Settlement Agreement [81]. This Court also grants Plaintiffs' supplemental motion for attorneys' fees, costs, and service awards [69], awarding Plaintiffs $200,000 for attorneys' fees, $16,133.53 for costs, and service awards in the amount of $1,000 for each of the two named Plaintiffs. This Court denies Mark S.' motion for attorneys' fees and service award [71] and denies Plaintiff's Rule 11 motion [75]. A separate order and judgment consistent with this opinion shall issue.

Dated: March 25, 2021

Entered:

John Robert Blakey
United States District Judge

69